Sanford Shatz        State Bar No. 127229
David A. Brooks      State Bar No. 179716
David_Brooks@Countrywide.com
5220 Las Virgenes Road, MS: AC-11
Calabasas, California 91302
Telephone: (818) 871-6073
Fax: (818) 871-4669

Attorneys for Defendants Countrywide Home Loans, Inc.
and ReconTrust Company, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| RICARDO MARCELOS,<br><br>    Plaintiff,<br><br>vs.<br><br>EDWIN MAURICIO PARADA DOMINGUEZ, GLENDA PARADA, LORENZO PARADA, VIKI RAAB, COUNTRYWIDE HOME LOANS, ARGENT MORTGAGE COMPANY, LLC, PRIMESTAR FINANCIAL SERVICES, SHOAIB MAHMUD, FINANCIAL TITLE COMPANY, NEW CENTURY TITLE COMPANY, RECONTRUST COMPANY, N.A. AND DOES 1 through 100,<br><br>    Defendants. | Case No.: CV 08 0056 WHA<br><br>OPPOSITION TO EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION<br><br>Judge: Honorable William H. Alsup<br>Date: February 26, 2008<br>Time: 10:00 a.m.<br>Courtroom: 9<br><br>[Filed concurrently with Declaration of Tonya Digby] |

Countrywide Home Loans, Inc. ("Countrywide") and ReconTrust Company, N.A. ("RT") oppose Plaintiff Ricardo Marcelos' ("Marcelos") Ex Parte Application for Temporary Restraining Order and Order to Show Cause re Preliminary Injunction ("Application").

## I. INTRODUCTION AND STATEMENT OF ISSUES.

This is essentially a dispute between borrower Marcelos and his loan broker, who is not Countrywide, the assignee of the loan. Marcelos alleges that in 2005, his loan brokers, Shoaib Mahmud ("Mahmud"), and Primestar Financial Services ("Primestar"), with Edwin Parada ("Parada") acting as agent, violated statutes including the Truth in Lending Act ("TILA"), the California Translation Act ("CTA") and committed fraud in connection with their negotiations for a home loan. Notably absent from Marcelos' Application are any allegations that Countrywide committed any of the alleged transgressions. Instead, Marcelos asserts that his subject loan was sold to Countrywide, and on the basis of that statement alone, seeks to rescind his loan. Marcelos' Application is devoid of any facts that would entitle Marcelos to injunctive relief against Countrywide.

The Application should be denied for several reasons. Marcelos lacks standing to block the foreclosure sale, because he does not allege that he has tendered the undisputed amount owing to Countrywide. This is a prerequisite for restraining the foreclosure sale. Moreover, Marcelos does not meet the prerequisites for an injunction. Among other defects, he cannot demonstrate that he is likely to succeed in proving his claim. The Application asserts no allegations of any wrongful conduct by Countrywide, or that Marcelos has been harmed by any act or omission by Countrywide. Marcelos further provides no explanation as to why he waited for more than 2 ½ years before attempting to rescind this loan. The fact that he made payments up until May 2007, suggests that Marcelos obtained the very loan he bargained for, and that there is no basis to Marcelos' request for an injunction or to his complaint.

The Application should be denied.

## II. SUMMARY OF FACTUAL ALLEGATIONS.

### A. Allegations In Application.

Marcelos allege the following core facts.

In 2005, realtor and loan broker Parada visited him, and wanted to interest Marcelos in buying a bigger home. This initial conversation as well as all others were conducted entirely in

1  Spanish. (Application, 2:18-21.)

2  Marcelos told Parada he was not interested in a bigger house but Parada continued to visit him, attempting to persuade him to access the equity in his property to buy a bigger house. (Application, 2:22 – 3:4.)

Marcelos was worn down and agreed to allow Parada to obtain a line of credit on the property in order to permit him to buy a bigger house. (Application, 3:5-6.)

Parada represented to Marcelos he would obtain a line of credit and that the mortgage payments would go up by about $100.00 per month and that would yield enough equity to purchase a larger home. Based on Parada's representations, Marcelos agreed to allow Parada to find such a line of credit. (Application, 3:7-10.)

On May 27, 2005 Marcelos met Parada at a Starbuck's in Hayward, California. When Marcelos arrived, he met Lorenzo Parada, Edwin Parada's brother, and a notary. Relying on Lorenzo Parada and Edwin Parada, Marcelos signed loan papers that he thought would provide him with an equity line of credit. After signing the papers, Edwin Parada told Marcelos that he would be provided with signed copies of the loan papers at a later time. Marcelos left the closing without a single document. (Application, 3:11-21.)

Marcelos received a payment demand from Argent that was $3,200.00 per month rather than the usual $2,600.00, and Marcelos grew alarmed. Marcelos eventually learned that Parada had stolen $200,000.00 in cash and that the loan was designed to generate fees and create the opportunity to steal money from equity which would result in the foreclosure of Marcelos' property. (Application, 3:22-27.)

Marcelos notified the San Francisco Police Department and the District Attorney's office and learned that Parada and Argent had victimized others. (Application, 4:1-4.)

On December 31, 2007 Marcelos sent written notice of rescission to Countrywide. Marcelos requested rescission of the loan and cancellation of the underlying security interest in the property. (Application, 4:9-13.)

B.   Additional Background Related To Marcelos' Loan

On March 29, 2005, Marcelos signed a note in favor of Argent Mortgage Company, LLC

("Argent.")  (Ex. "A" to the declaration of Tonya Digby ("Digby Decl.").)

On March 29, 2005, Marcelos signed a deed of trust in favor or Argent. (Digby Decl., Ex. "B.")

On March 29, 2005, Marcelos signed a notice of right to cancel. (Digby Decl., Ex. "C.")

Marcelos' last payment made on his loan was received on or about June 5, 2007. That payment brought the loan current through May 1, 2007. He has not made a payment since then. (Digby Decl., ¶ 7.)

The foreclosure sale is currently scheduled for March 6, 2008.

## III. MARCELOS LACKS STANDING TO SEEK AN INJUNCTION TO CHALLENGE THE FORECLOSURE SALE BECAUSE HE HAS NOT TENDERED THE UNDISPUTED AMOUNT OWING ON THE LOAN.

A party cannot enjoin a foreclosure sale unless it has tendered the undisputed obligation in full. (Sierra-Bay Fed. Land Bank Ass'n v. Superior Court (1991) 227 Cal.App.3d 318, 337 ("the debtor must offer to do equity by making a tender or otherwise offering to pay his debt"); United States Cold Storage v. Great W. Sav. & Loan Ass'n (1985) 165 Cal.App.3d 1214, 1222 ("the law is long-established that a *trustor* or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale"); Karlsen v. American Sav. & Loan Ass'n (1971) 15 Cal.App.3d 112, 117 ("A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."); Roger Bernhardt, CALIFORNIA MORTGAGE & DEED OF TRUST PRACTICE (C.E.B. 3d ed.) § 7.37 ("Courts usually require the trustor to pay or to tender payment of any amounts admittedly owed the beneficiary as a condition for issuing a temporary restraining order or preliminary injunction.").

"It would be futile to set aside a foreclosure sale on the technical grounds that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property. Thus, it is sensible to require that a trustor, whose default to begin with resulted in the foreclosure, give proof before the sale is set aside that he now can redeem the

property."

United States Cold Storage, 165 Cal. App. 3d at 1225.)

In the present case, Marcelos has not tendered, nor doe he allege to have tendered, the undisputed amount owing under the Note to Countrywide. Marcelos is more than nine months behind on his mortgage payments. Unless and until Marcelos tenders the undisputed obligation in full, he does not have standing to challenge the foreclosure sale, and his request for an injunction should be denied.

IV. THE COURT SHOULD NOT GRANT AN INJUNCTION AGAINST COUNTRYWIDE BECAUSE MARCELOS MAKES NO SHOWING AGAINST COUNTRYWIDE.

Marcelos seeks an injunction against Countrywide merely to delay the foreclosure sale, without any basis in law or fact. Marcelos makes no allegation that Countrywide acted wrongfully. Marcelos does not dispute that he signed the loan documents. Marcelos does not allege any deficiency in the foreclosure procedure. Marcelos fails to make any showing that would entitle him to any injunction blocking Countrywide's foreclosure sale.

The traditional equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). (Sierra Club v. Hathaway, 579 F.2d 1162, 1167 (9th Cir. 1978).) None of these factors applies to Marcelos' Application.

Marcelos offers no basis for a preliminary injunction against Countrywide. He cannot show that he has a strong likelihood of success on the merits against Countrywide. Marcelos cannot show that a balance of hardships favors him. An injunction will not further the public interest.

The sole cause of Marcelos' distress is his own failure to make mortgage payments—a failure for which Countrywide is in no way responsible. Marcelos made payments on this loan for more than two years after it was originated, with apparently no complaints concerning fraud, or any of the other claims in the complaint. Countrywide is entitled to get paid on its loan, but

has not received a payment since June, 2007, at which time Marcelos' loan was current through May, 2007. (See Digby Decl., ¶ 7.) Countrywide should be able to protect its interest and proceed with the foreclosure sale on March 6, 2008. Countrywide respectfully requests that the court deny Marcelos' Application.

### A. Marcelos Fails To Establish A Strong Likelihood of Success on The Merits.

Marcelos does not and cannot show a strong likelihood of success on the merits against Countrywide. No payment has been made on the loan since June, 2007. The loan is in default. Foreclosure is proper. No defect in the foreclosure procedure exists. Marcelos has not reinstated the loan. Marcelos has no claim against Countrywide.

#### 1. Marcelos Cannot Establish a Strong Likelihood of Success on the Fraud Claim.

Marcelos' Application confirms that Countrywide did not make any misrepresentations. Instead, Marcelos attributes fraud to others, including Argent, Parada, and Primestar. (Application, 5:17-22.) The essential elements of an action for fraud are a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage. (See Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, 57 Cal.App.3d 104, 109 (1976).) Because Marcelos fails to allege that Countrywide made any of the alleged misrepresentations, he cannot show *any* likelihood of success on the merits of his fraud claim, let alone a "strong likelihood" of success.

#### 2. Marcelos Fails to Establish Any Purported Right to Rescission.

Marcelos' Application fails to satisfy the threshold requirements for rescission. "[T]o effect a rescission a party to the contract must . . . [r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise." (Civil Code § 1691; see also Beckwith v. Sheldon, 165 Cal. 319, 324 (1913) ("[I]t [is] fundamental that upon rescission the other party must be restored to the condition he was in when the contract was made, or, in other words, as a condition of rescission the rescinding party must first place the other in *status quo*.").) As evidenced by Marcelos' December 31, 2007 Notice of Rescission attached to his Application, Marcelos has not

restored or offered to restore the original loan amount to Countrywide

The failure to allege an offer to tender the loan proceeds or to condition the request for rescission on Countrywide receiving such proceeds renders the claim for rescission under TILA insufficient as a matter of law. (See American Mortgage Network, Inc. v. Shelton, 486 F.3d 815, 816 (4th Cir. 2007) ("Once the trial judge in this case determined that the Sheltons were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate.").) "Although the right to rescind is [statutory], it remains an equitable doctrine subject to equitable considerations." Brown v. National Permanent Federal Savings & Loan Ass'n, 683 F.2d 444 (D.C. Cir. 1982).)

In Powers v. Sims & Levin, the Fourth Circuit rejected the argument that Section 1635 compelled a creditor to remove a mortgage lien in the absence of the debtor's tender of the loan proceeds. (See Powers v. Sims & Levin, 542 F.2d 1216, 1220 (4th Cir. 1976).) The court recognized that "when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due." (Id. at 1222.)

In this case, Marcelos fails to allege that he tendered (or offered to tender) the loan proceeds to Countrywide. As noted in Powers, "Congress did not intend to require a lender to relinquish its security interest when it is known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers." (Powers, 542 F.2d at 1221.) Rather, the equitable goal of rescission under TILA is to restore the parties to the "status quo ante." (Yamamoto v. Bank of New York, 329 F.3d 1167, 1172 (9th Cir. 2003) As the Fourth Circuit noted, "[c]learly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor" or to simply permit the debtor to avoid completely the repayment of the loan proceeds. (American Mortgage Network, Inc., 486 F.3d 815, 820-821.)

Marcelos essentially argues that his unilateral notice of cancellation to Countrywide constitutes an automatic rescission of the loan contract. (See Application at 4:9-13.[1]) However, the Ninth Circuit expressly rejected the notion that the unilateral notification of cancellation, such as the one issued by Marcelos on December 31, 2007 automatically voids a loan agreement. (See Yamamoto, 329 F.3d at 1172. "Otherwise, a borrower could get out from under a secured loan simply by claiming TILA violations, whether or not the lender had actually committed any." Id.) Rather, a security interest may only be voided, and rescission only ordered, upon a borrower's tender of the amount due under the loan. (See Id.; American Mortgage Network, Inc., 486 F.3d at 121.) Marcelos' failure to tender (or offer to tender) the full loan proceeds or to otherwise condition rescission on Countrywide receiving the full loan proceeds bars the requested remedy of rescission under TILA as a matter of law.

       3.    **Marcelos Cannot Show A Strong Likelihood Of Success On His Claim Based On Countrywide's Alleged Violation Of The California Translation Act.**

Marcelos alleges that Countrywide, among others, violated the CTA by failing to provide Spanish-translated documents to Plaintiffs. Under the CTA, "[a]ny person engaged in a trade or business who negotiates primarily in Spanish . . . , orally or in writing, in the course of entering into [a variety of agreements] shall deliver to the other party to the contract or agreement *and prior to the execution thereof*, a translation of the contract or agreement in the language in which the contract or agreement was negotiated . . . ." (Civil Code § 1632(b) (emphasis added).) In other words, only those persons who negotiate directly with a person in Spanish are obligated to provide translations of the negotiated contract or agreement "prior to the execution thereof."

Marcelos' Application alleges that "section 1632 requires that the party negotiating the

---

[1] Marcelos seems to suggest that Countrywide has ignored his rescission request, stating that "Countrywide has been unresponsive to Mr. Marcelos' rescission and his request that the foreclosure sale, presently scheduled for January 7, 2008, be cancelled …." (Application at 4:9-13.) However, Countrywide timely responded to the request for rescission and denied it, because Countrywide's loan file includes a signed copy of the Notice of Right to Cancel, of which Marcelos disputes having obtained a signed copy. (Digby Decl., Exhibit "C.") Countrywide also agreed to postpone the foreclosure sale in connection with the postponement of this hearing

mortgage provide a translated version of the loan documents...." (Application, 8:4-5.) Marcelos does not allege, nor can he, that he negotiated the loan agreement with any person affiliated with Countrywide. Similarly, Marcelos does not allege, nor can he, that any of the named brokers acted as Countrywide's agent or otherwise at Countrywide's direction. Thus, Marcelos fails to allege a threshold claim for violation of the CTA against Countrywide. (See <u>Ruiz v. Decision One Mortgage Co.</u>, 2006 U.S. Dist. LEXIS 54571, *14-15 (N.D. Cal. 2006) (dismissing claim of direct liability against Decision One, which did not negotiate the contract with Plaintiffs, and recognizing the need to allege facts supporting an agency relationship in order to assert secondary liability against Decision One under the CTA).)

    4. <u>Marcelos Is Not Likely To Succeed on His 17200 Claim</u>.

Similar to the fraud claim, Marcelos' claim based on alleged violations of Business and Professions Code section 17200 fails to make any mention of Countrywide. Marcelos instead focuses on co-defendant Argent's alleged violations at loan origination. Section 17200 "is not an all-purpose substitute for a tort or contract action." (<u>Cortez v. Purolator Air Filtration Products Co.</u> (2000) 23 Cal.4th 163, 173.) Countrywide was not a party to the alleged discussions at loan origination. Marcelos does not and cannot allege that Countrywide acted unlawfully, fraudulently or unfairly, because it is not even mentioned in the claim. There is no likelihood of success on this claim.

  B. <u>Marcelos Cannot Show Any Irreparable Injury Caused By Countrywide</u>.

Marcelos cannot show irreparable injury as a result of any act or omission by Countrywide. When Marcelos borrowed money and signed the Note and Deed of Trust, it was agreed that in the event of a default, Countrywide could enforce its rights and foreclose on the Property. The last payment on the loan was received in June, 2007. (Digby Decl, ¶ 7.) The loan is in default. Countrywide properly began foreclosure proceedings.

Marcelos will not suffer great or irreparable injury because of any act or omission by Countrywide. The harm will be caused solely by Marcelos and Marcelos not making the loan payments. Marcelos has not paid his mortgage and as a result is facing foreclosure. Marcelos' failure to fulfill financial obligations is the sole cause of his alleged injury. There is no basis for

1  an injunction blocking the sale by Countrywide.

2      C.    <u>The Balancing of the Hardships Do Not Favor Marcelos.</u>

3      Marcelos has no claim—much less *any* remedy—against Countrywide. Countrywide has not wronged Marcelos. Countrywide has a loan and is entitled to get paid on that loan. Countrywide is properly foreclosing, and the sale should not be enjoined. Because there is no basis for Marcelos' underlying rescission, and because Marcelos' own allegations appear directed at defendants other than Countrywide, Marcelos' Application should be denied.

    D.    <u>The Public Interest Is Not Advanced by Granting the Application.</u>

    An injunction in this case will not advance the public interest. Countrywide should not be involved in *any* proceeding because it has not harmed nor hurt Marcelos in any manner. Marcelos points to an action undertaken by Georgia, in which it obtained a voluntary cease and desist order from co-defendant Argent. (Application, 10:7-10.) However, this has no bearing on this case, since Countrywide is not Argent, and it should be disregarded.

    What cannot be disregarded is that Marcelos signed a note and deed of trust on March 29, 2005, yet he inexplicably waited more than 2 ½ years to bring this action. Why the delay? Marcelos' action appears to be simply a tactic to avoid foreclosure. The public interest is not advanced by granting an Application based on Marcelos' alleged circumstances.

V.    <u>CONCLUSION.</u>

    In light of the foregoing, Countrywide respectfully requests that the Court deny Marcelos' Application.

DATED: February 5, 2008    By: _____
    DAVID A. BROOKS
    Attorneys for Defendants
    Countrywide Home Loans, Inc. and
    ReconTrust Company, N.A.

**PROOF OF SERVICE**
(C.C.P. section 1013a(3))

STATE OF CALIFORNIA )
) SS.
COUNTY OF LOS ANGELES )

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is 5220 Las Virgenes Road, MS: AC-11, Calabasas, California 91302.

On February 5, 2008, I served OPPOSITION TO EX PARTE APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION on all interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as follows:

Martin D. Murphy
Liuzzi, Murphy & Solomon, LLP
101 Montgomery Street, 27th Floor
San Francisco, CA 94101

Community Legal Services in East Palo Alto
Shirley Hochhausen
2117(b) University Avenue
East Palo Alto, CA 94303

Jason E. Goldstein
Buchalter Nemer
18400 Von Karman Avenue, Ste 800
Irvine, CA 92612-0514

[X]   **(BY MAIL)** On February 5, 2008, I placed said envelopes for collection and mailing, following ordinary business practices, at the business offices of Countrywide Home Loans, Inc., at the address set forth above, for deposit in the United States Postal Service. I am readily familiar with the practice of Countrywide Home Loans, Inc. for collection and processing of correspondence for mailing with the United States Postal Service, and said envelopes will be deposited with the United States Postal Service on said date in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **(BY OVERNIGHT DELIVERY)** On February ___, 2008, I placed said envelopes for collection and mailing, following ordinary business practices, at the business offices of Countrywide Home Loans, Inc., at the address set forth above, for deposit with Federal Express with delivery fees provided. I am readily familiar with the practice of Countrywide Home Loans, Inc. for collection and processing of correspondence for mailing with Federal Express, and said envelopes will be deposited with Federal Express on said date in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California, that the above is true and correct. Executed on February 5, 2008, at Calabasas, California.

_____
Desiree Rais