LIUZZI, MURPHY & SOLOMON, LLP
Martin D. Murphy (SBN 164669)
Michael E. Hale (SBN 245378)
101 Montgomery St., 27th Floor
San Francisco, CA, 94104
T: (415) 543-5050
F: (415) 543-3550
martin@lmslaw.com
hale@lmslaw.com

COMMUNITY LEGAL SERVICES IN EAST PALO ALTO
Shirley Hochhausen (SBN 145619)
2117(b) University Avenue
East Palo Alto, CA 94303
T: (650) 326-6440
s_hochhausen@hotmail.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT – SAN FRANCISCO DIVISION

| | |
|---|---|
| RICARDO MARCELOS,<br><br>Plaintiff,<br><br>v.<br><br>EDWIN MAURICIO PARADA DOMINGUEZ, GLENDA PARADA, LORENZO PARADA, VIKI RAAB, COUNTRYWIDE HOME LOANS, ARGENT MORTGAGE COMPANY, LLC, PRIMESTAR FINANCIAL SERVICES, SHOAIB MAHMUD, FINANCIAL TITLE COMPANY, NEW CENTURY TITLE COMPANY, RECONTRUST COMPANY, N.A.<br><br>AND DOES 1 through 100,<br><br>Defendants. | )Case No.: 08-00056 WHA<br>)<br>)<br>)**PLAINTIFF'S SUPPLEMENTAL**<br>)**MEMORANDUM**<br>)<br>)<br>)Date: March 13, 2008<br>)Dept.: Courtroom 9<br>)Place: 450 Golden Gate Ave., 19th Fl.<br>)Judge: Honorable Judge Alsup<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM**

This memorandum is filed by Plaintiff MARCELOS in accord with the February 26, 2008 order of the Honorable William Alsup.

1  **I.    FACTUAL BACKGROUND**

2      Plaintiff Ricardo Marcelos makes his living as a roofer.  He is a limited English proficient

3  married father of two who was cheated in a home loan. The lender, broker, salesman and title company

4  deprived Mr. Marcelos of federal and state mandated consumer disclosures.  Further, they gave him no

5  closing documents at all thereby making it possible for the loan salesman, Parada, to steal $200,000.00

6  in loan proceeds. Unaware of the high cost of the loan and financially impaired by the theft, Mr.

7  Marcelos fell in arrears and the lender commenced foreclosure.  To avert the sale of his home in

8  foreclosure, Mr. Parada moved this Court for a temporary restraining order and preliminary injunction

9  to restrain defendants, Recontrust Company, N.A. (hereinafter "Recontrust") and Countrywide home

10  loans (hereinafter "Countrywide") from foreclosing on the family home.

11      The loan which is the subject of this action was made by Argent Mortgage Company, LLC

12  ("Argent") through one of its cooperating mortgage brokers, Shoaib Mahmud, CA Department of Real

13  Estate License #01308392, and Primestar Financial Services (hereinafter "Primestar," aka ND

14  Financial Inc.), CA Department of Real Estate License # 01350347, with Edwin Parada (hereinafter

15  "Parada") acting as the agent and salesperson for Primestar.  Escrow was closed by New Century Title

16  Company (hereinafter "New Century").  The loan was subsequently sold by Argent to Countrywide

17  Home Loans, Inc. ("Countrywide") who noticed the foreclosure through its trustee, Recontrust, N.A.

18  The foreclosure sale was originally scheduled for January 7, 2008 at 2pm.

19      The TRO was sought, inter alia, on the basis that Plaintiff had not received material disclosure

20  mandated by the TILA, 15 USCS §1601 et. seq. (hereinafter "TILA") and Cal. Civ. Code §1632

21  (hereinafter CC §1632).  Plaintiff was deprived of these protections because he did not get a single

22  document at the closing of this loan including disclosure of material loan terms and thus he did not get

23  the opportunity to rescind the loan in the three days following the loan's consummation.  He was also

24  deprived of the opportunity to read any of the documents because he is limited English proficient and

25  did not get a translation of loan and closing documents in Spanish, his first language.  California Civil

26  Code §1632 requires that where contracts, including mortgages, are negotiated in Spanish, the

27  borrower must get translations of the documents in the language in which the contract was negotiated.

28

1    A preliminary injunction is presently in place. Pursuant to Court order plaintiff has deposited an
2    undertaking of $5,000 with the Court and has deposited "rent" in the amount of $1,800 to the trust
3    account of Liuzzi etc.

4

5    **II.    PROCEDURAL BACKGROUND**

6        On January 4, 2008, plaintiff filed a complaint alleging violation of TILA, Real Estate Sales
7    Protection Act, Fair Housing Act, Equal Credit and Opportunity Act and California Code of Civil
8    Procedure §1632. Plaintiff also filed a Motion for Temporary Restraining Order/ Preliminary
9    Injunction which was granted on February 26, 2008 staying the foreclosure sale of plaintiff's property
10   on Folsom St. in San Francisco pending a trial.

11       Defendants Argent, Countrywide and New Century have noticed motions to dismiss which are
12   to be heard on April 10, 2008.

13

14   **III.    INTRODUCTION**

15       The TILA, 15 USCS §1601 et seq., was enacted on May 29, 1968, as title I of the Consumer
16   Credit Protection Act (Public Law 90-321). The regulation implementing this statute is part of the
17   Code of Federal Regulations (hereinafter "CFR") and is known as Regulation Z, or 12 CFR §226 et.
18   seq. Regulation Z was amended in 1988 to include adjustable rate mortgage, or ARM, loan disclosure
19   requirements.

20       This memo will focus on TILA provisions that relate to home loans or "mortgages", and the
21   remedies available to aggrieved borrowers.

22

23   **IV.    TILA AND THE LOANS TO WHICH IT APPLIES**

24       TILA disclosure requirements apply to open-ended and closed-ended credit transactions with
25   different rules applying to each as defined by the CFR. Open-ended credit transactions have no fixed
26   terms, may be repaid at any time and are most commonly exemplified by credit cards. Closed-end
27   transactions have a specific term in which they must be re-paid. *See* 15 USCS Appx 12 CFR

28

1   §226.2(a)(10) and (20)(LEXIS 2008).  One example of a closed-end credit transaction would be a

2   mortgage such as the loan at issue in this case.

3          TILA applies to closed-end loan transactions secured by the borrower's principal residence but

4   does not apply to such loans that are used to "finance the acquisition or initial construction of the

5   dwelling," or purchase money loans. 15 USCS Appx 12 CFR 226.2(a)(24).  In other words, TILA

6   applies to loan transactions secured by principal residences as long as the loan is not being used to

7   purchase or construct the property.

8          The plaintiff's loan meets the criteria for transactions that are subject to TILA because it is a

9   refinanced mortgage secured by his principal dwelling and, therefore, was not a purchase money loan.

10

11  **V.    ASSIGNEE LIABILITY**

12          The loan at issue was originated in 2005 by Argent and subsequently sold to

13  Countrywide.  TILA makes it explicitly clear that assignees are liable for the actions of their

14  predecessors in interest and are likewise subject to rescission.

15          Title 15 of the United States Code §1641(a) states, in pertinent part, "any civil action for a

16  violation of (TILA)…which may be brought against a creditor may be maintained against any assignee

17  of such creditor only if the violation for which such action or proceeding is brought is apparent on the

18  face of the disclosure statement…."  Furthermore, Courts have found that where the consumer did not

19  receive the loan proceeds or "right to rescind" documents he had the right to rescind against the

20  assignee under 15 USCS §1641(c). *Stone v Mehlberg* (1989, WD Mich) 728 F Supp 1341.

21          Section 1641(a) of Title 15 of the United States Code, cited above, has been read to apply only

22  to statutory damages given that 15 USCS §1641(c) grants the additional right to rescind against <u>any</u>

23  assignee. *Miranda v Universal Fin. Group, Inc.* (2006, ND Ill) 459 F Supp 2d 760.  In fact, the term

24  "any assignee" has been interpreted to permit rescission even against parties with no ownership rights

25  in the loan, such as former assignees and loan servicers, the latter of which Countrywide claims to be.

26  *Id.*

27

28  //

1    **VI.    TILA DISCLOSURES**

2        **1.    Required TILA Disclosures**

3        In keeping with the trend towards supplying consumers with more information than market

4    forces alone could provide, TILA is meant to provide consumers with a more judicious and informed

5    use of credit through a "meaningful disclosure of credit terms." 15 USCS §1601(a). For that reason,

6    TILA disclosures must be made conspicuously and in writing and they must be made "before

7    consummation of the transaction." 15 USCS Appx 12 CFR §226.17(b).

8
9        Title 15 of the USCS and the parallel CFR §226.18 outlines, in pertinent part, some of the
     disclosures required prior to the consummation of the loan:

10
11        (1) The amount of credit of which the obligor will have the actual use, or which
         is or will be paid to him or for his account or to another person on his behalf.

12        (2) All charges, individually itemized, which are included in the amount of
13        credit extended but which are not part of the finance charge.

14        (3) The total amount to be financed (the sum of the amounts referred to in
         paragraph (1) plus the amounts referred to in paragraph (2).

15
16        (4) "Three Day Notice of Right to Rescind".

17    15 Appx 12 CFR 226.18, 226.23(b)(1); *and see* 12 CFR §226.15(a)(3), footnote 36; *and see* 12 CFR

18    226.23(3) footnote 48.

19        Failure to provide any or all of these disclosures would be considered a material violation of

20    TILA, or one where the information not disclosed would prevent the consumer from making a fully-

21    informed credit choice with regard to fees, charges, rights, remedies, etc. *See id.*; *see also Davis v*

22    *Federal Deposit Ins. Corp.* (1980, CA5 La) 620 F2d 489.

23        The loan at issue in this case materially violates TILA in that none of the mandated disclosures

24    were provided to plaintiff. Among the most important of the disclosures is the "Three Day Notice of

25    Right to Rescind" which gives borrowers the opportunity to review the loan documents and consult

26    with others for three days following the signing of the loan papers in order to make an informed

27    decision as to whether the loan is in their best interests. This omission deprived him of the three day

28    opportunity to review his loan and make a deliberate and reasoned decision as to whether to keep the

1  loan or cancel it without penalty as the statute permits. In further violation of TILA, plaintiff did not

2  timely receive two copies of the "Notice of Right to Cancel" as required.

3  **2.    The Rebuttable Presumption of Receipt of Material Disclosures**

4  Often, when the right to rescind pursuant to TILA is invoked, creditors will seek to justify their

5  refusal to accept the borrower's rescission by referring to a signed document that purports to evidence

6  receipt of TILA disclosures. Usually, as in this case, the client is presented with a stack of papers to

7  sign, among them documents that state he has received all necessary disclosures. Indeed, defendants

8  have suggested that they will present such a document acknowledging receipt of TILA disclosure.

9  TILA is very clear on the evidentiary value of such a document. TILA provides "written

10 acknowledgment of receipt of any disclosures required under (TILA) by a person to whom

11 information, forms, and a statement is required to be given...does no more than create a rebuttable

12 presumption of delivery thereof." 15 USCS §1635(c).

13 The burden then shifts to the borrower to rebut the presumption that he received the disclosures

14 and the issue becomes a question of fact to be decided by a trier of fact. *Briggs v. Provident Bank*,

15 (2004, ND Ill.) 349 F. Supp. 2d 1124 at 1129. The presumption may be rebutted by affidavit or

16 declaration. *See Powers v Sims & Levin Realtors* (1975, ED Va) 396 F Supp 12. Therefore, in any

17 case where the presumption has been rebutted there can be no dismissal based in the pleadings because

18 the consumer must be given an opportunity to prove their allegations that they did not receive the

19 documents. *See Hopkins v First NLC Fin. Servs.* (In re Hopkins) (2007, BC ED Pa) 372 BR 734.

20 In short, the mere presence of a document with the consumer's signature is not enough to

21 support the granting of a motion to dismiss or motion for summary judgment, where, like the case

22 here, plaintiff has stated in his sworn declaration that he received no documents at all. Specifically, he

23 stated that he did not receive a "three day notice of right to cancel," thereby rebutting the presumption

24 of delivery raised by the acknowledgment of receipt and creating a question of fact that can only be

25 determined at trial.

26

27 //

28 //

1    **VII.    TILA Remedies**

2    TILA is a remedial statute and, therefore, should be given broad liberal construction in favor of

3    the consumer. *Begola v. Ohio National Assn.*, 163 F.3d.948, 950 (6th Cir. 1998). In addition, such

4    remedial purpose is furthered by imposing strict liability on creditors when required disclosures have

5    not been made. *Purtle v. Eldrige Auto Sales Inc.* 91 F.3rd.797, 801 (6th Cir. 1996)(emphasis added)

6    ("Once violation has been found, no matter how technical." court has no discretion as to the imposition

7    of civil liability), *cert denied*, 520 U.S. 1252 (1997).

8    The remedies provided under TILA consist of rescission, cancellation of the security interest in

9    the property, actual and statutory damages, equitable relief and reasonable attorney fees. Actual and

10    statutory damages are mainly sought for technical, or non-material, violations and usually permit the

11    consumer to recover a dollar amount per each violation. The statute of limitations for bringing actual

12    or statutory damages is one (1) year from the consummation of the loan transaction unless there is

13    fraud. *See Wise v. Mortgage Lenders Network USA, Inc.*, (2006, ED PA) 420 F. Supp. 2d 389.

14    If a material disclosure like the "Three-Day Notice of Right to Rescind" is not delivered, the

15    consumer may rescind anytime up to three (3) years after the consummation of the loan transaction. 15

16    USCS §1635(f) and 15 USCS Appx 12 CFR §226.23(a)(3); *see also Beach v. Ocwen Fed. Bank*,

17    (1998) 523 US 410, 414.

18    Accordingly, plaintiff properly rescinded his loan with defendant Countrywide on the basis of

19    it's failure to deliver TILA mandated disclosure when he mailed a rescission letter to Countrywide on

20    December 31, 2007, well within the three year statute of limitations period.

21    **1.    TILA Procedure for Loan Rescission**

22    United States Code Section 1635(b), Title 15, outlines the process by which the right to rescind

23    under TILA, is to be implemented. This process is detailed and clarified by 12 CFR 226.23(b) and

24    (d)(1)-(4) . Generally, the rescission process operates as follows: when a TILA violation that gives

25    rise to rescission is timely identified by the borrower, the consumer sends notice of rescission to the

26    creditor/lender or his successor in interest. The creditor then has twenty (20) days to respond in

27    writing, either accepting or rejecting the claim for rescission. If the claim is accepted, the creditor's

28    security interest in the property becomes void and the creditor is required to return any money or

1  property that has been given to <u>anyone</u> in connection with the transaction.  When this has been

2  accomplished, TILA requires the consumer to return "the money or property to the creditor or, where

3  the latter would be impracticable or inequitable, tender its reasonable value.  At the consumer's option,

4  tender of property may be made at the location of the property or at the consumer's residence. Tender

5  of money must be made at the creditor's designated place of business." 15 USCS Appx 12 CFR

6  §226.23(d)(3).  If the claim for rescission is rejected, the consumer may bring suit to enforce the

7  rescission of the loan.

8        **a.    Rescission's Effect on the Creditor's Security Interest**

9        While it has been argued in some courts that TILA rescission automatically cancels the lender's

10 security interest, the Ninth Circuit has ruled that the creditor's security interest is not automatically

11 voided by notice of rescission. *Yamamoto v. Bank of New York* (9th Cir., 2007) 329 F. 3d 1173.

12 Instead, a properly delivered rescission only voids the security interest when the rescission is accepted

13 by the note holder or the Court determines rescission is permitted based on the facts. *Yamamoto,* 329

14 F.3d at , *citing American Mortgage Network Inc. v. Shelton* (4th Cir. 2007) 486 F.3d 815, *citing Large*

15 *v. Canseco Fin.* (1st Cir. 2002) 292 F. 3d 49, 54-55.

16       In the case at bar, plaintiff sent the rescission letter to Countrywide on December 31, 2007 and

17 it was rejected on January 22, 2008.  Consequently, a legal proceeding is necessary to determine

18 whether or not the TILA rescission is valid.

19       **b.    The Equitable Discretion of the Court in the Rescission Process**

20       Congress amended TILA to grant the court equitable discretion as to the order of steps two and

21 three in the rescission process, i.e. which party may be first required to tender money or property in the

22 event of a rescission. 15 USCS Appx 12 CFR §226.23(d)(4).  Therefore, if the creditor rejects the

23 consumer's rescission and the Court later finds that the rescission was valid, it may determine based on

24 the equities whether the consumer or the creditor will be required to tender money or property, if

25 anything at all. *See Yamamoto v. Bank of New York* (9th Cir., 2007) 329 F. 3d 1173.  This is to be

26 determined on a case-by-case basis. *Id.*

27       The Court alone, not the creditors, may condition rescission on the ability to repay.  Therefore,

28 a creditor may not validly reject a rescission based on the consumer's ability, perceived or otherwise,

1  to tender the money or property owed. *See Palmer v Wilson* (9th Cir., 1974) 502 F2d 860 (the

2  requirement of tender of consideration as prerequisite to rescission was abolished by Truth in Lending

3  Act); *Powers v Sims & Levin Realtors* (1975, ED Va) 396 F Supp 12 (where defendant lender fails to

4  follow sequence for rescission set forth in 15 USCS § 1635(b) and insists on unwarranted and

5  unreasonable preconditions before it would rescind, plaintiffs as matter of law are excused from

6  making statutory tender envisioned by § 1635(b)).

7      Furthermore, in a case originating in California, the Ninth Circuit has found that in instances of

8  egregious violations of the TILA by creditors it may not require tender by the consumer at all. *See*

9  *Ljepava v M. L. S. C. Properties* (1975, 9th Cir.) 511 F2d 935.

10     **c.    TILA Rescission and California State Common Law Rescission**

11     Defendant Countrywide has repeatedly invoked California common law's treatment of

12  rescission in arguing that plaintiff must tender the loan proceeds before rescission can be granted.

13  While this argument is clearly misplaced considering TILA is a Federal statute by which plaintiff's

14  loan was properly rescinded, a brief discussion of the contrast between TILA and common law

15  rescission will illuminate TILA's purpose.

16     In *Williams v. Homestake Mortgage Co.*, , the court addressed the difference between TILA's

17  rescission process and common law's process where it noted:

18     "Under common law rescission, the rescinding party must first tender the
19     property that he has received under the agreement before the contract may
       be considered void...(In contrast) under (TILA) all the consumer need do is
20     notify the creditor of his intent to rescind...and the creditor must, ordinarily,
       tender first....Rescission under TILA 'places the consumer in a much
21     stronger bargaining position than he enjoys under the traditional rules of
       rescission.'(emphasis added) Note, *Truth-in-Lending: Judicial Modification*
22     *of the Right of Rescission,* 1974 Duke L.J. 1227, 1234 (1974). Furthermore,
       because rescission is such a painless remedy under the statute [placing all
23     burdens on the creditor], it acts as an important enforcement tool, insuring
       creditor compliance with TILA's disclosure requirements."(emphasis added)
24

25  (11th Cir. 1992) 968 F.2d 1137 at 1140.

26

27  //

28  //

F.    **CONCLUSION**

TILA is a disclosure statute designed to empower buyers by making them better informed consumers. It provides a map of detailed and timed disclosures to allow borrowers to make reasoned and informed choices. It also makes it unprofitable for lenders to cheat by imposing harsh penalties on those who violate the law. TILA penalties are designed to restore aggrieved borrowers to the status quo and to punish transgressors and must be liberally construed to this end.

In the circumstances of this case, equity dictates that Mr. Marcelos be returned to the status quo and be made whole for the losses he suffered as a consequence of Argent and Countrywide's bad conduct. Equity can only be served if Mr. Marcelos may rescind and be restored to the position he enjoyed prior to taking a loan that violated both federal and state law and which opened the door to the theft of $200,000.00. Rescission is the only feasible remedy as the TILA statutory remedies alone do not provide an equitable result.

TILA requires that when rescission is effective, all costs, fees, interest and other charges incurred in the loan be refunded to the borrower. Equity also dictates that the $200,000.00 stolen from Mr. Marcelos be restored to him. The court has the power under TILA to see that Mr. Marcelos is made whole and should exercise that power to restore all payments and costs incurred incident to the loan, compel all defendants to disgorge any money received in connection with the loan and award compensatory, statutory and punitive damages with reasonable attorney fees.

Dated: March 13, 2008                                    LIUZZI, MURPHY & SOLOMON, LLP.

By: _____
Michael E. Hale
Attorney for Plaintiff