1   BUCHALTER NEMER
    A Professional Corporation
2   JASON E. GOLDSTEIN (State Bar No. 207481)
    *jgoldstein@buchalter.com*
3   DAVID M. LIU (SBN: 216311)
    *dliu@buchalter.com*
4   18400 Von Karman Avenue, Suite 800
    Irvine, California 92612-0514
5   Telephone: (949) 760-1121
    Facsimile:  (949) 720-0182
6
7   Attorneys for Defendant
    ARGENT MORTGAGE COMPANY, LLC
8
                    UNITED STATES DISTRICT COURT
9
        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION
10
11
    RICARDO MARCELOS,                        Case No.: CV 08-00056 WHA
12
                    Plaintiff,               DEFENDANT ARGENT MORTGAGE
13                                           COMPANY'S EX PARTE APPLICATION FOR
                                             A STAY OF ALL PROCEEDINGS, OR
14          v.                               DISCOVERY, PENDING TRANSFER OF
                                             ACTION TO MDL 1715; OR, IN THE
15  EDWIN MAURICIO PARADA                    ALTERNATIVE, FOR AN ORDER
    DOMINGUEZ; GLENDA PARADA;                SHORTENING TIME TO FILE AND SERVE A
16  LORENZO PARADA; VIKI RAAB;              MOTION FOR STAY; MEMORANDUM OF
    COUNTRYWIDE HOME LOANS;                  POINTS AND AUTHORITIES IN SUPPORT
17  ARGENT MORTGAGE COMPANY,
    LLC; PRIMESTAR FINANCIAL                 [Concurrently filed with Declarations of Jason
18  SERVICES; SHOAIB MAHMUD;                 E. Goldstein and Jose Leal; and [Proposed]
    FINANCIAL TITLE COMPANY; NEW             Order]
19  CENTURY TITLE COMPANY;
    RECONSTRUCT COMPANY, N.A.;
20  AND DOES 1 THROUGH 100,
21                  Defendants.
22
23
24
25
26
27
28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

The necessity for an immediate stay of the proceedings in this action is supported by the fact that defendant Argent Mortgage Company, LLC ("Argent") has already sought to transfer this action, as a "tag along case" to the Multidistrict Litigation Proceeding entitled *In re Ameriquest Mortgage Company Lending Practices Litigation*, Case No. 1:05-CV-07097 ("MDL 1715"), pending in the United States District Court for the Northern District of Illinois. Ex. 1 to Declaration of Jason E. Goldstein ("Goldstein Decl."). This case has been identified as a "tag along case" because the central issues in this action are identical to the central issues in the cases already transferred to MDL 1715. As the MDL Panel noted in its original Transfer Order, "[c]entralization … is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, including those with respect to class certification, and conserve the resources of the parties, their counsel and the judiciary." Ex. 2 to Goldstein Decl.

As stated in Judicial Panel on Multidistrict Litigation Rule ("JPML") 1.5, this action is not stayed pending the MDL Panel's decision to decide whether to transfer the action. Hence, good cause exists to presently stay all proceedings because it will preserve judicial resources in this Court and avoid duplicative discovery that may be ordered by the MDL 1715 Court – or avoid the duplication of discovery that has already been ordered by the MDL 1715 Court. A copy of the JPML Rules are attached as Exhibit 3 to the Goldstein Decl.

Plaintiff only recently filed this lawsuit on January 4, 2008, and the case is not at issue due to pending motions to dismiss filed by Argent and by defendant Countrywide Home Loans ("Countrywide"). Plaintiff will not be prejudiced by a brief stay in this matter because he will be able to continue discovery in MDL 1715.

Alternatively, the Court may at least limit discovery in this matter pending the transfer of the case to the MDL, which relief will be sought in additional pleadings filed this week. As stated in the Jose Leal Declaration ("Leal Decl.") filed currently herewith, the Court's current discovery order may in practice require the production (and the concomitant compilation and review) of 56,328 loan files – none of which may involve the issues alleged by the Plaintiff in his

1    Complaint – and only 6 involve the independent mortgage broker on Plaintiff's subject loan – ND

2    Financial, Inc. dba Primestar Financial Services ("Primestar").    As will also be discussed in

3    additional pleadings to be filed by Argent this week, Argent will produce a copy of Plaintiff's

4    loan file and the Mortgage Broker Agreements between Argent and Primestar.    However, other

5    documents should not be produced pending the proposed transfer, or at all.

6    **II.    STATEMENT OF FACTS**

7    **A.    Background of the Marcelo Complaint**

8      As alleged, Plaintiff owns the real property located at 4023 Folsom Street in San

9    Francisco (the "Folsom Property").    *See* Cmplt., ¶¶ 25-26.    In February 2005, Plaintiff and

10   defendant Edwin Parada entered into discussions to refinance the Folsom Property.    *See id.* at

11   ¶ 28.    Apparently, a few months later, Plaintiff met with defendant Lorenzo Parada and signed

12   documents to refinance the Folsom Property through Argent.    *See id.* at ¶ 32.    With the proceeds

13   from the refinance transaction for the Folsom Property, Plaintiff purchased the real property

14   located at 274 Girard Street in San Francisco (the "Girard Property").    *See id.* at ¶¶ 33-34.

15     Allegedly, defendant Edwin Parada retained approximately $200,000 in loan proceeds

16   from the refinance of the Folsom Property and only provided approximately $9,000 of this

17   amount to Plaintiff.    *See id.* at ¶¶ 36-37.

18     Argent transferred the Marcelo loan to Countrywide which allegedly assumed all

19   liabilities for the loan.    *See id.* at ¶ 15.

20   **B.    This Court's Discovery Orders During the Hearing on the Preliminary
21   Injunction**

22     On February 26, 2008, this Court granted Plaintiff's motion for a preliminary injunction.

23   Argent did not attend the hearing because Argent had sold the Marcelo loan and had no interest in

24   the foreclosure.

       During the hearing, the Court ordered discovery with respect to Countrywide and
25
     Primestar.    Although none of the discovery orders were expressly directed to Argent, the spirit of
26
     the discovery orders impact Argent.    The Court made the following orders:
27

28

1    1)    The number of loans Countrywide acquired (either servicing or ownership rights)

2    that were originated by any of the following parties:   Argent, Edwin Parada, Glenda Parada,

3    Lorenzo Parada, Shoaib Mahmud, or Primestar;

4    2)    The relationship between Countrywide and the Paradas, Mahmud, or Argent;

5    3)    Emails, internal memos, investigation reports or other writings reflecting

6    Countrywide's knowledge that the Paradas and/or Argent were involved in "shady" lending

7    practices;

8    4)    Any documents that refers to the instant lawsuit;

9    5)    Any document that mentions the Paradas in any loan; and

10    6)    Any document that mentions Argent in any loan.

11    Responsive documents were ordered to be produced by March 21, 2008.  Depositions of

12    Countrywide were ordered to commence March 31, 2008.

13    **C.**    **Argent's Diligence in Attempting to Comply with the Court's Discovery Order**

14

15    After the preliminary injunction hearing, Argent became aware of the Court's discovery

16    order and promptly conducted an internal review to determine the scope of the number of loans

17    potentially impacted by the discovery order.

18    Argent has determined that as many as 56,325 loans that were funded by Argent have

19    been sold, assigned or had their servicing rights transferred to Countrywide.  *See* Leal Decl., ¶¶ 4-

20    5.  Of these 56,325 loans, only 6 loans involve the broker, Primestar – and these 6 loans do not

21    include the loan funded by Argent to Plaintiff since that particular loan was not sold to

22    Countrywide.  *See* Leal Decl., ¶ 7.

23    Pursuant to consumer privacy laws, including the Gramm-Leach-Blilely Act, 15 U.S.C. §§

24    6801, et seq. and California Code of Civil Procedure § 1985.3, Argent is required to notify each

25    of its customers about the release of their personal information <u>before</u> that information is

26    produced.  *See* Goldstein Decl., ¶ 9.

27

28

ARGENT'S EX PARTE APPL. FOR STAY OF PROCEEDINGS PENDING TRANSFER TO MDL 1715

1    **D.    The MDL Proceeding**

2        On or about July 1, 2005, plaintiffs in *Cheryl Williams and Duvall Naughton, et al. v.*

3  *Ameriquest Mortgage Company*, Civil Action No. 1-05-6189 (S.D.N.Y.), filed a Motion to

4  Transfer for Coordination and/or Consolidation Pursuant to 28 U.S.C. Section 1407 ("Transfer

5  Motion"), seeking transfer of their action and the following four other actions to the Central

6  District of California for coordinated or consolidated pretrial proceedings: *Burggraff, et al. v.*

7  *Ameriquest Capital Corporation, et al.*, Civil Action No. 2-04-9715 (C.D. Cal.); *Knox, et al. v.*

8  *Ameriquest Mortgage Company, et al.*, Civil Action No. 3-05-240 (N.D. Cal.); *Murphy, et al. v.*

9  *Ameriquest Mortgage Company*, Civil Action No. 1-04-12651 (D. Mass.); and *Latonya Williams,*

10  *et al. v. Ameriquest Mortgage Company*, Civil Action No. 8-05-1036 (M.D. Fla.).

11        On December 13, 2005, the Panel issued the Transfer Order transferring all five actions

12  identified in the Transfer Motion to the Transferee Court pursuant to 28 U.S.C. § 1407 for

13  coordinated or consolidated pretrial proceedings.

14        In the Transfer Order, the Panel held as follows:

15            [T]he Panel finds that these five actions involve common questions
            of fact, and that centralization under Section 1407 in the Northern
16            District of Illinois will serve the convenience of the parties and
            witnesses and promote the just and efficient conduct of this
17            litigation.    All five actions before the Panel concern allegedly
            predatory lending practices by Ameriquest Mortgage Co., or a
18            related entity, in soliciting and closing residential mortgage
            transactions; among other things, plaintiffs allege that Ameriquest
19            failed to disclose material terms and engaged in so-called bait-and-
            switch tactics.    Centralization under Section 1407 is necessary in
20            order to eliminate duplicative discovery; prevent inconsistent
            pretrial rulings, including those with respect to class certification;
21            and conserve the resources of the parties.  [pp. 1-2.]

22        The Panel has issued over 30 Conditional Transfer Orders, conditionally transferring

23  hundreds of actions against Defendants and other defendants to the Transferee Court for

24  coordinated or consolidated pretrial proceedings with those actions previously transferred

25  pursuant to the Transfer Order.

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

1      **E.      Status Of Discovery In MDL 1715**

2      As of June 4, 2007, the following documents had been produced in MDL 1715: a) more

3   than 56,380 pages of loan files in connection with 281 borrowers; b) more than 121,000 pages of

4   policy, procedure and training documents; and c) more than a dozen DVDs, CDs, videotapes and

5   audiotapes of training materials.  The amount of documents produced in MDL 1715 has increased

6   since June 4, 2007.  Discovery in MDL 1715 is currently temporarily stayed pending mediation

7   proceedings.  Goldstein Decl., ¶ 8 and Exhibit 6.

8      **F.      This Case Has Been Identified to MDL 1715 as a Tag Along Action**

9      On February 21, 2008, Argent identified this action as one suitable for transfer to MDL

10   1715.  Ex. 1 to Goldstein Decl.  On March 12, 2008, Argent filed its Notice of Pendency of Other

11   Action in this Court.  Similarly, Countrywide has filed a Notice of Filing Potential Tag Along

12   Action with this Court on March 13, 2008.

13   **III.   LEGAL ARGUMENTS AND AUTHORITIES**

14      **A.      This Court May Consider this Application for Stay on an Ex Parte Basis**

15      A district court has inherent power to control its docket, including staying an action

16   pending the decision from the MDL whether or not to transfer an action.  *See Purcell v. Merck &*

17   *Co.*, 2005 U.S. Dist. LEXIS 41239, *5 (S.D. Cal. 2005) (granting ex parte application to stay

18   proceedings pending MDL order to transfer).

19      Accordingly, this ex parte application for a stay is proper in form.

20      **B.      Based on Common Issues of Fact and Law, this Action Will Likely Be**
         **Transferred to MDL 1715**

21

22      Argent is required to seek removal of this lawsuit to MDL 1715 under the Rules of

23   Procedure of the Judicial Panel on Multidistrict Litigation.  Specifically, Rule 1.1 states that "[a]

24   'tag-along action' refers to a civil action pending in a district court and involving common

25   questions of fact with actions previously transferred under" 28 U.S.C. § 1407.  Under Rule 7.4,

26   the Clerk of the Panel may issue an order transferring tag-along actions to the previously

27   designated transferee court, *i.e.*, to MDL 1715.

28

1    As alleged in this action, Plaintiff seeks redress against Argent for the alleged violation of,

2    among other things:  (1) the Truth in Lending Act ("TILA"); (2) the Real Estate Settlement

3    Procedures Act ("RESPA"); (3) the Fair Housing Act; and (4) the Equal Credit Opportunity Act

4    ("ECOA").

5    These exact same claims are involved in MDL 1715.  One of the first cases to be

6    transferred to MDL 1715 was *Cheryl Williams v. Ameriquest Mortgage Co.*, 05-CV-6189, filed in

7    the Southern District of New York on or about July 1, 2005 (the "*Williams* Action").  The

8    complaint in the Williams Action alleges violations of TILA and ECOA against Ameriquest, a

9    sister company to Argent.  *See Williams* Complaint, Ex. 4 to Goldstein Decl.

10   Indeed, plaintiff's counsel in this action, Shirley Hochhausen, Esq., is counsel for

11   plaintiffs in another action pending in the MDL, *Knox v. Ameriquest Mortgage Co.*, C 05 00240

12   SC, filed in this Court on March 8, 2005 (the "*Knox* Action").  The *Knox* Action states claims

13   against Ameriquest <u>and Argent</u> for alleged violations of TILA, FHA, and the ECOA.  *See Knox*

14   Complaint, Ex. 5 to Goldstein Decl.

15   The claims alleged against Argent in this action are identical to the alleged claims that are

16   the heart and soul of MDL 1715 and, hence, this action is very likely to be transferred.

17   **C.    The Balance of Factors Favors the Issuance of a Stay**

18   This Court has broad discretion to issue a stay as part of its inherent power "to

19   control…its docket" in the interest of "economy of time and effort for itself, for counsel, and

20   litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

21   When considering whether to grant a stay pending a decision by the MDL Panel, courts

22   look to three factors to decide whether a stay is proper:  1) saving judicial resources by avoiding

23   duplicative litigation; 2) avoiding hardship and inequity to the moving party if the action is not

24   stayed; and 3) the potential prejudice to the opposing party. *See Rivers v. Walt Disney Co.,* 980 F.

25   Supp. 1358, 1360 (C.D. Cal. 1997).

26   All three factors are met here and a stay should be ordered.

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

ARGENT'S EX PARTE APPL. FOR STAY OF PROCEEDINGS PENDING TRANSFER TO MDL 1715

**1.    A stay conserves judicial resources**

The most important factor to determine whether a stay is appropriate is conservations of judicial resources.  As stated by the *Rivers* court, the court avoids "needlessly expending its energies familiarizing itself with the intricacies of a case…" that will be heard by another judge.  *See Rivers*, 980 F.Supp. 1360-61.    Second, efforts concerning case management will be eventually replicated by another court. *See id.* at 1361.

The concerns regarding economy and effort for the courts and litigants are particularly pronounced when the MDL Panel is considering transferring an action.  This is because a stay allows the main objectives of the MDL statutes to be met.  "The purpose of the [MDL] statute is to permit the centralization in one district of all pretrial proceedings in civil actions involving one or more common questions of fact pending in different districts."    *Aikins v. Microsoft Corporation*, 2000 U.S. Dist. LEXIS 4371, * 2 (E.D. La. 2000).   Further, the statute seeks to eliminate potential conflicting rulings by coordinating courts, eliminate duplication of discovery, reduce litigation costs, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.  *Id.*

Accordingly, as one district court in California has recognized, it is "often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL panel because of the judicial resources that are conserved." *Rivers,* 980 F. Supp. at 1362; *see also English v. Merck & Co.*, 2007 U.S. Dist. LEXIS 14493, *2-*3 (E.D. Cal. 2007) (holding that given the growing number of cases being transferred to the MDL proceedings, the interest of judicial economy favors staying this action pending its transfer to the MDL.).

**2.    The potential prejudice to Argent from denial of a stay far outweighs any potential prejudice to Plaintiff from grant of a stay**

Without a stay, Argent risks hardship, inconvenience, and substantial expense should the Plaintiff choose to pursue parallel discovery despite the availability of documents produced and depositions completed in the MDL – which discovery Plaintiff's counsel is clearly aware of as a result of the *Knox* Action. *See Aikins*, *supra*, 2000 U.S. Dist. LEXIS 4371 at * 2 (reasoning that stay pending MDL Panel decision was warranted because defendant "would suffer a considerable

1  hardship and inequity if forced to simultaneously litigate multiple suits in multiple courts" as well

2  as "potentially suffer conflicting rulings by different judges").

### 3. There is no potential prejudice to Plaintiff if the requested stay is granted

The third factor to be considered in deciding the propriety of a stay is whether there will be prejudice to the plaintiff. Here, Plaintiff will not be prejudiced. Mr. Marcelo has already obtained an injunction preventing the foreclosure of his home. Thus, no urgency exists to complete discovery. Indeed, Mr. Marcelo waited years to bring this action after he was allegedly injured. Moreover, counsel for Plaintiff was clearly aware of MDL 1715 and the similarities between the instant case and the *Knox* Action, but failed to inform this Court of a undisputedly related case.

In any event, the stay will be brief. The MDL Panel will soon consider the relevant transfer requests and a decision likely will issue promptly. Under similar circumstances, courts have repeatedly held that a brief delay causes no prejudice to the plaintiffs. *American Seafood, Inc. v. Magnolia Processing, Inc.*, 1992 WL 102762, *2 (E.D. Pa 1992) (holding that duplicative motion practice and discovery proceedings demonstrate that … prejudice to the defendants weighs heavily in favor of a stay.); *Tench v. Jackson Nat'l Life Ins. Co.*, 1999 WL 1044923, *2 (N.D. Ill. 1999) (holding that plaintiff would suffer no prejudice by "stay for only the limited period" until the MDL Panel ruled on the request to transfer); *Republic of Venezuela v. Phillip Morris Co., Inc.*, 1999 U.S. Dist. LEXIS 22742, *6 (S.D. Fla. 1999) (holding that the "brief stay" pending the MDL Panel's decision would not prejudice plaintiff); *Register v. Bayer Corp.*, 2002 WL 158513, *1 (E.D. La. 2002) (holding that plaintiff would not be prejudiced by a temporary stay until the MDL Panel's decision); *Portnoy v. Zenith Labs.*, 1987 WL 10236, *1 (D.D.C. 1987) (granting stay where plaintiffs would not be prejudiced by "a short-term stay" pending decision by MDL to transfer case).

### D. This Situation Is Distinguishable From *Falk v. General Motors Corp.*

Argent is aware that this Court denied a motion to stay pending a proposed transfer to a Multidistrict Litigation in the case of *Roy Falk, et al. v. General Motors Corp.*, 2007 U.S. Dist.

1   LEXIS 80864.  However, Argent proffers that the instant situation is distinguishable from the

2   *Falk* case and that the requested stay should be granted.

3   In *Falk*, the subject lawsuit was a class action that had been pending for approximately 6

4   months before this Court, discovery was already well in the process of being conducted and

5   substantial documents had already been produced by General Motors Corp.  This Court held that

6   the conserving judicial resources prong in the stay calculation was not satisfied in *Falk* because,

7   "Plaintiffs and defendants [had] scheduled depositions for the first week in November, and

8   defendant has produced a number of documents.  Bringing discovery to a halt at this time would

9   make little sense." *Falk*, 2007 U.S. Dist. LEXIS 80864, *7.

10  Here, in stark contrast to *Falk*, no discovery has yet to take place in this action, although

11  Argent acknowledges that the Court, *sua sponte,* has already made voluminous discovery orders

12  in this case.  Further, unlike in *Falk*, wherein the plaintiffs' case was the only one going forward,

13  MDL 1715 is active and ongoing and involves hundreds of other allegedly similar lawsuits.

14  Moreover, a massive document production has already taken place and will continue to take place

15  in MDL 1715.

16  There is also no prejudice to the Plaintiff here, as the Court found in *Falk,* where a motion

17  for class certification had to be filed by the plaintiffs in less than 2 months from the date of the

18  stay hearing.

19  First, this case is not even at-issue.  Argent's Motion To Dismiss will not even be heard

20  until April 10, 2008.  Second, Plaintiff has no pending motion deadlines in this case, let alone a

21  motion for class certification.  This is a single borrower case.  Third, counsel for Plaintiff was

22  clearly on notice that the allegations she proffered on behalf of Plaintiff mirrored the allegations

23  she raised in the *Knox* Action.  Plaintiff is deemed to have the knowledge of his agent attorney –

24  and that knowledge is the existence of MDL 1715 and the fact that this case must be transferred

25  there as a result of its similar allegations to the *Knox* Action.

26  **E.    A Stay of Broad Discovery is Appropriate**

27  Argent proffers that a broad stay of discovery is appropriate here for all of the reasons

28  stated herein.  However, if the Court decides not to stay all pretrial proceedings, the Court has the

1  discretion to limit its discovery order with respect to information relating to Mr. Marcelo's loan
2  only, as will be sought in further pleadings Argent intends to file this week.

3       Argent has taken steps to identify all of the relevant loans between it and Countrywide and
4  has winnowed out the loans that involve the broker at issue, Primestar. Argent can comply with
5  the Court's order in short order with respect to the Plaintiff's loan. Argent can comply with the
6  Court's order as to the 6 additional loans that were eventually sold to Countrywide involving
7  Primestar, but needs to provide these 6 loan customers with notice prior to disclosing their
8  nonpublic personal information. However, it will be extremely difficult (if not entirely
9  impossible) to timely comply with producing 56,325 loan files due to the sheer number of loans
10 involved and the fact that Argent would be required to violate the Gramm-Leach-Bliley Act, 15
11 U.S.C. §§ 6801, et seq., among other consumer privacy laws, in doing so without notice to its
12 loan customers.

13     **F.**    **If the Court Requires that the Request for Stay be Brought Via Noticed Motion, then Argent Requests that the Court Shorten the Time for Hearing on this Request**

15      This Court may consider Argent's request for a stay on an ex parte basis. *See Purcell,*
16 *supra,* 2005 U.S. Dist. LEXIS 41239 at *5. However, if the Court requires that this request for a
17 stay be brought by way of a noticed motion, then Argent requests an order shortening the time for
18 briefing and hearing on this issue.

19 **IV.**   **CONCLUSION**

20      Based on the foregoing, Argent respectfully requests that the Court grant this Motion and
21 issue a temporary stay of this entire action, or in the alternative, issue a temporary stay of
22 discovery, pending the MDL Panel's decision to transfer this lawsuit to MDL 1715.

23 DATED: March 18, 2008        BUCHALTER NEMER
24                     A Professional Corporation

25                   By:     /s/ Jason E. Goldstein
26                     JASON E. GOLDSTEIN
                     Attorneys for Defendant
27                     ARGENT MORTGAGE COMPANY, LLC

28

1

## PROOF OF SERVICE

2

3          I am employed in the County of Orange, State of California.  I am over the age of 18 and

4    not a party to the within action.  My business address is at BUCHALTER NEMER, A

5    Professional Corporation, 18400 Von Karman Avenue, Suite 800, Irvine, California  92612-0514.

6          On the date set forth below, I served the foregoing document described as:

7    **DFENDANT ARGENT MORTGAGE COMPANY'S EX PARTE
     APPLICATION FOR A STAY OF ALL PROCEEDINGS, OR DISCOVERY,**

8    **PENDING TRANSFER OF ACTION TO MDL 1715; OR, IN THE
     ALTERNATIVE, FOR AN ORDER SHORTENING TIME TO FILE AND**

9    **SERVE A MOTION FOR STAY;  MEMORANDUM OF POINTS AND
     AUTHORITIES IN SUPPORT**

10

11   on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof

12   in a sealed envelope as follows:

13   Shirley Hochhausen, Esq.
     2117-B University Avenue
14   East Palo Alto, California 94303

15

16

17
     ☐      **BY MAIL**    I am readily familiar with the business' practice for collection and processing
18   of correspondence for mailing with the United States Postal Service. The address(es) shown above
     is(are) the same as shown on the envelope.  The envelope was placed for deposit in the United
19   States Postal Service at Buchalter Nemer in Irvine, California on March 18, 2008.  The envelope
     was sealed and placed for collection and mailing with first-class prepaid postage on this date
20   following ordinary business practices.

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 1796382v1

*/2*

**PROOF OF SERVICE**

1

☐    **BY FACSIMILE AND MAIL**   I caused the above-named document(s) to be sent via
2   facsimile transmission to the law office(s) and facsimile number(s) stated above.  The
transmission was reported as complete and without error.   A copy of the transmission report(s)
3   properly issued by one or more of Buchalter, Nemer's three Xerox 745 WorkCenter facsimile
machine(s) [telephone number(s): (213) 896-0400, (213) 896-0411, (213) 896-0408], and (213)
4   896-0409 is(are) made a part of this proof of service pursuant to CRC §2008.  I am readily
familiar with the business' practice for collection and processing of correspondence for mailing
5   with the United States Postal Service.  The correspondence will be deposited in an envelope with
the United States Postal Service this day in the ordinary course of business for mailing to the
6   address(es) shown above.  The envelope was sealed and placed for collection and mailing with the
United States Postal Service at Buchalter Nemer in Irvine, California on March 18, 2008
7   following ordinary business practices.

8

☒    **BY OVERNIGHT DELIVERY**   On March 18, 2008, I placed the Federal
9   Express/Overnite Express package for overnight delivery in a box or location regularly
maintained by Federal Express/Overnite Express at my office, or I delivered the package to an
10   authorized courier or driver authorized by Federal Express/Overnite Express to receive
documents.  The package was placed in a sealed envelope or package designated by Federal
11   Express/Overnite Express with delivery fees paid or provided for, addressed to the person(s) on
whom it is to be served at the address(es) shown above, as last given by that person on any
12   document filed in the cause; otherwise at that party's place of residence.

13

14   ☐    **BY PERSONAL DELIVERY**   On March 18, 2008, I placed the above-referenced
envelope or package in a box or location regularly maintained at my office for our
15   messenger/courier service or I delivered the envelope or package to a courier or driver authorized
by our messenger/courier service to receive documents.  The package was placed in a sealed
16   envelope or package designated by our messenger/courier service with delivery fees paid or
provided for, addressed to the person(s) on whom it is to be personally served at the address(es)
17   shown above as last given by that person on any document filed in the cause.  The
messenger/courier service was provided with instructions that the envelope or package be
18   personally served on the addressee(s) by same day delivery (C.C.P. §1011).

19

20   ☐    I declare under penalty of perjury under the laws of the State of California that the

21   foregoing is true and correct to the best of my knowledge.  Executed on March 18, 2008, at

22   Irvine, California.

23   ☒    I declare that I am employed in the office of a member of the bar of this court at whose

24   direction the service was made.  Executed on March 18, 2008, at Irvine, California.

25

26   _____        _____
            Laura Urias                                    (Signature)

27

28