1  BUCHALTER NEMER
   A Professional Corporation
2  JASON E. GOLDSTEIN (SBN: 207481)
   DAVID M. LIU (SBN: 216311)
3  18400 Von Karman Avenue, Suite 800
   Irvine, California 92612-0514
4  Telephone: (949) 760-1121
   Facsimile: (949) 720-0182
5  *jgoldstein@buchalter.com*
   *dliu@buchalter.com*
6
   Attorneys for Defendant
7  ARGENT MORTGAGE COMPANY, LLC

8
                  UNITED STATES DISTRICT COURT
9
         NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION
10

11
   RICARDO MARCELOS,                          Case No.: CV 08-00056 WHA
12
                      Plaintiff,              DECLARATION OF JASON E. GOLDSTEIN
13                                            IN SUPPORT OF DEFENDANT ARGENT
          v.                                  MORTGAGE COMPANY'S EX PARTE
14                                            APPLICATION FOR A STAY OF ALL
   EDWIN MAURICIO PARADA                      PROCEEDINGS PENDING TRANSFER OF
15 DOMINGUEZ; GLENDA PARADA;                  ACTION TO MDL 1715
   LORENZO PARADA; VIKI RAAB;
16 COUNTRYWIDE HOME LOANS;                    [Concurrently filed with Ex Parte Application;
   ARGENT MORTGAGE COMPANY,                   and [Proposed] Order]
17 LLC; PRIMESTAR FINANCIAL
   SERVICES; SHOAIB MAHMUD;
18 FINANCIAL TITLE COMPANY; NEW
   CENTURY TITLE COMPANY;
19 RECONSTRUCT COMPANY, N.A.;
   AND DOES 1 THROUGH 100,
20
21                    Defendants.

22
                   __DECLARATION OF JASON E. GOLDSTEIN__
23
      I, Jason E. Goldstein, declare and state as follows:
24
      1.      I am an attorney duly licensed to practice before this court.  I am an associate with
25
   the law firm of Buchalter Nemer, a Professional Corporation, attorneys of record for defendant
26
   Argent Mortgage Company, LLC ("Argent").
27

28

BUCHALTER NEMER      BN 1815567v1                        1
A PROFESSIONAL CORPORATION
      IRVINE         GOLDSTEIN DECL. IN SUPPORT OF ARGENT'S EX PARTE APPL. FOR STAY OF PROCEEDINGS
                                  PENDING TRANSFER TO MDL 1715

1    2.    Except where otherwise indicated, the following facts are true of my own, personal

2    knowledge, and if called upon to do so, I could and would competently testify to the truth thereof.

3    3.    Attached as Exhibit 1 is a true and correct copy of a letter dated February 21, 2008

4    to the Judicial Panel on Multidistrict Litigation ("JPML") identifying this action as a potential

5    tag-along case to *Ameriquest Mortgage Company Lending Practices Litigation*, Case No. 1:05-

6    CV-07097 ("MDL 1715"), pending in the United States District Court for the Northern District of

7    Illinois.

8    4.    Attached as Exhibit 2 is a true and correct copy of the Transfer Order for MDL

9    1715, dated December 13, 2005.

10    5.    Attached as Exhibit 3 is a true and correct copy of the JPML Rules of Procedure.

11    6.    Attached as Exhibit 4 is a true and correct copy of the complaint filed in *Cheryl*

12    *Williams v. Ameriquest Mortgage Co.*, 05-CV-6189, filed in the Southern District of New York

13    on or about July 1, 2005.

14    7.    Attached as Exhibit 5 is a true and correct copy of the first amended complaint

15    filed in *Knox v. Ameriquest Mortgage Co.*, C 05 00240 SC, filed in this Court on March 8, 2005

16    (the "*Knox* Action").

17    8.    Attached as Exhibit 6 is a true and correct copy of a June 4, 2007 Defendants'

18    Status Report with respect to MDL 1715 which reports that, at that time, the following documents

19    had been produced in MDL 1715: a) more than 56,380 pages of loan files in connection with 281

20    borrowers; b) more than 121,000 pages of policy, procedure and training documents; c) and more

21    than a dozen DVDs, CDs, videotapes and audiotapes of training materials.  The amount of

22    documents produced in MDL 1715 has increased since June 4, 2007.  Discovery in MDL 1715 is

23    currently temporarily stayed pending mediation proceedings.

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 1815567v1                                2

GOLDSTEIN DECL. IN SUPPORT OF ARGENT'S EX PARTE APPL. FOR STAY OF PROCEEDINGS
PENDING TRANSFER TO MDL 1715

9.     Pursuant to consumer privacy laws, including the Gramm-Leach Blilely Act, 15 U.S.C. §§ 6801, et seq., and California *Code of Civil Procedure* § 1985.3, Argent is required to notify each of its customers about the release of their personal information <u>before</u> that information is produced.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of March 2008, at Irvine, California.


            /s/ Jason E. Goldstein
            Jason E. Goldstein

GOLDSTEIN DECL. IN SUPPORT OF ARGENT'S EX PARTE APPL. FOR STAY OF PROCEEDINGS
PENDING TRANSFER TO MDL 1715

**EXHIBIT 1**

# BuchalterNemer
A Professional Law Corporation

1000 WILSHIRE BOULEVARD, SUITE 1500, LOS ANGELES, CALIFORNIA 90017-2457
TELEPHONE (213) 891-0700 / FAX (213) 896-0400

File Number: L7526.0683
Direct Dial Number: (213) 891-5230
Direct Facsimile Number: (213) 630-5715
E-Mail Address: *blesage@buchalter.com*

February 21, 2008

**VIA FEDERAL EXPRESS**

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, N.E.
Room G-255, North Lobby
Washington, D.C. 20002-8004

      Re:    *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation*
           **MDL Docket No. 1715**

Dear Clerk of the Panel:

      This letter supplements Ameriquest Mortgage Company's ("Ameriquest") January 23, 2006, February 10, 2006, March 10, 2006, March 23, 2006, April 4, 2006, April 13, 2006, April 27, 2006, June 2, 2006, June 6, 2006, June 30, 2006, July 12, 2006, July 21, 2006, August 1, 2006, August 17, 2006, September 6, 2006, September 12, 2006, September 26, 2006, October 17, 2006, November 6, 2006, November 10, 2006, December 1, 2006, December 7, 2006, January 9, 2007, February 6, 2007, February 23, 2007, March 27, 2007, April 4, 2007, April 13, 2007, April 16, 2007, May 16, 2007, June 5, 2007, July 2, 2007, July 27, 2007, August 6, 2007, August 20, 2007, September 7, 2007, September 27, 2007, October 16, 2007, October 30, 2007, November 20, 2007, December 10, 2007, December 18, 2007, January 7, 2008 and January 10, 2008 letters, which identified five hundred and sixteen (516) potential "Tag Along" actions.

      By way of background, on or about December 13, 2005, the Judicial Panel on Multidistrict Litigation (the "Panel") issued a Transfer Order, pursuant to which it granted the motion to transfer pursuant to 28 U.S.C. § 1407 (the "Motion") filed by plaintiffs in *Cheryl Williams and Duvall Naughton v. Ameriquest Mortgage Company*, Case No. 05-CV-6189 (S.D. N.Y.) ("*Williams*"). The Panel therefore ordered each identified action in the Motion transferred to the United States District Court for the Northern District of Illinois, The Honorable Marvin E. Aspen presiding (the "Transferee Court"), for pretrial proceedings.

      Ameriquest opposed the Motion, and by this letter, reconfirms that it does not waive, but rather expressly preserves (for all purposes, including any appeals), all arguments raised in opposition to the Motion and all objections to the Transfer Order. These arguments and objections include, without limitation, those based on Federal and State Constitutional grounds, including but not limited to Due Process and Equal Protection under the law.

Page 4

Exhibit 1

## Buchalter Nemer

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
February 21, 2008
Page 2


Nevertheless, pursuant to Rules 1.1, 7.4 and 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Rules") Ameriquest is compelled to identify the following actions as potential "Tag Along" actions as such actions are defined by the Rules.

Also pursuant to the Rules, a copy of the potential "Tag Along" complaints are enclosed herewith in a folder labeled with the corresponding case name and action number for your convenience.

| DISTRICT DIV./CIVIL ACTION NO. | CASE NAME |
|---|---|
| **ALABAMA** | |
| United States District Court for the Southern District of Alabama, Case No. 08-CV-00044 | *Pittman, et al. v. Ameriquest Mortgage Company, Inc.* |
| **CALIFORNIA** | |
| United States District Court for the Northern District of California, Case No. 08-CV-00056 | *Marcelos v. Dominguez, et al.* |
| **ILLINOIS** | |
| United States District Court for the Northern District of Illinois, Case No. 08-CV-00258 | *Jagoe, et al. v. Ameriquest Mortgage Company, et al.* |
| **MASSACHUSETTS** | |
| United States District Court for the District of Massachusetts, Case No. 07-CV-12149 | *Blume, et al. v.Ameriquest Mortgage Company, et al.* |
| **MICHIGAN** | |
| United States District Court for the Eastern District of Michigan, Case No. 08-CV-10371 | *Hess, et al. v. Ameriquest Mortgage Company, et al.* |
| **OHIO** | |
| United States District Court for the Southern District of Ohio, Case No. 08-CV-00105 | *Gordon v. Deutsche Bank National Trust Company, et al.* |
| **NEW HAMPSHIRE** | |
| United States District Court for the District of New Hampshire, Case No. 08-00004 | *Dunn, et al. v. Deutsche National Trust Company, et al.* |

Page ___5___ Exhibit ___

Buchalter Nemer

Clerk of the Panel
Judicial Panel on Multidistrict Litigation
February 21, 2008
Page 3

| PENNSYLVANIA | |
| --- | --- |
| United States District Court for the Eastern District of Pennsylvania, Case No. 07-CV-05413 | *Buskovitz, et al. v. Ameriquest Mortgage Co., et al.* |
| United States District Court for the Eastern District of Pennsylvania, Case No. 08-CV-00364 | *DiMarzio, et al. v. Wells Fargo Bank, N.A., et al.* |
| **RHODE ISLAND** | |
| United States District Court for the District of Rhode Island, Case No. 08-CV-00023 | *Beauregard, et al. v. Ameriquest Mortgage Company* |

      Ameriquest is continuing to locate additional potential "Tag Along" actions and anticipates a further supplemental designation. As always, please feel free to contact me with any questions.

             Very truly yours,

             BUCHALTER NEMER
             A Professional Corporation

             By                
                  Bernard LeSage

EXHIBIT 2

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

DEC 1 3 2005

FILED
CLERK'S OFFICE

*RELEASED FOR PUBLICATION*

*DOCKET NO. 1715*

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, D. LOWELL JENSEN, J. FREDERICK MOTZ, ROBERT L. MILLER, JR., KATHRYN H. VRATIL AND DAVID R. HANSEN, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation currently consists of one action each in the Central District of California, Northern District of California, Middle District of Florida, District of Massachusetts and Southern District of New York as listed on the attached Schedule A.[1] Before the Panel is a motion, pursuant to 28 U.S.C. § 1407, brought by plaintiffs in the Southern District of New York action for coordinated or consolidated pretrial proceedings of these actions in the Central District of California. No plaintiff opposes the motion. Plaintiff in the Central District of California action initially opposed, but now supports, the motion for transfer to that district, along with plaintiffs in a potential tag-along action pending there.[2] Plaintiffs in the Northern District of California action support the motion; if the Panel does not order centralization in the Central District of California, these plaintiffs support transfer to any centrally located district with the resources to handle this litigation. Defendants Ameriquest Mortgage Co., Ameriquest Capital Corp. and Argent Mortgage Co. (collectively Ameriquest) oppose the motion.

On the basis of the papers filed and hearing session held, the Panel finds that these five actions involve common questions of fact, and that centralization under Section 1407 in the Northern District of Illinois will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All five actions before the Panel concern allegedly predatory lending practices by Ameriquest Mortgage Co., or a related entity, in soliciting and closing residential mortgage

---

[1] Four additional actions are pending two apiece in the Central District of California and Northern District of Illinois, and one related action each is in the Middle District of Florida and District of Minnesota. These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

[2] Plaintiffs in one Northern District of Illinois related action initially opposed the motion as well, but withdrew their response because moving plaintiffs submitted a pleading expressly stating that they do not seek transfer of that action.

# OFFICIAL FILE COPY

IMAGED DEC 1 3 2005

Page ____7____    Exhibit ____2____



- 2 -

transactions; among other things, plaintiffs allege that Ameriquest failed to disclose material terms and engaged in so-called bait-and-switch tactics. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, including those with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary.

Ameriquest opposes the motion, in part, because plaintiffs seek redress under different legal theories and purport to represent varying putative classes. We find these contentions unpersuasive. Transfer under Section 1407 does not require a complete identity, or even majority, of common factual issues as a prerequisite to transfer and has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that allows discovery with respect to any individual issues to proceed concurrently with discovery on common issues. *See, e.g., In re Insurance Brokerage Antitrust Litigation*, 360 F.Supp. 2d 1371 (J.P.M.L. 2005). Indeed, the transferee court can employ any number of pretrial techniques, such as establishing separate discovery and/or motion tracks, to manage this litigation efficiently and to ensure that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions.

As suggested by the moving plaintiffs, the Panel initially considered transferring this litigation to the Central District of California; however, the judge assigned to the constituent action pending in that district expressed reluctance in light of her current caseload. The Panel has thus determined that the Northern District of Illinois is an appropriate transferee district for this litigation. Two actions involving the lending practices of Ameriquest are pending in this district. Also, this geographically central district will be a convenient location for a litigation already nationwide in scope.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A are transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable Marvin E. Aspen for coordinated or consolidated pretrial proceedings in that district.

FOR THE PANEL:

_Wm. Terrell Hodges_

Wm. Terrell Hodges
Chairman

# SCHEDULE A

MDL-1715 -- In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation

### Central District of California

*Adolph Peter Kurt Burggraff v. Ameriquest Capital Corp., et al.*, C.A. No. 2:04-9715

### Northern District of California

*Nona Knox, et al. v. Ameriquest Mortgage Co., et al.*, C.A. No. 3:05-240

### Middle District of Florida

*Latonya Williams, et al. v. Ameriquest Mortgage Co.*, C.A. No. 8:05-1036

### District of Massachusetts

*Isabelle M. Murphy, et al. v. Ameriquest Mortgage Co.*, C.A. No. 1:04-12651

### Southern District of New York

*Cheryl Williams, et al. v. Ameriquest Mortgage Co.*, C.A. No. 1:05-6189

Page ___9___    Exhibit ___2___

EXHIBIT 3



JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

April 2, 2001

MICHAEL J. BECK
CLERK OF THE PANEL

*Effective   November   2,   1998,
With     Amendments      Effective
June 1, 2000,  &  April 2, 2001*

RULES OF PROCEDURE
OF THE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

TABLE OF CONTENTS

I.  GENERAL RULES/RULES FOR MULTIDISTRICT LITIGATION
UNDER 28 U.S.C. §1407

Rule 1.1:      Definitions
Rule 1.2:      Practice
Rule 1.3:      Failure to Comply with Rules
Rule 1.4:      Admission to Practice Before the Panel and Representation in Transferred Actions
Rule 1.5:      Effect of the Pendency of an Action Before the Panel
Rule 1.6:      Transfer of Files
Rule 5.1:      Keeping Records and Files
Rule 5.11:     Place of Filing of Papers
Rule 5.12:     Manner of Filing Papers
Rule 5.13:     Filing of Papers: Computer Generated Disk Required
Rule 5.2:      Service of Papers Filed
Rule 5.3:      Corporate Disclosure Statement
Rule 6.2:      Applications for Extensions of Time
Rule 7.1:      Form of Papers Filed
Rule 7.2:      Motion Practice
Rule 7.3:      Show Cause Orders
Rule 7.4:      Conditional Transfer Orders for "Tag-Along Actions"
Rule 7.5:      Miscellaneous Provisions Concerning "Tag-Along Actions"
Rule 7.6:      Termination and Remand
Rule 16.1:     Hearing Sessions and Oral Argument

II.  RULES FOR MULTICIRCUIT PETITIONS FOR REVIEW
UNDER 28 U.S.C. §2112(a)(3)

Rule 17.1:     Random Selection
Rule 25.1:     Filing of Notices
Rule 25.2:     Accompaniments to Notices
Rule 25.3:     Service of Notices
Rule 25.4:     Form of Notices
Rule 25.5:     Service of Panel Consolidation Order

Page        10                    3

CONVERSION TABLE

- 2 -

RULES OF PROCEDURE
OF THE
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## I. GENERAL RULES/RULES FOR MULTIDISTRICT LITIGATION UNDER 28 U.S.C. §1407

**RULE 1.1:    DEFINITIONS**

As used in these Rules "Panel" means the members of the Judicial Panel on Multidistrict Litigation appointed by the Chief Justice of the United States pursuant to Section 1407, Title 28, United States Code.

"Clerk of the Panel" means the official appointed by the Panel to act as Clerk of the Panel and shall include those deputized by the Clerk of the Panel to perform or assist in the performance of the duties of the Clerk of the Panel.

"Chairman" means the Chairman of the Judicial Panel on Multidistrict Litigation appointed by the Chief Justice of the United States pursuant to Section 1407, or the member of the Panel designated by the Panel to act as Chairman in the absence or inability of the appointed Chairman.

A "tag-along action" refers to a civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407.

**RULE 1.2:    PRACTICE**

Where not fixed by statute or rule, the practice shall be that heretofore customarily followed by the Panel.

**RULE 1.3:    FAILURE TO COMPLY WITH RULES**

The Clerk of the Panel may, when a paper submitted for filing is not in compliance with the provisions of these Rules, advise counsel of the deficiencies and a date for full compliance. If full compliance is not accomplished within the established time, the non-complying paper shall nonetheless be filed by the Clerk of the Panel but it may be stricken by order of the Chairman of the Panel.

**RULE 1.4:    ADMISSION TO PRACTICE BEFORE THE PANEL AND REPRESENTATION IN TRANSFERRED ACTIONS**

Every member in good standing of the Bar of any district court of the United States is entitled without condition to practice before the Judicial Panel on Multidistrict Litigation. Any attorney of record in any action

transferred under Section 1407 may continue to represent his or her client in any district court of the United States to which such action is transferred. Parties to any action transferred under Section 1407 are not required to obtain local counsel in the district to which such action is transferred.

RULE 1.5:    EFFECT OF THE PENDENCY OF AN ACTION BEFORE THE PANEL

The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. §1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court. A transfer or remand pursuant to 28 U.S.C. §1407 shall be effective when the transfer or remand order is filed in the office of the clerk of the district court of the transferee district.

RULE 1.6:    TRANSFER OF FILES

(a)    Upon receipt of a certified copy of a transfer order from the clerk of the transferee district court, the clerk of the transferor district court shall forward to the clerk of the transferee district court the complete original file and a certified copy of the docket sheet for each transferred action.

(b)    If an appeal is pending, or a notice of appeal has been filed, or leave to appeal has been sought under 28 U.S.C. §1292(b) or a petition for an extraordinary writ is pending, in any action included in an order of transfer under 28 U.S.C. §1407, and the original file or parts thereof have been forwarded to the court of appeals, the clerk of the transferor district court shall notify the clerk of the court of appeals of the order of transfer and secure the original file long enough to prepare and transmit to the clerk of the transferee district court a certified copy of all papers contained in the original file and a certified copy of the docket sheet.

(c)    If the transfer order provides for the separation and simultaneous remand of any claim, cross-claim, counterclaim, or third-party claim, the clerk of the transferor district court shall retain the original file and shall prepare and transmit to the clerk of the transferee district court a certified copy of the docket sheet and copies of all papers except those relating exclusively to separated and remanded claims.

(d)    Upon receipt of an order to remand from the Clerk of the Panel, the transferee district court shall prepare and send to the clerk of the transferor district court the following:

     (i)    a certified copy of the individual docket sheet for each action being remanded;

     (ii)   a certified copy of the master docket sheet, if applicable;

     (iii)  the entire file for each action being remanded, as originally received from the transferor district court and augmented as set out in this rule;

     (iv)  a certified copy of the final pretrial order, if applicable; and

     (v)   a "record on remand" to be composed of those parts of the files and records produced during coordinated or consolidated pretrial proceedings which have been stipulated to or designated by counsel as being necessary for any or all proceedings to be conducted following remand. It shall be the responsibility of counsel originally preparing or filing any document to be included in the "record on remand" to furnish on request sufficient copies to the clerk of the transferee district court.

(e)     The Clerk of the Panel shall be notified when any files have been transmitted pursuant to this Rule.

RULE 5.1:     KEEPING RECORDS AND FILES

(a)     The records and files of the Panel shall be kept by the Clerk of the Panel at the offices of the Panel. Records and files may be temporarily or permanently removed to such places at such times as the Panel or the Chairman of the Panel shall direct. The Clerk of the Panel may charge fees, as prescribed by the Judicial Conference of the United States, for duplicating records and files. Records and files may be transferred whenever appropriate to the Federal Records Center.

(b)     In order to assist the Panel in carrying out its functions, the Clerk of the Panel shall obtain the complaints and docket sheets in all actions under consideration for transfer under 28 U.S.C. §1407 from the clerk of each district court wherein such actions are pending. The Clerk of the Panel shall similarly obtain any other pleadings and orders that could affect the Panel's decision under 28 U.S.C. §1407.

RULE 5.11:     PLACE OF FILING OF PAPERS

All papers for consideration by the Panel shall be submitted for filing to the Clerk of the Panel by mailing or delivering to:

> Clerk of the Panel
> Judicial Panel on Multidistrict Litigation
> Thurgood Marshall Federal Judiciary Building
> One Columbus Circle, N.E., Room G-255, North Lobby
> Washington, D.C. 20002-8004

No papers shall be left with or mailed to a Judge of the Panel.

RULE 5.12:     MANNER OF FILING OF PAPERS

(a)     An original of the following papers shall be submitted for filing to the Clerk of the Panel: a proof of service pursuant to Rule 5.2(a) and (b) of these Rules, a notice of appearance pursuant to Rule 5.2(c) and (d) of these Rules, a corporate disclosure statement pursuant to Rule 5.3 of these Rules, a status notice pursuant to Rules 7.2(f), 7.3(e) and 7.4(b) of these Rules, a notice of opposition pursuant to Rules 7.4(c) and 7.6(f)(ii) of these Rules, a notice of related action pursuant to Rules 7.2(i), 7.3(a) and 7.5(e) of these Rules, an application for extension of time pursuant to Rule 6.2 of these Rules, or a notice of presentation or waiver of oral argument pursuant to Rule 16.1(d) of these Rules. An original and eleven copies of all other papers shall be submitted for filing to the Clerk of the Panel. The Clerk of the Panel may require that additional copies also be submitted for filing.

(b)     When papers are submitted for filing, the Clerk of the Panel shall endorse thereon the date for filing.

(c)      Copies of motions for transfer of an action or actions pursuant to 28 U.S.C. § 1407 shall be filed in each district court in which an action is pending that will be affected by the motion. Copies of a motion for remand pursuant to 28 U.S.C. § 1407 shall be filed in the Section 1407 transferee district court in which any action affected by the motion is pending.

(d)      Papers requiring only an original may be faxed to the Panel office with prior approval of the Clerk of the Panel. No papers requiring multiple copies shall be accepted via fax.

RULE 5.13:      FILING OF PAPERS: COMPUTER GENERATED DISK REQUIRED

(a)      Whenever an original paper and eleven copies is required to be submitted for filing to the Clerk of the Panel pursuant to Rule 5.12(a) of these Rules, and where a party is represented by counsel, one copy of that paper must also be submitted on a computer readable disk and shall be filed at the time the party's paper is filed. The disk shall contain the entire paper exclusive of computer non-generated exhibits. The label of the disk shall include i) "MDL #___," ii) an abbreviated version of the MDL descriptive title, or other appropriate descriptive title, if not yet designated by the Panel, iii) the identity of the type of paper being filed (i.e. motion, response, reply, etc.), iv) the name of the counsel who signed the paper, and v) the first named represented party on the paper.

(b)      The paper must be on a 3 ½ inch disk in WordPerfect for Windows format.

(c)      One copy of the disk may be served on each party separately represented by counsel. If a party chooses to serve a copy of the disk, the proof of service, as required by Rule 5.2 of these Rules, must indicate service of the paper in both paper and electronic format.

(d)      A party may be relieved from the requirements of this Rule by submitting a written application for a waiver, in a timely manner in advance of submission of the paper, certifying that compliance with the Rule would impose undue hardship, that the text of the paper is not available on disk, or that other unusual circumstances preclude compliance with this Rule. The requirements of this Rule shall not apply to parties appearing pro se. Papers embraced by this Rule and submitted by counsel after June 1, 2000 without a computer disk copy or Panel-approved waiver of the requirements of this Rule shall be governed by Rule 1.3 of these Rules.

RULE 5.2:      SERVICE OF PAPERS FILED

(a)      All papers filed with the Clerk of the Panel shall be accompanied by proof of previous or simultaneous service on all other parties in all actions involved in the litigation. Service and proof of service shall be made as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure. The proof of service shall indicate the name and complete address of each person served and shall indicate the party represented by each. If a party is not represented by counsel, the proof of service shall indicate the name of the party and the party's last known address. The proof of service shall indicate why any person named as a party in a constituent complaint was not served with the Section 1407 pleading. The original proof of service shall be filed with the Clerk of the Panel and copies thereof shall be sent to each person included within the proof of service. After the "Panel Service List" described in subsection (d) of this Rule has been received from the Clerk of the Panel, the "Panel Service List" shall be utilized for service of responses to motions and all other filings. In such

- 6 -

instances, the "Panel Service List" shall be attached to the proof of service and shall be supplemented in the proof of service in the event of the presence of additional parties or subsequent corrections relating to any party, counsel or address already on the "Panel Service List."

      (b)    The proof of service pertaining to motions for transfer of actions pursuant to 28 U.S.C. §1407 shall certify that copies of the motions have been mailed or otherwise delivered for filing to the clerk of each district court in which an action is pending that will be affected by the motion. The proof of service pertaining to a motion for remand pursuant to 28 U.S.C. §1407 shall certify that a copy of the motion has been mailed or otherwise delivered for filing to the clerk of the Section 1407 transferee district court in which any action affected by the motion is pending.

      (c)    Within eleven days of filing of a motion to transfer, an order to show cause or a conditional transfer order, each party or designated attorney shall notify the Clerk of the Panel, in writing, of the name and address of the attorney designated to receive service of all pleadings, notices, orders and other papers relating to practice before the Judicial Panel on Multidistrict Litigation. Only one attorney shall be designated for each party. Any party not represented by counsel shall be served by mailing such pleadings to the party's last known address. Requests for an extension of time to file the designation of attorney shall not be granted except in extraordinary circumstances.

      (d)    In order to facilitate compliance with subsection (a) of this Rule, the Clerk of the Panel shall prepare and serve on all counsel and parties not represented by counsel, a "Panel Service List" containing the names and addresses of the designated attorneys and the party or parties they represent in the actions under consideration by the Panel and the names and addresses of the parties not represented by counsel in the actions under consideration by the Panel. After the "Panel Service List" has been received from the Clerk of the Panel, notice of subsequent corrections relating to any party, counsel or address on the "Panel Service List" shall be served on all other parties in all actions involved in the litigation.

      (e)    If following transfer of any group of multidistrict litigation, the transferee district court appoints liaison counsel, this Rule shall be satisfied by serving each party in each affected action and all liaison counsel. Liaison counsel designated by the transferee district court shall receive copies of all Panel orders concerning their particular litigation and shall be responsible for distribution to the parties for whom he or she serves as liaison counsel.

RULE 5.3:   CORPORATE DISCLOSURE STATEMENT

      (a)    Any nongovernmental corporate party to a matter before the Panel shall file a statement identifying all its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

      (b)    A party shall file the corporate disclosure statement within eleven days of the filing of a motion to transfer or remand, an order to show cause, or a motion to vacate a conditional transfer order or a conditional remand order.

(c)     Once a corporate disclosure statement by a party has been filed in an MDL docket pursuant to subsection (b) of this Rule, such a party is required to update the statement to reflect any change in the information therein i) until the matter before the Panel is decided, and ii) within eleven days of the filing of any subsequent motion to transfer or remand, order to show cause, or motion to vacate a conditional transfer order or a conditional remand order in that docket.

RULE 6.2:    APPLICATIONS FOR EXTENSIONS OF TIME

Any application for an extension of time to file a pleading or perform an act required by these Rules must be in writing, must request a specific number of additional days and may be acted upon by the Clerk of the Panel. Such an application will be evaluated in relation to the impact on the Panel's calendar as well as on the basis of the reasons set forth in support of the application. Any party aggrieved by the Clerk of the Panel's action on such application may submit its objections to the Panel for consideration. Absent exceptional circumstances, no extensions of time shall be granted to file a notice of opposition to either a conditional transfer order or a conditional remand order. All applications for extensions of time shall be filed and served in conformity with Rules 5.12, 5.2 and 7.1 of these Rules.

RULE 7.1:    FORM OF PAPERS FILED

(a)     Averments in any motion seeking action by the Panel shall be made in numbered paragraphs, each of which shall be limited, as far as practicable, to a statement of a single factual averment.

(b)     Responses to averments in motions shall be made in numbered paragraphs, each of which shall correspond to the number of the paragraph of the motion to which the responsive paragraph is directed. Each responsive paragraph shall admit or deny wholly or in part the averment of the motion, and shall contain the respondent's version of the subject matter when the averment or the motion is not wholly admitted.

(c)     Each pleading filed shall be:
    (i)      flat and unfolded;
    (ii)     plainly written, typed in double space, printed or prepared by means of a duplicating process, without erasures or interlineations which materially deface it;
    (iii)    on opaque, unglazed, white paper (not onionskin);
    (iv)     approximately 8-1/2 x 11 inches in size; and
    (v)      fastened at the top-left corner without side binding or front or back covers.

(d)     The heading on the first page of each pleading shall commence not less than three inches from the top of the page. Each pleading shall bear the heading "Before the Judicial Panel on Multidistrict Litigation," the identification "MDL Docket No.___" and the descriptive title designated by the Panel for the litigation involved. If the Panel has not yet designated a title, an appropriate descriptive title shall be used.

(e)     The final page of each pleading shall contain the name, address and telephone number of the attorney or party in active charge of the case. Each attorney shall also include the name of each party represented.

- 8 -

(f)    Except with the approval of the Panel, each brief submitted for filing with the Panel shall be limited to twenty pages, exclusive of exhibits. Absent exceptional circumstances, motions to exceed page limits shall not be granted.

(g)    Exhibits exceeding a cumulative total of 50 pages shall be fastened separately from the accompanying pleading.

(h)    Proposed Panel orders shall not be submitted with papers for filing.

RULE 7.2:    MOTION PRACTICE

(a)    All requests for action by the Panel under 28 U.S.C. §1407 shall be made by written motion. Every motion shall be accompanied by:

    (i)    a brief in support thereof in which the background of the litigation and factual and legal contentions of the movant shall be concisely stated in separate portions of the brief with citation of applicable authorities; and

    (ii)    a schedule giving

        (A)    the complete name of each action involved, listing the full name of each party included as such on the district court's docket sheet, not shortened by the use of references such as "et al." or "etc.";

        (B)    the district court and division in which each action is pending;

        (C)    the civil action number of each action; and

        (D)    the name of the judge assigned each action, if known.

(b)    The Clerk of the Panel shall notify recipients of a motion of the filing date, caption, MDL docket number, briefing schedule and pertinent Panel policies.

(c)    Within twenty days after filing of a motion, all other parties shall file a response thereto. Failure of a party to respond to a motion shall be treated as that party's acquiescence to the action requested in the motion.

(d)    The movant may, within five days after the lapse of the time period for filing responsive briefs, file a single brief in reply to any opposition.

(e)    Motions, their accompaniments, responses, and replies shall also be governed by Rules 5.12, 5.2 and 7.1 of these Rules.

(f)    With respect to any action that is the subject of Panel consideration, counsel shall promptly notify the Clerk of the Panel of any development that would partially or completely moot the matter before the Panel.

(g)    A joinder in a motion shall not add any action to the previous motion.

(h)    Once a motion is filed, any other pleading that purports to be a "motion" in the docket shall be filed by the Clerk of the Panel as a response unless the "motion" adds an action. The Clerk of the Panel, upon

designating such a pleading as a motion, shall acknowledge that designation by the distribution of a briefing schedule to all parties in the docket. Response time resulting from an additional motion shall ordinarily be extended only to those parties directly affected by the additional motion. An accelerated briefing schedule for the additional motion may be set by the Clerk of the Panel to conform with the hearing session schedule established by the Chairman.

(i)    Any party or counsel in a new group of actions under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential tag-along action in which that party is also named or in which that counsel appears.

RULE 7.3:    SHOW CAUSE ORDERS

(a)    When transfer of multidistrict litigation is being considered on the initiative of the Panel pursuant to 28 U.S.C. §1407(c)(i), an order shall be filed by the Clerk of the Panel directing the parties to show cause why the action or actions should not be transferred for coordinated or consolidated pretrial proceedings. Any party or counsel in such actions shall promptly notify the Clerk of the Panel of any other federal district court actions related to the litigation encompassed by the show cause order. Such notification shall be made for additional actions pending at the time of the issuance of the show cause order and whenever new actions are filed.

(b)    Any party may file a response to the show cause order within twenty days of the filing of said order unless otherwise provided for in the order. Failure of a party to respond to a show cause order shall be treated as that party's acquiescence to the Panel action contemplated in the order.

(c)    Within five days after the lapse of the time period for filing a response, any party may file a reply limited to new matters.

(d)    Responses and replies shall be filed and served in conformity with Rules 5.12, 5.2 and 7.1 of these Rules.

(e)    With respect to any action that is the subject of Panel consideration, counsel shall promptly notify the Clerk of the Panel of any development that would partially or completely moot the matter before the Panel.

RULE 7.4:    CONDITIONAL TRANSFER ORDERS FOR "TAG-ALONG ACTIONS"

(a)    Upon learning of the pendency of a potential "tag-along action," as defined in Rule 1.1 of these Rules, an order may be entered by the Clerk of the Panel transferring that action to the previously designated transferee district court on the basis of the prior hearing session(s) and for the reasons expressed in previous opinions and orders of the Panel in the litigation. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose transfer, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

(b)    Parties to an action subject to a conditional transfer order shall notify the Clerk of the Panel within the fifteen-day period if that action is no longer pending in its transferor district court.

(c)     Any party opposing the transfer shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period.  If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel.  The Clerk of the Panel shall notify the parties of the briefing schedule.

(d)     Within fifteen days of the filing of its notice of opposition, the party opposing transfer shall file a motion to vacate the conditional transfer order and brief in support thereof.  The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel.  Failure to file and serve a motion and brief shall be treated as withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

(e)     Conditional transfer orders do not become effective unless and until they are filed with the clerk of the transferee district court.

(f)     Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

RULE 7.5:     MISCELLANEOUS PROVISIONS CONCERNING "TAG-ALONG ACTIONS"

(a)     Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to the Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

(b)     Upon learning of the pendency of a potential "tag-along action" and having reasonable anticipation of opposition to transfer of that action, the Panel may direct the Clerk of the Panel to file a show cause order, in accordance with Rule 7.3 of these Rules, instead of a conditional transfer order.

(c)     Failure to serve one or more of the defendants in a potential "tag-along action" with the complaint and summons as required by Rule 4 of the Federal Rules of Civil Procedure does not preclude transfer of such action under Section 1407.  Such failure, however, may be submitted by such a defendant as a basis for opposing the proposed transfer if prejudice can be shown.  The inability of the Clerk of the Panel to serve a conditional transfer order on all plaintiffs or defendants or their counsel shall not render the transfer of the action void but can be submitted by such a party as a basis for moving to remand as to such party if prejudice can be shown.

(d)     A civil action apparently involving common questions of fact with actions under consideration by the Panel for transfer under Section 1407, which was either not included in a motion under Rule 7.2 of these Rules, or was included in such a motion that was filed too late to be included in the initial hearing session, will ordinarily be treated by the Panel as a potential "tag-along action."

(e)     Any party or counsel in actions previously transferred under Section 1407 or under consideration by the Panel for transfer under Section 1407 shall promptly notify the Clerk of the Panel of any potential "tag-along actions" in which that party is also named or in which that counsel appears.

RULE 7.6:    TERMINATION AND REMAND

In the absence of unusual circumstances—

(a)    Actions terminated in the transferee district court by valid judgment, including but not limited to summary judgment, judgment of dismissal and judgment upon stipulation, shall not be remanded by the Panel and shall be dismissed by the transferee district court. The clerk of the transferee district court shall send a copy of the order terminating the action to the Clerk of the Panel but shall retain the original files and records unless otherwise directed by the transferee judge or by the Panel.

(b)    Each action transferred only for coordinated or consolidated pretrial proceedings that has not been terminated in the transferee district court shall be remanded by the Panel to the transferor district for trial. Actions that were originally filed in the transferee district require no action by the Panel to be reassigned to another judge in the transferee district at the conclusion of the coordinated or consolidated pretrial proceedings affecting those actions.

(c)    The Panel shall consider remand of each transferred action or any separable claim, cross-claim, counterclaim or third-party claim at or before the conclusion of coordinated or consolidated pretrial proceedings on

    (i)    motion of any party,

    (ii)    suggestion of the transferee district court, or

    (iii)    the Panel's own initiative, by entry of an order to show cause, a conditional remand order or other appropriate order.

(d)    The Panel is reluctant to order remand absent a suggestion of remand from the transferee district court. If remand is sought by motion of a party, the motion shall be accompanied by:

    (i)    an affidavit reciting

        (A)    whether the movant has requested a suggestion of remand from the transferee district court, how the court responded to any request, and, if no such request was made, why;

        (B)    whether all common discovery and other pretrial proceedings have been completed in the action sought to be remanded, and if not, what remains to be done; and

        (C)    whether all orders of the transferee district court have been satisfactorily complied with, and if not, what remains to be done; and

    (ii)    a copy of the transferee district court's final pretrial order, where such order has been entered.

Motions to remand and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

(e)    When an order to show cause why an action or actions should not be remanded is entered pursuant to subsection (c), paragraph (iii) of this Rule, any party may file a response within twenty days of the

- 12 -

filing of said order unless otherwise provided for in the order. Within five days of filing of a party's response, any party may file a reply brief limited to new matters. Failure of a party to respond to a show cause order regarding remand shall be treated as that party's acquiescence to the remand. Responses and replies shall be filed and served in conformity with Rules 5.12, 5.2 and 7.1 of these Rules.

     (f)     Conditional Remand Orders

          (i)     When the Panel has been advised by the transferee district judge, or otherwise has reason to believe, that pretrial proceedings in the litigation assigned to the transferee district judge are concluded or that remand of an action or actions is otherwise appropriate, an order may be entered by the Clerk of the Panel remanding the action or actions to the transferor district court. The Clerk of the Panel shall serve this order on each party to the litigation but, in order to afford all parties the opportunity to oppose remand, shall not send the order to the clerk of the transferee district court for fifteen days from the entry thereof.

          (ii)     Any party opposing the remand shall file a notice of opposition with the Clerk of the Panel within the fifteen-day period. If a notice of opposition is received by the Clerk of the Panel within this fifteen-day period, the Clerk of the Panel shall not transmit said order to the clerk of the transferee district court until further order of the Panel. The Clerk of the Panel shall notify the parties of the briefing schedule.

          (iii)     Within fifteen days of the filing of its notice of opposition, the party opposing remand shall file a motion to vacate the conditional remand order and brief in support thereof. The Chairman of the Panel shall set the motion for the next appropriate hearing session of the Panel. Failure to file and serve a motion and brief shall be treated as a withdrawal of the opposition and the Clerk of the Panel shall forthwith transmit the order to the clerk of the transferee district court.

          (iv)     Conditional remand orders do not become effective unless and until they are filed with the clerk of the transferee district court.

          (v)     Notices of opposition and motions to vacate such orders of the Panel and responses thereto shall be governed by Rules 5.12, 5.2, 7.1 and 7.2 of these Rules.

     (g)     Upon receipt of an order to remand from the Clerk of the Panel, the parties shall furnish forthwith to the transferee district clerk a stipulation or designation of the contents of the record or part thereof to be remanded and furnish the transferee district clerk all necessary copies of any pleading or other matter filed so as to enable the transferee district clerk to comply with the order of remand.

## RULE 16.1:    HEARING SESSIONS AND ORAL ARGUMENT

     (a)     Hearing sessions of the Panel for the presentation of oral argument and consideration of matters taken under submission without oral argument shall be held as ordered by the Panel. The Panel shall convene whenever and wherever desirable or necessary in the judgment of the Chairman. The Chairman shall determine which matters shall be considered at each hearing session and the Clerk of the Panel shall give notice to counsel for all parties involved in the litigation to be so considered of the time, place and subject matter of such hearing session.

(b)      Each party filing a motion or a response to a motion or order of the Panel under Rules 7.2, 7.3, 7.4 or 7.6 of these Rules may file simultaneously therewith a separate statement limited to one page setting forth reasons why oral argument should, or need not, be heard.  Such statements shall be captioned "Reasons Why Oral Argument Should [Need Not] Be Heard," and shall be filed and served in conformity with Rules 5.12 and 5.2 of these Rules.

(c)      No transfer or remand determination regarding any action pending in the district court shall be made by the Panel when any party timely opposes such transfer or remand unless a hearing session has been held for the presentation of oral argument except that the Panel may dispense with oral argument if it determines that:

      (i)      the dispositive issue(s) have been authoritatively decided; or

      (ii)      the facts and legal arguments are adequately presented in the briefs and record,

   and the decisional process would not be significantly aided by oral argument.

Unless otherwise ordered by the Panel, all other matters before the Panel, such as a motion for reconsideration, shall be considered and determined upon the basis of the papers filed.

(d)      In those matters in which oral argument is not scheduled by the Panel, counsel shall be promptly advised.  If oral argument is scheduled in a matter the Clerk of the Panel may require counsel for all parties who wish to make or to waive oral argument to file and serve notice to that effect within a stated time in conformity with Rules 5.12 and 5.2 of these Rules.  Failure to do so shall be deemed a waiver of oral argument by that party.  If oral argument is scheduled but not attended by a party, the matter shall not be rescheduled and that party's position shall be treated as submitted for decision by the Panel on the basis of the papers filed.

(e)      Except for leave of the Panel on a showing of good cause, only those parties to actions scheduled for oral argument who have filed a motion or written response to a motion or order shall be permitted to appear before the Panel and present oral argument.

(f)      Counsel for those supporting transfer or remand under Section 1407 and counsel for those opposing such transfer or remand are to confer separately prior to the oral argument for the purpose of organizing their arguments and selecting representatives to present all views without duplication.

(g)      Unless otherwise ordered by the Panel, a maximum of twenty minutes shall be allotted for oral argument in each matter.  The time shall be divided equally among those with varying viewpoints.  Counsel for the moving party or parties shall generally be heard first.

(h)      So far as practicable and consistent with the purposes of Section 1407, the offering of oral testimony before the Panel shall be avoided.  Accordingly, oral testimony shall not be received except upon notice, motion and order of the Panel expressly providing for it.

(i)      After an action or group of actions has been set for a hearing session, consideration of such action(s) may be continued only by order of the Panel on good cause shown.

## II. RULES FOR MULTICIRCUIT PETITIONS FOR REVIEW
## UNDER 28 U.S.C. §2112(a)(3)

RULE 17.1:　　RANDOM SELECTION

(a)　　Upon filing a notice of multicircuit petitions for review, the Clerk of the Panel or designated deputy shall randomly select a circuit court of appeals from a drum containing an entry for each circuit wherein a constituent petition for review is pending. Multiple petitions for review pending in a single circuit shall be allotted only a single entry in the drum. This random selection shall be witnessed by the Clerk of the Panel or a designated deputy other than the random selector. Thereafter, an order on behalf of the Panel shall be issued, signed by the random selector and the witness,

　　　　(i)　　consolidating the petitions for review in the court of appeals for the circuit
　　　　that was randomly selected; and
　　　　(ii)　　designating that circuit as the one in which the record is to be filed
pursuant to Rules 16 and 17 of the Federal Rules of Appellate Procedure.

(b)　　A consolidation of petitions for review shall be effective when the Panel's consolidation order is filed at the offices of the Panel by the Clerk of the Panel.

RULE 25.1:　　FILING OF NOTICES

(a)　　An original of a notice of multicircuit petitions for review pursuant to 28 U.S.C. §2112(a)(3) shall be submitted for filing to the Clerk of the Panel by the affected agency, board, commission or officer. The term "agency" as used in Section II of these Rules shall include agency, board, commission or officer.

(b)　　All notices of multicircuit petitions for review submitted by the affected agency for filing with the Clerk of the Panel shall embrace exclusively petitions for review filed in the courts of appeals within ten days after issuance of an agency order and received by the affected agency from the petitioners within that ten-day period.

(c)　　When a notice of multicircuit petitions for review is submitted for filing to the Clerk of the Panel, the Clerk of the Panel shall file the notice and endorse thereon the date of filing.

(d)　　Copies of notices of multicircuit petitions for review shall be filed by the affected agency with the clerk of each circuit court of appeals in which a petition for review is pending that is included in the notice.

RULE 25.2:　　ACCOMPANIMENTS TO NOTICES

(a)　　All notices of multicircuit petitions for review shall be accompanied by:
　　　　(i)　　a copy of each involved petition for review as the petition for review is defined in 28
　　　　　　U.S.C. §2112(a)(2); and
　　　　(ii)　　a schedule giving
　　　　　　(A)　　the date of the relevant agency order;
　　　　　　(B)　　the case name of each petition for review involved;

- 15 -

(C)     the circuit court of appeals in which each petition for review is pending;

(D)     the appellate docket number of each petition for review;

(E)     the date of filing by the court of appeals of each petition for review;  and

(F)     the date of receipt by the agency of each petition for review.

(b)     The schedule in Subsection (a)(ii) of this Rule shall also be governed by Rules 25.1, 25.3 and 25.4(a) of these Rules.

RULE 25.3:     SERVICE OF NOTICES

(a)     All notices of multicircuit petitions for review shall be accompanied by proof of service by the affected agency on all other parties in all petitions for review included in the notice.  Service and proof of service shall be made as provided in Rule 25 of the Federal Rules of Appellate Procedure.  The proof of service shall state the name and address of each person served and shall indicate the party represented by each.  If a party is not represented by counsel, the proof of service shall indicate the name of the party and his or her last known address.  The original proof of service shall be submitted by the affected agency for filing with the Clerk of the Panel and copies thereof shall be sent by the affected agency to each person included within the proof of service.

(b)     The proof of service pertaining to notices of multicircuit petitions for review shall certify that copies of the notices have been mailed or otherwise delivered by the affected agency for filing to the clerk of each circuit court of appeals in which a petition for review is pending that is included in the notice.

RULE 25.4:     FORM OF NOTICES

(a)     Each notice of multicircuit petitions for review shall be
(i)      flat and unfolded;
(ii)     plainly written, typed in double space, printed or prepared by means of a duplicating process, without erasures or interlineations which materially deface it;
(iii)    on opaque, unglazed white paper (not onionskin);
(iv)    approximately 8-1/2 x 11 inches in size; and
(v)     fastened at the top-left corner without side binding or front or back covers.

(b)     The heading on the first page of each notice of multicircuit petitions for review shall commence not less that three inches from the top of the page.  Each notice shall bear the heading Notice to the Judicial Panel on Multidistrict Litigation of Multicircuit Petitions for Review," followed by a brief caption identifying the involved agency, the relevant agency order, and the date of the order.

(c)     The final page of each notice of multicircuit petitions for review shall contain the name, address and telephone number of the individual or individuals who submitted the notice on behalf of the agency.

RULE 25.5:    SERVICE OF PANEL CONSOLIDATION ORDER

(a)    The Clerk of the Panel shall serve the Panel's consolidation order on the affected agency through the individual or individuals, as identified in Rule 25.4(c) of these Rules, who submitted the notice of multicircuit petitions for review on behalf of the agency.

(b)    That individual or individuals, or anyone else designated by the agency, shall promptly serve the Panel's consolidation order on all other parties in all petitions for review included in the Panel's consolidation order, and shall promptly submit a proof of that service to the Clerk of the Panel.  Service and proof of that service shall also be governed by Rule 25.3 of these Rules.

(c)    The Clerk of the Panel shall serve the Panel's consolidation order on the clerks of all circuit courts of appeals that were among the candidates for the Panel's random selection.

*    *    *    *    *

CONVERSION TABLE

| Renumbered Rule/Previous Rule | | Renumbered Rule/Previous Rule | |
|---|---|---|---|
| 1.1 | 1 | 7.1 | 9 |
| 1.2 | 5 | 7.2 | 10 |
| 1.3 | 4 | 7.3 | 11 |
| 1.4 | 6 | 7.4 | 12 |
| 1.5 | 18 | 7.5 | 13 |
| 1.6 | 19 | 7.6 | 14 |
| 5.1 | 2 | 16.1 | 16, 16.2 & 17 |
| 5.11 | 3 | 17.1 | 24 |
| 5.12 | 7 | 25.1 | 20 |
| 5.13 | – | 25.2 | 21 |
| 5.2 | 8 | 25.3 | 22 |
| 5.3 | – | 25.4 | 23 |
| 6.2 | 15 | 25.5 | 25 |

EXHIBIT 4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

JUDGE SWAIN

05 CV 6189

CHERYL WILLIAMS and DUVAL
NAUGHTON, on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

AMERIQUEST MORTGAGE COMPANY,

Defendant.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

RECEIVED
JUL 0 1 2005
CASHIERS

Plaintiffs Cheryl Williams and Duval Naughton, on behalf of themselves and all

others similarly situated (hereinafter "Plaintiffs"), allege the following upon information and

belief, formed after a reasonable inquiry under the circumstances:

I.    **NATURE OF THE CASE**

1.    Ameriquest Mortgage Company (hereinafter "Ameriquest" or

"Defendant"), has engaged and is engaged in uniform unfair, unconscionable, deceptive and

unlawful commercial practices in soliciting and closing residential mortgage transactions in the

State of New York and nationwide.

2.    According to the 2003 and 2004 Mortgage Market Statistical Annuals,

Ameriquest was the third largest subprime lender by volume during the period October 1999

through December 2003, with $61.8 billion in total originations during the period. Based on

estimates from Ameriquest's securitization-filing, Ameriquest has risen to be the top "direct to

consumer" subprime mortgage originator in the United States and originated an estimated $16.84

452833.3

Page 26    Exhibit 4

billion in loans for the first 6 months of 2004, representing a 76% rise over the same period in 2003. This growth has occurred as a result of Ameriquest's unfair and predatory practices, alleged herein.

3.      While Ameriquest claims that its philosophy is "Do the Right Thing," Ameriquest's conduct begs the question – the right thing for whom? Ameriquest's policies and common conduct are designed exclusively to unfairly and unlawfully increase its own profits at the expense of the homeowners Ameriquest purports to assist.

4.      Defendant targets consumers for predatory, "subprime" equity loans and induces borrowers to enter into unfair and deceptive residential mortgages without regard for the homeowners' interests or ability to pay. By its predatory loan practices, Ameriquest engages in a persistent "bait and switch" scheme through which it lures borrowers with promises of favorable interest rates, monthly payments and/or loan terms, and then switches the terms at closing to less favorable ones.

5.      Plaintiffs and the Class members each received a loan which, to their surprise, contained one or more of the following unfavorable terms which were not disclosed:

a.      A confusing and unfair variable interest rate structure which provides only for an increase and not decrease in the borrower's interest rate;

b.      A misleading charge for "discount points" or a "discount fee" often totaling thousands of dollars added to the principal of the loan, although Ameriquest provided no "discount" to the interest rate;

c.      A prepayment penalty that hinders borrowers from refinancing on better terms with other lenders; and

        d.     duplicative and excessive costs and closing fees in amounts designed to strip home equity and prevent borrowers from refinancing without incurring high costs.

      6.     Ameriquest also routinely fails to provide required disclosures, including the statutorily mandated Notice of Right to Cancel, and circumvents statutory protections by failing to leave a true copy of completed loan documents in borrowers' possession so that borrowers cannot review the loan terms.

      7.     When borrowers inquire at closing about why they are not receiving their loans on the promised terms, they are typically – and falsely – promised early refinancing on more favorable terms.

      8.     Ameriquest's unfair practices allow Ameriquest to profit by leaving borrowers with a three-way Hobson's choice. Either the borrower can 1) choose to remain in a loan with unacceptable terms; 2) find another lender offering better terms and pay Ameriquest a substantial and unjustified prepayment penalty while losing equity on additional closing costs; or 3) refinance with Ameriquest and thereby provide Ameriquest with an opportunity to capitalize the points and closing costs from the first loan while charging another set of points and/or closing costs in an equal or larger amount.

      9.     By failing to disclose to the Plaintiffs prior to the loan closing that they would not receive loans on the terms originally promised, Ameriquest violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m(a) and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d).

-3-

Page 28  Exhibit 4

10.     By failing to give people complete and accurate information about their right to cancel the loan, Ameriquest violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635.

11.     By virtue of this conduct, Plaintiffs and the Class have been harmed and continue to incur damages and suffer harm. Through this action, Plaintiffs seek, on behalf of themselves and all others similarly situated, damages, restitution, a declaration of the right to rescind, attorneys fees, costs, and any other relief the Court deems proper.

## II.     JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendant named herein because a substantial portion of the wrongdoing alleged in this Complaint took place in the Southern District of New York, and Defendants are authorized to and regularly do business in the Southern District of New York.

13.     This is an action for violations of 15 U.S.C. § 1601 *et seq.* (Truth in Lending Act), 15 U.S.C. § 1691 *et seq.* (Equal Credit Opportunity Act), 15 U.S.C. § 1681m(a) (Fair Credit Reporting Act), and related state laws. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise from federal law. Additionally, there is federal jurisdiction over the federal statutory claims pursuant to 15 U.S.C. §§ 1640, 1681p, and 1691e. This Court also has jurisdiction of this action under 28 U.S.C. § 1332, in that the matter in controversy exceeds $5,000,000, and there are members of the class who are citizens of different states than Defendants. The Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events and omissions giving rise to this Complaint occurred within the Southern District of New York. Plaintiff Williams and numerous other members of

452833.3                                    Page  29  Exhibit  9

the Class reside in the Southern District of New York, and their mortgage loans that are the subject of this Complaint, were solicited and closed in this judicial district.

## III.    THE PARTIES

### A.    Plaintiffs

15.    Plaintiff Cheryl Williams is a resident of New York, New York, and has been a victim of Ameriquest's practices, as alleged herein.

16.    Plaintiff Duval Naughton is a resident of Brooklyn, New York, and has been a victim of Ameriquest's practices, as alleged herein.

### B.    Defendants

17.    Defendant Ameriquest Mortgage Company is a privately-held Delaware corporation that has its principal place of business in Orange, California. Ameriquest Mortgage Company is a wholly-owned subsidiary of Ameriquest Capital Corporation.

18.    Ameriquest is the nation's largest privately-held subprime lender. Ameriquest Mortgage Company has more than 270 offices nationwide. Ameriquest Mortgage Company conducts business in New York and has more than 15 offices throughout New York State, including offices at 15 Metro Tech Center, Brooklyn, New York 11201 and at 245 Park Avenue, 24th Floor, New York, New York 10167.

## IV.    AMERIQUEST'S PATTERN AND PRACTICE OF UNFAIR, UNCONSCIONABLE, UNLAWFUL, AND DECEPTIVE PRACTICES

19.    Ameriquest has engaged in and continues to engage in a uniform common plan and scheme to prey upon unsuspecting consumers by routinely causing borrowers to enter into inappropriate residential loans with unfavorable terms, misleading and inappropriate "discount" fees, high and adjustable interest rates, and excessive loan principal compared to equity and ability to pay.

452833.3

Page _30_  Exhibit _4_

A.    **Bait And Switch Practices of Ameriquest**

20.    Ameriquest engages in "bait and switch" tactics in regard to its residential loan transactions. Ameriquest systematically baits customers into residential mortgage loan transactions with promises of fixed interest rates, low interest rates, low or no fees, lower monthly payments compared to then current payments, no prepayment penalties, and/or the existence or absence of particular terms. When the paperwork is presented to customers for signature at closing, the terms are contrary to the terms promised. Frequently, borrowers are unaware that the terms of the mortgage documents do not match Ameriquest's prior representations.

21.    This practice goes hand in hand with Ameriquest's uniform practice of failing to make statutory disclosures and misrepresenting or concealing loan terms, as well as its aggressive and unfair sales tactics. While each practice is separately unlawful and unfair, in tandem these practices allow Ameriquest to systematically close loans that benefit Ameriquest to the detriment and misfortune of Plaintiffs and the Class.

22.    After presenting new or different loan terms, if the borrower becomes aware of the changes, Ameriquest engages in scare and pressure tactics to cause customers to proceed with the transaction anyway. Ameriquest further uses their borrowers' concern about loan terms in the initial transaction as an opportunity to bait the hook for a second loan, by promising an early refinancing on better terms. The refinance loans then capitalize finance charges, provide an excuse for new and additional points and other closing costs and provide an opportunity for Ameriquest to reap other additional hidden profits at their borrowers' expense.

23.    Ameriquest misleads the borrowers into signing loan documents without reading them by misrepresenting their contents and telling borrowers there is no need or time to read them and pressuring them to "just sign the papers."

-6-

24.     While Ameriquest purports to provide a three-day right of rescission, they fail to provide notice of this right in the legally mandated form with full information about the legal deadline for cancellation. In many cases, Ameriquest fails to timely provide the legally required copies of the appropriate cancellation forms.

25.     Ameriquest also fails to timely deliver copies of various loan papers, including required disclosures under the Truth in Lending Act, until after the loan is consummated. This prevents consumers from understanding the loan terms, including most importantly, the true cost of the loan.

26.     Ameriquest also has a uniform practice of removing certain documents, such as those relating to the prepayment penalty, before presenting the documents to the customer for signing. For this reason and others, customers are systematically denied any meaningful opportunity to discover that the terms on the final documents do not match the prior representations.

**B.     Ameriquest's Sales and Marketing Scheme**

27.     Ameriquest has a business practice of using oppressive and unfair marketing techniques to prey upon low income homeowners in New York and nationwide.

28.     Ameriquest trains and encourages its Account Executives to engage in any conduct necessary to close the greatest number of loans as quickly as possible and to maximize the total loan principal. Ameriquest loan officers, called account executives ("AEs"), across the country, including those in New York, receive daily leads on new customers that are generated by software at Ameriquest's Orange, California, headquarters. These leads target homeowners who are carrying both a mortgage and significant credit card and/or other consumer debt; persons who have mobile home mortgages; persons with less than perfect credit; and other financially-vulnerable persons. These homeowners are solicited through repeated mailers, telephone calls,

-7-

and/or personal visits by Ameriquest sales personnel, all inviting them to consolidate their debts or to obtain money for expenses, with false and misleading promises of more favorable loan terms and/or reduced monthly payments. Ameriquest profits by obtaining high fees upfront and high interest rates in the interim, and often by selling its loan portfolios to other companies.

29.    Ameriquest systematically trains its sales personnel through standardized sales presentations (videos) developed under the control of Defendant's corporate headquarters in Orange, California as well as by use of the movie "Boiler Room" which depicts unethical and illegal high-pressure sales practices by a securities brokerage firm. These videos demonstrate high-pressure mortgage sales, while failing to train employees on the legal requirements and regulations for mortgage lending.

30.    Ameriquest also trains its sales personnel to routinely rush borrowers through the lengthy, complex documentation of the regulated closing process so as to divert the borrowers' attention from the documented terms of the loans. Moreover, Ameriquest trains its Account Executives to overcome objections raised by borrowers at closing by such tactics as threatening delay or cancellation of the closing, by offering immediate cash pending the closing of the loan, and by assuring borrowers that they can refinance with better terms after improving their credit score, without disclosing that they could be subject to the prepayment penalty, higher interest rates and other fees if they did so.

31.    At all times relevant to this action, Ameriquest's uniform and fundamental business strategy with respect to the sale of home-secured loans has been to:

a.    uniformly hold out to all prospective customers, through the use of misleading promotions and material omissions regarding loan terms, that refinancing and/or

-8-

consolidating their debts with Ameriquest will be beneficial and will save them money when in fact it will not;

b.    employ aggressive, misleading, and unfair high-pressure sales tactics to obfuscate loan terms both prior to closing and at closing, if and when customers question loan terms, in order to force the customers to close the loan;

c.    force borrowers into mortgage loan that include one or more of the following terms: (1) a high and/or non-disclosed adjustable interest rate; (2) a "discount" fee that does not lower the interest rate; (3) excessive closing fees; and/or (4) a prepayment penalty provision;

d.    sell loans to these homeowners in amounts so high in relation to the value of their homes that the resulting debt-to-value ratio (coupled with prepayment penalties and other restrictions) effectively strips their homes of equity and prevents the borrowers from refinancing their loans with Ameriquest's competitors, often by inflating appraisal values or the borrowers' income or asset statements; and

e.    engage in "flipping," or aggressive solicitation of targeted borrowers, including existing Ameriquest customers, to refinance existing loans without significant benefit to the homeowner, thus generating additional debt, capitalizing previously charged points and fees, incorporating new and excessive costs and fees into the principal of the loan, and often increasing the borrower's interest rate.

32.    Because Ameriquest profits from the origination and "flipping" of loans, and the subsequent sale of those loans to investment bankers and others as assets for mortgage-based securities, Ameriquest has little concern for the actual risk that the loans might default or

with the continued profitability of the loans after origination, except to the extent that Ameriquest can induce existing borrowers to borrow more.

33.    Ameriquest unfairly and deceptively holds out its mortgage loans as sound financial transactions that will save borrowers money. Ameriquest fails to disclose prior to closing and/or intentionally obfuscates and/or conceals before and at closing the following:

a.    required TILA disclosures clearly and conspicuously, in a form that borrowers can understand, in order to mislead consumers as to the true terms and costs of their loan transactions;

b.    the high and/or adjustable interest rates charged on its loans, as well as the risks associated with adjustable rate mortgage ("ARM") loans;

c.    the high and deceptive "discount" fees and closing fees routinely added to the loan principal;

d.    the fact that, under 15 U.S.C. § 1635(a), 12 C.F.R. § 226.23(b)(1), borrowers have the right to rescind certain transactions up to three days following the consummation of the transaction or the delivery of the information and disclosures required by statute;

e.    the existence of a prepayment penalty, and that such prepayment penalty would make refinancing impossible and/or highly unfavorable for the borrower;

f.    the fact that the borrowers would have to pay, out of pocket, the cost of homeowners' insurance and property taxes that legitimate lenders include in monthly escrow payments, and instead implies or allows borrowers to believe that the monthly payment includes these costs; and

-10-

g.     the fact that far from saving borrowers money (as Ameriquest systematically claims), the Ameriquest loans, increase the total amount of debt outstanding, exacerbate overall interest obligations, and place vulnerable borrowers at high risk of foreclosure.

34.     In addition, Ameriquest routinely fails to provide required disclosures to borrowers prior to closing — including, but not limited to, the HUD-1 statement, Notice of Right to Cancel, a "good faith" Good Faith Estimate, settlement process information booklet and other disclosures required under TILA — ensuring that borrowers have no meaningful opportunity to review them or to learn the true terms and costs of their loan transactions.

**C.     Ameriquest's Compensation System**

35.     Ameriquest has designed its compensation system to reward its AEs for "upselling" customers' loans, providing incentives for AEs to aggressively sell products in order to increase the amounts loaned to the maximum permitted by Ameriquest's underwriting goals, irrespective of the amounts requested by borrowers or supported by the actual value of the home. The effect of these "upsells" has been to "close the back door" on Ameriquest's customers by making loans that cannot be refinanced by Ameriquest's competitors.

36.     Ameriquest's compensation scheme also rewards AEs based on quantity of loans closed per month. The minimum monthly quotas have risen consistently over time, reaching levels that are significantly higher than the number of loans closed by sales personnel at other companies. Given that Ameriquest's AEs must reach the minimum quotas in order to be paid at any reasonable rate, and that the quotas are very high, Ameriquest's policy all but ensures that its AEs will systematically engage in unfair and deceptive tactics to meet company quotas, with company knowledge of this widespread practice.

## V.    THE TRANSACTIONS WITH PLAINTIFFS

### A.    Cheryl Williams

37.    Cheryl Williams owns a home at 2611 Frederick Douglas Blvd.,
New York, New York.

38.    In or around May 2003, Cheryl Williams responded to a solicitation from
Ameriquest and contacted Defendant about refinancing an existing mortgage loan. When Ms.
Williams informed the Ameriquest representative that the interest rate on her current loan was
7.6%, the AE assured her that if she refinanced with Ameriquest, she would receive a lower rate
than what she was currently paying, and that no prepayment penalty would be imposed. In
accordance with Ameriquest's common practice, the AE encouraged Ms. Williams to
consolidate her other debt into the mortgage. Based on Ameriquest's representations, and in
reliance thereon, Ms. Williams agreed to consolidate her debt and proceed to closing.
Ameriquest failed to provide Ms. Williams with any documents or disclosures, including any
HUD-1 or Good Faith Estimate, prior to closing.

39.    Shortly after the initial contact, Ameriquest met with Ms. Williams to
close the loan. Contrary to the express assurances and representations made by Ameriquest, the
closing documents reflected an interest rate of 7.8%, which was higher than the rate she was then
paying. Despite the fact that the AE had encouraged Ms. Williams to consolidate her other
debts, the AE justified the higher rate by stating that it was due to the fact that she was
consolidating other debt into the loan. The Ameriquest AE then promised Ms. Williams that if
she took the loan with the 7.8% interest rate, Ameriquest could lower the interest rate to below
7% in 2004 if she paid her mortgage on time.

40.    Ms. Williams was rushed through the closing process and did not have a
sufficient or meaningful opportunity to review the loan documents. Based on Ameriquest's

-12-

representations that her interest rate would be lowered in 2004, and in reliance thereon, Ms. Williams proceeded to refinance her loan for a fixed rate of 7.8%. Ms. Williams' monthly payment under her Ameriquest loan was $760.96, compared to her prior monthly payment of approximately $575.00.

41.    In or around May 2004, Ms. Williams contacted Ameriquest to obtain the lower interest rate she was promised. The Ameriquest representative told Ms. Williams that, even though she had made timely payments, she would need to refinance her existing loan and pay additional fees.

42.    Ms. Williams later discovered that despite Ameriquest's promises to the contrary, Ameriquest inserted a prepayment penalty in her mortgage loan. Ameriquest did not disclose or explain the prepayment penalty provision to Ms. William prior to or at the closing. Ms. Williams was not aware of the prepayment penalty until she was forced to pay the penalty when she later refinanced with another company in or about September 2004.

43.    In addition, the cost of the mortgage included a misleading and improper "discount" fee which did not lower the interest rate charged, as well as excessive loan processing fees.

44.    Ms. Williams did not receive a discount in exchange for her payment of discount points. Nor was she offered a loan at a higher rate without payment of points so that she could evaluate whether payment of "discount" points in exchange for a lower rate would be a sound financial decision.

Page 38    Exhibit 4

45.    Ms. Williams's mortgage included the following closing costs:

| FEE/CHARGE | AMOUNT |
|---|---|
| Loan Discount Fee | $1,518.00 |
| Appraisal Fee | $360.00 |
| Lenders Processing Fee | $626.00 |
| Application Fee | $360.00 |
| Recording Fees | $235.00 |
| **TOTAL** | $3,099.00 |

**B.    Duval Naughton**

46.    Duval Naughton owns a home at 938 Bushwick Ave., Brooklyn,
New York.

47.    In or about November 2003, Duval Naughton refinanced an existing
mortgage loan through Ameriquest. At the time of this refinance, Ameriquest gave
Mr. Naughton an adjustable interest rate of 5.4 percent.

48.    In or around August 2004, Mr. Naughton contacted Ameriquest regarding
obtaining a home equity loan. The Ameriquest representative told Mr. Naughton that, in lieu of
a home equity loan, Ameriquest would lower the interest rate on Mr. Naughton's existing
Ameriquest loan and change it to a fixed rate if Mr. Naughton agreed to refinance again. The
Ameriquest representative offered Mr. Naughton a fixed interest rate of 5% to refinance.

49.    Based on Ameriquest's representations, and in reliance thereon,
Mr. Naughton proceeded to closing. Ameriquest failed to provide Mr. Naughton with any
documents or disclosures, including a Good Faith Estimate or ARM disclosure, prior to closing.
In addition, Ameriquest did not provide Mr. Naughton with any documents indicating that an
appraisal had been done on his residence. Upon information and belief, an appraisal was never
done on Mr. Naughton's residence at the time of this refinance transaction.

-14-

Page 39    Exhibit 4

50.    Shortly before closing, Mr. Naughton was told that the interest rate on his refinanced loan would be slightly higher than the rate Ameriquest had initially represented. The AE justified what Ameriquest characterized as a minor change by stating it was due to problems with Mr. Naughton's credit score, despite the fact that Mr. Naughton's credit information had been known to Ameriquest throughout the loan transaction process. The Ameriquest representative promised Mr. Naughton that if he refinanced with Ameriquest and paid his mortgage on time, Ameriquest would lower Mr. Naughton's rate to a fixed interest rate of 5% within six months.

51.    At the closing, a notary met with Plaintiff Naughton. The AE was not present at the closing and did not review any documents or disclosures with Mr. Naughton. Ameriquest did not send Mr. Naughton copies of the signed closing documents.

52.    Contrary to the express assurances and representations made by Ameriquest, the closing documents reflected an interest rate of 6.6%, which was significantly higher than what he was told initially, higher than the rate he was later told he would be given, and significantly higher than the 5.4% interest rate of his prior loan. In addition, the documents reflected an adjustable interest rate instead of the fixed rate Ameriquest had promised.

53.    Mr. Naughton felt pressure to sign the mortgage documents, and could not back out of the loan because he had already made firm commitments to pay other obligations through the refinancing with Ameriquest.

54.    Mr. Naughton's monthly payment under his current Ameriquest loan is approximately $2,062.33, compared to his prior monthly payment of $1,545.00.

-15-

Page 40    Exhibit 4

55.     The cost of the mortgage also included an improper and misleading

"discount" fee which did not reduce the interest rate charged, an unwarranted appraisal fee and

excessive loan processing fees.

56.     Mr. Naughton did not receive a discount in exchange for his payment of

discount points. Nor was he offered a loan at a higher rate without payment of points so that he

could evaluate whether payment of "discount" points in exchange for a lower rate would be a

sound financial decision.

57.     Mr. Naughton's mortgage included the following closing costs:

| FEE/CHARGE | AMOUNT |
|---|---|
| Loan Discount Fee | $8,922.30 |
| Appraisal Fee | $207 |
| Flood Search Fee | $16 |
| Lenders Processing Fee | $626 |
| Application Fee | $360 |
| Recording Fees | $132 |
| Courier Fee | $125 |
| **TOTAL** | $10,388.30 |

58.     Ameriquest entered false and fabricated information on Mr. Naughton's

loan application and inflated Mr. Naughton's net worth on the application to enable the closing

of the loan. Mr. Naughton's net worth was listed on his application as $324,898.74, taking into

account the full value of his home, but not accounting for the amount of the mortgage owed.

59.     Additionally, Ameriquest is misapplying payments to Mr. Naughton's

current loan and, despite Mr. Naughton's explicit instruction, has failed to apply extra payments

to the principal balance.

60.     Ameriquest is again seeking to refinance Mr. Naughton's loan.

-16-

Page ___ 41 ___ Exhibit 4

61.     As a result of Ameriquest's conduct, Mr. Naughton has suffered and

continues to suffer actual damages and other harm.

## VI.    CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23

on their own behalf and on the behalf of all other members of the classes described below.

63.     Plaintiffs seek certification of a nationwide class consisting of all

Ameriquest borrowers across the country except those who are Class members in

AMERIQUEST CASES, Judicial Council Coordination Proceeding No. 4162 (Cal. Sup. Ct.,

County of San Mateo). The nationwide class is defined as:

> All persons (i) who presently own, or during the Class Period
> owned, property (including mobile homes) in the United States,
> and (ii) who entered into a mortgage loan transaction relating to
> such property with any named Defendant or their predecessors,
> directly or indirectly, at any time between July 1, 1999, and the
> present (the "Nationwide Class").

> Excluded from the Nationwide Class are class members in
> Ameriquest Cases, Judicial Council Coordination Proceeding No.
> 4162 (Cal. Sup. Ct., County of San Mateo); any judicial officer
> assigned to this matter; Defendant; the parents, subsidiaries and
> affiliates, officers and directors of Defendant or any entity in
> which Defendant has a controlling interest; and the legal
> representatives, successors, or assigns of any such excluded
> persons.

64.     Plaintiffs Naughton and Williams, on behalf of themselves and all others

similarly situated, seeks certification of the following Subclass:

> All persons (i) who presently own, or during the Class Period
> owned, property (including mobile homes) in the State of New
> York, and (ii) who entered into a mortgage loan transaction
> relating to such New York property with any named Defendant or
> their predecessors, directly or indirectly, at any time between –
> July 1, 1999, and the present (the "New York Subclass").

-17-

> Excluded from the New York Subclass are any judicial officer
> assigned to this matter; Defendant; the parents, subsidiaries and
> affiliates, officers and directors of Defendant or any entity in
> which Defendant has a controlling interest; and the legal
> representatives, successors, or assigns of any such excluded
> persons.

65.     The members of the Nationwide Class and New York Subclass (together,

"Class") are so numerous that joinder of all members is impracticable. While the exact number

of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are hundreds

of thousands of Class members and tens of thousands of Subclass members. Detailed

information on the Class can be ascertained through appropriate discovery and from records

maintained by Defendant and its agents.

66.     Plaintiffs' claims are typical of the claims of the members of the Class, as

Plaintiffs and all other members of the Class and Subclass sustained damages arising out of the

same wrongful conduct by Ameriquest. Plaintiffs will fairly and adequately represent and

protect the interests of the members of the Class and Subclass and have retained counsel

competent and experienced in class action and consumer litigation.

67.     A class action is superior to other available methods for the fair and

efficient adjudication of Defendant's uniform unlawful practices because joinder of all members

is impracticable. Prosecution of separate actions by individual Class and Subclass members

would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk

of the establishment of incompatible and conflicting standards of conduct for Defendant. In

addition, due to the vastly unequal market power between the parties, and the fact that many

Class members are in ongoing commercial relationships with Defendant, a Class action may be

the only way, as a practical matter, that the cases will be prosecuted. Plaintiffs foresee no

significant difficulties in managing this action as a class action.

-18-

Page 43   Exhibit 4

68.    Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting solely individual Class and Subclass members. Among the questions of law and fact common to the Class and/or Subclass are:

a.    Whether Defendant systematically failed to provide the disclosures required by law, including TILA disclosures, clearly and conspicuously, in writing and in a form that Class Members can keep and/or understand;

b.    Whether Defendant has been or are engaged in a "bait and switch" scheme, in which Class Members have been lured in with promises of a particular set of loan terms, and are then given different and far less beneficial terms;

c.    Whether documents, contracts, and practices relating to the transactions between members of the Class and Defendant were unfair, unconscionable, deceptive, untrue, misleading, or omitted material facts and disclosures;

d.    Whether Defendant misrepresented, concealed, and/or failed to disclose loan terms;

e.    Whether Defendant misled Plaintiffs and the Class in connection with marketing, solicitation, sale, operation, and administration of the mortgage loans; and

f.    Whether Plaintiffs and the Class are entitled to the imposition of a constructive trust as a result of, among other things, Defendant's unjust enrichment.

g.    Whether defendants have been or are engaged in unfair and unlawful business practices, and whether the alleged conduct violated the N.Y. Gen. Bus. Law § 349 or herein violated other applicable laws;

h.    Whether declaratory relief giving Class Members the right to rescind their mortgage loans should be issued;

-19-

Page ____ Exhibit ____

i.      Whether Plaintiffs and the Class are entitled to damages and the

appropriate measure of such damages;

j.      Whether Plaintiffs and the Class are entitled to punitive damages.

## CAUSES OF ACTION

### COUNT I

**Violations of the Truth in Lending Act, 15 U.S.C. § 1601, et seq.
and Federal Reserve Regulation Z, 12 C.F.R. § 226.1 et seq.
(By Plaintiffs on Behalf of Themselves and the Class)**

69.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set

forth herein.

70.     Defendant Ameriquest Mortgage Company is a creditor within the

meaning of the Truth and Lending Act ("TILA") as implemented by Regulation Z.

71.     Defendant Ameriquest Mortgage Company violated TILA and

Regulation Z by:

a.      Failing to provide Plaintiffs and Class Members with material

disclosures in a form they could keep prior to consummation; and

b.      For non-purchase money mortgages, failing to provide Plaintiffs

and Class Members with notices of right to cancel that were clear, conspicuous or consistent with

the forms and regulations of the Federal Reserve Board found at 12 C.F.R. 226.23

(Regulation Z) and Appendix H.

72.     Any and all statute of limitations relating to disclosures and notices

required under 15 U.S.C. § 1601 *et seq.* are tolled due to the Defendant's failure to effectively

provide the disclosures and notices.

-20-

Page    45    Exhibit    4

452833.3

73.    As a direct and proximate result of these violations, Plaintiffs and Class Members have suffered and continue to suffer actual damages, including, but not limited to, all amounts paid or to be paid to Defendant, excluding principal payments, and are also entitled to statutory damages. Plaintiffs and the Class also seek declaratory relief that they have a right to rescind that may be exercised within three years from the date of closing.

## COUNT II

### Violation of Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)
### (By Plaintiffs on Behalf of Themselves and the Class)

74.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

75.    Defendant Ameriquest is a creditor within the meaning of 15 U.S.C. § 1691a(e).

76.    Plaintiffs and the Class were applicants within the meaning of 15 U.S.C. § 1691a(b).

77.    Ameriquest violated 15 U.S.C. § 1691(d) as to Plaintiffs and the Class in that it did not provide them with the notice of adverse action as required by the provision when Ameriquest refused to grant credit to Plaintiffs and the Class on the terms requested, but pursuant to its bait and switch tactics, provided substantially different terms.

78.    As a result of Ameriquest's conduct, Plaintiffs and the Class have suffered actual damages, and are entitled to recover such actual damages as well as punitive damages, equitable and declaratory relief, costs and attorney fees.

-21-

Page _46_    Exhibit _4_

## COUNT III

### Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681m(a)
### (By Plaintiffs on Behalf of Themselves and the Class)

79.    Plaintiffs reallege and incorporate the preceding paragraphs.

80.    Ameriquest is a user of consumer reports from consumer reporting agencies, in connection with the extension of credit to consumers, for purposes of 15 U.S.C. § 1681a.

81.    Ameriquest's failure to provide credit on the terms in initially promised to Plaintiffs and the Class, and to instead offer credit at less favorable more costly terms, constituted an adverse action, pursuant to 15 U.S.C. § 1681a(k).

82.    The adverse action taken by Ameriquest was based wholly or partly on information contained in a consumer report, or alternatively was based on information obtained from a person other than a consumer reporting agency, bearing upon the credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of the Plaintiffs and class members.

83.    Ameriquest failed to provide notices of adverse action to each of the Plaintiffs and class members as required by 15 U.S.C. § 1681m(a).

84.    In the alternative, Ameriquest violated the Fair Credit Reporting Act ("FCRA") by failing to provide adverse action notices which provided an accurate or meaningful description of the basis for such adverse taken, or which otherwise fail to comply with FCRA.

85.    Ameriquest's failure to comply with 15 U.S.C. § 1681m(a) was willful.

86.    In the alternative, Ameriquest's failure to comply with 15 U.S.C. § 1681m(a) was negligent.

Page  4/7      Exhibit  4

452833.3

87.    The Plaintiffs and class members suffered damages as a result of

Ameriquest's failure.

## COUNT IV

### Unjust Enrichment
### (By Plaintiffs on Behalf of Themselves and the Class)

88.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set

forth herein.

89.    By its wrongful acts and omissions, Defendant Ameriquest Mortgage

Company has been unjustly enriched at the expense of Plaintiffs and the Class.

90.    Through their mortgage payments on the predatory and unfair mortgage

loans described herein, Plaintiffs and Class members have been required to pay Defendant

excessive fees, inflated interest rates and monthly payments higher than what they were

promised. As such, Plaintiffs and the Class have conferred benefits upon Ameriquest.

91.    Defendant Ameriquest has knowledge of these benefits that Plaintiffs and

the Class have conferred and continue to confer upon them; and Defendant has accepted and

retained such benefits.

92.    Due to the circumstances described herein, it would be inequitable, unjust

and unfair for Defendant to retain the benefits conferred upon it by Plaintiffs and the Class.

93.    Plaintiffs and the Class seek restitution from Defendant and seek an order

of this Court requiring that Ameriquest disgorge all profits, benefits, and other compensation

obtained through its wrongful conduct.

Page   48    Exhibit   4

452833.3

## COUNT V

### Unfair, Unlawful, and Deceptive Business Practices in
### Violations of New York Gen. Bus. Law § 349
### (By Plaintiffs Naughton and Williams on Behalf of Themselves
### and the New York Subclass only)

94.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set

forth herein.

95.    N.Y. Gen. Bus. Law § 349 makes unlawful "[d]eceptive acts or practices

in the conduct of any business, trade or commerce or in the furnishing of any service in this

state."

96.    N.Y. Gen. Bus. Law § 349 (h) provides that "any person who has been

injured by reason of any violation of this section may bring . . . an action to recover his actual

damages or fifty dollars, whichever is greater . . . The court may award reasonable attorney's

fees to a prevailing plaintiff."

97.    Ameriquest systematically engages in materially deceptive practices

towards consumers, including but not limited to:

a.    Marketing and selling mortgage loans to Plaintiffs and the

New York Subclass in a manner intended to hide the true cost of various loan terms and the true

disadvantages of the loan terms;

b.    Failing to provide consumers with good faith estimates of the

closing costs, prior to closing;

c.    Presenting incomplete or misleading information related to the cost

of loans, particularly in comparison with existing obligations;

d.    Failing to provide required disclosures prior to the closing of the

loans;

-24-

Page  49    Exhibit  4

    e.  Presenting different unfavorable loan terms to borrowers only at closing so as to put consumers in a position where they have no choice but to accept the unfavorable loan terms; and

    f.  Unilaterally charging discount points that are not justified by any discount to the interest rate provided to Plaintiffs and the New York Subclass.

    98.  By virtue of the patterns of deceptive conduct alleged herein, Ameriquest has engaged in consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which has resulted in consumer injury, has broad adverse impact on the public at large, and harmed the public interest of New York State.

    99.  Defendant Ameriquest's deceptive conduct caused injury to Plaintiffs and the New York Subclass. Plaintiffs and the Subclass seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

    100.  Defendant's conduct, as described above, entitles Plaintiffs to an award of attorneys' fees pursuant to N.Y. Gen. Bus. Law § 349 (h).

### PRAYER FOR RELIEF

    WHEREFORE, Plaintiffs, on behalf of themselves and members of the Nationwide Class and New York Subclass, respectfully pray for judgment against Defendant as follows:

    1.  Certification of the case as a class action on behalf of the proposed Nationwide Class and New York Subclass, and designation of Plaintiffs as Nationwide Class and Subclass representatives and their counsel as Nationwide Class Counsel and Subclass Counsel;

    2.  Restitution and disgorgement according to proof;

    3.  Actual and statutory damages according to proof;

Page 50    Exhibit 4

452833.3

4.     Declaratory judgment declaring that Defendant's conduct is unlawful and declaring Plaintiffs and Nationwide Class Members the right to rescind their loan contracts with Defendant;

5.     Prejudgment interest at the applicable rates;

6.     Reasonable attorneys' fees and costs; and

7.     All such other and further relief the court deems proper and just.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class demand a jury trial in this action for all claims so triable.

Dated: July 1, 2005

Respectfully submitted,

_____

Rachel Geman (RG 0998)
Gena E. Wiltsek (GW 6653)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Kelly M. Dermody
Caryn Becker
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1100
Facsimile: (415) 956-1008

Page 51    Exhibit 4

452833.3

Gary Klein
RODDY, KLEIN & RYAN
727 Atlantic Avenue, 2nd Floor
Boston, MA  02111
Telephone:  (617) 357-5500
Facsimile:  (617) 357-5030

Laurence Tien
Kamran Mashayekh
THE TIEN LAW FIRM, LLP
10235 West Little York Road, Suite 470
Houston, TX 77040
Telephone:  (713) 937-0223
Facsimile:  (713) 937-0220

Attorneys for Plaintiffs and the Class

Page  52  Exhibit  4