# EXHIBIT B

1   EMMETT C. STANTON (CSB No. 83930)
    AARON MYERS (CSB No. 200145)
2   FENWICK & WEST LLP
    801 California Street
3   Mountain View, CA 94041
    Telephone: (650) 988-8500
4   Facsimile: (650) 938-5200
    estanton@fenwick.com
5   amyers@fenwick.com

6   BRYAN A. KOHM (CSB No. 233276)
    FENWICK & WEST LLP
7   275 Battery Street, 16th Floor
    San Francisco, CA 94111
8   Telephone: (415) 875-2300
    Facsimile: (415) 281-1350
9   bkohm@fenwick.com

10  SHIRLEY HOCHHAUSEN (CSB No. 145619)
    COMMUNITY LEGAL SERVICES IN EAST PALO ALTO
11  2117-B University Avenue
    East Palo Alto, CA 94303
12  Telephone: (650) 326-6440
    Facsimile: (650) 326-9722
13  s_hochhausen@hotmail.com

JAN 1 4 2005

EDL

## C  05  00240

14  Attorneys for Plaintiffs NONA KNOX, ALBERT KNOX, MARIA
    TORRES, HELADIO ARELLANES AND MARIA ARELLANES

15

16              **UNITED STATES DISTRICT COURT**

17      **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION**

| | |
|---|---|
| 18  NONA KNOX, ALBERT KNOX, MARIA TORRES, HELADIO ARELLANES AND MARIA ARELLANES on behalf of themselves and those similarly situated, | Case No. |
| 19 | **CLASS ACTION** |
| 20               Plaintiffs, | **COMPLAINT FOR VIOLATIONS OF THE TRUTH IN LENDING ACT (15 U.S.C. § 1601 *ET SEQ.*); THE REAL ESTATE SETTLEMENT AND PROCEDURES ACT (12 U.S.C. § 2601 *ET SEQ.*); THE FAIR HOUSING ACT (42 U.S.C. § 3601 *ET SEQ.*); THE EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. § 1691 *ET SEQ.*); THE UNRUH ACT (Cal. Civ. Code § 51); CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.*; CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500 *ET SEQ.*; THE CONSUMERS LEGAL REMEDIES ACT (Cal. Civ. Code § 1750 *ET SEQ.*); UNJUST ENRICHMENT; DECLATORY RELIEF; AND INJUNCTIVE RELIEF** |
| 21               v. | |
| 22  AMERIQUEST MORTGAGE COMPANY, a Delaware corporation, ARGENT MORTGAGE COMPANY, LLC, a Delaware Limited Liability Company, AND DOES 1-100, inclusive, | |
| 23 | |
| 24 | |
| 25               Defendants. | |
| 26 | |
| 27 | |
| 28 | **DEMAND FOR JURY TRIAL** |

COMPLAINT

1          Plaintiffs Nona Knox, Albert Knox, Maria Torres, Heladio Arellanes and Maria Arellanes

2    (collectively "Plaintiffs") hereby allege for their Complaint against Ameriquest Mortgage

3    Company ("Ameriquest"), Argent Mortgage Company ("Argent") and Does 1 through 100,

4    inclusive (collectively "Defendants"), as follows:

5                       **INTRODUCTION**

6        1.      Defendants were and are engaged in unfair, unlawful and deceptive business

7    practices in soliciting, inducing and closing residential loan transactions in the State of California

8    and nationwide.

9        2.      During loan transactions, Defendants fail to provide required disclosures,

10    including the statutorily mandated Notice of Right to Cancel, and, without the applicants'

11    knowledge or consent, falsify income stated on loan applications so that borrowers qualify for

12    larger loans than they can afford.

13        3.      Through predatory lending practices, Defendants wrongfully induce borrowers to

14    take residential mortgages that saddle borrowers with principal amounts Defendants know or

15    should know the borrowers' income cannot support, and then charge the borrowers expensive

16    origination fees and expenses.

17        4.      Defendants engage in a pattern of discriminatory conduct—targeting borrowers on

18    the basis of race, national origin, age and gender—and provide those borrowers less favorable

19    terms and conditions in loan contracts than would be provided but for the borrowers' race,

20    national origin, age and/or gender.

21        5.      Defendants engage in a "bait and switch" scheme:  Defendants represent to

22    borrowers that their loans will have certain terms and conditions, then induce borrowers to sign

23    mortgage contracts consisting of significantly less favorable terms and conditions, while at the

24    same time misleading the borrowers about those terms and conditions.

25                       **PARTIES**

26        6.      Plaintiffs Nona and Albert Knox ("Mr. and Mrs. Knox") were at all relevant times

27    residents of East Palo Alto, California.  Mrs. Knox is a resident of East Palo Alto, California,

28    African-American and a senior citizen.  Mr. Knox was a resident of East Palo Alto, California,

COMPLAINT

1    African-American and a senior citizen. Mr. Knox is deceased. His widow, Mrs. Knox, maintains

2    this action on behalf of his estate.

3         7.    Plaintiff Maria Torres ("Mrs. Torres") is and at all relevant times was a resident of

4    East Palo Alto, California. Mrs. Torres is Hispanic and her native language is Spanish. Mrs.

5    Torres speaks very little English and is illiterate in English.

6         8.    Plaintiffs Heladio Arellanes and Maria Arellanes ("Mr. and Mrs. Arellanes") are

7    and at all relevant times were residents of Richmond, California. Mr. and Mrs. Arellanes are

8    Hispanic and their native language is Spanish. Mr. and Mrs. Arellanes speak very little English

9    and are illiterate in English.

10        9.    On behalf of themselves and all persons similarly situated, Plaintiffs bring this

11   class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure.

12        10.   Defendant Ameriquest is a corporation organized under the laws of the State of

13   Delaware with its principal place of business in Orange, California. Ameriquest is a wholly

14   owned subsidiary of Ameriquest Capital Corporation.

15        11.   Defendant Argent is a Limited Liability Company organized under the laws of the

16   State of Delaware with its principal place of business in Orange, California. Argent is a wholly

17   owned subsidiary of Ameriquest Capital Corporation.

18        12.   Defendants Does 1 through 100, inclusive, are sued under fictitious names because

19   their true names and capacities are unknown to Plaintiffs, who will further amend this Complaint

20   when their true names and capacities are learned. Plaintiffs are informed and believe, and on that

21   basis allege, that each of the fictitiously-named Defendants is responsible in some manner for the

22   occurrences alleged herein, and that Plaintiffs' damages were caused by those Defendants.

23                          **JURISDICTION AND VENUE**

24        13.   This Court has personal jurisdiction over the Defendants named herein because a

25   substantial portion of the wrongdoing alleged in this Complaint took place in the Northern

26   District of California, Defendants' principal place of business is in California, and Defendants are

27   authorized to and regularly do business in the Northern District of California, including San

28   Mateo County.

COMPLAINT

1    14.    This is an action for violations of 15 U.S.C. § 1601 *et seq.* (Truth in Lending Act,

2  hereinafter "TILA"), 12 U.S.C. § 2601 *et seq.* (Real Estate Settlement Procedures Act, hereinafter

3  "RESPA"), 42 U.S.C. § 3601 *et seq.* (Fair Housing Act), 15 U.S.C. § 1691 *et seq.* (Equal Credit

4  Opportunity Act), and related state laws.  This Court has subject matter jurisdiction of this action

5  pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

6    15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a

7  substantial portion of the events and omissions giving rise to this Complaint occurred within the

8  Northern District of California.  The loan contracts between Plaintiffs and Defendants were made

9  and to be performed, and the obligations arose, in the Northern District of California.

10                    **PLAINTIFFS' CLASS ACTION ALLEGATIONS**

11    16.    This lawsuit is brought on behalf of a class consisting of all persons, wherever

12  located, who entered into loan or line of credit transactions with any named Defendant or their

13  predecessors, directly or indirectly, where such transaction involved any of the wrongful conduct

14  described herein ("Class" or "Class Members").  Excluded from the Class are Defendants, their

15  parents, subsidiaries and affiliates, officers and directors, or any entity in which Defendants have

16  a controlling interest, and the legal representatives, successors, or assigns of any such excluded

17  persons.

18    17.    Class Members are so numerous that joinder of all Class Members is

19  impracticable.  While the exact number of Class Members is unknown to Plaintiffs at this time,

20  such information can be ascertained through appropriate discovery from records maintained by

21  Defendants and their agents.  Plaintiffs are informed and believe that the number of potential

22  Class Members is in the hundreds or thousands.

23    18.    Plaintiffs' claims are typical of the claims of Class Members, as Plaintiffs and all

24  other Class Members suffered harm arising out of Defendants' wrongful conduct as alleged

25  herein.

26    19.    Defendants Ameriquest and Argent, though separate entities, are both wholly

27  owned subsidiaries of Ameriquest Capital Corporation and are engaging in nearly identical

28  wrongful conduct.

COMPLAINT

3

20.   Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in class action and complex civil litigation.

21.   Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members. Among the questions of law and fact common to the Class are:

a.   Whether Defendants or their agents engaged in a pattern of failing to provide required TILA disclosures clearly and conspicuously, in writing and in a form that the plaintiffs could keep;

b.   Whether Defendants or their agents engaged in a pattern of falsifying income without applicants' knowledge or consent;

c.   Whether Defendants or their agents have and are engaged in a "bait and switch" scheme whereby borrowers are promised a set of loan terms only to learn after entering the transaction that they have received a different and far less beneficial set of loan terms;

d.   Whether Defendants' documents, statements, contracts, advertisements and practices relating to the transactions between Class Members and Defendants were unfair, deceptive, untrue, misleading or omitted material facts and disclosures;

e.   Whether Defendants discriminated against Class Members on the basis of race, national origin, age and/or gender;

f.   Whether Defendants engaged in unfair and unlawful business practices;

g.   Whether the acts of Defendants alleged herein violated other applicable laws;

h.   Whether injunctive relief prohibiting Defendants' unfair and unlawful business practices should be issued;

i.   Whether declaratory relief giving Class Members the right to rescind their mortgage loans should be issued; and

j.   Whether Plaintiffs and the Class have sustained damages and, if so, the proper measure of damages.

COMPLAINT

4

1    22.    A class action is the appropriate form of action for the following reasons:

2         a.    It is superior to other available methods for the fair and efficient

3    adjudication of this controversy because joinder of all Class Members is impracticable;

4         b.    Common questions of law and fact of the Class predominate over any

5    questions that apply only to individual Class Members;

6         c.    Relief is sought to enjoin Defendants from engaging in the wrongful

7    conduct, as alleged herein, and for declaratory relief providing all Class Members the right to

8    rescind any loan contract with any Defendant; and

9         d.    Prosecution of individual actions may result in inconsistent judgments.

10                    **THE NATURE OF SUBPRIME LENDING**

11    23.    Subprime lending is the business of making loans to persons with low income or

12    credit deficiencies.  Subprime lending generally involves residential loans or equity lines of credit

13    based upon equity in a residential property.

14    24.    Subprime borrowers generally are charged up-front fees of 3% to 4% and interest

15    rates of 10% to 12%.  By contrast, conventional borrowers with strong credit generally pay 1% or

16    less in fees and obtain interest rates of approximately 7%.

17    25.    Borrowers with good credit usually earn an "A" credit rating, which qualifies them

18    for the best loans on the most favorable terms.  However, as competition for "A" rated borrowers

19    has increased, profit margins for "A" lending has diminished.  As a consequence, more "A"

20    lenders began pursuing the subprime market to compensate for these lower profits.  Subprime

21    borrowers are often referred to as "B" or "C" or "non-conforming" borrowers.

22    26.    The greatest factor in the growth of the subprime market is the ever-increasing

23    prevalence of debt.  To the extent that lenders pursue subprime loans and put borrowers into high-

24    cost loans they cannot afford, subprime lending may be riskier for the lender than most

25    conventional lending.  However, the potential payoffs to the lender more than make up for the

26    risk, as the lender can profit handsomely from large up-front loan origination fees and hefty

27    interest rates.

28

COMPLAINT

5

## PREDATORY LENDING PRACTICES DECEITFULLY AND
## UNFAIRLY TAKE ADVANTAGE OF CONSUMERS

27.    Predatory subprime lenders "flip" loans in order to artificially generate closing fees. By this practice, lenders encourage unnecessary and financially detrimental refinancing, as each time a loan is refinanced the borrower is again charged closing costs, which typically are rolled into the loan balance to be financed.

28.    Predatory subprime lenders knowingly make loans with high loan-to-value ratios. This skims the equity from the property, places the borrower in jeopardy of default, and puts the borrower in the position of spending years paying off additional loan balances without developing any equity.

29.    While some borrowers in the subprime market are genuine credit risks, many low-income, elderly and minority borrowers have been steered into subprime loans by lenders who are reluctant or refuse to offer them prime loans. Predatory lenders target such consumers for subprime loans. In this fashion, predatory lenders obtain more money by charging higher rates and fees than necessary or appropriate simply by inducing the borrowers to enter into a subprime rather than prime loan transaction. Studies by Freddie Mac and Standard & Poor's have found that 20% to 30% of borrowers who receive subprime mortgages could have qualified for traditional mortgages at the lower rates offered by banks to prime borrowers. Thus, subprime lenders make loans and offer equity lines on residences to borrowers with "A" credit ratings, but charge the borrowers interest rates of "B" credit consumers. The practice of targeting communities with a primarily low-income, elderly, or racial/ethnic minority population for imposition of unjustifiably expensive loan terms is known as "reverse redlining."

30.    Subprime lending has grown rapidly in recent years. According to HUD, subprime loans for home purchases increased by 56.3% from 1993 to 1998, in a period of economic growth and extremely low unemployment, compared to an increase of only 16.4% for conventional products. Annual growth since 1993 has exceeded 40% in total subprime loan originations.

31.    Predatory subprime lenders often charge interest rates unrelated to credit risk and

COMPLAINT

6

1    charge or impose large, up-front loan fees and costs.

2    **DEFENDANTS' ROLE AS PREDATORY LENDERS**

3        32.    Defendants have engaged in a scheme of targeting elderly, female, minority and/or

4    low-income individuals to deceitfully and wrongfully induce them to enter into loan contracts

5    with Defendants. Furthermore, Defendants have ignored and/or circumvented statutory and

6    industry safeguards intended to protect the financially unsophisticated borrowers that Defendants

7    target.

8        33.    Ameriquest is the nation's largest retail lender to borrowers with poor credit

9    histories or low incomes. Ameriquest targets persons in low-income neighborhoods for soliciting

10    high-priced mortgages.

11        34.    In 1996, Ameriquest, then known as Long Beach Mortgage Company ("LBMC"),

12    entered into a $4 million settlement with the U.S. Department of Justice ("DOJ") arising from

13    charges that it engaged in discriminatory pricing practices. A true and correct copy of the

14    complaint and settlement agreement are attached as **Exhibits A and B**, respectively. The DOJ's

15    charges included allegations that LBMC charged fees and interest rates on loans to older African-

16    American female borrowers that were four times higher than the fees and interest rates charged to

17    younger male borrowers of other races.

18        35.    In April 1997, less than one year after entering into the settlement agreement with

19    the DOJ, LBMC changed its name to Ameriquest Mortgage Company. A true and correct copy

20    of LBMC's amended articles of incorporation is attached as **Exhibit C**. Around the same time,

21    Long Beach Financial Services ("LBFS"), LBMC's parent company, changed its name to

22    Ameriquest Capital Corporation. A true and correct copy of LBFS's amended articles of

23    incorporation is attached as **Exhibit D**.

24        36.    Defendants aggressively solicit low-income borrowers to enter into refinancing

25    and other residential real estate transactions involving principal amounts that exceed the

26    borrowers' ability to repay. Thus, at the outset of these transactions, Defendants anticipate that

27    the transactions may well lead to default and foreclosure. Defendants remain unconcerned,

28    however, because they obtain exorbitant fees up-front and unconscionable interest rates in the

COMPLAINT

7

1    interim, making the transactions much more profitable than conventional mortgages.

2        37.    Defendants unfairly and unlawfully obtain origination fees, excessive interest

3    payments, and prepayment penalties by extending loans to consumers, including Plaintiffs and

4    Class Members, for which they do not qualify and cannot afford. Defendants achieve this

5    unlawful result by falsifying the income of Plaintiffs and Class Members stated on mortgage

6    applications, without the applicants' knowledge or consent.

7        38.    In addition, Defendants offer consumers who are female, elderly and/or of

8    minority race or national origin loans with substantially less favorable terms than those offered by

9    Defendants to males, non-seniors and persons of other races.

10        39.    Defendants deceive and otherwise harm unsuspecting consumers by inducing them

11   to enter into inappropriate loans and line of credit transactions that saddle them with principal

12   obligations that are unlikely to be able to be repaid when compared to the consumers' monthly

13   income and ability to pay.

14        40.    At the heart of this scheme are Defendants' persistent "bait and switch" tactics.

15   Defendants induce customers to agree to enter into loan transactions by promises of "no costs" up

16   front, fixed interest rates, all-inclusive low monthly payments and/or particular fees and interest

17   rates. When the paperwork is presented to the customers for signature, however, the terms are

18   different from those promised, with huge up-front costs, variable interest rates instead of fixed

19   rates, monthly payments that do not include taxes and insurance, and/or higher fees or interest

20   rates than previously represented. By these and other unlawful tactics, including falsifying

21   borrowers' income without their knowledge or consent, Defendants qualify the borrowers for

22   loans that they would not otherwise be able to obtain and induce the borrowers to go forward with

23   the transactions. At the time of the transactions, however, the borrowers frequently are unaware

24   that the terms of the mortgage contract do not match Defendants' prior representations.

25   Furthermore, Defendants or their agents mislead the borrowers by misrepresenting the contents of

26   documents and telling the borrowers there is no need or time to read them—just "sign here."

27        41.    In furtherance of the "bait and switch" scheme, Defendants failed to provide

28   required disclosures to Plaintiffs and Class Members and misled them as to the true terms and

COMPLAINT

8

1   costs of their loan transactions.  Defendants instructed Plaintiffs and Class Members to sign as

2   indicated on the mortgage applications and contracts, without providing them an opportunity to

3   review the papers, and while misrepresenting their contents as alleged above.  Additionally, in the

4   case of Plaintiffs and Class Members that are illiterate in English, Defendants failed to inform or

5   provide translations of the contents of the mortgage applications and contracts.

6       42.    Defendants' marketing and sales schemes have been implemented through, among

7   other means, standardized training, conditioning and oral scripts, uniform written materials

8   disseminated to targeted homeowners, and uniform business contracts and forms.  Defendants

9   have developed and implemented a misleading sales approach or "sales pitch" used by

10  Defendants' agents and employees when soliciting potential or existing borrowers.

11      43.    These oral misrepresentations were in conformity with standardized letters,

12  brochures, and other advertisements developed and were used by Defendants to induce consumers

13  to enter subprime loan transactions.

14      44.    As part and parcel of their common course of conduct, Defendants' business

15  practices include oppressive and harassing marketing techniques.  Defendants use these high-

16  pressure tactics to induce consumers to enter into residential loan transactions.  Defendants

17  especially target past customers to enter into new loans and existing customers to increase their

18  loans by "rolling in" other debts.  With respect to existing customers, Defendants "flip" the

19  existing loans into new loans, adding to the principal amounts due, and tacking on additional high

20  loan generation fees (for instant profit to Defendants).

21      45.    As part of their corporate marketing plan and wrongful scheme, Defendants

22  intentionally and particularly targeted homeowners who are senior citizens, racial minorities,

23  widows, persons with low income, and/or residents of geographic areas known to be underserved

24  by conventional lenders, including without limitation the City of East Palo Alto in San Mateo

25  County, California.  These consumers are bombarded by mailers, telephone calls and personal

26  visits by Defendants' sales personnel inviting them to "consolidate their debts" or obtain money

27  for remodeling through residential equity loans and refinancing transactions, all under the

28  misleading pretext that such loans are at truly "no cost" and will enable consumers to reduce their

COMPLAINT

9

1    monthly payments.  The true purpose of these transactions is for Defendants to obtain huge up-

2    front fees and impose high interest rates.  Borrowers' rarely derive any benefit from the refinance

3    and monthly payments are often increased, rather than reduced, as a result of transacting with

4    Defendants.

5         46.    In connection with their "bait and switch" scheme, Defendants also have engaged

6    in false and misleading advertising and other marketing to induce consumers to enter into

7    residential real estate loan transactions that were financially detrimental to those consumers and

8    known by Defendants to be unconscionable, especially when compared to the risks involved and

9    the income of the borrowers.

10        47.    These marketing and advertising materials falsely emphasize that the loans will be

11   tailored to meet the needs of the borrower at reasonable rates and without obligation.

12   Defendants' marketing and advertising materials specifically target low-income and financially

13   troubled individuals.  For example, one of Defendants' brochures published and disseminated in

14   California provides in pertinent part:

15                          YOU DESERVE RESPECT

16
             It's a whole new approach to lending.  We realize that, as a homeowner,
17       you have proven yourself to be a responsible, hard-working individual.  And that
         is a significant factor in our loan approval process.  In fact, we don't require the
18       strict lending guidelines of most banks.  And we don't charge the high rates that
         many finance companies charge.  We look beyond the numbers and credit
19       reports.  We look at you - the person who worked hard enough to buy a home.
         Our flexible lending guidelines let us work with most credit situations.  We can
20       help even if you've experienced bankruptcy, credit problems, high debt ratios,
         mortgage rates, defaults and liens, or if you're self-employed with a hard-to-
21       prove income.

22                        YOU DESERVE THE PERFECT LOAN
23
             With the equity you built up, you've already passed the first step in our
24       easy loan approval process.  Whether you're buying a new home or refinancing
         your current one, we can customize a loan to fit whatever your needs or special
25       situation may be.  With our competitive rates and flexible payments, you can
         maximize your budget.  You can even pull out extra cash to consolidate your
26       high-interest credit cards and debt, and ultimately, lower your monthly payments.
         Or you can use that extra money to make home improvements, pay school tuition,
27       buy a new car or take that well-deserved vacation.  Whatever you want....
28

COMPLAINT
                                          10

1    48.    As herein alleged, the representations contained in this advertisement and other

2    similar advertisements disseminated by Defendants were and are materially false and misleading.

3    49.    Further, Plaintiffs are informed and believe, and on that basis allege, that

4    Defendants' conduct, as herein alleged, is part of a pattern and practice of predatory lending that

5    discriminates against low-income borrowers on the basis of race, national origin, age and/or

6    gender.

## DEFENDANTS' CONDUCT TOWARD THE NAMED PLAINTIFFS
## TYPIFIES DEFENDANTS' WRONGFUL CONDUCT

### I.    Plaintiff Nona Knox

10    50.    Plaintiff Nona Knox ("Mrs. Knox") is an elderly woman who owns and resides in

11    a house in East Palo Alto. At the time of the events described herein, she was caring for her

12    elderly husband, Albert Knox ("Mr. Knox"), who was suffering from cancer. Mr. Knox passed

13    away in September 2004. Mrs. Knox maintains this action on her own behalf and on the behalf of

14    her husband's estate.

15    51.    In early 2002, Mrs. Knox responded by telephone to an unsolicited advertisement

16    mailed to her by Ameriquest. While the mailing was in fact a simple solicitation, it was designed

17    by Ameriquest to appear to be a ready-to-execute contract. Ameriquest made an appointment

18    with Mrs. Knox and sent two men, Richard Valle ("Valle") and another Ameriquest agent, to the

19    Knox home. Mrs. Knox informed Valle that she and her husband wanted to refinance their home

20    to pay off credit cards and a car loan and to obtain money to remodel their bathroom.

21    52.    Mrs. Knox showed Valle their then current mortgage terms and said that she

22    wanted to refinance at a fixed rate. To the best recollection of Mrs. Knox, Valle responded, "We

23    can do better," and asked Mrs. Knox and her husband their ages. Mrs. Knox was 66 at the time;

24    Mr. Knox was 79.

25    53.    Valle filled out the entire loan application for Mrs. Knox. He did not have Mr. or

26    Mrs. Knox write down any information. Rather, in response to Valle's questions about the

27    Knoxes' income and assets, Mrs. Knox provided Valle with bank statements, social security

28    check stubs, and pension information, which together documented a monthly income of

COMPLAINT

11

1   approximately $4,000. The loan application, however, lists the Knoxes' monthly income as

2   $6,800. This false amount was inserted into the mortgage application without the knowledge or

3   consent of Mr. or Mrs. Knox.

4        54.    Valle also told Mrs. Knox that the loan would be at "no cost" to them, and he

5   promised that they would receive $20,000 cash back for the bathroom remodel.

6        55.    Mrs. Knox asked Valle whether he was offering the best rate. To Mrs. Knox's

7   best recollection, Valle responded, "I'm giving you the lowest possible rate for a person your

8   age."

9        56.    Valle and the other Ameriquest agent returned to the Knox home on May 13,

10  2002, to complete the signing of the mortgage contract. The contract was dated May 10, 2002.

11  The loan signing took only about one hour, during which Valle did most of the talking. Valle did

12  not give Mrs. Knox an opportunity to read even a single page of the loan contract; instead, he

13  flipped through the contract page by page while substantially stating, "this is for [purported

14  purpose of the page], sign here." When Mrs. Knox inquired why she and her husband needed to

15  sign blank pages, Valle responded, to the best of Mrs. Knox's recollection, "You just need to sign

16  these to get things done."

17       57.    At the May 13 signing, the loan contract presented to Mr. And Mrs. Knox by Valle

18  and the other Ameriquest agent included a Notice of Right to Cancel dated May 10, 2002. This

19  notice was ineffective, however, since Defendants failed to fill in both the "signing date" and the

20  "final date to cancel." Furthermore, even had this information been included, the notice still

21  would have been ineffective since Valle did not leave any copies of the notice with the Knoxes.

22       58.    A notary brought to the Knox home by Valle and the other Ameriquest agent took

23  Mr. and Mrs. Knox's fingerprints, checked their identification, and signed and stamped the notary

24  book. A notary stamp does not appear, however, anywhere on the purported copy of the loan

25  contract later provided to the Knoxes.

26       59.    Valle did not leave a copy of the loan contract or any other papers with Mrs. Knox,

27  nor did he say anything to her about points, fees, or the insufficiency of income.

28       60.    Valle did not tell Mr. or Mrs. Knox that the loan contract—which was based on the

COMPLAINT

1    loan application filled out by Valle—falsely stated that the Knoxes' monthly income was $6,800

2    and that Mr. Knox was self-employed by the "Knox Music Academy," a fictitious entity

3    purportedly operating at the Knox home address.  Mr. and Mrs. Knox did not know that this

4    fictitious income from a fictitious business was included in the loan contract and did not suggest

5    or consent to it.  Mr. Knox was not a music teacher of any kind.  Indeed, at the time of the loan

6    application and contract signing, Mr. Knox was suffering from terminal cancer and related

7    medical conditions, and was unable to tend to rudimentary daily activities without the assistance

8    of Mrs. Knox.

9        61.    Ameriquest did not provide Mr. or Mrs. Knox with possession of the loan

10   documents until after the loan had been approved, at which time Valle returned to the Knox home

11   with a disbursement check.  The check was for only approximately $8,000, even though Valle

12   had promised the Knoxes that they would receive approximately $20,000 in cash.  According to

13   Valle, the discrepancy was due to Mr. and Mrs. Knox needing to pay off more bills.

14       62.    Unbeknownst to Mr. and Mrs. Knox, the loan was "bought down" from 12.5% to

15   8.252% fixed APR at a cost of $14,875, which was added to the loan principal without the

16   knowledge or consent of Mr. or Mrs. Knox.  The Knoxes also paid $2,726 in closing costs and

17   $1,114.80 for the first month's interest.  The Knoxes' total settlement charges were $18,715.80,

18   despite having been told that the loan would be at "no cost" to them.

19   **II.    Plaintiff Maria Torres**

20       63.    Plaintiff Maria Torres ("Mrs. Torres") received an unsolicited phone call from an

21   Ameriquest agent, Jesús Elizalde ("Elizalde"), urging her to refinance her then current mortgage.

22   Mrs. Torres was not prepared to commit, and while she remained undecided Elizalde repeatedly

23   called her to urge her to refinance.

24       64.    After Elizalde convinced her to refinance, Mrs. Torres traveled to his office to

25   provide information.  During this meeting all discussions regarding the loan took place in

26   Spanish, as Mrs. Torres speaks no English.

27       65.    During the first meeting, Elizalde had Mrs. Torres sign various papers.  He did not

28   inform Mrs. Torres about the contents of the papers or their purpose.  Mrs. Torres did not read or

COMPLAINT

13

1    fill out any paperwork, nor could she, as she is illiterate in English. Mrs. Torres informed

2    Elizalde that her monthly income was approximately $1,700 and that she occasionally received

3    approximately $500 in gifts from her children. Mrs. Torres provided pay stubs from her janitorial

4    job and other basic information to Elizalde. The loan application, however, lists Mrs. Torres'

5    monthly income as $4,500—an amount inserted into the mortgage application without Mrs.

6    Torres' knowledge or consent. No information was provided regarding Mrs. Torres' husband or

7    his income.

8         66.     Approximately one month later, Elizalde told Mrs. Torres to come back to his

9    office to complete the transaction. Mrs. Torres returned to Elizalde's office. Elizalde requested

10    that Mrs Torres sign various documents; she signed where Elizalde indicated, but could not read

11    the documents to confirm their contents because all were in English. Elizalde did not inform Mrs.

12    Torres of the contents of the documents. Elizalde never told Mrs. Torres whether the interest rate

13    was fixed or variable, that there were prepayment penalties and broker fees, or that her income

14    had been falsified.

15         67.     The loan contract presented to Mrs. Torres for signature included a Notice of Right

16    to Cancel. This notice was ineffective, however, since Defendants failed to fill in both the

17    "signing date" and the "final date to cancel." Furthermore, even had this information been

18    included, the notice still would have been ineffective since the document was in English. Finally,

19    even had Defendants presented a Spanish-translation copy to Mrs. Torres at the signing, the

20    notice still would have been ineffective because Defendants did not leave such a copy with Mrs.

21    Torres.

22    **III.**     **Plaintiffs Heladio Arellanes and Maria Arellanes**

23         68.     Plaintiffs Heladio Arellanes and Maria Arellanes ("Mr. and Mrs. Arellanes") were

24    referred to Argent's agent, Rogelio Mota ("Mota"), by a neighbor. All meetings and

25    conversations took place in Spanish, as Mr. and Mrs. Arellanes do not speak English.

26         69.     Mr. and Mrs. Arellanes went to Mota's office and informed him that they were

27    interested in refinancing their then current mortgage because they had a high interest rate. Mr.

28    and Mrs. Arellanes specifically requested a loan with a lower interest rate, and one that included

COMPLAINT

taxes and insurance. This first meeting lasted only fifteen minutes. Mr. and Mrs. Arellanes gave Mota copies of their then current mortgage papers, pay stubs and bank statements. Mr. and Mrs. Arellanes did not fill out or sign any paperwork.

70.     Mota contacted Mr. and Mrs. Arellanes approximately thirty days later and informed them that the loan had been approved. He asked them to come by his office to sign the forms. The loan application falsely lists Mr. and Mrs. Arellanes' monthly income as $4,761.49. Neither Mr. nor Mrs. Arellanes had knowledge of this misstatement of income nor suggested or consented to it.

71.     During the second meeting at Mota's office, Mota told Mr. and Mrs. Arellanes where to sign the documents, without providing any translation or information regarding their contents. The documents were entirely in English. Mr. and Mrs. Arellanes did not read the documents, as they are illiterate in English. Mota's only explanation regarding the documents was to promise Mr. and Mrs. Arellanes that their monthly payments would be lower.

72.     Specifically, Mota never informed Mr. and Mrs. Arellanes, *inter alia*, that the interest rate on the new loan was variable as opposed to fixed; that there was a prepayment penalty; that their income had been falsified; or that they had a right to rescind or cancel the contract before a certain date. Mota gave Mr. and Mrs. Arellanes an unsigned copy of the documents, but only in English.

73.     The loan contract presented to Mr. and Mrs. Arellanes for signature included a Notice of Right to Cancel. This notice was ineffective, however, since Defendants failed to fill in both the "signing date" and the "final date to cancel." Furthermore, even had this information been included, the notice still would have been ineffective since the document was in English. Finally, even had Defendants presented a Spanish-translation copy to Mr. and Mrs. Arellanes at the signing, the notice still would have been ineffective because Defendants did not leave such a copy with them.

//

//

//

COMPLAINT

15

1

**CAUSES OF ACTION**

2

**FIRST CAUSE OF ACTION**
3
**Violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and
Federal Reserve Regulation Z, 12 C.F.R. § 226.1 *et seq.*
(Against All Defendants)**
4

5      74.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through

6    73. inclusive, as if fully set forth herein.

7      75.    Defendants Ameriquest and Argent are creditors within the meaning of the Truth

8    in Lending Act as implemented by Regulation Z.

9      76.    Ameriquest violated TILA and Regulation Z by:

10          a.    Failing to provide Plaintiffs and Class Members with material disclosures

11   in a form they could keep prior to consummation, in violation of 12 C.F.R. § 226.17;

12          b.    Failing to provide Plaintiffs and Class Members with notices of right to

13   cancel that were clear, conspicuous, and reflective of the parties' legal obligations, in violation of

14   12 C.F.R. § 226.23;

15          c.    Failing to take into account the ability of Plaintiffs and Class Members to

16   repay their loans, in violation of 15 U.S.C. § 1639(h); and

17          d.    Subjecting the loans to a prepayment penalty, in violation of 15 U.S.C.

18   § 1639(c).

19     77.    Plaintiffs and Class Members were and continue to be, as a direct and proximate

20   result of these violations, damaged in a sum according to proof, not yet ascertained, including, but

21   not limited to, statutory damages and all amounts paid or to be paid to Defendants, excluding

22   principal payments.

23     WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

24   //

25   //

26   //

27   //

28   //

COMPLAINT

16

**SECOND CAUSE OF ACTION**
Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*
and Regulation X, 24 C.F.R. § 3500.1 *et seq.*
(Against All Defendants)

78.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 77, inclusive, as if fully set forth herein.

79.    The loan agreements between Plaintiffs and Class Members, on the one hand, and Defendants, on the other hand, are federally related mortgage loans as defined by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602.

80.    Defendants violated RESPA by failing to provide the disclosures required by RESPA in an accurate and timely fashion.

81.    Plaintiffs and Class Members were and continue to be, as a direct and proximate result of these violations, damaged in a sum according to proof, not yet ascertained, including, but not limited to, all amounts paid or to be paid to Defendants, excluding principal payments.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

**THIRD CAUSE OF ACTION**
Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*
(Against All Defendants)

82.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 81, inclusive, as if fully set forth herein.

83.    Defendants Ameriquest and Argent are entities that engage in transactions related to residential real estate, and the loans made by Defendants to Plaintiffs and Class Members, as alleged herein, were such transactions.

84.    Plaintiffs and Class Members are minorities.

85.    Plaintiffs are informed and believe, and on that basis allege, that Defendants discriminated against them and Class Members, on the basis of their race and/or gender, in the terms and conditions of the loan contracts entered into between Plaintiffs and Class Members, on the one hand, and Defendants, on the other.

86.    Plaintiffs and Class Members have been damaged as a result of Defendants'

COMPLAINT

17

1    discriminatory conduct.

2         WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

3

4                          **FOURTH CAUSE OF ACTION**
      **Violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.***
5                          **(Against All Defendants)**

6         87.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through

7    86, inclusive, as if fully set forth herein.

8         88.    Defendants Ameriquest and Argent are creditors within the meaning of 15 U.S.C.

9    § 1691(e).

10        89.    The loan contracts that Plaintiffs and Class Members entered into with Defendants

11   were credit transactions.

12        90.    Plaintiffs are informed and believe, and on that basis allege, that Defendants

13   discriminated against them and Class Members, on the basis of race, national origin and/or

14   gender, in the terms and conditions of the loan contracts entered into between Plaintiffs and Class

15   Members, on the one hand, and Defendants, on the other.

16        91.    Plaintiffs and Class Members have been damaged as a result of Defendants'

17   discriminatory conduct.

18        WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

19

20                          **FIFTH CAUSE OF ACTION**
      **Violation of the Unruh Act, California Civil Code § 51**
21                          **(Against All Defendants)**

22        92.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through

23   91, inclusive, as if fully set forth herein.

24        93.    Plaintiffs are informed and believe, and on that basis allege, that Defendants

25   discriminated against them and Class Members, on the basis of race, national origin, and/or

26   gender, in the terms and conditions of the loan contracts entered into between Plaintiffs and Class

27   Members, on the one hand, and Defendants, on the other.  Specifically, the terms and conditions

28   offered to Plaintiffs and Class Members were less favorable than those offered by Defendants to

COMPLAINT

18

1    borrowers not better qualified than Plaintiffs and Class Members but of different race, national

2    origin and/or gender.

3         94.    Plaintiffs and Class Members have been damaged as a result of Defendants'

4    discriminatory conduct.

5         WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

6

7    **SIXTH CAUSE OF ACTION**
**Violation of California Business and Professions Code § 17200 *et seq.***
**(Against All Defendants)**

8

9         95.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through

10    94, inclusive, as if fully set forth herein.

11         96.    Plaintiffs and Class Members are informed and believe, and on that basis allege,

12    that Defendants, and each of them, engaged in numerous acts and/or practices of unfair

13    competition within the state of California in violation of Business and Professions Code section

14    17200 *et seq.* and similar sister-state statutes proscribing deceptive business practices. These acts

15    or practices include without limitation the following:

16         a.    Offering and making Plaintiffs and Class Members loans, while failing to

17    take into account their ability to repay such loans;

18         b.    Misrepresenting to Plaintiffs and Class Members the terms on which

19    Defendants were willing to enter into refinancing or other loan transactions with them;

20         c.    Failing to provide required notices and copies of loan documents;

21         d.    Falsifying information in loan applications of Plaintiffs and Class

22    Members, without their knowledge or consent;

23         e.    Discriminating on the basis of race, national origin, gender and/or age; and

24         f.    Violating the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; the Real

25    Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*; the Fair Housing Act, 42 U.S.C.

26    § 3601 *et seq.*; the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*; California Business

27    and Professions Code section 17500 *et seq.*; the Consumers Legal Remedies Act, California Civil

28    Code section 1750 *et seq.*; or any other applicable statute.

COMPLAINT

1    97.    The above-described unlawful, unfair and fraudulent business practices present an

2    ongoing threat of injury to Plaintiffs, Class Members and the general public. Plaintiffs, Class

3    Members and the general public continue to be financially harmed by such conduct and, unless it

4    is restrained, Defendants, and each of them, will continue to engage in such conduct.

5    98.    Pursuant to California Business and Professions Code section 17203 and similar

6    state statutes, Plaintiffs and Class Members are entitled to an order of this Court enjoining

7    Defendants, and each of them, from continuing to engage in unfair competition as defined in

8    Business and Professions Code section 17200 in the State of California and similar statutes of

9    sister-states. Plaintiffs, Class Members, and the general public will be irreparably harmed if such

10    an order is not granted.

11    99.    Plaintiffs and Class Members have been injured by Defendants' conduct and are

12    entitled to restitution and disgorgement of profits realized by Defendants, and each of them, as a

13    result of their unfair competition as defined in Business and Professions Code section 17200 *et*

14    *seq.* and similar sister-state statutes.

15    WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

16

17    **SEVENTH CAUSE OF ACTION**
     **Violation of California Business and Professions Code § 17500 *et seq.***
     **(Against All Defendants)**

18

19    100.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through

20    99, inclusive, as if fully set forth herein.

21    101.    The advertising, promotional materials and other written and oral promotional

22    efforts undertaken by Defendants to induce consumers to enter into loan transactions with

23    Defendants contained statements that were deceptive, untrue and/or misleading, or omitted

24    material information, and which were known, or by the exercise of reasonable care should have

25    been known, by Defendants, and each of them, to be deceptive, untrue and/or misleading, in

26    violation of California Business and Professions Code section 17500 *et seq.* and similar sister-

27    state statutes proscribing false advertising.

28    102.    Defendants' use of various forms of advertising media to advertise, call attention

COMPLAINT

20

1    to or give publicity to the sale of their goods and services, and other practices, as set forth above,

2    which were not as advertised or as otherwise represented, constituted unfair competition;

3    deceptive, untrue and/or misleading advertising; and unlawful business practice within the

4    meaning of California Business and Professions Code sections 17200 *et seq.* and 17500 *et seq.*

5    These advertisements and practices have deceived and are likely to deceive the consuming public

6    in violation of those sections.

7        103.    Pursuant to California Business and Professions Code sections 17203 and 17535,

8    Plaintiffs and Class Members, individually and on behalf of the public, seek an order of this Court

9    enjoining Defendants, and each of them, from continuing to engage in their false advertising

10   practices.  The public, Plaintiffs and Class Members will be irreparably harmed if such an order is

11   not granted.

12       104.    Plaintiffs and Class Members have been injured by Defendants' conduct and are

13   entitled to restitution and disgorgement, individually and on behalf of the public, of profits

14   realized by Defendants, and each of them, as a result of their unfair, unlawful, deceptive, untrue

15   and/or misleading advertising practices.

16       WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

17

18                        **EIGTH CAUSE OF ACTION**
                  **Violation of California Civil Code § 1750 *et seq.***
19                          **(Against All Defendants)**

20       105.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through

21   104, inclusive, as if fully set forth herein.

22       106.    By their wrongful conduct as alleged herein, Defendants created, engaged in

23   and/or participated in unfair acts or practices in violation of the Consumers Legal Remedies Act,

24   California Civil Code section 1750 *et seq.*, and similar sister-state statutes.

25       107.    By their conduct, Defendants engaged in unfair or deceptive acts or practices in

26   transactions intended to result in the sale of goods or services in violation of California Civil

27   Code section 1770, including but not limited to:

28

COMPLAINT
                                        21

1           a.      Representing that their goods or services have characteristics, uses, or

2  benefits which they do not have, in violation of section 1770(a)(5);

3           b.      Advertising goods or services with intent not to sell them as advertised, in

4  violation of section 1770(a)(9); and/or

5           c.      Representing that the subject of a transaction has been supplied in

6  accordance with a previous representation when it has not, in violation of section 1770(a)(16).

7      108.    Plaintiffs and Class Members have as a direct and proximate result of Defendants'

8  unfair or deceptive acts or practices suffered and continue to suffer damages in a sum according

9  to proof, not yet ascertained, including, but not limited to, all amounts paid or to be paid to

10  Defendants by Plaintiffs and Class Members, excluding principal payments.

11      109.    Pursuant to section 1780, Plaintiffs and Class Members seek to enjoin Defendants,

12  and each of them, from engaging in their unfair methods of competition or unfair or deceptive

13  acts or practices, as alleged herein.

14      WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

15

16                        **NINTH CAUSE OF ACTION**
                                **Unjust Enrichment**

17                       **(Against All Defendants)**

18      110.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through

19  109, inclusive, as if fully set forth herein.

20      111.    By their wrongful acts and omissions, Defendants were unjustly enriched at the

21  expense of Plaintiffs and Class Members.

22      112.    Plaintiffs and Class Members are entitled to restitution from Defendants and

23  disgorgement of all profits, benefits and other compensation obtained by Defendants through their

24  wrongful conduct.

25      WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

26  //

27  //

28  //

COMPLAINT

22

**PRAYER FOR RELIEF**

1.     Certification of a plaintiff class;

2.     Compensatory and general damages according to proof;

3.     Special damages according to proof;

4.     Restitution and disgorgement according to proof;

5.     Declaratory relief;

6.     Injunctive relief;

7.     Prejudgment interest at the maximum legal rate;

8.     Punitive and exemplary damages according to proof;

9.     Costs of the proceedings herein;

10.     Reasonable attorneys' fees; and

11.     All such other and further relief as the Court deems proper.

Dated:  January 13, 2005

FENWICK & WEST LLP

By: _____
        Aaron Myers

Attorneys for Plaintiffs
NONA KNOX, ALBERT KNOX, MARIA
TORRES, HELADIO ARELLANES AND
MARIA ARELLANES

COMPLAINT

23

1

## DEMAND FOR JURY TRIAL

2    Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 30-6, Plaintiffs hereby

3    demand a trial by jury.

4

5    Dated:  January 13, 2005                FENWICK & WEST LLP

6

7                                            By: _____
                                                  Aaron Myers
8
                                             Attorneys for Plaintiffs
9                                            NONA KNOX, ALBERT KNOX, MARIA
                                             TORRES, HELADIO ARELLANES AND
10                                           MARIA ARELLANES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                           B9042/00448/LIT/1219198

28

COMPLAINT
                                            24