# EXHIBIT D

Marcelos.txt

1

```
 1                           PAGES 1 - 56

 2              UNITED STATES DISTRICT COURT

 3              NORTHERN DISTRICT OF CALIFORNIA

 4          BEFORE THE HONORABLE WILLIAM H. ALSUP

 5 RICARDO MARCELOS,                    )
                                        )
 6              PLAINTIFF,              )
                                        )
 7  VS.                                 ) NO. C 08-00056 WHA
                                        )
 8 EDWIN MAURICIO PARADA DOMINGUEZ,     )
   GLENDA PARADA, LORENZO PARADA,       )
 9 VIKI RAAB, COUNTRYWIDE HOME LOANS,   )
   ARGENT MORTGAGE COMPANY, LLC,        )
10 PRIMESTAR FINANCIAL SERVICES,        )
   SHOAIB MAHMUD, FINANCIAL TITLE       )
11 COMPANY, NEW CENTURY TITLE           )
   COMPANY, RECONSTRUCT COMPANY,        )
12 N.A., AND DOES 1 THROUGH 100,        )
                                        ) SAN FRANCISCO, CALIFORNIA
13              DEFENDANTS.             ) TUESDAY
                                        ) FEBRUARY 26, 2008
14 _____)

15                  TRANSCRIPT OF PROCEEDINGS

16 APPEARANCES:

17 FOR PLAINTIFF          LIUZZI, MURPHY & SOLOMON, LLP
                          101 MONTGOMERY STREET, 27TH FLOOR
18                        SAN FRANCISCO, CALIFORNIA  94104
                     BY:  MICHAEL E. HALE, ESQUIRE
19
                          COMMUNITY LEGAL SERVICES IN EAST PALO
20                           ALTO
                          2117(B) UNIVERSITY AVENUE
21                        EAST PALO ALTO, CALIFORNIA  94303
                     BY:  SHIRLEY HOCHHAUSEN, ESQUIRE
22
   (FURTHER APPEARANCES ON FOLLOWING PAGE)
23

24 REPORTED BY:   JOAN MARIE COLUMBINI, CSR #5435, RPR
                  OFFICIAL COURT REPORTER U.S. DISTRICT COURT
25
 □
```

2

```
 1 APPEARANCES (CONTINUED):

 2
   FOR DEFENDANT          COUNTRYWIDE
 3 COUNTRYWIDE HOME       5220 LAS VIRGENES ROAD
   LOANS, INC.           MS AC-11
```

Page 1

Marcelos.txt

```
 4                      CALABASAS, CALIFORNIA  91302
                   BY:  DAVID A. BROOKS, ESQUIRE
 5
   FOR DEFENDANTS         SHARTSIS, FRIESE, LLP
 6 NEW CENTURY TITLE      ONE MARITIME PLAZA, EIGHTEENTH FLOOR
   AND VIKI RAAB          SAN FRANCISCO, CALIFORNIA  94111
 7                   BY:  SIMONE M. KATZ, ESQUIRE

 8
   FOR DEFENDANTS         LAW OFFICE OF STEVE ROOD
 9                       405 14TH STREET, SUITE 212
                        OAKLAND, CALIFORNIA  94612
10                   BY:  STEVEN JAY ROOD, ESQUIRE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1         PROCEEDINGS; TUESDAY, FEBRUARY 26, 2008

 2

 3            THE CLERK:  CALLING CIVIL ACTION NO. C 08-0056,

 4 MARCELOS VERSUS EDWIN MAURICIO PARADA DOMINGUEZ, ET AL.

 5            PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

 6            MR. BROOKS:  GOOD MORNING, YOUR HONOR.  DAVID

 7 BROOKS, APPEARING ON BEHALF OF DEFENDANT COUNTRYWIDE HOME

 8 LOANS, INC.
```

Page 2

Marcelos.txt

9          THE COURT:  GOOD MORNING.

10         MS. KATZ:  GOOD MORNING, YOUR HONOR.  SIMONE KATZ,

11 APPEARING ON BEHALF OF NEW CENTURY TITLE COMPANY AND VIKI RAAB.

12         THE COURT:  SIMONE KATZ.  AND YOU ARE APPEARING FOR?

13         MS. KATZ:  NEW CENTURY TITLE COMPANY, THE ESCROW

14 COMPANY.

15         MR. ROOD:  GOOD MORNING, YOUR HONOR.  STEVEN ROOD,

16 R-O-O-D, FOR N.D. FINANCIAL AND SHOAIB MAHMUD, WHO IS PRESENT

17 IN COURT.

18         THE COURT:  I'M SORRY.  I CAN'T HEAR YOU.

19         MR. ROOD:  I'M SORRY.  N.D. FINANCIAL AND SHOAIB

20 MAHMUD, WHO IS PRESENT IN COURT.

21         THE COURT:  MAHMUD.  ALL RIGHT.

22         MR. ROOD:  YES.

23         THE COURT:  OKAY.  THANK YOU.

24         MS. HOCHHAUSEN:  GOOD MORNING, YOUR HONOR.  I'M

25 SHIRLEY HOCHHAUSEN WITH COMMUNITY LEGAL SERVICES IN EAST PALO

                                                        4

1 ALTO ON BEHALF OF THE PLAINTIFF, MR. MARCELOS.

2          MR. HALE:  GOOD MORNING, YOUR HONOR.  MICHAEL HALE,

3 APPEARING FOR PLAINTIFFS.

4          THE COURT:  MICHAEL?

5          MR. HALE:  HALE, H-A-L-E.

6          THE COURT:  ALL RIGHT.  ANY OTHER APPEARANCES?

7          MS. HOCHHAUSEN:  ONLY TO POINT OUT TO YOU, YOUR

8 HONOR, THAT THE MARCELOS FAMILY IS HERE IN THE FIRST ROW ON

9 YOUR LEFT.

10         THE COURT:  MR. RICARDO MARCELOS IS HERE?

11         MS. HOCHHAUSEN:  YES.

12         MR. MARCELOS:  YES.

13         THE COURT:  ANY OTHER DEFENDANTS HERE?

Marcelos.txt

14          MR. HALE:  I DON'T BELIEVE SO.

15          THE COURT:  WHO IS THAT?

16          MR. ROOD:  THAT'S MR. MAHMUD, YOUR HONOR.

17          THE COURT:  WHO IS THAT?

18          MS. HOCHHAUSEN:  THAT'S MY STUDENT, YOUR HONOR, WHO

19 HAS COME TO OBSERVE THE PROCEEDINGS TODAY.

20          THE COURT:  AND THE LADY THERE IN WHITE?

21          UNIDENTIFIED SPEAKER:  I AM A CLERK WITH --

22          THE COURT:  YOU'RE A CLERK, OKAY.

23          WHERE IS MR. PARADA?  HAS HE BEEN SERVED?

24          MR. HALE:  YES, HE HAS.

25          THE COURT:  WAS HE SERVED WITH THE ORDER TO APPEAR
▯
                                                          5


1 TODAY?

2          MR. HALE:  YES, HE WAS.

3          THE COURT:  HOW WAS HE SERVED?

4          MR. HALE:  HE WAS SERVED, I BELIEVE, AT HIS

5 GIRLFRIEND'S HOUSE, ACCEPTED SERVICE ON HIS BEHALF, AND WE WERE

6 TOLD HE RECEIVED IT, AS SHE CALLED THE PLAINTIFF AND SAID SHE

7 GAVE IT TO HIM.

8          THE COURT:  SPEAK UP.  I CAN'T HEAR YOU, MR. HALE.

9          MR. HALE:  MR. PARADA'S GIRLFRIEND WAS SUBSERVED ON

10 HIS BEHALF, AND SHE THEN CONTACTED THE PLAINTIFF AND TOLD THE

11 PLAINTIFF THAT HE WAS GOING TO GIVE THE PAPERS TO HIM.

12          THE COURT:  THAT HE WAS GOING TO DO WHAT?

13          MR. HALE:  THAT SHE WAS GOING TO GIVE THE PAPERS TO

14 MR. PARADA.

15          THE COURT:  WHO IS VIKI RAAB?

16          MS. KATZ:  THAT WAS NEW CENTURY TITLE COMPANY'S

17 EMPLOYEE, YOUR HONOR.

18          THE COURT:  IS ANYONE HERE FOR ARGENT MORTGAGE

Marcelos.txt

19 COMPANY?  NO ONE IS HERE.  PRIME STAR FINANCIAL?

20        MR. ROOD:  YES, YOUR HONOR.  THAT'S A DBA OF N.D.,

21 WHICH I REPRESENT HERE THIS MORNING.

22        THE COURT:  AND FINANCIAL TITLE?

23        MR. HALE:  THEY HAVE BEEN DISMISSED.

24        THE COURT:  RECONSTRUCT COMPANY.

25        MR. BROOKS:  YOUR HONOR, WE REPRESENT RECON TRUST

                                                          6

1 COMPANY WHO IS THE FORECLOSURE TRUSTEE.  PLAINTIFF IN RECON

2 TRUST SIGNED A STIPULATION RE: NON-MONETARY STATUS OF RECON

3 TRUST COMPANY, AND THAT WAS ENTERED BY THE COURT TWO OR THREE

4 WEEKS AGO.

5        THE COURT:  SO THEY ARE OUT OF THE CASE?

6        MR. BROOKS:  YES.  RECON TRUST IS OUT OF THE CASE AS

7 FAR AS PARTICIPATING IN ANY FURTHER PROCEEDINGS.

8        THE COURT:  WHO IS THE PERSON WHO ALLEGEDLY STOLE

9 THE $200,000?

10        MS. HOCHHAUSEN:  IT'S MR. PARADA, YOUR HONOR, BUT

11 THE PLAINTIFFS ARE HERE TODAY TO SEEK --

12        THE COURT:  WHICH PARADA?

13        MR. HALE:  EDWIN.

14        THE COURT:  THERE'S A LORENZO AND A EDWIN.

15        MS. HOCHHAUSEN:  EDWIN PARADA, YOUR HONOR.

16        THE COURT:  LORENZO PARADA, WHO IS HE?

17        MS. HOCHHAUSEN:  WE BELIEVE IT'S HIS BROTHER, YOUR

18 HONOR, AND HE IS IN BUSINESS AND IS RESPONSIBLE FOR SOME OF THE

19 ACTS THAT ARE AT ISSUE IN THIS CASE.

20        THE COURT:  ALL RIGHT.  EVERYBODY OVER THERE HAVE A

21 SEAT, AND WE'LL HEAR FIRST FROM THE PLAINTIFFS.  THIS IS A

22 MOTION FOR PRELIMINARY INJUNCTION.

23        MS. HOCHHAUSEN:  YOUR HONOR, PLAINTIFFS --

                          Page 5

Marcelos.txt

24          THE COURT:  MR. HALE, IF YOU ARE NOT GOING TO ARGUE,

25 YOU SHOULD HAVE A SEAT.

                                                  7

1          MS. HOCHHAUSEN:  HE IS GOING TO ARGUE, YOUR HONOR.

2          THE COURT:  WHY ARE YOU UP THERE?

3          MS. HOCHHAUSEN:  CAN HE HANG OUT IF I JUST START,

4 YOUR HONOR?  I'LL ONLY BE A MINUTE.

5          PLAINTIFFS ARE HERE TODAY, YOUR HONOR, TO SEEK THE

6 PROTECTION OF THIS COURT TO STOP THE FORECLOSURE SALE OF THEIR

7 HOME.  PLAINTIFFS' REQUEST TO STOP THE FORECLOSURE SALE OF

8 THEIR HOME IS BASED ON THE EGREGIOUS FACTS IN THIS CASE, YOUR

9 HONOR, THAT INCLUDE A COMPLETE FAILURE ON THE PART OF THE

10 LENDER, COUNTRYWIDE, TO DELIVER ANY OF THE CONSUMER PROTECTIVE

11 DISCLOSURES REQUIRED BY THAT ACT, INCLUDING THE COSTS OF THE

12 LOAN, THE INTEREST RATE, THE AMOUNT TO BE PAID OVER TIME AND,

13 PERHAPS, MOST IMPORTANTLY, THE RIGHT THAT TILA GIVES A BORROWER

14 TO RESCIND THE LOAN WITHIN A THREE-DAY PERIOD.

15          THE STATUTE PROVIDES WHERE THAT THREE-DAY NOTICE OF

16 RESCISSION IS NOT GIVEN TO A BORROWER, THAT THE BORROWER HAS UP

17 TO A THREE-YEAR PERIOD WITHIN WHICH TO RESCIND THE LOAN.

18          BASED ON THE PROVISIONS OF TILA AND THE FAILURE TO

19 DELIVER ANY OF THE DOCUMENTS THAT I'VE JUST REFERENCED,

20 MR. MARCELOS RESCINDED THE LOAN.  THAT RESCISSION, YOUR HONOR,

21 IS DESIGNED TO PUT THE MARCELOS FAMILY BACK WHERE THEY WERE

22 BEFORE THEY ENCOUNTERED COUNTRYWIDE OR MR. PARADA, BACK TO

23 WHERE THEY WERE BEFORE THEY GOT THIS LOAN.  BUT RATHER THAN DO

24 THAT, COUNTRYWIDE HAS DECIDED THAT THEY WANT TO PROCEED, RATHER

25 THAN DO THE RIGHT THING, THAT THEY WANT TO PROCEED TO TAKE THE

                                                  8

1 MARCELOS' HOME AWAY.

2          TILA GRANTS AN EXTRAORDINARY REMEDY IN THIS

Page 6

Marcelos.txt

3 RESCISSION, YOUR HONOR.  AND ALONG WITH THAT EXTRAORDINARY
4 REMEDY OF RESCISSION, TILA GRANTS THIS COURT THE EQUITABLE
5 POWER TO EITHER TIME THE RESCISSION, TO TIME THE RETURN OF
6 MONEY, THE PROFFER OF MONEY OR THE PROFFER OF THE PROPERTY,
7 AND, IN ACCORD WITH THE STATUTE, YOUR HONOR, MR. MARCELOS HAS
8 ADVISED COUNTRYWIDE THAT THEY ARE PREPARED TO MAKE THAT
9 PROFFER.

10          MR. HALE IS GOING TO DISCUSS THAT, AGAIN.  BUT THE
11 TWO ISSUES THAT I WOULD LIKE TO BE SURE, YOUR HONOR, THAT ARE
12 CLEARLY BEFORE THIS COURT ARE THAT MR. MARCELOS IS ENTITLED
13 UNDER TILA TO RESCIND HIS LOAN AND TO BE PUT BACK WHERE HE WAS
14 PRIOR TO THE LOAN, THAT THIS COURT HAS THE EQUITABLE POWER TO
15 DO JUSTICE, AND THAT MR. MARCELOS IS, WHILE NOT REQUIRED,
16 PREPARED TO TENDER THE PROPERTY BACK IN CONSIDERATION OF THE
17 RESCISSION.

18          MR. HALE IS GOING TO ADDRESS THE ELEMENTS OF THE
19 PRELIMINARY INJUNCTION IN MORE DETAIL, YOUR HONOR.

20          THE COURT:  ALL RIGHT.  SO MS. HOCHHAUSEN, WHY DON'T
21 YOU PLEASE HAVE A SEAT, AND MR. HALE, THE FLOOR IS YOURS.  GO
22 AHEAD.

23          MR. HALE:  THANK YOU, YOUR HONOR.

24          WITH REGARD TO PROVING THE LIKELIHOOD OF SUCCESS ON
25 THE MERITS IN ADDRESSING THE RESCISSION, I WOULD LIKE TO POINT
☐
                                                                    9

1 OUT, FIRST, THE PLAINTIFF SENT PROPER RESCISSION ON
2 DECEMBER 31ST OF 2007, AND HE DID THAT ON THE BASIS THAT HE HAD
3 NOT RECEIVED ANY OF THE LOAN DOCUMENTS FOR THE LOAN THAT'S IN
4 QUESTION TODAY.

5          THE DEFENDANT WILL ARGUE, HOWEVER, THAT HE DID
6 RECEIVE THESE LOAN DOCUMENTS BASED ON THE FACT THAT THEY HAVE
7 PARTICULAR PAPERS WITH PLAINTIFF'S SIGNATURE ON THEM THAT SAY
                              Page 7

Marcelos.txt

8 HE DID, IN FACT, RECEIVE THE DOCUMENTS THEMSELVES.  HOWEVER,
9 TILA ENVISIONED THIS PARTICULAR SCENARIO, AND THE STATUTE --
10 EXCUSE ME -- THE STATUTE CREATES MERELY A REBUTTAL OF
11 PRESUMPTION.  IN OTHER WORDS, THESE DOCUMENTS THAT DEFENDANT
12 SAYS EVIDENCE THAT MR. PARADA RECEIVED THE LOAN -- THE LOAN
13 PAPERS, ARE MERELY A REBUTTABLE PRESUMPTION THAT HE HAS
14 REBUTTED, AND HE DID REBUT THAT PRESUMPTION WITH HIS SWORN
15 TESTIMONY THAT HE DID NOT RECEIVE THE LOAN PAPERS.  THAT
16 DECLARATION WAS FILED WITH THE ORIGINAL MOTION'S BRIEF.
17         NOW, THE PLAINTIFF IS LIKELY TO SUCCEED ON THIS
18 BECAUSE THE DEFENDANT HAS NOT PRESENTED THE COURT WITH ANY
19 EVIDENCE BY DECLARATION OR OTHERWISE THAT PLAINTIFF'S SWORN
20 TESTIMONY IS UNTRUE.  AND BECAUSE DEFENDANT IMPROPERLY DENIED
21 THE RESCISSION ON JANUARY 22ND OF 2008 ON THIS BASIS, THE
22 PLAINTIFF WILL SEEK THE EQUITABLE DISCRETION OF THE COURT UNDER
23 TILA'S AUTHORITY TO RETURN THE PARTIES TO THE STATUS QUO.
24         IRREPARABLE HARM SUFFERED BY THE PLAINTIFF, COURTS
25 HAVE FOUND THAT WHENEVER SOMEONE'S HOME IS IN QUESTION, THAT IS
□
                                                          10

1 AN IRREPARABLE HARM.
2         THE BALANCE OF THE HARDSHIPS IS FAIRLY PLAIN IN THAT
3 WE HAVE A LARGE CORPORATION WITH LIMITLESS FUNDS THAT HAS THE
4 ABILITY TO WRITE OFF A PROPERTY, VERSUS A HARD WORKING MAN WHO
5 IS THE FATHER OF TWO, WITH TWO ON THE WAY, AND LIKELY TO LOSE
6 HIS HOME.
7         AND THE PUBLIC INTEREST REGARDING THIS MATTER IS
8 FAIRLY SIMPLY AS WELL.  AS YOU KNOW, WE ARE IN A MORTGAGE
9 CRISIS.  THERE ARE TWO MILLION PEOPLE WHO ARE LIKELY TO LOSE
10 THEIR HOME IN FORECLOSURE.  SEEKING READDRESS OF THIS
11 PARTICULAR WRONG IS ONE STEP TOWARDS AMELIORATING ALL OF THOSE
12 PARTICULAR VIOLATIONS.
                          Page 8

Marcelos.txt

13          THE COURT:  I HAVE A FEW QUESTIONS FOR YOU.

14          MR. HALE:  SURE.

15          THE COURT:  THE PROPERTY IN QUESTION IS ON FOLSOM

16 STREET?

17          MR. HALE:  THAT'S CORRECT.

18          THE COURT:  AND DO THE PLAINTIFFS LIVE THERE NOW?

19          MR. HALE:  THEY DO.

20          THE COURT:  AND IS THAT THE ORIGINAL HOME THAT THEY

21 WERE LIVING IN WHEN MR. PARADA CAME TO SEE THEM?

22          MR. BROOKS:  THAT'S CORRECT.

23          THE COURT:  SO HERE'S THE POINT I'M CONFUSED ON:  I

24 THOUGHT THE PURPOSE OF THE LOAN WAS TO BUY YET ANOTHER HOME.

25 DID THAT EVER OCCUR?

                                              11

1          MR. HALE:  THE ORIGINAL PURPOSE OF THE LOAN AS TOLD

2 TO MR. PARADA WAS TO OPEN UP AN EQUITY LINE OF CREDIT, AND THAT

3 LINE OF CREDIT WAS GOING TO BE USED AS A DOWN PAYMENT ON A

4 SECOND HOME.  THAT HOME WAS THEN GOING TO BE -- MR. MARCELOS'

5 FAMILY WERE GOING TO MOVE INTO THE HOME, WHICH THEY DID FOR A

6 SHORT TIME.

7          THE COURT:  WHERE IS THAT?

8          MR. HALE:  THE GIRARD PROPERTY?

9          THE COURT:  IS THAT ALSO IN SAN FRANCISCO?

10          MR. HALE:  CORRECT.

11          THE COURT:  SO THEN WHAT HAPPENED?  WHEN THEY DID

12 THAT, WHAT HAPPENED TO THE FOLSOM PROPERTY?

13          MR. HALE:  I BELIEVE THEY WERE RENTING THE FOLSOM

14 PROPERTY.

15          THE COURT:  SO THEN THEY MOVED?  HOW LONG DID THEY

16 LIVE IN THE GIRARD PROPERTY?

17          MR. HALE:  A SHORT PERIOD OF TIME.  LESS THAN A
                            Page 9

Marcelos.txt

18 YEAR, I BELIEVE.

19          THE COURT:  HOW MUCH LESS THAN A YEAR?

20          MR. HALE:  I'M UNSURE AT THIS TIME.  I BELIEVE IT'S

21 IN THE COMPLAINT, BUT I'M NOT SURE OFF THE TOP OF MY HEAD.

22          THE COURT:  ALL RIGHT, SO -- ALL RIGHT.  SO THEN

23 WHAT HAPPENED TO THE GIRARD PROPERTY?

24          MR. HALE:  ULTIMATELY, WHAT HAPPENED WAS THEY LOST

25 THAT PROPERTY BECAUSE THEY DID NOT, IN FACT, GET AN EQUITY LINE
⬚
                                                                12


1 OF CREDIT.  WHAT MR. PARADA HAD GOTTEN FOR THEM, UNBEKNOWNST TO

2 THE PLAINTIFFS, WAS A REFINANCE, AND IT WAS AN ADJUSTABLE RATE

3 MORTGAGE THAT BLEW UP, IF YOU WILL, AFTER A COUPLE OF YEARS,

4 AND WHEN THEY CAME TO THAT REALIZATION, IT WAS TOO LATE TO SAVE

5 THE GIRARD HOME BECAUSE THAT ALSO WAS PUT INTO AN ADJUSTABLE

6 RATE MORTGAGE THAT THEY COULDN'T AFFORD.

7          THE COURT:  YOU ARE CONFUSING ME.  WERE THERE TWO

8 DIFFERENT LOANS OR ONE BIG LOAN?

9          MR. HALE:  THERE'S TWO LOANS.

10         THE COURT:  LET'S GO BACK THEN TO THE LOAN THAT WAS

11 MADE ON THE FOLSOM PROPERTY.  THAT'S THE ONE THAT THEY'RE

12 TRYING TO FORECLOSE ON NOW?

13         MR. HALE:  CORRECT.  THAT'S THE ONLY LOAN AT ISSUE

14 AT THIS TIME.

15         THE COURT:  WHAT WAS THE TOTAL AMOUNT BORROWED OVER

16 THAT LOAN?

17         MS. HOCHHAUSEN:  APPROXIMATELY $600,000, YOUR HONOR.

18         THE COURT:  ALL RIGHT.  600,000.  AND DOES THAT

19 COUNT THE 200,000 THAT WAS ALLEGEDLY STOLEN?

20         MS. HOCHHAUSEN:  YES, YOUR HONOR.

21         THE COURT:  ALL RIGHT.  SO THEN 600,000 IS BORROWED,

22 AND THAT IS -- THE HOME IS USED AS COLLATERAL, CORRECT?
                          Page 10

Marcelos.txt

23          MR. HALE:  RIGHT.

24          THE COURT:  SO THEN THEY USED SOME OF THAT MONEY AS

25 A DOWN PAYMENT ON THE GIRARD PROPERTY, RIGHT?

                                                          13


1           MR. HALE:  CORRECT.

2           THE COURT:  WHO WAS THE LOAN WITH ON THE GIRARD

3 PROPERTY?

4           MS. HOCHHAUSEN:  THE GIRARD PROPERTY IS NOT AT

5 ISSUE, YOUR HONOR.  IT'S BEEN FORECLOSED ON AND IS GONE.

6           THE COURT:  GREAT.  BUT I WOULD LIKE TO

7 UNDERSTAND --

8           MS. HOCHHAUSEN:  I UNDERSTAND, YOUR HONOR.

9           THE COURT:  -- MORE THAN WHAT YOU WANT -- YOU WANT

10 TO PUT BLINDERS ON ME SO THAT I DON'T UNDERSTAND ANYTHING BUT

11 YOU WANT ME TO -- I WANT TO SEE THE WHOLE PICTURE.  WHO WAS

12 THAT LOAN WITH?

13          MS. HOCHHAUSEN:  I DON'T RECALL AT THIS MOMENT.  DO

14 YOU, MIKE?

15          MR. HALE:  I DON'T THINK WE'VE EVEN SEEN THE LOAN

16 DOCUMENTS, AS THE CLIENTS CAME TO US WITH THE FORECLOSE ON THE

17 FOLSOM PROPERTY.

18          THE COURT:  SO THERE WAS A LOAN.  ALL RIGHT.  THAT

19 WAS FORECLOSED ON?

20          MS. HOCHHAUSEN:  YES, YOUR HONOR.

21          THE COURT:  IS THAT YOUR POSITION?  ALL RIGHT.

22 FORECLOSED.  WHEN WAS THAT, ROUGHLY?

23          MS. HOCHHAUSEN:  APPROXIMATELY A YEAR AGO, IF I

24 REMEMBER CORRECTLY, YOUR HONOR.

25          THE COURT:  SO I'M GOING TO SAY EARLY '07,

                                                          14


                            Page 11

Marcelos.txt
1 FORECLOSED ON.  ALL RIGHT.

2          SO THEN WHAT DID THE FAMILY DO?  DID THEY MOVE BACK
3 TO THE FOLSOM PROPERTY?

4          MR. HALE:  YES.

5          THE COURT:  SO THAT -- WHEN DID THAT OCCUR?

6          MR. HALE:  THEY HAD RENTERS IN THE PROPERTY AT THE
7 TIME.  SO THEY HAD TO WAIT TO HAVE THOSE PEOPLE MOVE OUT.  SO I
8 BELIEVE THEY MOVED BACK IN SEPTEMBER OR OCTOBER OF LAST YEAR.

9          THE COURT:  SEPTEMBER OR OCTOBER OF '07.  THEY HAVE
10 BEEN THERE EVER SINCE?

11         MR. HALE:  CORRECT.

12         THE COURT:  OKAY.  NOW, WHEN -- DID THEY STOP MAKING
13 PAYMENTS ON THE FOLSOM LOAN?

14         MR. HALE:  YES.

15         THE COURT:  WHEN DID THEY STOP MAKING PAYMENTS?

16         MR. HALE:  I BELIEVE IT WAS ABOUT THE TIME THEY
17 MOVED BACK IN.

18         THE COURT:  DID MR. MARCELOS EVER GET THE $200,000
19 BACK?

20         MR. HALE:  HE WAS IN NUMEROUS NEGOTIATIONS WITH
21 MR. PARADA, WHO CONTINUALLY PUT HIM OFF AND SAID HE WAS GOING
22 TO PAY HIM LATER, LATER, LATER.  I THINK HE ULTIMATELY GOT
23 ABOUT $9,000 OF IT BACK.

24         THE COURT:  WHAT HAPPENED?  DID HE GIVE UP ON --
25 WHERE DOES IT STAND ON THE REST OF IT?
 
                                                              15

1          MR. HALE:  THE REST OF THE MONEY?

2          THE COURT:  REST OF THE 200,000.

3          MR. HALE:  AS FAR AS WE KNOW, HE HAS NO INTENTION OF
4 RETURNING IT.

5          THE COURT:  HAS MR. MARCELOS GIVEN UP ON THAT, BY
                            Page 12

Marcelos.txt
6 THAT I MEAN WAIVED HIS RIGHTS?  OR DOES HE STILL CONTEND HE'S

7 ENTITLED TO THE REST OF THE 190,000?

8           MR. HALE:  HE STILL CONTENDS HE'S ENTITLED.

9           MS. HOCHHAUSEN:  YOUR HONOR, AS RECENTLY AS A MONTH

10 AGO, MR. MARCELOS WAS IN TOUCH WITH MR. PARADA WHO SAID HE

11 WOULD RETURN THE MONEY TO HIM.  THEY SET UP A MEETING.

12 MR. PARADA DID NOT SHOW UP.

13          THE COURT:  WHAT HAPPENED ON -- YOUR PAPERWORK SAYS

14 THERE WAS A COMPLAINT TO THE DISTRICT ATTORNEY.  WHAT HAPPENED

15 ON THAT?

16          MS. HOCHHAUSEN:  IT'S PENDING, YOUR HONOR.  I HAVE

17 NO IDEA.  THEY SAID THAT THEY'VE TAKEN IT UNDER INVESTIGATION

18 AND WILL ADVISE US WHEN THEY NEED US.

19          THE COURT:  NOW, ON THE SECOND HOUSE ON GIRARD, WAS

20 THAT IN ANY WAY COLLATERAL FOR THE LOAN TO COUNTRYWIDE?

21          MS. HOCHHAUSEN:  NO, YOUR HONOR.

22          THE COURT:  WHAT IS THE OUTSTANDING BALANCE ON THE

23 LOAN TO COUNTRYWIDE?

24          MS. HOCHHAUSEN:  I BELIEVE IT'S APPROXIMATELY

25 $480,000, YOUR HONOR, BUT I EXPECT THAT COUNTRYWIDE WILL BE
                                                          16


1 ABLE TO TELL YOU THAT TO THE PENNY.

2           THE COURT:  HAS ANY MONEY BEEN PUT INTO ANY KIND OF

3 AN ESCROW OR FUND SINCE LAST SEPTEMBER?

4           MR. HALE:  I DON'T BELIEVE SO.

5           THE COURT:  OKAY.  THANK YOU.  LET'S HEAR FROM, I

6 GUESS, COUNTRYWIDE.

7           MR. BROOKS:  YES, YOUR HONOR.  GOOD MORNING.  DAVID

8 BROOKS APPEARING FOR COUNTRYWIDE.

9           THE COURT:  GOOD MORNING.

10          MR. BROOKS:  YOUR HONOR, FROM COUNTRYWIDE'S

                              Page 13

Marcelos.txt

11 PERSPECTIVE, THIS IS A CASE ABOUT A BORROWER WHO OBTAINED A

12 LOAN THROUGH A BROKER, NOT COUNTRYWIDE, 2-1/2 YEARS AGO.  AND

13 2-1/2 YEARS AFTER OBTAINING THAT LOAN, THE BORROWER CONCLUDES

14 HE'S BEEN VICTIMIZED BY LOAN BROKER, HIS ORIGINATING LENDER,

15 AND NUMEROUS OTHERS, BUT, INTERESTINGLY LACKING FROM MARCELOS'

16 COMPLAINT OR HIS APPLICATION ARE ANY ALLEGATIONS SUGGESTING

17 THAT COUNTRYWIDE COMMITTED ANY OF THE WRONGDOINGS.

18             AND WHEN MS. HOCHHAUSEN MENTIONED EARLIER AT THE

19 OUTSET OF HER PRESENTATION THAT COUNTRYWIDE FAILED THE

20 DISCLOSURES, THAT'S SIMPLY INACCURATE, BECAUSE COUNTRYWIDE TOOK

21 OVER THE SERVICING RIGHTS OF THIS LOAN SOME FIVE OR SIX MONTHS

22 AFTER THE LOAN WAS ORIGINATED.  LOAN WAS ORIGINATED IN

23 MARCH 2005, AND COUNTRYWIDE DID NOT START SERVICING IT UNTIL

24 SEPTEMBER 2005.

25             THE COURT:  GIVE ME THOSE DATES AGAIN.

                                                        17

1             MR. BROOKS:  THE DATE OF THE DEED OF TRUST, YOUR

2 HONOR, IS MARCH 28, 2005.  COUNTRYWIDE BEGAN SERVICING THIS

3 LOAN IN SEPTEMBER 2005.  SO COUNTRYWIDE HAD ABSOLUTELY NOTHING

4 TO DO WITH THE ORIGINATION OF THIS LOAN.

5             SO LACKING FROM MARCELOS' COMPLAINT OR THE

6 APPLICATION ARE ANY ALLEGATIONS SUGGESTING THAT COUNTRYWIDE

7 COMMITTED ANY OF THE ALLEGED WRONGDOING.  INSTEAD, COUNTRYWIDE

8 IS MERELY LUMPED TOGETHER WITH ALL OF THE OTHER BAD ACTORS.

9             ALSO LACKING IN THE COMPLAINT OR THE APPLICATION IS

10 ANY EXPLANATION FOR THE 2-1/2 YEAR DELAY BETWEEN THE TIME

11 MR. MARCELOS GETS HIS LOAN FOR MARGIN IN MARCH OF 2005 AND

12 BETWEEN THE TIME HE MAKES HIS REQUEST TO RESCIND IN

13 DECEMBER 2007.  IN FACT, WE ASKED THE RHETORICAL QUESTION IN

14 OUR OPPOSITION, WHY THE DELAY?  AND WE STILL HAVEN'T GOT AN

15 ANSWER TO THAT.

Marcelos.txt
16          SO, FROM COUNTRYWIDE'S PERSPECTIVE, WE HAD NOTHING

17 DO WITH THE ORIGINATION OF THIS LOAN, AND THAT'S NOT DENIED BY

18 PLAINTIFF.

19          THERE'S A COUPLE OF ISSUES THAT WOULD SUGGEST THAT

20 THIS -- STRIKE THAT -- THIS INJUNCTION SHOULD BE DENIED FOR A

21 FEW DIFFERENT REASONS AS WE OUTLINE IN OUR PAPERS.

22          FIRST, THERE HAS BEEN A FAILURE TO TENDER THE

23 UNDISPUTED AMOUNT OWING, AND UNDER CALIFORNIA STATE LAW, THIS

24 IS A PREREQUISITE FOR THE PURPOSES OF CHALLENGING A FORECLOSURE

25 SALE.

                                                            18

1          THE COURT:  WE ARE IN FEDERAL COURT, THOUGH.

2          MR. BROOKS:  YES, YOUR HONOR, BUT THE FORECLOSURE

3 STATUTES, SECTION 2924, IS FORECLOSURE SPECIFICALLY GOVERNED BY

4 CALIFORNIA STATE LAW.  SO UNDER CALIFORNIA STATE LAW, THERE IS

5 A REQUIREMENT THAT THE UNDISPUTED AMOUNT MUST BE TENDERED IN

6 ORDER TO BLOCK AN INJUNCTION.  THERE'S BEEN NO OFFER OF TENDER,

7 AND THERE'S BEEN NO TENDER OF THAT AMOUNT.

8          ON A SEPARATE GROUNDS, MR. MARCELOS FAILS TO MEET

9 THE BASIC PREREQUISITES FOR OBTAINING AN INJUNCTION.  THERE'S

10 BEEN A FAILURE OF -- THERE IS NO DEMONSTRATION OF A STRONG

11 LIKELIHOOD OF SUCCESS ON THE MERITS.  AND HERE IT'S IMPORTANT,

12 IF YOU LOOK AT THE FRAUD CLAIM AND THE 17200 CLAIM, COUNTRYWIDE

13 WITH NO SPECIFICITY WHATSOEVER IS MERELY LUMPED IN WITH THE

14 OTHER DEFENDANTS IN THIS CASE.  AND THE SAME GOES FOR THE

15 CALIFORNIA TRANSLATION ACT CLAIM.

16          AS TO THE RESCISSION CLAIM, MARCELOS IS WRONGLY

17 SUGGESTING THAT THE SECURITY INTEREST WOULD SEEM TO VANISH UPON

18 MR. MARCELOS SENDING IN HIS REQUEST TO RESCIND IN

19 DECEMBER 2007.  AND THAT'S NOT HOW THE RESCISSION STATUTE

20 WORKS.  AND AS TO THE YAMAMOTO CASE, WHICH IS CITED IN OUR

                              Page 15

Marcelos.txt
21 BRIEF AND IN PLAINTIFF'S BRIEF STATES, THE BORROWER RESCINDS,

22 AND THE SECURITY INTEREST ONLY BECOMES VOID ONLY WHEN THE RIGHT

23 TO RESCIND IS DETERMINED IN THE BORROWER'S FAVOR, AND THAT

24 HASN'T HAPPENED HERE.

25          AND AS WE'VE INDICATED IN FOOTNOTE ONE OF OUR
□
                                                        19


1 OPPOSITION PAPERS, WE ARE DISPUTING THE RIGHT TO RESCIND.  WE

2 ARE DISPUTING THE RESCISSION BECAUSE COUNTRYWIDE'S LOAN FILE

3 CONTAINS A SIGNED COPY OF THE NOTICE OF RIGHT TO CANCEL WHICH

4 MR. MARCELOS DISPUTES HADN'T RECEIVED A COPY OF IT.

5          SO HERE IN THIS CASE WE'VE DENIED THE RESCISSION

6 REQUEST, AND THE RESCISSION REQUEST IS DISPUTED.  THERE'S NO

7 IRREPARABLE HARM THAT WILL BE CAUSED BY ANY ACTS OF COUNTRYWIDE

8 TO MR. MARCELOS.

9          THERE'S NO ALLEGATIONS THAT COUNTRYWIDE DID ANYTHING

10 WRONG.  WE MERELY ASSUMED THE RIGHT TO SERVICE THIS LOAN FROM

11 THE PRIOR LENDER.  THE BALANCING OF THE EQUITIES IN THIS CASE

12 DO NOT FAVOR MR. MARCELOS.

13          AGAIN, COUNTRYWIDE IS NOT ALLEGED TO HAVE BEEN ONE

14 OF THE BAD ACTORS IN THE UNDERLYING FACT PATTERN, AND IT WAS

15 MR. MARCELOS WHO WAITED CLOSE TO THREE YEARS BEFORE HE

16 ATTEMPTED TO RESCIND THIS LOAN.

17          SO, ON BALANCE --

18          THE COURT:  LET ME ASK THIS:  IF COUNTRYWIDE --

19 LET'S ASSUME FOR THE SAKE OF ARGUMENT THAT YOU ARE RIGHT, THAT

20 COUNTRYWIDE DID NOTHING WRONG AT ALL; THERE'S NO CLAIM THAT

21 COULD BE LODGED AGAINST COUNTRYWIDE.  LET'S ASSUME THAT FOR THE

22 SAKE OF ARGUMENT.  BUT LET'S ALSO ASSUME FOR THE SAKE OF

23 ARGUMENT THAT COUNTRYWIDE ACQUIRED THE LOAN FROM -- I AM A

24 LITTLE CONFUSED ON WHO IT WAS.

25          MR. BROOKS:  ARGENT.
□
                         Page 16

Marcelos.txt

1        THE COURT:  ARGENT.  LET'S SAY THAT ARGENT DID MANY
2 THINGS, FOR THE SAKE OF ARGUMENT, THAT WERE ILLEGAL, AND
3 THAT -- LET'S ASSUME THAT THERE WAS A RIGHT TO RESCIND AND THAT
4 IT GOES FOR THREE YEARS.  NOW, DON'T YOU INHERIT THAT PROBLEM
5 WHEN YOU BUY IT FROM ARGENT?  DOESN'T THE RIGHT -- IF THERE IS
6 A RIGHT, IT STILL RUNS FOR THREE YEARS, DOESN'T IT?
7        MR. BROOKS:  WELL, I THINK MARCELOS PROPERLY ASKED
8 THE PROPER PARTY TO RESCIND THIS LOAN.  THAT'S COUNTRYWIDE.
9 BECAUSE WE'VE INHERITED THE SERVICING RIGHTS OF THE LOAN.  AS
10 THE LOAN SERVICER WE'RE THE PROPER PARTY TO RECEIVE THE REQUEST
11 FOR RESCISSION.  REQUEST FOR RESCISSION WAS MADE TO US, AND IT
12 WAS DENIED.
13        THE COURT:  BUT IF IT'S A RESCISSION, IF HE HAS THE
14 RIGHT TO RESCIND, YOU CAN'T JUST DENY IT.  HE'S GOT A RIGHT TO
15 RESCIND.
16        MR. BROOKS:  WE HAVE THE RIGHT TO DENY IT, YOUR
17 HONOR, IF THE FACTS SUGGEST TO US THAT HIS ALLEGED RIGHT TO
18 RESCIND IS DISPUTED, AND GIVEN THE FACT WE HAVE IN OUR FILE --
19        THE COURT:  LET'S SAY YOU LOSE ON THAT.  I'M NOT
20 SAYING YOU WILL.  BUT I JUST WANT TO UNDERSTAND THE LAW HERE.
21 LET'S SAY THAT HE IS RIGHT, THAT HE NEVER GOT THE THREE-DAY
22 NOTICE PERIOD, AND THE STATUTE SAYS THEN THAT MEANS YOU GET UP
23 TO THREE YEARS TO RESCIND.  HE CAN RESCIND, NO QUESTIONS ASKED,
24 CAN'T HE?
25        MR. BROOKS:  HE COULD RESCIND IF IT'S UNDISPUTED.

21

1        THE COURT:  WHAT IF IT'S DISPUTED BUT A JURY RULES
2 AGAINST YOU?
3        MR. BROOKS:  THAT'S THE TYPE OF SITUATION I THINK
4 THE YAMAMOTO CASE SPELLS OUT AS BEING A CASE WHERE THE BORROWER
                          Page 17

Marcelos.txt

5 HAS BEEN DETERMINED TO HAVE PROPERLY RESCINDED THE LOAN.

6           THE COURT:  ALL RIGHT.  SO IT'S POSSIBLE BEFORE THIS

7 CASE IS OVER THAT IT WILL BE DETERMINED THAT THERE IS A RIGHT

8 TO RESCIND?

9           MR. BROOKS:  IT IS POSSIBLE.

10          THE COURT:  AND THEN IN THAT EVENT, WE WOULD HAVE TO

11 FIGURE OUT HOW TO DEAL WITH THE RESCISSION?

12          MR. BROOKS:  CORRECT.

13          THE COURT:  BUT IF YOU GET TO SELL THE HOUSE IN THE

14 MEANTIME, THE HOUSE -- THE STATUS QUO WAS ALTERED.

15          MR. BROOKS:  WELL, THERE'S THINGS WE CAN DO THAT

16 WOULD BALANCE THE EQUITIES.  THERE WERE QUESTIONS, FOR

17 INSTANCE, THAT WERE ASKED ABOUT THE LOAN BALANCE, AND I HAVE A

18 PAYOFF DEMAND THAT I BROUGHT WITH ME THAT SHOWS THE TOTAL

19 AMOUNT DUE AS OF FEBRUARY 27TH IS A LITTLE UNDER $653,000.  I

20 ALSO BROUGHT A REINSTATEMENT --

21          THE COURT:  WAIT A MINUTE.  WAIT A MINUTE.  WHAT IS

22 THE REAL AMOUNT DUE?

23          MR. BROOKS:  I WAS JUST ABOUT TO GET THAT.

24          THE COURT:  I DON'T WANT ALL THOSE ATTORNEY'S FEES

25 AND ALL THAT.  WHAT IS THE AMOUNT THAT WAS OWED, THE UNPAID

                                                          22

1 BALANCE ON THE LOAN?

2           MR. BROOKS:  GOOD THROUGH TODAY, A LITTLE UNDER

3 $56,000, $55,816.

4           THE COURT:  I'M SORRY.  56,000 IS ALL THAT'S OWED?

5           MR. BROOKS:  THAT'S THE AMOUNT THAT MR. MARCELOS

6 WOULD BE REQUIRED TO TENDER IN ORDER TO REINSTATE HIS LOAN.

7           THE COURT:  THAT'S NOT WHAT I'M ASKING.  HE BORROWED

8 600,000 ORIGINALLY, RIGHT?

9           MR. BROOKS:  YES, YOUR HONOR.

Marcelos.txt

10          THE COURT:  SO HOW MUCH OF THAT 600,000 WAS PAID

11 BACK?

12          MR. BROOKS:  WELL, I HAVE ACCORDING TO THIS

13 STATEMENT, YOUR HONOR, THE TOTAL AMOUNT DUE WAS $652,000.  I

14 DON'T HAVE A SPECIFIC BREAKDOWN WITH RESPECT TO THE ACCOUNTINGS

15 AS TO WHAT WAS PAID WHEN.

16          THE COURT:  ALL RIGHT.  WHAT'S THE RELATIONSHIP

17 BETWEEN ARGENT AND COUNTRYWIDE?  WAS THIS THE FIRST TIME THAT

18 COUNTRYWIDE HAD EVER DONE BUSINESS WITH ARGENT?

19          MR. BROOKS:  YOUR HONOR, I DON'T KNOW FOR CERTAIN

20 BUT GIVEN THAT COUNTRYWIDE HAS DONE BUSINESS WITH MANY OTHER

21 LENDERS, IT WOULD BE A VERY -- IT WOULD BE FAIR TO SAY THAT

22 WE'VE DONE BUSINESS WITH ARGENT BEFORE.  I HAVE NO IDEA AS TO

23 THE VOLUME.

24          THE COURT:  LET'S SAY THE EVIDENCE SHOWED THAT YOUR

25 PEOPLE KNEW ARGENT WAS A CROOK.  LET'S JUST ASSUME THAT.  DO

                                                          23


1 YOU STILL THINK YOU COULD WALK AWAY FROM THESE PROBLEMS AND

2 THIS LOAN?

3          MR. BROOKS:  WELL, I THINK THE ISSUE IS MORE AS TO

4 WHAT ARGENT MAY HAVE KNOWN WITH RESPECT TO THE BROKERS WHO

5 ORIGINATED THIS LOAN.

6          THE COURT:  LET'S SAY ARGENT KNEW THAT THE GUY WAS A

7 CROOK.

8          MR. BROOKS:  WELL, WHEN THE LOAN --

9          THE COURT:  THAT HE WAS STEALING $200,000, AND HE

10 HAD DONE IT BEFORE, AND THAT YOU KNEW THAT, AND THAT YOU LET --

11 AND YOU FACILITATED IT BY TAKING THE LOAN PAPERS.

12          MR. BROOKS:  TYPICALLY, YOUR HONOR, IN THOSE

13 INSTANCES, WHEN ONE LENDER PURCHASES THE LOAN AND THE SERVICING

14 RIGHTS FROM A PRIOR LENDER, UNLESS THERE IS SOMETHING THAT

Marcelos.txt

15 LEAPS OUT FROM THAT LOAN FILE TO THE --

16          THE COURT:  WHERE DO YOU GET THE LEAP-OUT STANDARD?

17          MR. BROOKS:  THERE'S CASE LAW.

18          THE COURT:  I DON'T BUY THAT.  I'M TELLING YOU THIS:

19 WE'RE GOING TO TAKE SOME DISCOVERY IN THIS CASE AND SOON, AND

20 THE PEOPLE AT YOUR PLACE ARE GOING TO BE DEPOSED UP AND DOWN.

21 THEY ARE GOING TO BE DEPOSED UP AND DOWN TO ARGENT.  DOCUMENTS

22 ARE GOING TO BE PRODUCED.  WE ARE GOING TO GET TO THE BOTTOM OF

23 HOW MUCH COUNTRYWIDE KNEW AND WHEN THEY KNEW IT.  ALL RIGHT?

24          MR. BROOKS:  OF COURSE, YOUR HONOR.

25          THE COURT:  ALL RIGHT.

                                                        24


 1          BECAUSE IF IT CAN BE PROVEN THAT YOUR PEOPLE HAD

 2 SUSPICIONS THAT PARADAS WERE BAD ACTORS, THEN YOUR PEOPLE ARE

 3 IN TROUBLE.  SO I WANT TO FIND OUT THE ANSWERS TO THAT.  I'M

 4 GOING TO ADDRESS THE DISCOVERY SCHEDULE IN A MINUTE.

 5          MR. BROOKS:  YOUR HONOR, WE'LL, OF COURSE,

 6 PARTICIPATE IN --

 7          THE COURT:  OKAY.  LOOK, I UNDERSTAND YOUR POINT.

 8 YOU WANT TO SAY YOU ARE A HOLDER IN DUE COURSE.  BUT, ON THE

 9 OTHER HAND, WE ARE TALKING ABOUT THROWING SOMEBODY OUT OF HIS

10 HOME.  OKAY.

11          MR. BROOKS:  MAY I --

12          THE COURT:  ANYTHING MORE YOU WANT TO SAY?

13          MR. BROOKS:  I WOULD JUST ADD, YOUR HONOR, THAT

14 WE'RE WILLING TO WORK WITH THIS BORROWER.  I BROUGHT A

15 REINSTATEMENT CALCULATION WITH ME.  IF HE'S WILLING TO COME UP

16 WITH SOME SORT OF PLAN TO PAY BACK THE AMOUNT NECESSARY TO

17 REINSTATE THE LOAN, WE CAN POSTPONE THE SALE.  I MEAN THAT

18 WOULD BE A FAIR BALANCING OF THE --

19          THE COURT:  BUT IF HE WAS DEFRAUDED IN THE FIRST

Marcelos.txt

20 INSTANCE BY A GUY WHO YOUR PEOPLE KNEW WAS A CROOK -- I'M NOT

21 SAYING THAT.  THAT'S THE ALLEGATION.  WHY DOESN'T HE HAVE THE

22 RIGHT TO JUST GO BACK TO SQUARE ONE?  WHY DOES HE HAVE TO

23 CONTINUE WITH THE LOAN?

24        MR. BROOKS:  FIRST, YOUR HONOR, I DON'T THINK --

25 UNLESS I'M MISTAKEN, I DON'T THINK THERE'S SPECIFIC ALLEGATIONS

                                                    25

1 THAT COUNTRYWIDE KNEW THAT ARGENT KNEW THAT PARADA AND THE

2 OTHER BROKERS WERE BAD ACTORS.  I DON'T BELIEVE THAT'S

3 SPECIFICALLY IN THE COMPLAINT.

4        THE COURT:  AN AGENCY RELATIONSHIP IS ALLEGED, AT

5 LEAST -- IT'S SOMETHING LIKE ENFRANCHISING.  I DON'T KNOW WHAT

6 EXACTLY THAT MEANS, BUT UNDER THE LAW IF THESE PEOPLE WERE YOUR

7 AGENTS, EITHER WITH THE EXPRESS AUTHORITY OR IMPLIED AUTHORITY

8 OR -- WHAT'S THE OTHER WORD?  CLOSED WITH AUTHORITY, THEN YOU

9 GOT TO TAKE THE LOAN PAPERS SUBJECT TO ALL DEFENSES.  ONE OF

10 THOSE DEFENSES WOULD BE FRAUD.

11        LOOK.  MY GOODNESS.  HERE WE HAVE A SITUATION WHERE

12 THE GUY ALLEGEDLY TOOK $200,000 OF THE LOAN PROCEEDS.  I WOULD

13 REALLY LIKE TO KNOW, HOW MANY LOANS DID COUNTRYWIDE TAKE THAT

14 ORIGINATED WITH THIS GUY?

15        MR. BROOKS:  THAT ORIGINATED WITH PARADA OR

16 ORIGINATED WITH --

17        THE COURT:  WITH PARADA AND WITH ARGENT.  MAYBE

18 THEY'RE TWO DIFFERENT NUMBERS.  MAYBE PARADA -- I DON'T KNOW.

19 MAYBE IT'S NONE.  FOR ALL I KNOW, MAYBE COUNTRYWIDE IS

20 COMPLETELY INNOCENT ON THIS.  BUT WE ARE DEALING WITH -- IF

21 THIS IS TRUE, THIS IS A FELONY.  FELONY WAS COMMITTED, STEALING

22 $200,000.

23        NOW, THAT'S THE ALLEGATION.  IF IT TURNS OUT YOU

24 CAN'T PROVE THAT, THE PLAINTIFF'S LAWYERS ARE GOING TO BE IN

                              Page 21

Marcelos.txt

25 BIG TROUBLE WITH ME, BUT THAT IS THE ALLEGATION.

26

1              NOW, YOU DON'T SEE THAT VERY OFTEN IN ORDINARY

2 COMMERCIAL LENDING, AND I SUSPECT THAT -- I DON'T KNOW.  I

3 WOULD SAY COUNTRYWIDE PROBABLY HAD NOTHING TO DO WITH THAT,

4 BUT, ON THE OTHER HAND, IF YOU HAVE BEEN DOING A LOT OF

5 BUSINESS WITH THE GUY WHO'S STEALING $200,000 AND MAYBE YOUR

6 FILES AND E-MAILS SHOW SOME SUSPICION OF THE WAY HE DOES

7 BUSINESS, AND THERE ARE MEMOS THAT SAY SOMETHING LIKE, MAYBE WE

8 OUGHT TO STOP DOING BUSINESS WITH THIS GUY, HE DOESN'T DO THE

9 SPANISH DISCLOSURE AND ALL THAT, COUNTRYWIDE MIGHT BE

10 RESPONSIBLE FOR EVERY ONE OF THOSE LOANS.  THINK ABOUT IT.

11             I DON'T KNOW THE ANSWER YET, BUT I DON'T LIKE THE

12 SOUND OF THE $200,000 THEFT OF THE PLAINTIFF'S MONEY OUT OF THE

13 ESCROW.

14             MR. BROOKS:  AGAIN, YOUR HONOR, THAT'S SOMETHING

15 THAT, WITH SOME DISCOVERY, WE WILL GET A HANDLE AS TO WHAT

16 HAPPENED THERE.  BUT COUNTRYWIDE WAS NOT INVOLVED IN THE

17 ORIGINATION OF THIS LOAN.

18             THE COURT:  YOU SAY THAT, AND I THINK THAT'S

19 PROBABLY THE WAY IT'S GOING TO COME OUT, IS THAT COUNTRYWIDE --

20 BUT, YOU KNOW, STEP BACK FOR A MINUTE.

21             I UNDERSTAND HOW THIS MARKET WORKS AND

22 SECURITIZATION AND ALL THAT.  STARTING ABOUT FIVE TO TEN YEARS

23 AGO, WALL STREET AND COMPANIES LIKE YOURS BEGAN SELLING TO

24 INVESTORS AND RETIREMENT FUNDS SECURITIZED LOANS.  WHEN THEY

25 RAN OUT OF REGULAR CUSTOMERS, THEY HAD TO GO SOMEPLACE, SO THEY

27

1 WENT TO SUBPRIME LOANS.  SO LIKE A VACUUM CLEANER, THEY ARE OUT

2 THERE SUCKING UP AS MANY SUBPRIME LOANS AS THEY CAN GET.

Marcelos.txt
3          TO GET LOW INCOME PEOPLE TO GET INTO LOANS THAT --

4 YOU GOT TO GET TALKED INTO IT.  THIS GUY APPARENTLY TALKS --

5 MR. PARADA TALKS THE MARCELOS FAMILY INTO IT, INTO A LOAN THEY

6 CAN'T AFFORD.  AND YOU'RE SAYING YOU ARE JUST INNOCENT IN ALL

7 THAT?  YOUR COMPANY DIDN'T HAVE AN INKLING THAT SOME SHADY

8 PRACTICES WERE GOING ON?

9          MR. BROOKS:  WHAT I'M SAYING, YOUR HONOR, IS

10 MR. MARCELOS HAS MANY HURDLES HE HAS TO LEAP OVER FIRST BEFORE

11 WE GET TO THAT POINT.

12          AND ONE OF THE ISSUES, TOO, IS WHAT ABILITY DOES HE

13 HAVE TO TENDER ANYTHING BACK?  IT'S UNDISPUTED THE LOAN WAS

14 MADE.  WHAT ABILITY DOES HE HAVE TO TENDER ANYTHING BACK?

15 THAT'S SOMETHING I THINK SHOULD BE CONSIDERED ALSO, TOO.  THAT

16 HADN'T BEEN ADDRESSED.

17          MS. HOCHHAUSEN:  I WOULD BE HAPPY TO ADDRESS THAT,

18 YOUR HONOR.

19          MR. BROOKS:  COULD I ADD ONE MORE POINT, YOUR HONOR?

20 FOR WHATEVER IT'S WORTH, IT'S MY UNDERSTANDING THAT

21 COUNTRYWIDE'S TOTAL LOAN PORTFOLIO WAS APPROXIMATELY TEN

22 PERCENT IN THE SUBPRIME MARKET.  SO THIS WAS NOT AN AREA THAT

23 COUNTRYWIDE WAS AS ACTIVE IN AS OTHER LENDERS.  THAT'S MY

24 UNDERSTANDING.

25          THE COURT:  WHY ARE THEY IN SO MUCH TROUBLE NOW
口
                                                    28


1 THEN?

2          MR. BROOKS:  WELL, UNFORTUNATELY, THE WHOLE MARKET

3 IS IN TROUBLE RIGHT NOW.

4          THE COURT:  OKAY.  LET'S HEAR FROM MR. KATZ.

5 MR. KATZ, WHAT DO YOU WANT TO SAY?

6          MS. KATZ:  THAT WOULD BE MS. KATZ.

7          THE COURT:  YOU, MS. KATZ.  MS. KATZ, WHAT WOULD YOU

                          Page 23

Marcelos.txt

8 LIKE TO SAY?

9           MS. KATZ:  YOUR HONOR, WE ACTUALLY SUBMITTED PAPERS
10 LAST WEEK.  WE REPRESENT BOTH NEW CENTURY TITLE COMPANY AND
11 VIKI RAAB, WHO WOULD HAVE BEEN THE EMPLOYEE OF NEW CENTURY AT
12 THE TIME, AND NEW CENTURY WAS THE ESCROW COMPANY.

13           AND SO AT THIS POINT, THEY HAVE NEITHER ANY
14 POSITION, NOR ANY INTEREST IN THE INJUNCTION.  THEY HAVEN'T
15 BEEN INVOLVED IN ANY OF THIS SINCE MARCH 2005.  SO UNLESS YOU
16 HAVE ANY SPECIFIC QUESTIONS, NEW CENTURY REALLY HAS NO
17 INVOLVEMENT IN THE INJUNCTION ITSELF.

18           THE COURT:  I DON'T KNOW WHY YOU WERE SUED IN THE
19 FIRST PLACE.

20           MS. KATZ:  WE'RE TRYING TO FIGURE THAT OUT AS WELL,
21 YOUR HONOR.

22           THE COURT:  ALL RIGHT.  THANK YOU.  YOU WERE
23 SUCCINCT AND RIGHT TO THE POINT.  THANK YOU.

24           HOW ABOUT YOU, MR. ROOD?

25           MR. ROOD:  MR. ROOD WANTS TO SAY NOTHING, YOUR

                                                        29


1 HONOR.

2           THE COURT:  WHO DO YOU REPRESENT AGAIN?

3           MR. ROOD:  I REPRESENT N.D. FINANCIAL AND SHOAIB
4 MAHMUD.

5           THE COURT:  WHAT'S HIS CONNECTION TO THIS?

6           MR. ROOD:  HIS CONNECTION IS HE HAS A LICENSE, AND
7 SOMEONE UNDER HIM WENT OUT AND PARTNERED WITH PARADA, PERHAPS,
8 AND PARADA DID THE DEEDS.  MY CLIENT HAS THE LICENSE, RECEIVED
9 ALMOST NOTHING BY WAY OF THE COMMISSION ON THIS LOAN.

10           THE COURT:  WHY WOULD YOUR CLIENT ALLOW HIS LICENSE
11 TO BE USED IN THAT MANNER?

12           MR. ROOD:  AN ERROR.

Marcelos.txt
13          THE COURT:  IT MAY BE MORE THAN AN ERROR BY THE TIME
14 THIS IS OVER.
15          MR. ROOD:  IT MAY BE.  THERE'S TECHNICAL -- THERE'S
16 CERTAINLY TECHNICAL RESPONSIBILITY.  SO, IN ANY EVENT, THAT'S
17 HIS CONNECTION.
18          THE COURT:  WHERE IS MR. PARADA?  I ORDERED HIM TO
19 BE HERE.
20          MR. ROOD:  I HAVE NO IDEA, YOUR HONOR, AND I'M SURE
21 MY CLIENT DOESN'T EITHER.
22          THE COURT:  SOME PEOPLE CAME IN.  ARE ANY OF YOU
23 MR. PARADA?  THAT'S NOT MR. PARADA.  YOU HAVE A SEAT, PLEASE.
24          MR. ROOD:  THANK YOU, YOUR HONOR.
25          THE COURT:  ALL RIGHT.
                                                            30

1          MS. HOCHHAUSEN, YOU WANTED TO ADDRESS THE --
2          MS. HOCHHAUSEN:  I DO, YOUR HONOR.  I WOULD LIKE TO
3 MAKE THREE BRIEF POINTS, YOUR HONOR.
4          I WOULD LIKE TO SAY THAT COUNTRYWIDE, AS YOU
5 CORRECTLY POINTED OUT, WHEN IT BOUGHT THE LOAN, BOUGHT THE
6 ILLEGALITY.  THE RESPONSIBILITY TO DELIVER --
7          THE COURT:  I DON'T KNOW THAT THAT IS TOTALLY RIGHT.
8          MS. HOCHHAUSEN:  I WOULD LIKE TO --
9          THE COURT:  I MADE THAT ARGUMENT IN ARGUENDO.  I
10 DIDN'T SAY THAT'S THE WAY IT WOULD COME OUT.
11          MS. HOCHHAUSEN:  YOUR HONOR, THERE IS A PROVISION IN
12 THE STATUTE THAT SAYS --
13          THE COURT:  WHICH STATUTE?
14          MS. HOCHHAUSEN:  THE TRUTH IN LENDING ACT THAT SAYS
15 THAT A HOLDER IN DUE COURSE INHERITS THE WRONGDOING OF HIS
16 PREDECESSOR, THAT THE WRONGDOING, THE FAILURE TO DELIVER --
17          THE COURT:  WHAT IS THAT INHERITANCE PROVISION?
                         Page 25

Marcelos.txt

18         MR. HALE:  TITLE 15 OF THE UNITED STATES CODE

19 SECTION 1641(A).

20         MS. HOCHHAUSEN:  ADDRESSES ASSIGNEE LIABILITY.

21         AND AS COUNTRYWIDE IS THE ASSIGNEE OF THE

22 ORIGINATOR, THEY ARE RESPONSIBLE FOR ANY WRONGDOING OF THE

23 PERSON WHO ORIGINATED THE LOAN.  AND AS COUNSEL SAID, WE

24 CORRECTLY RESCINDED THE LOAN WITH THEM BECAUSE THEY ARE THE

25 PRESENT DAY OWNER OF THE LOAN.

31

1         ON A SECOND POINT, YOUR HONOR, NEW CENTURY TITLE

2 COMPANY, WHY IS NEW CENTURY HERE?  BECAUSE THEY UNDERTOOK ON

3 BEHALF OF THE ORIGINAL LENDER TO DELIVER THE DOCUMENTS THAT WE

4 ARE DISCUSSING TODAY, THE NOTICES.

5         THEIR CLOSING INSTRUCTIONS SPECIFICALLY SAY, YOU MAY

6 NOT DELEGATE THE RESPONSIBILITY FOR DELIVERING THESE DOCUMENTS,

7 AND THEY TURNED AROUND AND THEY DELEGATED THAT RESPONSIBILITY

8 TO MR. PARADA.  THEY SAID, PARADA, YOU GO OUT, AND YOU GIVE THE

9 DOCUMENTS, AND YOU GET ALL OF THE SIGNATURES FOR US, IN

10 DEROGATION OF THE CLOSING INSTRUCTIONS, WHICH, IN MY VIEW, YOUR

11 HONOR, AND I THINK SUPPORTED BY CASE LAW, FORM A CONTRACT AND A

12 FIDUCIARY RELATIONSHIP BETWEEN MR. MARCELOS AND THE CLOSING

13 AGENT.

14         SO THAT'S WHY NEW CENTURY IS HERE, BECAUSE IT WAS

15 THEIR RESPONSIBILITY TO DELIVER THE DOCUMENTS, BOTH AS THE

16 AGENT OF THE LENDER AND INDEPENDENTLY IN CONTRACT WITH

17 MR. MARCELOS.  IT WAS THEIR RESPONSIBILITY TO DELIVER THOSE

18 DOCUMENTS, AND THEY FAILED COMPLETELY TO DO THAT.

19         IF HE HAD HAD THE DOCUMENTS, MAYBE HE WOULD HAVE HAD

20 A FIGHTING CHANCE.  MAYBE HE COULD HAVE EVEN GOTTEN SOMEONE TO

21 TRANSLATE IT FOR HIM.

22         COUNSEL ASKS, WHY DID MR. MARCELOS WAIT SO LONG

Marcelos.txt
23 BEFORE HE CAME FORWARD?  AND THE ANSWER IS REALLY SIMPLE, YOUR
24 HONOR.  HE DIDN'T HAVE THE DOCUMENTS.  HE DIDN'T KNOW WHAT HAD
25 HAPPENED TO HIM.  HE DIDN'T EVEN GET THE DOCUMENTS IN A
0
                                                            32

 1 LANGUAGE THAT HE COULD UNDERSTAND.  AND IT WAS ONLY WHEN HE
 2 CAME TO LEGAL SERVICES THAT HE UNDERSTOOD WHAT HAD HAPPENED TO
 3 HIM AND WHAT HAD HAPPENED TO THE $200,000.

 4          THE HUD 1, WHICH IS THE MAP OF WHERE THE MONEY IS
 5 DISTRIBUTED IN A CLOSING, SHOWS A $200,000 DISTRIBUTION AT THE
 6 CLOSING FROM THE ESCROW TO MR. MARCELOS.  HOW IS IT POSSIBLE,
 7 YOUR HONOR, THAT AN ESCROW AGENT WOULD NOT EVEN SAY, HEY, WHAT
 8 DID YOU DO TO GET $200,000?  WHY ARE YOU DELIVERING $200,000?
 9 IF THAT HUD 1 HAD BEEN IN A LANGUAGE THAT MR. MARCELOS COULD
10 UNDERSTAND, MAYBE HE WOULD HAVE HAD A FIGHTING CHANCE, YOUR
11 HONOR.

12          AND 1632 OF THE CIVIL CODE PROVIDES THAT FIGHTING
13 CHANCE.  IT SAYS WHEN YOU NEGOTIATE A CONTRACT IN SPANISH, YOU
14 HAVE TO GIVE THAT CONTRACT IN SPANISH.

15          I JUST WANTED TO NOTE BRIEFLY, AGAIN, THAT TILA
16 ALLOWS THE RESCISSION, ALLOWS THE PARTIES TO GO BACK WHERE THEY
17 WERE, AND THAT COUNTRYWIDE CONTINUES TO HAVE THAT OBLIGATION AS
18 AN ASSIGNEE.  AND IF MR. MARCELOS IS PERMITTED TO GO BACK WHERE
19 HE WAS, HE IS FULLY PREPARED, EVEN THOUGH HE IS NOT OBLIGED TO,
20 TO TENDER THE PROPERTY BACK TO THE BORROWER.  EVERYBODY GOES
21 BACK TO WHERE THEY ARE.  THAT'S WHAT TILA WAS DESIGNED TO DO,
22 AND TILA GIVES THE COURT THE EQUITABLE POWER TO SEE THE OUTCOME
23 IS JUST.

24          IN ORDER TO GET A JUST OUTCOME --
25          THE COURT:  LET'S BE VERY SPECIFIC.  YOU ARE WILLING
0
                                                            33

 1 TODAY TO GIVE THE PROPERTY OVER TO COUNTRYWIDE; IS THAT WHAT
                              Page 27

Marcelos.txt

2 YOU ARE SAYING?

3          MS. HOCHHAUSEN:  IF MR. MARCELOS IS PUT BACK WHERE
4 HE WAS BEFORE THE LOAN, THAT'S CORRECT, YOUR HONOR.

5          THE COURT:  WHAT DOES THAT MEAN, PUT BACK WHERE HE
6 WAS?

7          MS. HOCHHAUSEN:  THE STATUTE PROVIDES THAT
8 MR. MARCELOS, IF HE IS NOT GIVEN THREE-DAY RIGHT TO RESCIND --
9 I'M SORRY.

10          THE COURT:  GO BACK TO WHERE HE WAS BEFORE?  HE
11 OWNED THE HOUSE BEFORE THE LOAN.  I ASSUME HE OWNED IT, RIGHT?

12          MS. HOCHHAUSEN:  THAT'S CORRECT, YOUR HONOR.

13          THE COURT:  SO IF YOU ARE PUTTING HIM -- IF YOU ARE
14 GIVING THE HOUSE BACK -- GIVING IT TO COUNTRYWIDE, THEN HE'S
15 NOT GOING TO BACK TO SQUARE ONE.

16          MS. HOCHHAUSEN:  HE IS PREPARED, IF HE'S MADE
17 MONETARILY WHOLE, TO GIVE THEM BACK THE PROPERTY.  AND TO MAKE
18 HIM MONETARILY WHOLE, YOUR HONOR, HE IS ENTITLED TO GET THE
19 COSTS, INTERESTS AND FEES THAT HE PAID ON THE LOAN, WHICH WOULD
20 AMOUNT TO APPROXIMATELY $100,000.  AND HE'S ENTITLED TO BE
21 RESTORED THE MONEY THAT WAS STOLEN FROM HIM, WHICH IS ANOTHER
22 $200,000.  AND WE ARE PREPARED TO GIVE THEM BACK THE PROPERTY
23 IF THEY MAKE MR. MARCELOS WHOLE.

24          THE COURT:  I DON'T -- YOU KNOW --

25          MS. HOCHHAUSEN:  THAT DOES NOT PUT AN END TO THE
░
                                                    34


1 CASE.

2          THE COURT:  AT MY AGE I CAN'T DO THE MATH FAST
3 ENOUGH.  IT SOUNDS LIKE A SHELL GAME TO ME SOMEHOW, GOING IN
4 REVERSE.  I DIDN'T UNDERSTAND WHAT YOU WERE SAYING, YOU'RE
5 PREPARED TO DO THAT.

6          MS. HOCHHAUSEN:  PERHAPS, YOUR HONOR, YOU'LL ALLOW
                              Page 28

Marcelos.txt

7 ME TO BE A LITTLE MORE CLEAR, AS I HAVEN'T BEEN UNTIL NOW.

8          THE STATUTE PROVIDES -- TILA PROVIDES FOR

9 RESCISSION.

10         THE COURT:  CAN I TELL YOU WHAT I THINK THAT MEANS?

11 THEN YOU CAN EXPLAIN.  WHAT THAT WOULD MEAN IS HE GETS TO KEEP

12 HIS HOUSE FREE AND CLEAR, AND HE'S GOT TO GIVE ALL THE MONEY

13 BACK TO THE BANK.

14         MS. HOCHHAUSEN:  AND THE STATUTE, TILA, PROVIDES FOR

15 AN ALTERNATIVE.

16         THE COURT:  WHAT IS THAT?

17         MS. HOCHHAUSEN:  INSTEAD OF RETURNING THE MONEY, YOU

18 MAY GIVE BACK THE PROPERTY.  TENDER THE VALUE OR THE PROPERTY,

19 THE VALUE OF THE LOAN OR THE PROPERTY.  AND TILA DEFINES

20 "RESCISSION" FOR US.  IT DOESN'T RELY ON THE STATE LAW.

21         THE COURT:  WHAT CODE SECTION SAYS THAT?  15 USC

22 WHAT?

23         MR. HALE:  ACTUALLY, I HAVE A PARALLEL CITE FOR THE

24 CODE OF FEDERAL REGULATIONS.  IT'S TITLE 12, SECTION 226.23,

25 SUBSECTION D, SUBSECTION THREE.
□
                                                          35

1          THE COURT:  THAT SAYS WHAT?

2          MR. HALE:  IT SAYS YOU ARE PERMITTED TO TENDER THE

3 PROPERTY TO SATISFY THE SECURITY INTEREST OF THE LOAN HOLDER.

4          THE COURT:  CAN YOU HAND THAT UP TO ME SO I CAN READ

5 IT?

6          MR. HALE:  WHERE IT SAYS "TENDER" IN BLUE, THAT'S

7 THE SECTION.

8          THE COURT:  THIS LOOKS LIKE YOUR ARGUMENT.  I

9 THOUGHT YOU WERE HANDING ME THE REGULATION.  I DIDN'T MEAN -- I

10 WANTED TO SEE YOUR REGULATION.

11         MR. BROOKS:  YOUR HONOR, I BROUGHT A COPY.

Marcelos.txt

12          THE COURT:  COULD I SEE THAT, PLEASE?

13          MR. BROOKS:  IT DOES HAVE MY SQUIB NOTES ON IT.

14          THE COURT:  DOES IT HAVE THE ACTUAL TEXT?

15          MR. BROOKS:  I THINK IT DOES, AND I --

16          THE COURT:  MAY I SEE IT?

17          MR. BROOKS:  SURE.

18          THE COURT:  IT'S HARD FOR ME TO FOLLOW.  IT SAYS, IF

19 THE CREDITOR HAS DELIVERED ANY MONEY OR PROPERTY, THE CONSUMER

20 MAY RETAIN POSSESSION UNTIL THE CREDITOR HAS MET ITS

21 OBLIGATIONS UNDER PARAGRAPH 2(D).

22          THAT SAYS:

23          "WITHIN 20 CALENDAR DAYS AFTER RECEIPT OF A

24      NOTICE OF RESCISSION, THE CREDITOR SHALL RETURN ANY

25      MONEY OR PROPERTY THAT HAS BEEN GIVEN TO ANYONE IN

                                                    36

1       CONNECTION WITH THE TRANSACTION AND SHALL TAKE ANY

2       ACTION NECESSARY TO REFLECT THE TERMINATION OF THE

3       SECURITY INTEREST."

4          SO THIS IS 12 CFR 226 23, RIGHT OF RESCISSION.  I'M

5 HANDING THAT BACK.  I'M NOT SURE I UNDERSTAND WHAT I JUST READ.

6          MS. HOCHHAUSEN:  YOUR HONOR, THE FURTHER POINT I

7 WOULD LIKE TO MAKE IS THAT STATE LAW, WHILE IT MAY BE

8 INSTRUCTIVE, HAS NOTHING TO DO WITH THIS CASE, BECAUSE THE

9 STATUTE DEFINES WHAT RESCISSION MEANS IN TILA TERMS, AND THAT,

10 YOUR HONOR, IS WHAT YOU JUST READ.

11          I'LL GRANT YOU THAT IT'S OBSCURE AND THAT WE HAVEN'T

12 DONE AN ADEQUATE JOB IN HELPING YOU UNDERSTAND IT, EXCEPT THAT

13 FOR THE PURPOSES OF TODAY'S HEARING, MR. MARCELOS IS ENTITLED

14 TO BE PUT BACK WHERE HE WAS.

15          THE COURT:  WHAT WERE THE PAYMENTS THAT WERE DUE

16 UNDER THIS LOAN?

Page 30

Marcelos.txt

17          MS. HOCHHAUSEN:  THEY WERE APPROXIMATELY $5,000 A

18 MONTH.

19          THE COURT:  WHY CAN'T HE PAY THAT INTO ESCROW OF

20 SOME SORT PENDING RESOLUTION OF THIS CASE?

21          MS. HOCHHAUSEN:  BECAUSE, YOUR HONOR, THOSE TERMS

22 WERE NOT EXPLAINED TO HIM, AND HE DID NOT UNDERSTAND WHAT THE

23 COST OF THE LOAN WAS.  IT WAS A BAIT AND SWITCH.

24          THE COURT:  HE KNEW HE WAS BORROWING MONEY.

25          MS. HOCHHAUSEN:  THAT'S CORRECT.

                                                37


1          THE COURT:  DID HE THINK HE DIDN'T HAVE TO MAKE THE

2 PAYMENTS?

3          MS. HOCHHAUSEN:  NO, YOUR HONOR.  BUT THE PAYMENTS

4 WERE GOING TO BE FAR SMALLER, AND HE ANTICIPATED HAVING THE

5 CASH WITH WHICH TO MAKE THE PAYMENTS.

6          THE COURT:  WHAT WERE HIS OLD PAYMENTS BEFORE HE

7 MADE THIS LOAN?

8          MS. HOCHHAUSEN:  I DON'T KNOW, YOUR HONOR, BUT IF

9 YOU'LL GIVE ME A MOMENT, I'LL INQUIRE.

10          THE COURT:  I READ YOUR PAPERS.

11          MS. HOCHHAUSEN:  YOUR HONOR, IF THE COURT RECALLS,

12 YOU ASKED FOR A BOND TO BE POSTED, WHICH THE MARCELOS DID POST.

13          THE COURT:  HOW MUCH IS THE BOND?

14          MS. HOCHHAUSEN:  FIVE THOUSAND DOLLARS.

15          THE COURT:  WELL, IT WILL BE MORE THAN THAT IF WE

16 GRANT AN INJUNCTION.  THAT WAS FOR PURPOSES OF A TRO.

17          SEE, YOU SAID THAT -- YOUR PAPERWORK SAID THAT

18 MR. PARADA SAID IT WOULD BE ONE HUNDRED DOLLARS A MONTH MORE.

19 SO WHAT WERE THE OLD -- WHAT WAS THE OLD PAYMENT?

20          MS. HOCHHAUSEN:  IF YOU GIVE ME A MOMENT, I'LL

21 INQUIRE OF MY CLIENT.

                         Page 31

Marcelos.txt

22          THE COURT:  WOULD YOU ASK HIM WHAT IT WAS?

23          MR. HALE:  EIGHTEEN HUNDRED, YOUR HONOR.

24          THE COURT:  WHO WAS THAT WITH?  WHO WAS THE LENDER

25 ON THAT LOAN?
☐
                                                        38


1           MS. HOCHHAUSEN:  I BELIEVE IT WAS WELLS, YOUR HONOR.

2           YOUR HONOR, I WOULD LIKE TO MAKE ONE MORE POINT TO

3 THE COURT.  THAT IS THAT INTERIM RESCISSION, AS WHAT COUNSEL

4 SAID, BECAUSE WHAT IS AT PLAY, IS THE CANCELLATION OF THE

5 SECURITY INTEREST, ALL COSTS, FEES AND INTEREST COME BACK TO

6 MR. MARCELOS, AND HE'S NOT OBLIGED TO MAKE THE PAYMENTS.  SO

7 WHILE YOU MAY SET IT, YOUR HONOR, OF COURSE IN THE WISDOM OF

8 THE COURT AS A CONDITION OF THE TRO, THE STATUTE DOES NOT

9 REQUIRE ANY FURTHER PAYMENTS.

10          THE COURT:  ALL RIGHT.  HAVE A SEAT.  I HAVE A

11 DIFFERENT QUESTION, BUT BEFORE I TELL YOU WHAT I'M INCLINED TO

12 DO HERE, I WANT TO -- WELL, I THINK I'M JUST GOING TO PROCEED

13 AND TELL YOU WHAT MY INCLINATION HERE IS.

14          FIRST, THE TWO COMPETING PROBLEMS HERE.  ON THE ONE

15 HAND, WHEN SOMEBODY BORROWS MONEY, THEY MUST PAY IT BACK.

16 THERE'S NO FREE LUNCH.  SO THERE'S NO SUCH THING AS RESCINDING

17 A LOAN AND YOU GET TO KEEP THE PROPERTY AND THE MONEY.  IF YOU

18 GO BACK TO SQUARE ONE, THE PLAINTIFF HERE GETS TO KEEP THE

19 HOUSE AND PAYS BACK THE MONEY THAT HE BORROWED.  THAT WOULD BE

20 THE ORDINARY PICTURE.  I DO NOT UNDERSTAND THE HOCHHAUSEN

21 THEORY OF -- IT SOUNDS LIKE TOO MANY -- LIKE ONE OF THESE

22 THINGS WHERE A LOT OF MONEY CHANGES HANDS, AND IF I ACTUALLY

23 WAS ABLE TO THINK IT ALL THROUGH, THE DEFENDANTS WOULD NOT BE

24 TREATED FAIRLY.

25          WHAT I CAN'T UNDERSTAND IS RESCISSION WHERE YOU GO
☐
                                                        39

Marcelos.txt

1 BACK TO SQUARE ONE, AND HE GIVES BACK THE MONEY TO THE BANK
2 THAT HE BORROWED, AND HE GETS HIS HOUSE BACK.  THAT'S THE WAY I
3 UNDERSTAND A RESCISSION WOULD WORK.  BUT I WANT TO GO BACK TO A
4 BASIC PRINCIPLE.

5          IN THIS COUNTRY, IF YOU BORROW MONEY, YOU HAVE TO
6 PAY IT BACK, OR IF YOU RESCIND IT, YOU CAN RESCIND IT, BUT
7 YOU'VE GOT TO GO BACK TO SQUARE ONE.  IF YOU'VE GONE OUT AND
8 SPENT ALL THE MONEY, THEN, TOUGH, YOU CAN'T RESCIND.  SO THAT'S
9 ONE PROBLEM.

10         ON THE OTHER HAND, ON THE OTHER HAND, LENDERS SHOULD
11 NOT BE DOING -- GETTING IN BED WITH CROOKS.  I DON'T KNOW THAT
12 MR. PARADA IS A CROOK, BUT THE ALLEGATIONS HERE LOOK PRETTY
13 SERIOUS, AND I ORDERED HIM TO BE HERE, AND HE'S NOT HERE.

14         RIGHT NOW THE EVIDENCE SHOWS THAT HE STOLE $200,000,
15 AND A LENDER OUGHT TO DO SOME DUE DILIGENCE TO SEE WHO THEY'RE
16 DOING BUSINESS WITH.  SO WE ARE GOING TO FIND OUT.  SO, ON THE
17 ONE HAND, THAT DOESN'T LOOK GOOD FOR COUNTRYWIDE.

18         SO WE'RE GOING -- WE'RE GOING TO KEEP THE
19 PRELIMINARY INJUNCTION.  WE ARE GOING TO ISSUE A PRELIMINARY
20 INJUNCTION.  THE BOND IS GOING TO GO UP TO $20,000.  HE MUST
21 PAY $1,900 PER MONTH.  THAT'S $1,800 PLUS ONE HUNDRED DOLLARS A
22 MONTH.  THAT'S WHAT HE THOUGHT HE WAS GETTING INTO.  THIS IS A
23 STRICT CONDITION.

24         I WILL TRUST YOU, MS. HOCHHAUSEN, TO SET UP A FUND.
25 YOU CAN'T TOUCH IT.  IT'S NOT FOR ATTORNEY'S FEES.  IT'S NOT
☐
                                                           40

1 FOR LITIGATION COSTS.  IT'S STRICTLY TO BE AN ESCROW TO PROTECT
2 THE LENDER HERE IF THE LENDER WINDS UP WINNING.  DO YOU
3 UNDERSTAND THE --

4          MS. HOCHHAUSEN:  YES, YOUR HONOR, BUT --

Page 33

Marcelos.txt
5           THE COURT:  YOU MUST PAY IT.  THAT'S THE ONLY FAIR
6 THING TO DO.  THERE'S NO FREE LUNCH HERE.

7           NOW, WE'RE GOING TO MAKE IT -- WE ARE GOING TO HAVE
8 AN EXPEDITED DISCOVERY SCHEDULE SO WE'LL GET TO THE BOTTOM OF
9 THIS.  YOU ALL WANT TO TAKE DEPOSITIONS, RIGHT?

10          MS. HOCHHAUSEN:  YES, YOUR HONOR.  BUT I WOULD ASK
11 THE COURT'S INDULGENCE, SINCE WE HAVE NOT ADEQUATELY EXPLAINED
12 HOW THE RESCISSION WORKS HERE --

13          THE COURT:  NO.  YOU HAD YOUR CHANCE.  I'M NOT GOING
14 TO DO THAT, MS. HOCHHAUSEN.  WE MIGHT DO THAT AT THE END OF THE
15 CASE, BUT I'M NOT GOING TO FORCE THAT ON SOMEBODY WHO IS SAYING
16 THEY'RE INNOCENT RIGHT NOW.  FOR ALL I KNOW, THEY ARE INNOCENT.

17          MS. HOCHHAUSEN:  YOUR HONOR, IF YOU'LL GIVE ME AN
18 OPPORTUNITY TO BRIEF THAT ISSUE?

19          THE COURT:  NO.  I'M GIVING YOU THE RULING NOW.
20 YOU'VE HAD YOUR OPPORTUNITY.

21          THE RULING IS $1,900 A MONTH HAS GOT TO BE PAID INTO
22 A FUND AND THE $20,000 BOND HAS GOT TO BE PUT UP.

23          MS. HOCHHAUSEN:  YOUR HONOR, MAY I ASK YOU WHY THERE
24 HAS TO BE A DOUBLE INSURANCE?  IF HE'S PAYING THE MONEY, WHY
25 THE BOND AS WELL?

                                                    41

1           THE COURT:  BECAUSE THE $1,900 IS VERY LOW.  IT'S A
2 LOT LESS THAN WHAT THE LOAN PAYMENTS WERE.  AND IF IT TURNS OUT
3 THAT YOUR CLIENT LOSES THIS CASE, DO YOU REALLY THINK THE
4 $1,900 IS GOING TO BE ENOUGH TO MAKE GOOD ALL THE DEBTS THAT
5 HAVE BEEN ACCRUED?  NO.  MS. HOCHHAUSEN --

6           MS. HOCHHAUSEN:  YOUR HONOR, IF MY CLIENT LOSES THIS
7 CASE, THE BANK GETS THE HOUSE BACK.  THAT'S WHAT THEY BARGAINED
8 FOR.

9           THE COURT:  ALL RIGHT.  TEN THOUSAND DOLLARS,

Marcelos.txt
10 $10,000 BOND AND $1,900.  THE BOND HAS GOT TO BE POSTED WITH

11 THE COURT.  THE $1,900, I'LL TRUST YOU TO BE -- STARTING --

12 IT'S GOT TO BE PAID ON THE FIRST -- IT'S GOT TO BE PAID -- THIS

13 IS THE 26TH.  WE ARE GOING TO START ON THE FIRST BUSINESS DAY

14 OF EACH MONTH, AND IF IT'S NOT PAID, YOU MUST GIVE ME NOTICE

15 AND THE OTHER SIDE NOTICE SO I CAN DISSOLVE THE INJUNCTION.

16          I WANT YOU TO KNOW OUT THERE, MR. MARCELOS, YOU'VE

17 GOT TO PAY THE MONEY.

18          MR. MARCELOS:  MAY I HAVE A WORD, YOUR HONOR?

19          THE COURT:  NO, YOU CANNOT.  YOU HAVE A LAWYER HERE.

20          THIS IS THE ONLY FAIR WAY TO DO THIS.  YOU CANNOT

21 JUST SAY, I DON'T HAVE TO MAKE PAYMENTS; OH, I GET AN

22 INJUNCTION; OH, THE BANK, THEY'RE BIG, I'M SMALL, THEY LOSE, I

23 WIN.  NO.  THERE'S GOING TO BE SOME JUSTICE HERE, AND YOU HAVE

24 TO PAY THE $1,900 YOU THOUGHT YOU WERE GOING TO HAVE TO PAY.

25 IT'S GOING TO BE PAID TO HER, THOUGH, AND YOU GET IT BACK MAYBE

                                                     42


1 AT THE END OF THE CASE.  IT DEPENDS ON WHO WINS HERE.

2          ALL RIGHT.  HERE'S THE DISCOVERY SCHEDULE:  I

3 WANT -- HERE ARE THE ISSUES THAT I AM MOST CONCERNED ABOUT.  I

4 WANT TO KNOW ABOUT THE COMPLETE RELATIONSHIP BETWEEN PARADA AND

5 ARGENT, AND ARGENT AND PARADA AND COUNTRYWIDE.  I ALSO WANT TO

6 KNOW WHAT SPECIFICALLY HAPPENED, DID HE GET THESE NOTICES THAT

7 HE CLAIMS HE DIDN'T GET OR NOT.  HE'S GOT TO BE DEPOSED UNDER

8 OATH.  SO WHOEVER HAS GOT TO BE DEPOSED TO GET TO THE BOTTOM OF

9 THOSE ISSUES.

10          AND I WANT WIDE DISCOVERY.  THIS WILL NOT BE NARROW

11 AGAINST COUNTRYWIDE.  IF COUNTRYWIDE HAS BEEN IN BED WITH THESE

12 PEOPLE, I WANT TO KNOW ABOUT IT.  I WANT THE E-MAILS.  I WANT

13 YOU TO GET THE E-MAILS.  I WANT ALL OF THE INTERNAL MEMORANDA,

14 ANYTHING -- IF THERE'S SOMEBODY THERE AT COUNTRYWIDE THAT HAD

                        Page 35

Marcelos.txt
15 AN INKLING THAT PARADA WAS A CROOK OR THAT ARGENT WAS DOING

16 SHADY PRACTICES, WE NEED TO KNOW ABOUT THAT.

17          MR. BROOKS:  YOUR HONOR?

18          THE COURT:  SO THAT'S GOING TO BE WIDE DISCOVERY.

19 DON'T COME BACK AND SAY IT'S TOO BURDENSOME.  YES?

20          MR. BROOKS:  THERE'S TWO PARADAS.  ARE YOU TALKING

21 ABOUT EDWIN MAURICIO --

22          THE COURT:  I DON'T KNOW ENOUGH ABOUT THEM.  I'M

23 TALKING ABOUT BOTH OF THEM RIGHT NOW.  THE MAN BACK THERE WHO

24 CLAIMS HE KNEW NOTHING ABOUT IT, HE OUGHT TO BE DEPOSED UP AND

25 DOWN TO FIND OUT WHAT HE KNEW, WHAT THE OTHER PEOPLE KNEW.

                                                43

1          IS MR. PARADA A CITIZEN OF THIS COUNTRY?

2          MS. HOCHHAUSEN:  YES, YOUR HONOR.

3          THE COURT:  BOTH OF THEM -- BOTH ARE CITIZENS?

4          MS. HOCHHAUSEN:  I'M SORRY.  I THOUGHT YOU WERE

5 ASKING ABOUT MR. MARCELOS.  I DON'T KNOW ANYTHING ABOUT

6 MR. PARADA.

7          THE COURT:  I ASSUME MR. MARCELOS IS.  I'M TALKING

8 ABOUT PARADA, IS HE -- THE ALLEGED CROOK, IS HE A CITIZEN?

9          MS. HOCHHAUSEN:  I DON'T KNOW ANYTHING ABOUT HIS

10 STATUS, YOUR HONOR.

11          THE COURT:  WELL, WE ARE GOING TO FIND OUT ABOUT --

12 YOU ARE GOING TO HAVE TO TRACK HIM DOWN, GET HIM TO A

13 DEPOSITION.

14          ALL RIGHT, THESE DEPOSITIONS, I'M GOING TO GIVE YOU

15 THE DATES.  DEPOSITIONS SHOULD START THE WEEK OF MARCH 10TH,

16 AND IF IT MEANS YOU GOT TO START WITHOUT GETTING ALL THE

17 DOCUMENTS, THAT'S LIFE.  SO THE COUNTRYWIDE -- THAT MEANS YOU,

18 MS. HOCHHAUSEN, YOU OUGHT TO BE DEPOSING SOMEBODY UP THERE AT

19 COUNTRYWIDE STARTING MARCH 10TH.  MR. MARCELOS OUGHT TO BE

                         Page 36

Marcelos.txt
20 DEPOSED ON MARCH 17TH.

21          THEN BY APRIL 11TH, ALL DEPOSITIONS OUGHT TO BE
22 DONE.  WE OUGHT TO BE -- WE'RE GOING TO COME BACK HERE ON
23 APRIL 17TH AT 11:00 A.M FOR A FURTHER CONFERENCE TO FIGURE OUT
24 WHAT MORE WE NEED TO DO BY WAY OF DISCOVERY.

25          I REALIZE IT'S GOING TO BE A LITTLE RAGGED BECAUSE

                                                            44


 1 YOU WON'T HAVE ALL THE DOCUMENTS AND ALL OF THAT, BUT YOU WILL
 2 EVENTUALLY GET ALL THE DOCUMENTS, AND YOU SHOULD -- BOTH SIDES
 3 OUGHT TO MOVE HEAVEN AND EARTH TO GET AS MANY DOCUMENTS AS
 4 POSSIBLE.

 5          I'M GOING TO ORDER COUNTRYWIDE RIGHT NOW TO SEARCH
 6 FOR EVERY DOCUMENT IN YOUR POSSESSION, IN COUNTRYWIDE'S
 7 POSSESSION, THAT MENTIONS PARADA IN ANY LOAN, OR ARGENT IN ANY
 8 LOAN, OR ANY KIND OF MEMORANDA THAT WOULD INDICATE THAT
 9 COUNTRYWIDE OR SOMEBODY AT COUNTRYWIDE HAD SUSPICIONS THAT
10 SHADY PRACTICES WERE GOING ON WITH ANYBODY, NOT JUST -- THIS IS
11 BEFORE.  AND THEN ANY MEMORANDA THAT DEAL WITH THIS PARTICULAR
12 CASE.

13          SO YOU JUST GET IN THERE AND START DOING IT AND TURN
14 ALL THAT OVER BEFORE THE DEPOSITIONS GO FORWARD.

15          MR. BROOKS:  YOUR HONOR, MAY I BE HEARD?

16          THE COURT:  YES, SIR.

17          MR. BROOKS:  IT'S FEBRUARY 26TH.

18          THE COURT:  YES, IT IS.

19          MR. BROOKS:  MARCH 10TH PRESENTS A LOT OF
20 DIFFICULTIES FOR US GIVEN THE TASK AT HAND.

21          THE COURT:  ALL RIGHT.  I'M GOING TO GIVE YOU UNTIL
22 MARCH 17TH.  YOU'VE GOT TO PRODUCE THEM BY THE 14TH.  THE
23 DEPOSITIONS START -- WE'LL DELAY IT A WEEK.

24          MR. BROOKS:  YOUR HONOR, WOULD THE COURT AT LEAST
                        Page 37

Marcelos.txt
25 CONSIDER PUTTING EVERYTHING OVER A MONTH?  WE ARE A COMPANY OF

                                                                45

 1 50,000 PEOPLE.  WE HAVE PEOPLE IN PLANO, TEXAS, IN ARIZONA, IN
 2 CALIFORNIA.  THIS IS GOING TO TAKE A LOT OF RESEARCH, AND I
 3 JUST WANT TO BE REALISTIC IN BEING ABLE TO TRACK EVERYONE DOWN.
 4           I'M GOING TO HAVE TO STOP EVERYTHING I'M DOING,
 5 WHICH I'M WILLING TO DO, IN ORDER TO EFFECTUATE THE COURT'S
 6 INTENT WITH RESPECT TO THIS ORDER, BUT THIS IS JUST NOT A
 7 REASONABLE AMOUNT OF TIME FOR US TO GET READY.
 8           THE COURT:  ALL RIGHT.  I'LL GIVE YOU UNTIL MARCH 21
 9 TO PRODUCE THE DOCUMENTS.  THEN THE DEPOSITIONS WILL START ON
10 MARCH 31 AND GO THROUGH THE WEEK OF THE 4TH OF APRIL.  SO THAT
11 GIVES YOU, BASICALLY, A MONTH TO GET ALL YOUR DOCUMENTS PULLED
12 TOGETHER.
13           MR. BROOKS:  THAT ACTUALLY GIVES US LESS THAN A
14 MONTH.
15           THE COURT:  LESS AN MONTH.  HOW BIG IS YOUR FIRM?
16           MR. BROOKS:  I AM IN-HOUSE AT COUNTRYWIDE.  I AM ONE
17 OF THREE IN-HOUSE LAWYERS IN THE COMPANY, IN THE LITIGATION
18 DEPARTMENT.
19           THE COURT:  OKAY.  YOU MAY HAVE TO GET AN OUTSIDE
20 FIRM TO HELP YOU WITH THIS.
21           MR. BROOKS:  CAN WE JUST BE CLEAR AS TO WHAT --
22           THE COURT:  I AM INTERESTED IN KNOWING WHAT
23 COUNTRYWIDE KNEW AND WHEN THEY KNEW IT ABOUT BAD ACTIVITIES,
24 SHADY ACTIVITIES OF ARGENT AND OF PARADA.  AND -- THIS IS --
25 AND I AM INTERESTED, EVEN IF THEY THOUGHT THEY WERE ANGELS, I

                                                                46

 1 WANT TO KNOW THE FULL EXTENT OF THE RELATIONSHIP, HOW MANY
 2 LOANS CAME OUT OF ARGENT, HOW MANY LOANS CAME OUT OF PARADA.  I
 3 WANT TO KNOW THE WHOLE RELATIONSHIP.  I THINK YOU OUGHT TO FIND
                            Page 38

Marcelos.txt

4 OUT THAT WHOLE RELATIONSHIP.

5        NOW, IT COULD TURN OUT THERE'S NO RELATIONSHIP, OR
6 IT'S SUCH AN INCONSEQUENTIAL THING THAT COUNTRYWIDE IS, IN
7 FACT, TOTALLY INNOCENT HERE.

8        MS. HOCHHAUSEN:  YOUR HONOR --

9        THE COURT:  BUT I'M NOT --

10       MS. HOCHHAUSEN:  I BEG YOUR PARDON.

11       YOUR HONOR, SINCE MR. MAHMUD IS THE BROKER WHOSE
12 LICENSE WAS USED HERE, MAY I ASK THAT ANY RELATIONSHIP BETWEEN
13 MAHMUD AND COUNTRYWIDE BE EXPLORED AS WELL?

14       THE COURT:  CORRECT.  GOOD.  THAT'S A GOOD ONE.  ADD
15 THAT ONE TO THE LIST.

16       MR. BROOKS:  YOUR HONOR?

17       THE COURT:  YES.

18       MR. BROOKS:  THIS IS TRULY A DAUNTING TASK.

19       THE COURT:  THERE MUST BE A HUGE RELATIONSHIP
20 BETWEEN ARGENT AND COUNTRYWIDE.

21       MR. BROOKS:  YOUR HONOR, I'M BEING REALISTIC AS TO
22 THE NUMBER OF, A, EMPLOYEES WE HAVE AND, B, THE NUMBER OF LOANS
23 THAT COUNTRYWIDE SERVICES.  WE HAVE 9 MILLION BORROWERS.

24       THE COURT:  YOU GO GIVE IT A TRY AND DO THE BEST YOU
25 CAN, AND WHEN WE COME BACK HERE FOR THE CASE MANAGEMENT
 ᴰ
                                                        47

1 CONFERENCE, IF THERE'S SOME THINGS THAT ARE STRAGGLING, WE CAN
2 DEAL WITH IT THEN.

3        MR. BROOKS:  YOUR HONOR, COULD I PROPOSE SOMETHING
4 ELSE, ESPECIALLY GIVEN THAT WE CAME HERE FOCUSED ON THE
5 INJUNCTION, AS OPPOSED TO THE DISCOVERY SCHEDULE, CAN WE COME
6 BACK FOR THE --

7        THE COURT:  NO.  NO.  WE'RE GOING TO DEAL WITH IT
8 NOW.

Page 39

Marcelos.txt

9        MR. BROOKS: CAN I AT LEAST PROPOSE SOMETHING?
10 GIVEN WHAT WE ARE BEING ASKED TO DO HERE, COULD I AT LEAST COME
11 BACK -- LET'S NOT ORDER ANY DEPOSITIONS ON DISCOVERY.

12        THE COURT: I'M GOING TO ORDER THE DEPOSITIONS. I
13 KNOW WHAT WILL HAPPEN IF I DON'T. THEY WON'T HAPPEN. LAWYERS
14 WON'T GET AROUND TO IT. THEY GET BUSY WITH SOMETHING ELSE, AND
15 IT WON'T HAPPEN.

16        MR. BROOKS: ALL I'M PROPOSING, YOUR HONOR, IS WE
17 COME BACK IN A MONTH FROM NOW, WHENEVER THE CASE MANAGEMENT
18 CONFERENCE IS, APRIL 17TH. DURING THAT TIMEFRAME I WILL MEET
19 AND CONFER WITH MS. HOCHHAUSEN AND MR. HALE AS TO THE SCOPE OF
20 DISCOVERY --

21        THE COURT: YOU'LL JUST COME BACK WITH A BUNCH OF
22 DISCOVERY DISPUTES. NO. PLEASE DON'T ASK THAT AGAIN.

23        YOU PRODUCE THESE DOCUMENTS BY THE 21ST. THE
24 DEPOSITIONS ARE GOING TO START THE WEEK OF THE 31ST AND RUN
25 THROUGH THE 4TH. THEN APRIL 7TH PLAINTIFF GETS DEPOSED. YOU
☐
                                                              48

1 CAN DEPOSE EVERYBODY IN THE ENTIRE FAMILY, AS FAR AS I'M
2 CONCERNED, WHATEVER THEY KNEW.

3        THEN THE --

4        MR. BROOKS: I'M SORRY, YOUR HONOR. WE'RE PRODUCING
5 DOCUMENTS ON THE 21ST OF MARCH?

6        THE COURT: TWENTY-FIRST OF MARCH. THEN THE
7 DEPOSITIONS OF YOUR PEOPLE START ON THE 31ST.

8        OKAY. NOW, I WANT YOU, MR. ROOD.

9        MR. ROOD: YES, YOUR HONOR.

10        THE COURT: YOU'VE GOT TO PRODUCE ALL THE DOCUMENTS.

11        MR. ROOD: I KNOW.

12        THE COURT: EVERYTHING YOU HAVE THAT HAS ANYTHING TO
13 DO WITH PARADA, WITH ARGENT. I'M TALKING ABOUT YOUR CLIENT,
                           Page 40

Marcelos.txt

14 WHATEVER HE KNEW ABOUT THIS PARTICULAR LOAN.

15          MR. ROOD:  I WILL.

16          THE COURT:  I'M SAYING TO YOU THERE, MR. MAHMUD,
17 DON'T DESTROY ANYTHING.  THAT WOULD BE A FEDERAL OFFENSE,
18 OBSTRUCTING JUSTICE.

19          THAT GOES FOR THE PLAINTIFFS, TOO.  DON'T DESTROY
20 ANYTHING.  YOU MUST KEEP ALL THE EVIDENCE.  COUNTRYWIDE AS
21 WELL.

22          ALL RIGHT.  SO THEN WE GET THESE DEPOSITIONS.  THE
23 PLAINTIFFS' DEPOSITIONS WILL TAKE PLACE THE WEEK OF APRIL 7TH.
24 I'M GOING TO ORDER THAT ALL THE DOCUMENTS THAT THEY'VE GOT THAT
25 HAVE ANYTHING TO DO WITH THIS PARTICULAR LOAN, ANYTHING THEY'VE
                                                        49

1 GOT TO BE PRODUCED BY MARCH 28TH.

2          MS. HOCHHAUSEN:  WE WILL DO THAT, YOUR HONOR.

3          THE COURT:  SO THEN WE'LL COME BACK HERE ON
4 APRIL 24TH AT 11:00 O'CLOCK.  AM I HERE THAT DAY?

5          THE CLERK:  YES.

6          THE COURT:  APRIL 24 AT 11:00 O'CLOCK, AND WE WILL
7 SEE WHERE WE ARE.

8          MS. HOCHHAUSEN:  YOUR HONOR, IN VIEW OF THE DELAY
9 THAT'S SOUGHT BY COUNTRYWIDE, MAY I BEG THE COURT'S INDULGENCE
10 TO KEEP THE BOND AS IT IS SO THAT THE MARCELOS DON'T TO HAVE
11 BORROW $5,000 AND DEPOSIT --

12          THE COURT:  ALL RIGHT.  ALL RIGHT.  BUT THEY'VE GOT
13 TO MAKE THE PAYMENTS.

14          MS. HOCHHAUSEN:  THANK YOU, YOUR HONOR.  I'M VERY
15 GRATEFUL.

16          THE COURT:  NOW, PROBABLY THIS -- MY GOAL HERE IS TO
17 SET THIS CASE UP SO IT CAN BE TRIED PROBABLY IN THE MONTH OF
18 JUNE SOMETIME, SO THAT WHENEVER -- YOU KNOW, SOMEBODY IS GOING
                        Page 41

Marcelos.txt

19 TO WIN, AND SOMEBODY IS GOING TO LOSE, AND THE PRELIMINARY
20 INJUNCTION SHOULD NOT BE USED AS A DEVICE FOR MAINTAINING THE
21 STATUS QUO AD INFINITUM.  WE ARE GOING TO GET TO THE BOTTOM OF
22 THIS QUICKLY.  SO PROBABLY IN JUNE, WE'LL HAVE A TRIAL, BUT
23 WE'LL DEAL WITH THAT ON APRIL 24TH.  I'M NOT GOING TO SET THAT
24 DATE YET.

25          YOU SHOULD BE DOING YOUR DISCOVERY ON BOTH SIDES,
0
                                                            50

1 AND THE REASON I'M GIVING YOU A SCHEDULE IS BECAUSE I'VE
2 LEARNED THE HARD WAY THAT WHAT WILL HAPPEN IS THAT BOTH SIDES
3 DRIFT OFF.  THEY GET BUSY ON SOMETHING ELSE.  THEY COME BACK
4 AND POINT THE FINGER AT EACH OTHER AND SAY THE OTHER SIDE IS
5 DRAGGING THEIR FEET ON DOCUMENTS, AND, THEREFORE, I CAN'T DO
6 THIS, AND I CAN'T DO THAT.

7          SO I'M JUST TELLING YOU HOW IT'S GOING TO BE.  I
8 WANT THIS TO HAPPEN, OR SOMETHING VERY CLOSE TO IT.

9          MS. HOCHHAUSEN:  YOUR HONOR, THE PLAINTIFFS WOULD
10 LIKE THE COURT'S INDULGENCE UNTIL MONDAY TO BRIEF THE TILA
11 ISSUES THAT THE COURT HAS RAISED SO THAT THE RECORD IS COMPLETE
12 AND WE CAN PROVIDE A CLEARER STATEMENT.

13          THE COURT:  I'M NOT GOING TO GO BACK AND CHANGE MY
14 RULING.

15          MS. HOCHHAUSEN:  I DON'T WANT YOU TO CHANGE YOUR
16 RULING.

17          THE COURT:  WHY ARE YOU TRYING TO BRIEF IT THEN?
18          MS. HOCHHAUSEN:  BECAUSE I THINK IT WILL BE USEFUL
19 FOR THE REST OF THE CASE.

20          THE COURT:  ALL RIGHT.  IF YOU CAN GET ME SOME LIKE
21 LEGAL MEMORANDUM THAT WILL EXPLAIN WHAT YOU'RE -- THE RELIEF
22 THAT YOU'RE ULTIMATELY LOOKING FOR AT THE END OF THE CASE AND
23 HOW YOU GET TO IT, THAT WOULD BE VERY GOOD.

Marcelos.txt

24          MS. HOCHHAUSEN:  THANK YOU, YOUR HONOR.

25          THE COURT:  YOU CAN HAVE -- THAT WOULD BE NICE TO
▯
                                                        51


 1 HAVE.

 2          MS. HOCHHAUSEN:  WHEN WOULD YOU LIKE TO HAVE THAT,

 3 YOUR HONOR?

 4          THE COURT:  WELL, TAKE YOUR TIME.  I WOULD SAY THE

 5 END OF NEXT WEEK.

 6          MS. HOCHHAUSEN:  THANK YOU, YOUR HONOR.  WE'LL DO

 7 THAT.

 8          MR. BROOKS:  YOUR HONOR, MAY I MAKE JUST ONE LAST

 9 POINT?  THE COURT INITIALLY REQUIRED A $20,000 BOND, REDUCED IT

10 TO 10,000, NOW IT REDUCED IT TO EVEN FURTHER.

11          THE COURT:  THAT IS BECAUSE OF ALL THE DELAYS YOU

12 BEGGED THE COURT FOR AND I GAVE IT TO YOU.  I WANTED THIS ALL

13 VERY HURRIED UP.  NO, NO, NO.  IT'S DELAY, DELAY, DELAY.

14          MR. BROOKS:  AGAIN, YOUR HONOR, WE'RE NOT ASKING FOR

15 A DELAY HERE.  WE'RE JUST ASKING -- I JUST WANT THE COURT AND

16 THE PARTIES TO UNDERSTAND THAT, GIVEN THE NUMBER OF LOANS THAT

17 WE HAVE, I'M JUST CONCERNED ABOUT BEING ABLE TO COMPLY WITH THE

18 SCHEDULE, YOUR HONOR.  I WOULD AGAIN ASK THE COURT'S

19 INDULGENCE, LET'S PUT THIS ALL OVER FOR ONE MONTH AND GIVE US

20 AN OPPORTUNITY TO CONFER AS TO THE SCOPE --

21          THE COURT:  I KNOW HOW MUCH MEETING AND

22 CONFERRING -- AS SOON AS YOU LEAVE THIS COURTROOM, THERE WILL

23 BE ONE PHONE CALL, AND IT GOES INTO NOWHERESVILLE.

24 SOMETIMES -- YOU LAWYERS MAKE A LOT OF MONEY, VERY HIGHLY PAID.

25 SOMETIMES YOU HAVE TO WORK AND BURN THE MIDNIGHT OIL.  SO, I'M
▯
                                                        52


 1 SORRY, BUT THIS IS GOING TO BE MAYBE 14 HOUR DAYS FOR YOU FOR A
                              Page 43

Marcelos.txt
2 WHILE.

3          MR. BROOKS:  WOULD THE COURT --

4          THE COURT:  YOU WILL HAVE TO GET AN OUTSIDE LAW FIRM
5 TO COME IN AND HELP.

6          MR. BROOKS:  WILL THE COURT BE ISSUING AN ORDER?

7          THE COURT:  I AM NOT GOING TO ISSUE IT INASMUCH
8 DETAIL AS I'VE GIVEN IT TO YOU TODAY, BUT I WILL ISSUE A SHORT
9 WRITTEN ORDER.  I'M NOT GOING BACK INTO EVERYTHING I'VE GONE
10 INTO HERE.

11         MR. BROOKS:  WILL THAT WRITTEN ORDER DETAIL THE
12 DOCUMENTS THE COURT EXPECTS COUNTRYWIDE TO PRODUCE BY THE 21ST?

13         THE COURT:  I DON'T THINK SO.  I'VE TOLD YOU WHAT
14 THEY ARE.

15         MR. BROOKS:  IT'S THE DOCUMENTS BETWEEN COUNTRYWIDE
16 AND ARGENT ON THE ONE HAND AND COUNTRYWIDE AND PARADAS ON THE
17 OTHER HAND SUGGESTING ANY POTENTIAL WRONGDOING?

18         THE COURT:  I THINK IT'S BROADER THAN THAT.  AND
19 PLEASE DON'T TRY ANY TRICKS ON ME AND TRY TO REDEFINE IT.  I
20 TOLD YOU WHAT IT WAS EARLIER.  ORDER A TRANSCRIPT IF YOU DON'T
21 HAVE YOUR NOTES CLEAR.

22         MR. BROOKS:  I WILL, YOUR HONOR.

23         THE COURT:  NOW, IF YOU WANT TO ORDER -- IF YOU WANT
24 TO ASK FOR MORE DOCUMENTS BECAUSE -- THAT'S FINE.

25         MS. HOCHHAUSEN:  REST ASSURED, YOUR HONOR, WE WILL.
□
                                                              53

1          THE COURT:  THIS IS EXPEDITED.  YOU COULD ASK FOR
2 MORE DOCUMENTS, AND SO CAN COUNTRYWIDE.  THEY CAN ASK YOU FOR
3 DOCUMENTS.

4          BUT I JUST KNOW THE ONES I HAVE CALLED OUT ARE VERY
5 RELEVANT AND OUGHT TO BE PRODUCED, AND I WANT TO JUST HEAD OFF
6 ANY DISCUSSION OR DISPUTES OVER THAT.  YOU CAN PROBABLY THINK

Marcelos.txt
7 OF A FEW EXTRA DOCUMENTS, AND THAT'S FINE.  YOU CAN ASK FOR

8 THEM.

9            MS. HOCHHAUSEN:  THANK YOU, YOUR HONOR.

10           THE COURT:  BUT PLEASE DO NOT, PLEASE DO NOT CHANGE

11 THE DEPOSITION DATES WITHOUT MY PERMISSION.

12           MS. HOCHHAUSEN:  YES, YOUR HONOR.

13           THE COURT:  YOU ARE GOING -- BOTH OF YOU ARE GOING

14 TO HAVE TO PUT YOUR HEADS TOGETHER TO FIGURE OUT WHO ARE THE

15 PEOPLE TO DEPOSE AT COUNTRYWIDE.  SO THERE'S GOING TO HAVE TO

16 BE SOME GOOD FAITH NEGOTIATIONS ON THAT.  YOU NEED TO WORK

17 MR. MAHMUD INTO WHEN HIS DEPOSITION IS GOING TO BE.  DO YOU

18 WANT ME TO SET THE DATE NOW?

19           MR. ROOD:  I AM SURE WE CAN WORK IT OUT, YOUR HONOR,

20 DURING THAT TIMEFRAME.

21           THE COURT:  ALL RIGHT.  YOU WORK IT OUT DURING THAT

22 TIMEFRAME.

23           MR. ROOD:  SURE.

24           THE COURT:  I HAVEN'T GIVEN YOU A DATE FOR PRODUCING

25 YOUR DOCUMENTS.  LET'S PRODUCE THEM ON THE SAME DAY, MARCH 21.
  

                                                      54


1            MR. ROOD:  DONE.

2            THE COURT:  AND SOMETIME THE WEEK OF THE 24TH OR THE

3 WEEK OF THE 7TH, HE'S GOT TO BE DEPOSED.

4            WE'LL KEEP THE INJUNCTION IN PLACE FOR THE TIME

5 BEING.  OF COURSE, IT GOES WITHOUT SAYING, BUT I'M GOING TO SAY

6 IT, THERE CAN BE NO ALIENATION OF THIS PROPERTY.

7            MS. HOCHHAUSEN:  OF COURSE.

8            THE COURT:  NO DAMAGE DONE TO THE PROPERTY.  IT'S

9 GOT TO BE MAINTAINED IN GOOD ORDER, BECAUSE RIGHT NOW IT IS

10 SECURITY INTEREST FOR A LOAN.

11           ALL RIGHT.  WHAT MORE DAMAGE CAN I DO TO BOTH SIDES
                          Page 45

Marcelos.txt

12 BEFORE WE ADJOURN?

13          MR. ROOD:  YOU HAVEN'T DONE ENOUGH TO ME YET.

14          THE COURT:  ALL RIGHT.  WHAT WOULD YOU LIKE?

15          MR. ROOD:  GIVE ME AN INJUNCTION, I DON'T KNOW.

16          THE COURT:  WELL, YOU DON'T DESERVE AN INJUNCTION

17 YET.

18          MR. ROOD:  ALL RIGHT.  THANK YOU.

19          THE COURT:  AND, MS. KATZ, I GUESS YOU ARE JUST A

20 LUCKY BYSTANDER, AREN'T YOU?

21          MS. KATZ:  I'M KEEPING MY MOUTH CLOSED, YOUR HONOR.

22          THE COURT:  WHAT FIRM ARE YOU WITH?

23          MS. KATZ:  WITH SHARTSIS FRIESE.

24          THE COURT:  GIVE MY REGARDS TO ALL MY FRIENDS, I

25 HOPE THEY ARE STILL MY FRIENDS, AT THAT LAW FIRM.

55

1          MS. KATZ:  I CERTAINLY WILL.

2          THE COURT:  OKAY.  I THINK WE ARE DONE FOR NOW.

3 WHAT WAS THE DATE AGAIN THAT I'LL SEE EVERYONE BACK?

4          MR. BROOKS:  APRIL 24TH.

5          THE COURT:  ALL RIGHT.

6          WOULD YOU -- I'M GOING TO ASK YOU, MS. HOCHHAUSEN,

7 TO SEND A LETTER TO THE LAST KNOWN ADDRESS OF THE PARADAS, AND

8 JUST SAY THAT THE COURT HAD ORDERED THEM TO BE PRESENT, THEY

9 WERE NOT PRESENT, AND THAT THE COURT ASKED YOU TO CONVEY THE

10 DISAPPOINTMENT OF THE COURT THAT THEY DID NOT APPEAR.

11          NOW, WHEN YOU DEPOSE THEM, AND YOU WILL HAVE TO --

12 YOU SHOULD BE DEPOSING THEM DURING THIS TIME PERIOD, BOTH OF

13 THEM.  YOU ARE PROBABLY GOING TO HAVE TO SUBPOENA THEM AGAIN TO

14 GET THEM THERE, BECAUSE THEY HAVE NOT MADE AN APPEARANCE IN THE

15 CASE.

16          MS. HOCHHAUSEN:  WE'LL MAKE EVERY EFFORT TO FIND

Page 46

Marcelos.txt
17 THEM, YOUR HONOR, AND SUBPOENA THEM.  I WILL DRAFT AND SEND THE

18 LETTER AS THE COURT DIRECTED AND COPY THE COURT.

19          THE COURT:  NOW, IF THEY -- I DON'T KNOW IF SERVICE

20 ON A GIRLFRIEND IS GOOD ENOUGH.  WHERE IS THAT IN THE CODE?

21          MS. HOCHHAUSEN:  A PERSON OF REASONABLE AGE AND

22 DISCRETION, YOUR HONOR, AT THE RESIDENCE OF THE DEFENDANT.

23          THE COURT:  WELL, IT MAY BE THAT'S GOOD ENOUGH, I

24 DON'T KNOW.

25          BUT IF YOU DO PROPER SERVICE OF A SUBPOENA AND IT IS

                                                              56

1 PROPER, AND YOU'VE CONVINCED ME OF THAT, AND HE DOES NOT SHOW

2 UP FOR HIS DEPOSITION, AND YOU SWEAR TO ALL OF THAT IN COURT,

3 WE WILL SEND THE U.S. MARSHALS TO FIND THEM, AND THEY WILL BE

4 IN CUSTODY UNTIL THEIR DEPOSITIONS ARE COMPLETED.

5          MS. HOCHHAUSEN:  YES, YOUR HONOR.

6          THE COURT:  SO NO ONE IS GOING TO THUMB THEIR NOSE

7 AT THE AUTHORITY OF THE COURT TO GET TO THE BOTTOM OF WHAT

8 HAPPENED HERE.  ALL RIGHT?

9          MS. HOCHHAUSEN:  THANK YOU, YOUR HONOR.

10          THE COURT:  BUT IT HAS TO BE PROPER SERVICE TO MAKE

11 ALL THAT WORK RIGHT.

12          ALL RIGHT.  WE ARE NOW IN RECESS.  THANK YOU.

13          (PROCEEDINGS ADJOURNED.)

14

15

16

17

18

19

20

21

Marcelos.txt

22

23

24

25
☐

                                                        57

 1

 2

 3                    CERTIFICATE OF REPORTER

 4         I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE

 5  UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

 6  CERTIFY THAT THE FOREGOING PROCEEDINGS IN C 08-00056 WHA,

 7  RICARDO MARCELOS V. EDWIN MAURICIO PARADA DOMINGUEZ, ET AL.,

 8  WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE

 9  THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING;

10  THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID

11  PROCEEDINGS AS BOUND BY ME AT THE TIME OF FILING.

12         THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

13  TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

14  COURT FILE.

15

16         _____

17            JOAN MARIE COLUMBINI, CSR 5435, RPR

18               THURSDAY, FEBRUARY 28, 2008

19

20

21

22

23

24

25
☐=