# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

STUART BELFELD and MARIANNE BELFELD, )
)
Plaintiffs, )
) 1:07-cv-00143-GJQ
v. )
)
ARGENT MORTGAGE COMPANY, LLC; ) Judge Gordon J. Quist
DEUTSCHE BANK NATIONAL TRUST )
COMPANY, N.A.; WELLS FARGO )
BANK, N.A., as Trustee; )
GMAC MORTGAGE CORPORATION; )
and DOES 1-5, )
) **JURY DEMANDED**
Defendant. )

## AMENDED COMPLAINT

### INTRODUCTION

1. Plaintiffs Stuart Belfeld and Marianne Belfeld bring this action against a "subprime" mortgage lender and its assignees to rescind two mortgages for violations of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; and the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. ("ECOA").

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §§1640 (TILA) and 1691e (ECOA).

3. Defendants do business in the District, have numerous offices within the District, and are deemed to reside here. Venue is therefore proper under 28 U.S.C. §1391(c).

## PARTIES

4. Plaintiffs Stuart Belfeld and Marianne Belfeld are husband and wife and jointly own and reside in a home at 22471 Fairfax Street, Taylor, MI 48180.

5. Defendant Argent Mortgage Company, LLC is a foreign corporation which maintains offices in and does business in Michigan. Its registered agent and office are National Registered Agents, Inc., 712 Abbott Road, East Lansing, MI 48823.

6. Defendant Argent Mortgage Company, LLC is engaged in the business of originating "subprime" mortgages.

7. Defendant Argent Mortgage Company, LLC makes more than 26 loans per year.

8. Defendant Argent Mortgage Company, LLC is a "creditor" as defined in TILA and Regulation Z.

9. Defendant Argent Mortgage Company, LLC is an affiliate of Ameriquest Mortgage Company.

10. During 1999-2003, Ameriquest was the third largest subprime lender by volume, with $61.8 billion in total originations during the period. Ameriquest is the largest "direct to consumer" subprime mortgage originator in the United States. During the first half of 2004, Ameriquest originated over $16 billion in loans, representing a 76% rise over the same period in 2003.

11. Deutsche Bank National Trust Company, N.A., is a federally chartered bank located at 60 Wall Street, New York, NY. On information and belief, it holds legal title, probably as trustee, to the smaller of plaintiffs' two loans.

12.  Wells Fargo Bank, N.A., is an entity that holds title, as trustee, to some loans originated by defendant Argent. It holds title to the larger of plaintiffs' two loans. It may be found at 9062 Old Annapolis Road, Columbia, Maryland, 21045.

13.  Defendant GMAC Mortgage Corporation is a foreign corporation which transacts business in Michigan. It is engaged in the business of servicing residential mortgages. Its registered agent and office are CSC-Lawyers Incorporating Service, 601 Abbott Road, East Lansing, MI 48823.

15.  Does 1-5 are any other entities, currently unknown, that have or claim an interest in plaintiffs' loans.

## FACTS RELATING TO PLAINTIFFS

16.  In January 2005, plaintiffs applied for a mortgage loan, through a mortgage broker, to Argent Mortgage Company, LLC ("Argent"). Abe Nelson, an employee of the broker, took plaintiffs' application information over the phone.

17.  Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

18.  Mr. Nelson said that he could get a 30-year fixed loan for plaintiffs. Mr. Nelson said nothing about two loans in an 80/20 split mortgage.

19.  At the scheduled closing on March 14, 2005, plaintiffs discovered that instead of the single fixed rate loan requested, plaintiffs were given two loans, one for 80% of the amount sought and one for 20%, with an adjustable rate loan for the larger portion and a

3

fixed rate for the smaller.

20. Because the mortgage broker received a yield spread premium in connection with the March 14, 2005 transaction (Exhibit D, line 812), its actions are imputable to Argent.

21. Immediately prior to the closing, plaintiffs were informed by Argent that the terms for the 80% loan were being altered to their detriment, as set forth on Exhibit A.

22. Mr. Nelson explained that Argent would treat the loans as one loan, and only charge one set of closing costs. He further said that they needed to do the loan that way and that it was standard procedure.

23. When plaintiffs hesitated, Mr. Nelson said, "We need to take care of this today in order for you to get the loan; otherwise, your rate will go way up or we won't be able to do the loan at all."

24. Plaintiffs reluctantly signed the documents on the 80% loan on March 14, 2005.

25. The following are documents relating to the 80% March 14, 2005 loan:

    a. An adjustable rate note, Exhibit B. Only Mr. Belfeld signed the note.

    b. A mortgage, Exhibit C. Both Mr. and Mrs. Belfeld signed the mortgage.

    c. A settlement statement, Exhibit D.

4

  d. A Truth in Lending statement, <u>Exhibit E</u>.

  e. The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit F</u>.

26. Plaintiffs were later directed to make payments on the 80% loan to Countrywide Home Loans, Inc.

27. Two to three weeks after the 80% loan closed, Mr. Nelson told plaintiffs that he could get the 80% loan and the remaining 20% loan rolled into one loan, as long as plaintiffs came in and signed on the 20% loan.

28. Mr. Nelson said, "In a few months, we'll roll this into one loan rather than two."

29. Plaintiffs signed on the 20% loan because they were under the impression that the loans would be consolidated into one loan within a few months.

30. Immediately prior to the closing, plaintiffs were informed by Argent that the terms for the 20% loan were being altered to their detriment, as set forth on <u>Exhibit G</u>.

31. The following are documents relating to the 20% loan:

  a. A fixed rate note, <u>Exhibit H</u>. Only Mr. Belfeld signed the note.

  b. A mortgage, <u>Exhibit I</u>. Both Mr. and Mrs. Belfeld signed the mortgage.

  c. A settlement statement, <u>Exhibit J</u>.

   d.  A Truth in Lending statement, <u>Exhibit K</u>.

   e.  The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit L</u>.

  32.  The documents for the 20% loan are misdated to represent that the closing took place on March 14, 2005 instead of a few weeks later.

  33.  A month after plaintiffs closed on the 20% loan, both loans were sold. Plaintiffs were directed to make payments on the 20% loan to GMAC Mortgage Corporation.

  34.  Argent never honored its promise to roll both loans into one loan.

  35.  On information and belief, Deutsche Bank National Trust Company, N.A., as trustee, owns plaintiffs' 20% loan.

  36.  On information and belief, either Wells Fargo Bank, N.A.., as trustee, holds title to plaintiffs' 80% loan.

  37.  To the extent any ownership information for either loan is incorrect (actual ownership is rarely if ever shown of record), the actual owners are named as Does 1-5.

### COUNT I – TILA

  38.  Plaintiffs incorporate paragraphs 1-37.

  39.  In order to give consumer borrowers the opportunity to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until

midnight of the third business day following the consummation of the transaction or three days of receiving notice of their right to rescind, whichever is later. More specifically, the statute, provides that:

> **Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. (15 U.S.C. § 1635(a)).**

40.     To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> **When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. (15 U.S.C. § 1635(b).)**

41.     To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> **The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also**

7

provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section. (15 U.S.C. § 1635(a).)

42.     Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person entitled to rescind "two copies" of a document that "clearly and conspicuously disclose" 12 C.F.R. § 226.23(b)(1) the borrower's rescission rights.

43.     More specifically, the regulation provides:

**In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**(i) The retention or acquisition of a security interest in the consumer's principal dwelling.**

**(ii) The consumer's right to rescind the transaction.**

**(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

**(iv) The effects of rescission, as described in paragraph (d) of this section.**

**(v) The date the rescission period expires. (12 C.F.R. § 226.23(b)(1).)**

### DEFECTIVE NATURE OF DISCLOSURES

44.     In connection with plaintiffs' loans, Argent Mortgage Company, LLC

8

failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, for (without limitation) the following reasons:

45. Exhibit F and Exhibit L are inherently confusing with respect to who has a right to cancel in a case in which less than all of the persons signing the mortgage sign the note. The confusing portions were added by Argent to the official Federal Reserve Board text.

46. The top of Exhibit F and Exhibit L have only Mr. Belfeld's name on it, and is addressed to "borrower(s)." The text is addressed to "You," which is reasonably interpreted as applying to the individual whose name appears directly above. The bottom of the form states that "Each borrower" has the right to cancel, which is reasonably interpreted as meaning the persons named as "borrower(s)" at the top of the document. While there are signature lines for both plaintiffs at the bottom of the form, they are there described as "Borrower/ Owner," which presumably means something different than just "borrower."

47. The statute gives not only each person obligated to repay the loan but each person who resides in and has an ownership interest in the property the right to cancel, and requires a notice that unequivocally tells each such person that they have the right to cancel.

48. Exhibit L is misdated, as plaintiffs did not close on the loan until several weeks after the filled-in closing date.

## **REMEDIES**

49. One remedy for disclosure violations of 15 U.S.C. § 1635 is statutory

damages pursuant to 15 U.S.C. § 1640. A plaintiff in a TILA case need not prove that he or she suffered actual monetary damages in order to recover statutory damages. Nor is it necessary to show that the consumer was actually misled or deceived. The Truth in Lending Act allows a monetary recovery even if the disclosure violation caused the borrower no harm.

50. In an individual mortgage case, statutory damages are twice the finance charge, provided however that the damages may not be less than $200 or more than $2,000. In a class action, TILA provides that statutory damages are to be "such as the court may allow," with no minimum applicable to each class member and a total cap of either $500,000 or 1 percent of the creditor's net worth, whichever is lower.

51. Notice of rescission has been given to defendants. A copy is attached as <u>Exhibit M</u>.

52. The loans have not been rescinded.

53. Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

54. 15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

    a.    A judgment voiding plaintiffs' mortgages, capable of recordation in the public records, and binding on defendants;

    b.    Statutory damages for the underlying disclosure violation;

    c.    If appropriate, statutory damages for failure to rescind;

    d.    Attorney's fees, litigation expenses and costs.

    e.    Such other or further relief as the Court deems appropriate.

## COUNT II – ECOA

55    Mrs. Belfeld incorporates paragraphs 1-37.

56    On information and belief, the majority of the instances in which less than all owners of the property sign a note in favor of defendant are where a husband and wife own the property and only the husband signs the note.

57.    On information and belief, it is defendant's practice, if the wife does not have an income and/or her credit score is no better than the husband's, to prepare the loan documents in this manner.

58.    Defendant's practice thus impairs and obfuscates the cancellation rights of women, and married women particularly, because of their gender and marital status, in violation of the ECOA's prohibition against discrimination on such bases.

WHEREFORE, plaintiff Mrs. Belfeld requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

    a.    Appropriate statutory and punitive damages;

    b.      Attorney's fees, litigation expenses and costs.

    c.      Such other or further relief as the Court deems appropriate.

### COUNT III – MICHIGAN MORTGAGE BROKERS, LENDERS AND SERVICERS LENDING ACT

59.    Plaintiffs incorporate paragraphs 1-37. This claim is against Argent.

60.    Defendant engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by engaging in a "bait and switch" practice: promising plaintiffs that they would roll plaintiffs' two loans into a single loan, and then failing to do so.

61.    Defendant also engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by engaging in a "bait and switch" practice: promising plaintiffs a fixed-rate mortgage, and then giving plaintiffs an adjustable rate on their 80% loan.

62.    Furthermore, defendant engaged in fraud, deceit and material misrepresentation, in violation of MCL §445.1672(b), by engaging in a "bait and switch" practice: representing at the closing of March 14, 2005 that plaintiffs' settlement charges would be $7,723.71 (Exhibit D, line 1400), and then a couple weeks later charging plaintiffs another $466.12 in closing costs (Exhibit J, line 1400).

63.    Defendant made these representations for the purpose of inducing plaintiffs' reliance in the form of plaintiffs taking out the loan. Defendant did this in order to increase the lender's "points and fees," interest and profits.

64.    Plaintiffs were induced to borrow a loan from defendant by means of these

and other misrepresentations and deceits described above.

      65.    Defendant made these representations in the course of trade and commerce.

      66.    Plaintiffs have suffered injuries as a result of defendant's misrepresentations.

WHEREFORE, the Court should enter judgment in favor of the plaintiffs and against Argent for:

    a.    A declaratory judgment, MCL §445.1681(1)(a);

    b.    Injunctive relief, MCL §445.1681(1)(b);

    c.    Appropriate damages, MCL §445.1681(1)(c)

    d.    Attorney's fees, litigation expenses and costs of suit; and

    e.    Such other and further relief as the Court deems proper.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

> s/Daniel A. Edelman
> Daniel A. Edelman

T:\17317\Pleading\AmendedComplaint_Pleading.WPD