1   Sanford Shatz (SBN: 127229)
    David A. Brooks (SBN: 179716)
2   5220 Las Virgenes Road, MS: AC-11
    Calabasas, California 91302
3   Telephone:  (818) 871-6073
    Facsimile:   (818) 871-4669
4   *David_Brooks@Countrywide.com*

5   Attorneys for Defendants
    Countrywide Home Loans, Inc., and
6   Recontrust Company, N.A.

7   BUCHALTER NEMER
    A Professional Corporation
8   Jason E. Goldstein (SBN: 207481)
    David M. Liu (SBN: 216311)
9   18400 Von Karman Avenue, Suite 800
    Irvine, California 92612-0514
10  Telephone:  (949) 760-1121
    Facsimile:   (949) 720-0182
11  *jgoldstein@buchalter.com*
    *dliu@buchalter.com*
12

13  Attorneys for Defendants
    Argent Mortgage Company, LLC and
14  Countrywide Home Loans, Inc.

15              UNITED STATES DISTRICT COURT

16      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

17

18  RICARDO MARCELOS,                          Case No.:  CV 08-00056 WHA

19              Plaintiff,                     DEFENDANT COUNTRYWIDE HOME
                                               LOAN, INC.'S NOTICE OF MOTION AND
20      v.                                     MOTION TO DISMISS PURSUANT TO
                                               FEDERAL RULE OF CIVIL PROCEDURE
21  EDWIN MAURICIO PARADA                      12(b)(6); MEMORANDUM OF POINTS AND
    DOMINGUEZ; GLENDA PARADA;                  AUTHORITIES IN SUPPORT
22  LORENZO PARADA; VIKI RAAB;
    COUNTRYWIDE HOME LOANS; ARGENT             [Concurrently filed with Request for Judicial
23  MORTGAGE COMPANY, LLC;                     Notice; and [Proposed] Order]
    PRIMESTAR FINANCIAL SERVICES;
24  SHOAIB MAHMUD; FINANCIAL TITLE             Date:    July 3, 2008
    COMPANY; NEW CENTURY TITLE                 Time:    8:00 a.m.
25  COMPANY; RECONSTRUCT COMPANY,              Place:   Courtroom 9
    N.A.; AND DOES 1 THROUGH 100,
26
                Defendants.
27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE                                                          CV 08-00056 WHA

        DEF. COUNTRYWIDE HOME LOAN'S NOTICE AND RULE 12(b)(6) MOTION TO DISMISS

1      TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE THAT on July 3, 2008, at 8:00 a.m., in Courtroom 9 of the

3 above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102,

4 defendant Countrywide Home Loans, Inc. ("Countrywide") moves for an order dismissing certain

5 claims for relief in the first amended complaint of plaintiff Ricardo Marcelos ("Plaintiff").

6      This motion is based on Federal Rule of Civil Procedure 12(b)(6) because certain of

7 Plaintiff's claims fail to state a claim upon which relief can be granted:

8      1)     The first claim for relief for Countrywide's alleged violation of the Truth in

9 Lending Act fails because, as the servicer of the loan, Countrywide is not imputed with any

10 assignee liability;

11      2)     The third claim for relief for Countrywide's alleged fraud and deceit against

12 Plaintiff fails to state a claim for, among other reasons, it fails to satisfy the particularity

13 requirements of Federal Rule of Civil Procedure 9(b). Specifically, there is no allegation of any

14 representation, let alone a misrepresentation, by a Countrywide employee or agent;

15      3)     The fourth claim for relief for aiding and abetting fraud fails for, among other

16 reasons, Countrywide was not involved in the loan origination and therefore could not have

17 known or acted to assist the Paradas in allegedly stealing money from Plaintiff;

18      4)     The seventh claim for relief for alleged violation of California Business and

19 Professions Code section 17200 fails because Countrywide has not acted unfairly, unlawfully or

20 fraudulently in servicing Plaintiff's loan, and Plaintiff has failed to allege that he lost any money

21 or property due to Countrywide's conduct; and

22      5)     The claim for punitive damages in the fraud and deceit claim is barred because the

23 claim is insufficiently pled, and the claim for punitive damages in the TILA cause of action is

24 barred because TILA does not provide for punitive damages.

25

26

27

28

1    This motion is based upon this notice, the attached memorandum of points and authorities,

2  the concurrently filed request for judicial notice, and upon such further evidence as may be

3  presented at the time of the hearing.

4  DATED:  May 22, 2008                    BUCHALTER NEMER
                                           A Professional Corporation
5

6

7                                          By:  _____/s/ Jason E. Goldstein_____
                                               JASON E. GOLDSTEIN
8                                              Attorneys for Defendants
                                               ARGENT MORTGAGE COMPANY, LLC and
9                                              COUNTRYWIDE HOME LOANS, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2    I.    <u>INTRODUCTION</u>

3    Defendant Countrywide Home Loans, Inc. ("Countrywide") is the servicer of Plaintiff

4    Ricardo Marcelos' ("Plaintiff") loan that is the subject of this action. That's it. Countrywide had

5    nothing whatsoever to do with the origination of Plaintiff's loan and has never owned Plaintiff's

6    loan. As a result of Countrywide only being the servicer of Plaintiff's loan, i.e., it collected the

7    payments thereon, there is absolutely no basis (factual or otherwise) for Countrywide to remain in

8    the Truth-In-Lending Act ("TILA") claim, the fraud claim, the aiding and abetting fraud claim

9    and the Business & Professions Code § 17200 claim ("Section 17200").

10    Accordingly, Countrywide respectfully requests that each of the aforementioned causes of

11    action alleged against it be dismissed, with prejudice, as well as the punitive damage allegations

12    stricken.

13    II.    <u>FACTUAL BACKGROUND</u>

14    A.    <u>Plaintiff Uses His Independent Broker To Refinance His Property Through Argent.</u>

15    Plaintiff resides at the real property located at 4023 Folsom Street in San Francisco (the

16    "Folsom Property"). *See* FAC., ¶ 26. In February 2005, defendant Edwin Parada contacted

17    Plaintiff regarding a possible refinance loan for the Folsom Property. *See id.* at ¶ 29. defendant

18    Edwin Parada "pursued" Plaintiff with telephone calls and unannounced visits to the Folsom

19    Property. *See id.* at ¶ 30. Defendant Edwin Parada "ultimately persuaded [Plaintiff] to open an

20    equity line of credit to purchase a second home." *See id.* at ¶ 31. In March 2005, defendant

21    Lorenzo Parada and a female notary met with Plaintiff to sign loan documents. *See id.* at ¶ 34.

22    Plaintiff does not know if he signed loan documents for the Folsom Property or for another

23    property purchased for investment purposes – the real property located at 274 Girard Street in San

24    Francisco (the "Girard Property"). *See id.*

25    Defendant Argent Mortgage Company, LLC ("Argent"), funded the loan for the Folsom

26    Property. *See id.* at ¶ 16. Defendant Edwin Parada retained approximately $200,000 in loan

27    proceeds from the refinance of the Folsom Property and he provided a small amount of these

28    funds (about $9,000) to Plaintiff. *See id.* at ¶¶ 43.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

DEF. COUNTRYWIDE HOME LOAN'S NOTICE AND RULE 12(b)(6) MOTION TO DISMISS

B.    Countrywide Is Not Involved in the Refinance Transaction For The Folsom Property

As admitted by Plaintiff, Countrywide "is the current servicer of the loan." *See id.* at ¶ 4. No allegations exist (and no facts exist) that Countrywide negotiated or was otherwise involved with the refinance transaction for the Folsom Property. There are no allegations that Countrywide funded the loan or was in any way connected with any of the alleged defendant mortgage brokers (ND Financial dba Primestar, Shoaib Mahmud or any of the Paradas). There are no allegations that Countrywide failed to provide any documents to Plaintiff in connection with the loan or that Countrywide itself did anything that was in anyway improper.

Countrywide's involvement with Plaintiff involved accepting Plaintiff's loan payments and responding to the Plaintiff's wife's request for documents – a request that Countrywide complied with. *See id.* at ¶¶ 40, 46. That is it.

C.    This Court Enjoins the Foreclosure of the Folsom Property.

Beginning in December 2007, foreclosure proceedings began against the Folsom Property with a foreclosure sale scheduled for January 7, 2008. *See id.* at ¶ 42. This action was filed on January 4, 2008 seeking, among other things, an injunction to prevent the sale of the Folsom Property. On January 7, 2008, this Court issued a temporary restraining order to halt the foreclosure sale.

D.    Countrywide Moves to Dismiss the Complaint

On February 11, 2008, Countrywide filed its Rule 12(b)(6) motion to dismiss the complaint. Defendant Argent and defendant New Century Title also filed their motions to dismiss. The Court heard argument on the motions to dismiss on April 10, 2008 and entered its order granting in part, and denying in part, the motions to dismiss.

The Court dismissed certain claims without leave to amend. The Court also permitted leave to amend the claims for fraud and unfair competition under Section 17200.

1    E.    The First Amended Complaint

2    On May 12, 2008, Plaintiff filed his First Amended Complaint ("FAC"). The allegations

3    against Countrywide include amended claims for alleged violation of TILA, alleged violation of

4    California Civil Code section 1632, fraud, and alleged unfair business practices pursuant to

5    Section 17200. The FAC also adds a claim for alleged aiding and abetting fraud against

6    Countrywide (and Argent).

7    III.    ARGUMENT

8    A.    The Court May Dismiss The Claims Against Countrywide

9    Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed where

10    there is a lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable

11    legal theory. *See Ballistereri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

12    Although a Court must assume that a plaintiff's allegations are true on a motion to dismiss, the

13    Court may disregard conclusory allegations and unreasonable inferences. *See Transphase Sys. v.*

14    *Southern Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993). Moreover, the Court does not

15    assume the truth of legal conclusions which are cast in the form of factual allegations. *See*

16    *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).

17    B.    The Alleged TILA Violations Cannot Be Imputed to Countrywide Which Is Only

18        A Servicer Of The Loan

19    Plaintiffs first claim against Countrywide is for alleged TILA violations. This claim fails

20    as a matter of law.

21    15 U.S.C. § 1641(f)(1) provides that:

22    "A servicer of a consumer obligation arising from a consumer
     credit transaction <u>shall not be treated as an assignee of such</u>
23    <u>obligation for purposes of this section unless the servicer is or was</u>
     <u>the owner of the obligation.</u>" [Emphasis added]

24
25    Here, the sole basis of Plaintiff's TILA claims as to Countrywide are based on

     Countrywide being the alleged servicer of Plaintiff's loan. *See* FAC, ¶ 4. The allegation in
26
     paragraph 54 of the FAC that Countrywide is purportedly a "successor-in-interest within the
27
     meaning of TILA" is nothing but a legal conclusion that cannot be considered true on a motion to
28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

DEF. COUNTRYWIDE HOME LOAN'S NOTICE AND RULE 12(b)(6) MOTION TO DISMISS

1  dismiss. Moreover, it appears to be a deliberate distortion of Countrywide's judicially admitted

2  status as the servicer of Plaintiff's loan. *See also* Countrywide's Request for Judicial Notice

3  Exhibit "1" which demonstrates that Countrywide is not the owner of Plaintiff's loan.

4      Since Countrywide was never the owner of Plaintiff's loan – only its servicer - there are

5  absolutely no facts alleged in the FAC to support TILA liability as to Countrywide.

6      C.      The Claim for Fraud Fails as a Matter of Law

7          The elements for a fraud claim are: (1) a misrepresentation; (2) knowledge of the

8  falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage. *See Charpentier v. Los*

9  *Angeles Rams Football Co.*, 75 Cal. App. 4th 301 (1999). A plaintiff's burden in asserting a

10 fraud claim against a corporation, as opposed to an individual, is even greater. *Lazar v. Sup. Ct.*

11 (1996) 12 Cal.4th 631, 645. In such a case, the plaintiff must allege the name of the person who

12 made the allegedly fraudulent representations, their authority to speak, what they said or wrote

13 and when it was said or written. *Id. See also Sanders v. Ford Motor Co.* (1979) 96 Cal.App.3d

14 Supp. 43, 46.

15     Federal Rule of Civil Procedure 9 requires that "in all averments of fraud…, the

16 circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P.

17 9(b); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-1023 (9th Cir. 2000) (fraud must be pled

18 with a high degree of meticulousness). In short, a plaintiff must allege "the who, what, where,

19 and when of the alleged fraud." *Ackerman v. Northwestern Mutual Life Ins. Co.,* 172 F.3d 467,

20 469 (7th Cir. 1999). This rule requires a plaintiff to conduct a pre-complaint investigation in

21 sufficient depth to assure that the charge of fraud is responsible and supported, rather than

22 defamatory and extortionate. *Id.*

23     Vague or conclusory allegations do not satisfy the particularity required by Rule 9(b).

24 *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). "'To comply with

25 Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular

26 misconduct which is alleged to constitute the fraud charged so that they can defend against the

27 charge and not just deny that they have done anything wrong.' (citation omitted)." *Swartz v.*

28 *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)

1    Plaintiff's fraud claim must fail as a matter of law as to Countrywide.

2    First, the only allegation as to Countrywide with respect to the fraud claim is in paragraph

3    68: "As loan servicer, defendant Countrywide is liable for the fraud perpetrated by those who

4    came before it, namely Argent, under the Truth in Lending Act."

5    As discussed above, 15 U.S.C. § 1641(f)(1) specifically provides that there is no assignee

6    type liability that can be imposed upon a servicer under TILA.

7    Accordingly, Plaintiff has failed to state fact sufficient to constitute a fraud claim as to

8    Countrywide as a matter of law based on TILA.

9    Second, Plaintiff's fraud claim also fails to satisfy the requirements of Fed. R. Civ. P.

10    9(b) as to Countrywide and as to Argent (under which Plaintiff improperly seeks to impose fraud

11    liability upon Countrywide).[1]  In *Swartz*, the Ninth Circuit held that conclusory allegations were

12    insufficient to satisfy the pleading requirements prescribed by Fed. R. Civ. P. 9(b):

13    > "Conclusory allegations that Presidio and DB 'knew that [KPMG
     > and B & W] were making . . . false statements to clients, including
14    > Swartz, and thus were acting in concert with [KPMG and B & W]
     > and 'were acting as agents] [of KPMG and B&W] and were 'active
15    > participants in the conspiracy' without any stated factual basis are
     > insufficient as a matter of law." *Id.* At 765.
16

17    As in *Swarz*, it is simply not enough for Plaintiff to allege that Countrywide is responsible for the

     acts of Argent – Countrywide's role in the alleged fraudulent scheme has to be alleged.
18
     *Maganallez v. Hilltop Lending Corp.*, 505 F.supp.2d 594, 606 (N.D.Cal. 2007).  This, Plaintiff
19
     has failed to do.  Moreover, as held in *Swarz*, generic agency allegations do not suffice for facts.
20
     D.    The Claim for Aiding and Abetting Fraud Fails as a Matter of Law
21
     As Plaintiff's fraud claim fails against Countrywide, so does his claim for alleged aiding
22
     and abetting fraud.  Liability may be imposed on one who aids and abets the commission of an
23
     intentional tort only if the defendant:  (1) knew the other party's conduct constituted a breach of
24
     duty and gave substantial assistance or encouragement to the other to so act, or (2) gave
25
     substantial assistance to the other in accomplishing a tortious result and the person's own
26

27    ------
     [1] To the extent Plaintiff's FAC against Countrywide is based upon the alleged acts of Argent, Countrywide
28    incorporates herein by this reference as if set forth in full Argent's Motion To Dismiss Plaintiff's First Amended
     Complaint.

- 5 -                                    CV 08-00056 WHA

1   conduct, separately considered, constitutes a breach of duty to the third person. *See Casey v. U.S.*

2   *Bank Nat'l Ass'n* (2005) 127 Cal. App. 4th 1138, 1144.   To be liable as a cotortfeasor, a

3   defendant must have known that a tort had or would be committed and acted with the intent to

4   facilitate the tort. *See Gerard v. Ross* (1988) 204 Cal. App. 3d 968, 983.

5           With respect to the knowledge requirement, mere knowledge that a tort is being

6   committed and the failure to prevent the tort does not constitute aiding and abetting. *See Fiol v.*

7   *Doellstedt* (1996) 50 Cal. App. 4th 1318, 1326.   The pleader must allege that the aider and

8   abetttor had *actual knowledge* of the primary violation. *See Nielson v. Union Bank of Cal., N.A.,*

9   290 F.Supp.2d 1101, 1118-20 (C.D. Cal. 2003).   This is why in *Chance World Trading E.C. v.*

10  *Heritage Bank of Commerce*, 2005 WL 2989298, 5 (N.D.Cal. 2005), the Court held that, as a matter

11  of California law, a bank's failure to adhere to a two signature requirement which resulted in the

12  conversion of $200,000, cannot constitute actual knowledge of tortious activity.   Absent a special

13  relationship between the parties, there is no duty to control the conduct of a third person so as to

14  prevent him from harming another. *See Fiol, supra,* 50 Cal. App. 4th at 1326.

15          In *Casey, supra,* the trustee sued three banks alleging that the banks participated in a

16  scheme by the officers and directors of debtor to launder money stolen from debtor.   The trustee

17  alleged that the banks aided in the scheme by allowing accounts to be opened with invalid tax

18  identification numbers, which accounts were used to drain money from debtor, allowing

19  withdrawals of large amount of cash in violation of banking regulations and internal policies, and

20  paying checks whose endorsements had obviously been forged. *See id.* at 1142.   The trustee

21  alleged that the banks "knew that the debtor was engaged in wrongful conduct in breach of their

22  fiduciary duties" and "knew that the debtor was involved in a criminal and wrongful enterprise."

23  *Id.* at 1152-53.   The court found these allegations to be too generic to satisfy the standard for

24  pleading actual knowledge of a specific primary violation and held that the trial court properly

25  sustained the demurrer. *See id.*

26          Here, there are no allegations that Countrywide had any knowledge or intent to aid and

27  abet any alleged fraud.   Indeed, the allegations trying to rope in Countrywide into the alleged

28  fraud reveal that Countrywide had no knowledge or intent: "Defendant Countrywide is likewise

1    liable as the loan servicer to whom all fraudulent activity runs pursuant to the Truth in Lending

2    Act." *See* FAC, ¶ 78. Plaintiff is attempting to turn aiding and abetting into a strict liability tort

3    which it is not. Moreover, the plain language of 15 U.S.C. § 1641(f)(1) specifically provides that

4    there is no "assignee" type liability for a loan servicer.

5         Moreover, as a result of Countrywide only being the servicer of the loan - and not

6    involved with the origination of Plaintiff's loan - it would be factually and legally impossible for

7    Countrywide to aid and abet any conduct, let alone have knowledge of it, when its only

8    involvement was collecting mortgage payments from Plaintiff <u>after the loan was funded</u>.

9         Moreover, Plaintiff's legal conclusion in paragraph 80 of the FAC that Countrywide knew,

10   or should have known that Primestar was using its "goodwill in a fraudulent scheme" are

11   categorically false and belies the deposition testimony of Plaintiff. See Countrywide's Request

12   For Judicial Notice Exhibit "2".

13        *1.*    *To The Extent Plaintiff Contends That Countrywide Is Liable For Aiding*
14        *And Abetting A Breach Of Fiduciary Duty, This Claim Fails Because It Is*
          *Based On An Alleged Derivative Liability Of Argent And A Party Cannot*
15        *Aid And Abet A Duty It Does Not Owe*

16        As stated above, the only allegation as to Countrywide with respect to the aiding and

17   abetting claim is that: "Defendant Countrywide is likewise liable as the loan servicer to whom all

18   fraudulent activity runs pursuant to the Truth in Lending Act." *See* FAC, ¶ 78. It is clear that the

19   liability sought to be imposed upon Countrywide is derivative of that sought to be imposed on

20   Argent.

21        It is elementary, black-letter law that no fiduciary duty exists between a lender, such as

22   Argent, and a borrower, such as Plaintiff. *Wagner v. Benson* (1980) 101 Cal.App.3d 27, 45-35;

23   *Nymark v. Heart Fed'l Savings & Loan* (1991) 231 Cal.App.3d 1089, 1096 ("a financial

24   institution owes no duty of care to a borrower when the institution's involvement in the loan

25   transaction does not exceed the . . . conventional role as a mere lender of money . . ."). As the

26   Court states in *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476:

27        It has long been regarded as "axiomatic that the relationship
          between a bank and its depositor arising out of a general deposit is
28        that of a debtor and creditor." "A debt is not a trust and there is not

1
2
3

       a fiduciary relation between a debtor and creditor as such." The same principle should apply with even greater clarity to the relationship between a bank and its loan customers. Id., quoting Morse v. Crocker Nat'l Bank (1983) 142 Cal.App.3d 228, 232 and Downey v. Humphreys (1951) 102 Cal.App.2d 323, 332.

4
5
6
7
8
9

      This principle was recently reaffirmed in *Oakland Raiders v. Nat'l Football League* (2005) 131 Cal.App.4th 621, 632, in which the court restated that as a matter of law a lender does not owe a fiduciary duty to its borrower. *See also, Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,* (1990) 222 Cal.App.3d 1371, 1400 (finding that no special relationship exists between a bank and its borrower); *Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 33-34 (providing that a mere contract or debt does not constitute a trust or a fiduciary duty).

10
11
12
13
14
15
16
17
18
19

      Since Argent has no fiduciary duty to Plaintiff as a matter of law, Plaintiff's aiding and abetting claim must stand or fail on the first prong. It fails. Mere knowledge that a tort is being committed (knowledge of any tort at the time of origination is denied) and the failure to prevent it does not constitute aiding and abetting. *Fiol*, 50 Cal.App.4th at 1326. Absent a special relationship between the parties, which is not present here, there is no duty to control the conduct of a third person so as to prevent him from harming another. *Coffman v. Kennedy* (1977) 74 Cal.App.3d 28, 33. Further, under California law, actual knowledge and intent are required to impose aiding and abetting liability. *Gerard*, 204 Cal.App.3d at 983; *see Lomita Land and Water Co. v. Robinson* (1908) 154 Cal. 36, 47 (holding that "aid" and "abet" may be construed to imply an intentional participation with actual knowledge of the object to be obtained).

20

      Plaintiff's aiding and abetting claim fails as a matter of law.

21
22

      E.    The Claim For Violation Of The California Unfair Business Practices Act Should Be Dismissed

23
24
25
26
27

      In his 17200 claim, Plaintiff seeks restitution and disgorgement of the money that he paid, attorney's fees and costs, and punitive damages based on unspecified malicious and oppressive acts. The Court dismissed this claim, with leave to amend, finding that Plaintiff had failed to allege specific facts regarding any alleged fraud and had failed to allege the specific laws allegedly violated by the defendants.

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

1    Claims under section 17200 prohibit unfair competition, including unlawful, unfair and

2    fraudulent business acts.  The claim embraces anything that can properly be called a business

3    practice and that at the same time is forbidden by law.  *See Korea Supply Co. v. Lockhead Martin*

4    *Corp.*, 29 Cal. 4th 1134, 1143 (2203).  It borrows violations of other laws, making them

5    independently actionable as unfair competitive practices.  *See Cel-Tech Comm., Inc. v. Los*

6    *Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).  However, the statute "is not an all-

7    purpose substitute for a tort or contract action."  *See Cortez v. Purolater Air Filtration Products*

8    *Co.*, 23 Cal. 4th 163, 173 (2000).  Remedies are limited under this act in that damages cannot be

9    recovered.  *See Korea Supply Co.*, *supra*, 29 Cal. 4th at 1144.

10    To succeed on a claim for unfair competition, Plaintiff must demonstrate that

11    Countrywide's conduct was unlawful, unfair or fraudulent.  *See* Bus. & Prof. Code § 17200;

12    *Plotkin v. Tanner's Vacuums*, 53 Cal. App. 3d 454, 459-460 (1975).  Plaintiff cannot do this.

13    Plaintiff has not alleged any facts that show Countrywide engaged in any type of improper

14    conduct, let alone deceptive, unlawful and unfair competitive conduct that was likely to deceive

15    reasonable members of the public.

16    There is no basis to this claim and it should be dismissed again, without leave to amend.

17    1.    *Countrywide Has Not Acted Unfairly or Unlawfully*

18    "Unfair" has been commonly defined as conduct that "offends an established public

19    policy or . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to

20    consumers."  *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 939 (2003) (citations

21    omitted).  An unfair claim must be based on some public policy that is tethered" to a specific

22    constitutional, statutory, or regulatory provision, in order to find an objective basis for

23    determining whether the alleged conduct is unfair.  *Id.* at 941.  Plaintiff does not allege that

24    Countrywide engaged in any conduct other than servicing Plaintiff's loan.  Plaintiff simply lumps

25    all defendants together without distinguishing for which wrongful acts each defendant is

26    responsible.  An unfair practices claim cannot be based on vicarious liability – there must be a

27    connection with the defendant and the alleged wrongdoing.  *See In re Firearms Cases,* 126 Cal.

28    App. 4th 959, 982-83 (2005) and *Emery v. Visa Internat. Service Ass'n* (2002) 95 Cal.App.4th

1   952, 960, citing to *People v. Toomey* (1984) 157 Cal.App.3d 1.

2       Countrywide is the servicer for Plaintiff's loan – there are no allegations that Countrywide

3   has acted unfairly or unlawfully in this capacity.

4               2.      *Countrywide Did Not Act Fraudulently*

5       Section 17200 claims that are grounded in fraud must satisfy the particularity

6   requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.

7   2003).

8       There is nothing "fraudulent" about Countrywide's conduct.  There are no allegations that

9   Countrywide made any representations, false or otherwise, that were reasonably relied on to

10  Plaintiff's detriment – or that Countrywide did anything wrong.

11              3.      *Plaintiff Has Failed to Allege That He Lost Money or Property Due To*

12                      *Countrywide's Conduct Against Plaintiff*

13      To have standing to sue under Section 17200, a plaintiff must have "suffered injury in

14  fact" and alleged a loss of money or property due to defendant's conduct. *See* Cal. Bus. & Prof.

15  Code § 17204; *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1097-98 (2007).  An unfair

16  practices claim cannot be based on vicarious liability – there must be a connection with the

17  defendant and the alleged wrongdoing. *See In re Firearms Cases*, 126 Cal. App. 4th at 982-83

18  (2005) and *Emery* 95 Cal.App.4th at 960, citing to *People v. Toomey*, 157 Cal.App.3d 1.

19      Plaintiff has failed to properly allege any loss of money or property.  Plaintiff alleges that

20  he "became obligated on a loan he could not afford to repay, and put him at risk of losing his

21  home as alleged above." *See* FAC, ¶ 109.  There are no allegations that Plaintiff has lost any

22  money or property.

23      Plaintiff also alleges that he "has sustained damages, including attorneys' fees and costs,

24  and will sustain additional damages in prosecuting this action." *See* FAC, ¶ 110.  The problem

25  with this contention is that attorneys' fees and costs are not an element of damages.  Under the

26  "American Rule," each party bears his own attorneys' fees unless there is statutory authorization

27  to the contrary. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

28

F.   <u>Plaintiff Has Failed to Assert a Factual or Legal Basis for Punitive Damages.</u>

In paragraph 59 of the TILA claim, in paragraph 75 of the fraud and deceit claim, and in paragraph 8 of his prayer for relief, Plaintiff seeks punitive and exemplary damages.   The California Civil Code provides that in an action for the breach of an obligation not arising from contract, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294 (a).   Plaintiff prays for punitive damages without specifying which of his claims support such relief.

As a general rule, punitive damages are not recoverable for a breach of contract claim. *See* Cal. Civ. Code § 3294(a); *Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment*, 189 F.3d 1017, 1031 (9th Cir. 1999).   While Plaintiff has not asserted a breach of contract claim, Plaintiff has alleged various failures of Argent to disclose loan terms, which disclosures were mandated by various statutes.   However, none of these alleged statutory violations can give rise to a right to punitive damages as alleged.

Moreover, to the extent punitive damages are sought in the fraud and deceit claim, they are subject to dismissal because the fraud and deceit claim is insufficiently pled.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's first, third, fourth, and seventh claims should be dismissed with prejudice as to Countrywide.

DATED:  May 22, 2008

BUCHALTER NEMER
A Professional Corporation


By:   _____/s/ Jason E. Goldstein_____
       JASON E. GOLDSTEIN
       Attorneys for Defendants
       ARGENT MORTGAGE COMPANY, LLC and
       COUNTRYWIDE HOME LOANS, INC.

1

## PROOF OF SERVICE

2

3      I am employed in the County of Orange, State of California.  I am over the age of 18 and

4  not a party to the within action.  My business address is at BUCHALTER NEMER, A

5  Professional Corporation, 18400 Von Karman Avenue, Suite 800, Irvine, California  92612-0514.

6      On the date set forth below, I served the foregoing document described as:

7      **DEFENDANT COUNTRYWIDE HOME LOAN, INC.'S NOTICE OF**
       **MOTION AND MOTION TO DIMISS PURSUANT TO FEDERAL RULE**
8      **OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND**
       **AUTHORITIES IN SUPPORT**
9

10  on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof

11  in a sealed envelope as follows:

12  Shirley Hochhausen, Esq.
    2117-B University Avenue
13  East Palo Alto, California 94303

14

15

16
    ☒      **BY MAIL**   I am readily familiar with the business' practice for collection and processing
17  of correspondence for mailing with the United States Postal Service. The address(es) shown above
    is(are) the same as shown on the envelope.  The envelope was placed for deposit in the United
18  States Postal Service at Buchalter Nemer in Irvine, California on May 22, 2008.  The envelope
19  was sealed and placed for collection and mailing with first-class prepaid postage on this date
    following ordinary business practices.
20
    ☐      **BY FACSIMILE AND MAIL**   I caused the above-named document(s) to be sent via
21  facsimile transmission to the law office(s) and facsimile number(s) stated above.  The
22  transmission was reported as complete and without error.   A copy of the transmission report(s)
    properly issued by one or more of Buchalter, Nemer's three Xerox 745 WorkCenter facsimile
23  machine(s) [telephone number(s): (213) 896-0400, (213) 896-0411, (213) 896-0408], and (213)
    896-0409 is(are) made a part of this proof of service pursuant to CRC §2008.  I am readily
24  familiar with the business' practice for collection and processing of correspondence for mailing
    with the United States Postal Service.  The correspondence will be deposited in an envelope with
25  the United States Postal Service this day in the ordinary course of business for mailing to the
26  address(es) shown above.  The envelope was sealed and placed for collection and mailing with the
    United States Postal Service at Buchalter Nemer in Irvine, California on May 22, 2008 following
27  ordinary business practices.

28

BN 1796382v1

*12*

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

## PROOF OF SERVICE

☐    **BY OVERNIGHT DELIVERY**    On May 22, 2008, I placed the Federal Express/Overnite Express package for overnight delivery in a box or location regularly maintained by Federal Express/Overnite Express at my office, or I delivered the package to an authorized courier or driver authorized by Federal Express/Overnite Express to receive documents.  The package was placed in a sealed envelope or package designated by Federal Express/Overnite Express with delivery fees paid or provided for, addressed to the person(s) on whom it is to be served at the address(es) shown above, as last given by that person on any document filed in the cause; otherwise at that party's place of residence.

☐    **BY PERSONAL DELIVERY**    On May 22, 2008, I placed the above-referenced envelope or package in a box or location regularly maintained at my office for our messenger/courier service or I delivered the envelope or package to a courier or driver authorized by our messenger/courier service to receive documents.  The package was placed in a sealed envelope or package designated by our messenger/courier service with delivery fees paid or provided for, addressed to the person(s) on whom it is to be personally served at the address(es) shown above as last given by that person on any document filed in the cause.  The messenger/courier service was provided with instructions that the envelope or package be personally served on the addressee(s) by same day delivery (C.C.P. §1011).

☐    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on May 22, 2008, at Irvine, California.

☒    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on May 22, 2008, at Irvine, California.

Laura Urias

(Signature)

BN 1796382v1

2

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE