1    Sanford Shatz (SBN: 127229)
     David A. Brooks (SBN: 179716)
2    5220 Las Virgenes Road, MS: AC-11
     Calabasas, California 91302
3    Telephone:  (818) 871-6073
     Facsimile:  (818) 871-4669
4    *David_Brooks@Countrywide.com*

5    Attorneys for Defendants
     Countrywide Home Loans, Inc., and
6    Recontrust Company, N.A.

7    BUCHALTER NEMER
     A Professional Corporation
8    Jason E. Goldstein (SBN: 207481)
     David M. Liu (SBN: 216311)
9    18400 Von Karman Avenue, Suite 800
     Irvine, California 92612-0514
10   Telephone:  (949) 760-1121
     Facsimile:  (949) 720-0182
11   *jgoldstein@buchalter.com*
     *dliu@buchalter.com*
12
     Attorneys for Defendants
13   Argent Mortgage Company, LLC and
     Countrywide Home Loans, Inc.
14
                    UNITED STATES DISTRICT COURT
15
        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION
16

17

18   RICARDO MARCELOS,                    Case No.:  CV 08-00056 WHA

19              Plaintiff,                DEFENDANT ARGENT MORTGAGE
                                          COMPANY, LLC'S AND DEFENDANT
20         v.                             COUNTRYWIDE HOME LOAN, INC.'S
                                          REQUEST FOR JUDICIAL NOTICE IN
21   EDWIN MAURICIO PARADA                SUPPORT OF THEIR RESPECTIVE
     DOMINGUEZ; GLENDA PARADA;            MOTIONS TO DISMISS PURSUANT TO
22   LORENZO PARADA; VIKI RAAB;           FEDERAL RULE OF CIVIL PROCEDURE
     COUNTRYWIDE HOME LOANS; ARGENT       12(b)(6); MEMORANDUM OF POINTS AND
     MORTGAGE COMPANY, LLC;               AUTHORITIES IN SUPPORT
23   PRIMESTAR FINANCIAL SERVICES;
     SHOAIB MAHMUD; FINANCIAL TITLE       [Concurrently filed with Motions To Dismiss;
24   COMPANY; NEW CENTURY TITLE           and [Proposed] Orders]
     COMPANY; RECONSTRUCT COMPANY,
25   N.A.; AND DOES 1 THROUGH 100,        Date:     July 3, 2008
                                          Time:     8:00 a.m.
26              Defendants.               Place:    Courtroom 9

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE
                                                              CV 08-00056 WHA

REQUEST FOR JUDICIAL NOTICE RE RULE 12(b)(6) MOTIONS TO DISMISS

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE THAT in support of their respective concurrently filed Motions

3    To Dismiss, Defendants Argent Mortgage Company, LLC ("Argent') and Countrywide Home

4    Loans, Inc. ("Countrywide") hereby respectfully request that the Court take judicial notice of the

5    following documents pursuant to Federal Rules of Evidence 201:

6    1.    A copy of the Corporation Assignment Form with respect to the ownership of

7    Plaintiff Ricardo Marcelos loan that is the subject of this lawsuit that was recorded with the San

8    Francisco County Assessor – Recorder on December 1, 2006 as Document No.: 2006-I291361-

9    00, a true and correct recorded copy of which is attached hereto as Exhibit "1".  *The Court is*

10    *requested to take judicial notice that Countrywide is not the owner of Plaintiff Ricardo Marcelos*

11    *loan that is the subject of this lawsuit.*

12    2.    Excerpts from the deposition transcript of the April 17, 2008 deposition of Plaintiff

13    Ricardo Marcelos, true and correct copies of which are attached hereto as collective Exhibit "2".

14    *The Court is requested to take judicial notice that, at a minimum, Plaintiff Ricardo Marcelos, at*

15    *or prior to the origination of the loan that is the subject of this action, had never heard of or*

16    *communicated with anyone from Argent or Countrywide.*

17    3.    Excerpts and exhibits from the deposition transcript of the April 8, 2008 deposition

18    of Shoaib Mahmud, true and correct copies of which are attached hereto as collective Exhibit "3".

19    *The Court is requested to take judicial notice that Argent did not "enfranchise" Plaintiff's broker*

20    *and agent, and that the Mortgage Broker Agreements actually entered into between Argent and*

21    *Plaintiff's broker and agent establish and confirm an independent contractor relationship.*

22    Judicial notice of these documents is appropriate because their authenticity cannot

23    reasonably be disputed.

24    DATED:  May 22, 2008            BUCHALTER NEMER
                                                 A Professional Corporation

25

26    By: _____/s/ Jason E. Goldstein_____
                                                 JASON E. GOLDSTEIN
27                                               Attorneys for Defendants
                                                 ARGENT MORTGAGE COMPANY, LLC and
28                                               COUNTRYWIDE HOME LOANS, INC.

# EXHIBIT 1

Recording requested by:
**FIRST AMERICAN TITLE**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

NAME Argent Mortgage Company, LLC
ADDRESS P.O. Box 14130,
CITY &        Orange, CA 92863-1530
STATE

Loan Number  0076100551 - 9505

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2006-I291361-00
Acct 2-FIRST AMERICAN Title Company
Friday, DEC 01, 2006 08:00:00
Ttl Pd  $12.00      Nbr-0003123556
REEL J278 IMAGE 0059
pta/T0/1-2



43  3099071

# CORPORATION ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to DEUTSCHE BANK NATIONAL TRUST COMPANY ON BEHALF OF THE CERTIFICATEHOLDERS GS MORTGAGE SECURITIES CORP GSAA HOME EQUITY TRUST 2005-10 ASSET-BACKED CERTIFICATES, SERIES 2005-10 all beneficial interest under that certain Deed of Trust dated  03/28/05       , executed by
RICARDO MARCELOS, An Unmarried Man

                                                                                          , Trustor

to  Town and Country Title Services, Inc., Trustee
and recorded as Instrument No. ***         On 2005-R132349-00  01/04/2005   in book ****    , page ***   , of Official Records in the County
Recorder's office of    SAN FRANCISCO          County, California, describing land therein as:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued under said Deed of Trust.

                                                                  Argent Mortgage Company, LLC

Dated  04/05/2005

                                                                  JESSICA OTT - AGENT

State of  California                    )
County of  Orange                      ) ss.
                                        )
                                        )
On 04/05/2005  before me,  MARTHA LONDON
personally appeared  JESSICA OTT
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which is the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.                                FOR NOTARIAL SEAL OR STAMP

                                          (Seal)

MARTHA LONDON                                         MARTHA LONDON
                                                      Commission # 1554166
Title Order No. A50343842582-PLS     Escrow No.: 09050143    Notary Public - California
                                                      Orange County
                                                      My Comm. Expires Feb 20, 2009

750-CA (Rev 08/04)

Description: San Francisco,CA Document-Year.DocID 2006.291361 Page: 1 of
Order: ddfdfdf Comment:

Page  3          Exhibit

## LEGAL DESCRIPTION

. The land referred to in this Report is described as follows:

All that certain real property situated in the City of San Francisco, County of San Francisco, State of California, described as follows:

BEGINNING at a point on the Easterly line of Folsom Street, distant thereon 212.19 feet Southerly from the Southerly line of Tompkins Avenue; running thence Southerly along said line of Folsom Street 25 feet; thence at a right angle Easterly 70 feet; thence at a right angle Northerly 25 feet; thence at a right angle Westerly 70 feet to the point of beginning.

BEING a portion of Lots 622 and 624, Gift Map No. 2

APN: Lot: 021 Block: 5727
ARB: None

# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


RICHARDO MARCELOS,

                    PLAINTIFF,

            VS.                         CV 08 0058

EDWIN MAURICIO PARADA DOMINGUEZ,

GLENDA PARADA, LORENZO PARADA,

VIKI RAAB, COUNTRYWIDE HOME

LOANS, ARGENT MORTGAGE COMPANY,

LLC, PRIMESTAR FINANCIAL SERVICES,

SHOAIB MAHMUD, FINANCIAL TITLE

COMPANY, NEW CENTURY TITLE COMPANY,

RECONTRUST COMPANY, N.A., AND DOES

1 THROUGH 100,

                    DEFENDANTS.



DEPOSITION OF RICARDO MARCELOS

SAN FRANCISCO, CALIFORNIA

THURSDAY, APRIL 17, 2008

Page___5___ Exhibit ___2___

REPORTED BY:  E. BRUIHL, RPR, CSR NO. 3077

A REGISTERED PROFESSIONAL REPORTER

CENTURY Court Reporters

1    A.    IT WAS JUST RECENTLY THAT WE STARTED TO FIND

2    OUT BUT I DON'T KNOW WHO DID WHAT OF EACH ONE OF

3    THOSE.

4    Q.    SO, ONLY RECENTLY DID YOU DISCOVER THAT ARGENT

5    MORTGAGE COMPANY WAS THE LENDER WHO FUNDED THE LOAN

6    THAT IS THE SUBJECT OF THIS LAWSUIT?

7    A.    I KNOW THAT ARGENT IS ON THERE BUT EVEN TODAY,

8    I'M NOT CLEAR AS TO WHO DID WHAT AND WHO DID THAT.

9    Q.    IN 2005 WHEN YOU SIGNED PAPERS FOR THE LOAN

10   THAT'S THE SUBJECT OF THIS LAWSUIT, HAVE YOU EVER

11   HEARD OF ARGENT MORTGAGE COMPANY?

12   A.    NO.

13   Q.    AT THAT SAME TIME WHEN YOU SIGNED PAPERS FOR

14   THE LOAN THAT IS THE SUBJECT OF THIS LAWSUIT, HAD

15   YOU EVER HEARD OF COUNTRYWIDE HOME LOANS, INC.?

16   A.    NO.

17   Q.    DID YOU FIRST LEARN OF COUNTRYWIDE HOME LOANS

18   INC., WHEN YOU MADE YOUR FIRST PAYMENT TO THEM ON

19   THE LOAN THAT IS THE SUBJECT OF THIS LAWSUIT?

20   A.    YES, BECAUSE THEY CHANGED THE GENTLEMAN THAT I

21   WAS PAYING TO AND THEN WE GOT A LETTER SAYING THAT

22   THE PAYMENTS WERE NOW GOING TO BE GOING TO

23   COUNTRYWIDE.

24   Q.    DO YOU STILL HAVE A COPY OF THAT LETTER?

25   A.    NO.

Page _4_    Exhibit _2_

CENTURY COURT REPORTERS       1-800-555-0014

1    THE SUBJECT OF THIS LAWSUIT?

2    A.    YES.

3    Q.    AND EDWIN PERADA WAS THE ONLY PERSON THAT YOU

4    COMMUNICATED WITH REGARDING THE LOAN THAT IS THE

5    SUBJECT OF THIS LAWSUIT, IS THAT CORRECT?

6    A.    YES.

7    Q.    SO, YOU NEVER SPOKE TO ANYONE THAT REPRESENTED

8    TO YOU THAT THEY WERE AN EMPLOYEE OF ARGENT PRIOR TO

9    YOUR SIGNING THE DOCUMENTS FOR THE LOAN THAT IS THE

10   SUBJECT OF THIS LAWSUIT, CORRECT?

11   A.    NO.

12   Q.    YOU MEAN YOU DIDN'T SPEAK TO ANYONE AT ARGENT

13   PRIOR TO SIGNING THE DOCUMENTS FOR THIS LOAN?

14   A.    NO.  I DIDN'T KNOW AND I DON'T KNOW ANY OF

15   THOSE PEOPLE.

16   Q.    AND YOU ALSO DID NOT SPEAK WITH ANYONE AT

17   COUNTRYWIDE HOME LOANS, INC., PRIOR TO SIGNING THE

18   DOCUMENTS FOR THE LOAN THAT IS THE SUBJECT OF THIS

19   LAWSUIT.  ISN'T THAT ALSO CORRECT?

20   A.    NO.  I DIDN'T SPEAK TO COUNTRYWIDE.

21   Q.    AND NO ONE REPRESENTED TO YOU THAT THEY WERE

22   SENT OUT WORKING FOR OR AFFILIATED WITH COUNTRYWIDE,

23   CORRECT?

24   A.    NO.

25   Q.    AND THE SAME GOES FOR ARGENT?

Page 7    Exhibit 2

CENTURY COURT REPORTERS        1-800-555-0014

```
 1   A.   YES.  JUST INTRODUCED.

 2   Q.   OKAY.

 3        IF I COULD HAVE YOU TURN TO PAGE 3,

 4   PARAGRAPH 13?  IT STATES:

 5        "I RELIED ON MR. PERADA, WHO

 6         ASSURED ME THAT HE WOULD

 7         TAKE CARE OF EVERYTHING AND

 8         TREAT ME FAIRLY, AND THE

 9         NATIONAL REPUTATION OF ARGENT,

10         THE LENDER THAT EMPOWERED HIM

11         TO SELL THEIR LOANS, WHEN I

12         SIGNED THE LOAN DOCUMENTS."

13        DO YOU SEE OR HEAR THAT, MR. MARCELOS?

14   A.   YES.

15   Q.   YOU'VE TESTIFIED MULTIPLE TIMES TODAY THAT YOU

16   HAD NOT HEARD OF ARGENT UNTIL ONLY A FEW MONTHS AGO

17   AND THAT PRIOR TO SIGNING THE LOAN, YOU HAD NEVER

18   HEARD OF ARGENT.  ISN'T THAT CORRECT?

19   A.   YES.  THAT'S CORRECT.

20   Q.   SO, THE NATIONAL REPUTATION OF ARGENT, IF ANY,

21   HAD NOTHING TO DO WITH YOUR SIGNING THE LOAN

22   DOCUMENTS THAT ARE THE SUBJECT OF THIS LAWSUIT,

23   CORRECT?

24   A.   I'M SORRY.  PLEASE --      Page___9___Exhibit___2___

25   Q.   (TO THE COURT REPORTER)  CAN YOU READ BACK THE
```

CENTURY COURT REPORTERS        1-800-555-0014

```
 1   QUESTION?
 2             THE COURT REPORTER:   "QUESTION:
 3             "SO, THE NATIONAL REPUTATION OF
 4              ARGENT, IF ANY, HAD NOTHING TO
 5              DO WITH YOUR SIGNING THE LOAN
 6              DOCUMENTS THAT ARE THE SUBJECT
 7              OF THIS LAWSUIT, CORRECT?
 8             THE WITNESS:   `I SIGNED IT BECAUSE WHEN
 9   THEY READ THESE PAPERS TO ME, THEY MENTIONED ALL
10   THESE NAMES TO ME.  I DON'T KNOW WHO THEY ARE.  I
11   DON'T RECOGNIZE THEM.
12             WHEN HE ASKED ME IF I KNOW THESE PEOPLE, I
13   DON'T KNOW THEM WITH THE EXCEPTION OF EDWIN, LORENZO
14   AND GLENDA.
15             I DEAL WITH THEM AND I KNOW THEM.
16   ORGANIZATIONS LIKE THEM, I KNOW THEY ARE ON HERE.  I
17   KNOW THEY ARE ON HERE, BUT I DON'T KNOW THEM.
18   BY MR. GOLDSTEIN:
19   Q.   OKAY, BUT THE ALLEGED NATIONAL REPUTATION OF
20   ARGENT, IF ANY, HAD ABSOLUTELY NOTHING TO DO WITH
21   YOUR SIGNING THE LOAN DOCUMENTS THAT ARE THE SUBJECT
22   OF THIS LAWSUIT, CORRECT?  SINCE YOU HAD NEVER HEARD
23   OF THEM?
24   A.   NO, BECAUSE I WAS GOING BY WHAT EDWIN HAD TOLD
25   ME.
```

Page____9____Exhibit__2__

CENTURY COURT REPORTERS       1-800-555-0014

```
1   Q.   YOU WERE GOING BY WHAT EDWIN TOLD YOU, NOT BY

2   WHAT THE ALLEGED NATIONAL REPUTATION OF ARGENT IS

3   WHICH YOU HAD NEVER HEARD OF AT THAT TIME, CORRECT?

4   "YES" OR "NO"?

5   A.   WHEN I'M DEALING WITH THIS, I DON'T KNOW WHO IS

6   WHO.  I'M COMPLETELY LOST.

7        IT'S VERY, I MEAN, WHO IS WHO?  WHO IS

8   EDWIN'S BOSS?  WHERE IS EDWIN?  I DON'T UNDERSTAND.

9   Q.   THIS DECLARATION WAS MADE UNDER PENALTY OF

10  PERJURY AND YOU UNDERSTAND WHAT THAT MEANS, CORRECT?

11  AND I JUST WANT TO CLARIFY EVENTS.

12  A.   YES.

13  Q.   NOW, BEFORE THIS CASE GOES ON FURTHER, THAT

14  SINCE YOU DID NOT KNOW WHO ARGENT WAS WAS WHEN YOU

15  SIGNED THE LOAN DOCUMENTS THAT ARE THE SUBJECT OF

16  THIS LAWSUIT, CORRECT?  THAT'S WHAT YOU TESTIFIED TO

17  MULTIPLE TIMES TODAY?

18  A.   YES.

19  Q.   SO, SINCE YOU HAD NEVER HEARD OF THEM, THEIR

20  ALLEGED NATIONAL REPUTATION HAD NOTHING TO DO WITH

21  YOUR SIGNING THE LOAN DOCUMENTS THAT ARE THE SUBJECT

22  OF THIS LAWSUIT, CORRECT?

23  A.   OKAY.

24       LOOK!  WHAT HAPPENED IS WHEN SOMEBODY SAYS

25  A NAME, A NAME LIKE ARGENT, I KNOW WHAT IT IS.  I
```

1  RECOGNIZE THE NAME BUT I DON'T KNOW WHAT THEY DO.  I

2  KNOW THEY ARE ON THERE.

3  Q.   ON THE LAWSUIT OR THE COMPLAINT, RIGHT?

4  A.   EXACTLY.

5  Q.   BUT YOU DIDN'T KNOW OF THEM OR THEIR ALLEGED

6  REPUTATION WHEN YOU SIGNED THE LOAN DOCUMENTS,

7  RIGHT?

8  A.   I DIDN'T KNOW IF THEY HAVE A REPUTATION OR NOT.

9  Q.   AND YOU NEVER DID?

10  A.   AND EVEN NOW, I DON'T KNOW WHO THEY ARE,

11  WHETHER THEY HAVE A GOOD OR A BAD REPUTATION.

12  Q.   YOU HAVE NO KNOWLEDGE AS TO THAT?

13  A.   WHETHER THEY ARE GOOD GUYS OR BAD GUYS, I DON'T

14  KNOW.

15  Q.   SO, YOU HAVE NEVER HAD ANY KNOWLEDGE OF THEIR

16  REPUTATION, WHATEVER THAT IS?

17  A.   NO.

18  Q.   YOU SIGNED THE LOAN DOCUMENTS FOR THE LOAN THAT

19  IS THE SUBJECT OF THIS IN APPROXIMATELY THE SPRING

20  OF 2005, CORRECT?

21  A.   SPRING IS SPRING?

22       THE INTERPRETER:  WAIT A MINUTE.

23       THE WITNESS IS ATTEMPTING TO LISTEN BOTH TO

24  THE ATTORNEY AND TO THE INTERPRETER.  SO, HE IS

25  GETTING HIMSELF CONFUSED.  SO, WE WILL HAVE THE

Page___||___Exhibit__2__

```
1                        --oOo--

2                  REPORTERS CERTIFICATE

3        I, EASTELLER BRUIHL, RPR, CSR NO. 3077, A

4   CERTIFIED CALIFORNIA SHORTHAND COURT REPORTER FOR

5   STAR REPORTING SERVICE, INC., 703 MARKET STREET,

6   SUITES 1003-1013, SAN FRANCISCO, CALIFORNIA 94103

7   (415) 348-0050, DO HEREBY CERTIFY:

8        THAT THE FOREGOING PROCEEDINGS WERE TAKEN

9   BEFORE ME AT THE TIME AND PLACE HEREIN SET FORTH, AT

10  WHICH TIME THE WITNESS WAS PUT UNDER OATH BY ME;

11       THAT THE TESTIMONY OF SAID WITNESS, THE

12  QUESTIONS PROPOUNDED, AND ALL OBJECTIONS AND

13  STATEMENTS MADE AT THE TIME OF THE EXAMINATION WERE

14  RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER

15  TRANSCRIBED;

16       THAT THE FOREGOING IS A TRUE AND CORRECT

17  TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN.

18       I FURTHER CERTIFY THAT I AM NOT A RELATIVE OR

19  EMPLOYEE OF ANY ATTORNEY OF THE PARTIES NOR

20  FINANCIALLY INTERESTED IN THE ACTION.

21       I DECLARE UNDER PENALTY OF PERJURY BY THE LAWS

22  OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS

23  TRUE AND CORRECT.

24       DATED: April 23, 2008

25               EASTELLER BRUIHL, CSR NO. 3077
```

Page 12  Exhibit 2

```
 1                        --oOo--

 2      REPORTER'S CERTIFICATION OF CERTIFIED COPY

 3

 4                I, EASTELLER BRUIHL, RPR, CSR NO.

 5   3077, A CERTIFIED CALIFORNIA SHORTHAND COURT

 6   REPORTER FOR STAR REPORTING SERVICE, INC., 703

 7   MARKET STREET, SUITES 1003-1013, SAN FRANCISCO,

 8   CALIFORNIA 94103, DO CERTIFY THAT THE FOREGOING

 9   PAGES 1 THROUGH TO 210 CONSTITUTES A TRUE AND

10   CORRECT COPY OF THE ORIGINAL DEPOSITION OF

11   PLAINTIFF, RICARDO H. MARCELOS TAKEN ON THURSDAY,

12   MARCH 17, 2008.

13                I DECLARE UNDER PENALTY OF PERJURY BY

14   THE LAWS OF THE STATE OF CALIFORNIA THAT THE

15   FOREGOING IS TRUE AND CORRECT.

16                DATED:  MONDAY, APRIL 21, 2008.

17                 Easteller Bruihl

18                EASTELLER BRUIHL, RPR, CSR NO. 3077

19

20

21

22

23

24
                              Page  13  Exhibit  2
25
```

EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT - SAN FRANCISCO DIVISION

---oOo---



RICARDO MARCELOS,

        Plaintiff,

    vs.              Case No. 08-00056 WHA

EDWIN MAURICIO PARADA DOMINGUEZ,
GLENDA PARADA, LORENZO PARADA, et al.,

        Defendants.
_____/


DEPOSITION OF SHOAIB MAHMUD

April 8, 2008


REPORTED BY:

SANDRA L. CARRANZA, CRR, RPR, CSR 7062


PREFERRED REPORTERS
CERTIFIED SHORTHAND REPORTERS
19229 Sonoma Highway, Suite 112
Sonoma, California 95476
Phone (707) 938-9227

Page ___ 14 ___ Exhibit ___ 3 ___

1      MR. LIU:  Let's go on to Exhibit 4.

2          (Whereupon, Exhibit 4 was marked for

3          identification.)

4      MR. LIU:  Q.  This is a document dated

5   September 4, 2002, titled "Mortgage Broker Agreement."

6   And if you turn to the last page -- this would be

7   Bates-stamped page four -- there's a signature.

8      A.   Yes.

9      Q.   Is that your signature, Mr. Mahmud?

10     A.   Yes.

11     Q.   Do you recognize this document?

12     A.   Yes.  It's a broker agreement form that,

13  basically, we fill out in order to conduct business with

14  Argent Mortgage.

15         MR. LIU:  Let's go to Exhibit 5.

16             (Whereupon, Exhibit 5 was marked for

17             identification.)

18     MR. LIU:  Q.  This is the Mortgage Broker

19  Agreement dated June 6th, 2006, between Argent Mortgage

20  Company and ND Financial.

21             And if you turn to the second to the last page

22  of this exhibit, which is Bates-stamped 12, do you

23  recognize the signature on this agreement?

24     A.   Yeah, it is my signature.

25     Q.   That is your signature.  Okay.  And the

96

1   relationship between Argent Mortgage and Primestar --

2   sorry -- ND Financial, doing business as Primestar,

3   Primestar is a separate entity from Argent Mortgage; is

4   that correct?

5       A.   Yes.

6       Q.   Okay.  So Primestar is not any type of

7   subsidiary, franchisee of Argent Mortgage?

8       A.   That is correct.

9       Q.   Do you or would you consider Primestar any type

10  of agent or representative of Argent Mortgage Company?

11      A.   No.  I'm not sure I understand.  I mean, we do

12  business with Argent, but I don't know if that's -- let

13  me ask you this --

14          MR. ROOD:  Let --

15          MR. LIU:  Q.  I'll ask you.

16      A.   Okay.

17      Q.   So Primestar is a complete separate entity from

18  Argent Mortgage; is that correct?

19      A.   That is correct.

20      Q.   And you obtain information from potential

21  borrowers and send back to Argent Mortgage for their

22  review as to whether they want to fund a loan or not; is

23  that correct?

24      A.   We would send this to our rep, AE, our account

25  executive.

97

1    Q.   At Argent Mortgage?

2    A.   Correct.

3    Q.   Okay.

4    A.   Who was assigned to us.

5    Q.   You cannot direct Argent Mortgage to accept a

6    loan?

7    A.   That is absolutely correct.

8    Q.   Let's talk about Countrywide as well.

9         Countrywide and Primestar are separate

10   entities; is that correct?

11   A.   That is correct.

12   Q.   You cannot direct Countrywide to accept or fund

13   any loan?

14   A.   Not at all.

15   Q.   And Primestar's not a subsidiary, franchisee,

16   or any type of connected business entity with

17   Countrywide; is that correct?

18   A.   That is correct.

19   Q.   Okay.

20        MR. ROOD:   Thank you for not directing us to

21   one of these indemnity paragraphs and making us read it.

22        MR. LIU:   Q.   Has Primestar ever used the name

23   "Tri-City Brokerage"?   And the spelling of that would be

24   T-R-I, dash, C-I-T-Y.

25   A.   No.

Create Date:2005-07-17 22:35:39.0 pg 2 of 8

Δ π EXHIBIT 4
Deponent Mahmud
4/8/08 Rptr. 50
WWW.DEPOBOOK.COM

## MORTGAGE BROKER AGREEMENT

This Mortgage Broker Agreement ("Agreement") is entered into by and between Ameriquest Mortgage Company, a Delaware Corporation ("Lender"), and _SHAHID MAHMUD_, a ("Mortgage Broker") as of this _4TH_ day of _SEPTEMBER_, _2002_, with reference to the following facts:

### RECITALS

A. Mortgage Broker, among other activities, is engaged in the business of soliciting mortgage loan application packages (each an "Application Package") from the general public for submission to mortgage banking entities for funding consideration, and negotiating the terms and conditions of mortgage loans (each a "Loan") on behalf of mortgage loan applicants (each a "Borrower").

B. Lender, among other activities, accepts Application Packages submitted by independent mortgage brokerage companies for funding consideration.

C. Lender and Mortgage Broker desire to establish a nonexclusive relationship whereby Mortgage Broker will, from time to time and at its option, submit completed Application Packages to Lender for funding consideration.

NOW THEREFORE, in consideration of the mutual agreements made herein, Mortgage Broker and Lender agree as follows:

### AGREEMENT

1.  **Loan Submission** Lender shall, from time to time, make available to Mortgage Broker product descriptions of the Lender's lending programs and Guidelines then in effect; provided, however, that such product descriptions and Guidelines may be withdrawn or modified at any time by Lender in its sole discretion and shall not be binding upon Lender. Mortgage Broker will, at Mortgage Broker's sole cost and expense, prepare, process and submit Application Packages to Lender for funding consideration, and facilitate the closing of Application Packages approved for funding by Lender. Mortgage Broker's services shall include, without limitation, those services required by Lender's lending programs, the Lender's underwriting guidelines ("Guidelines") and/or those services listed on Exhibit "A" to this Agreement, as each may be amended from time to time by Lender, in its sole discretion.

2.  **Loan Approval** Lender shall have the right, in its sole and absolute discretion, to approve the terms proposed in the Application Package, the creditworthiness of the Borrower and the adequacy of the security for the Loan. Mortgage Broker shall not represent to any person, including Borrower, that Lender has approved or will approve, or that Lender has issued or will issue a binding commitment to fund, any Application Package. All Loans shall close in Lender's name with funds provided by Lender. All information contained in an Application Package shall be subject to Lender's independent verification. Lender's independent verification or lack thereof of any Application Package shall not reduce, waive or otherwise modify any of Lender's rights or remedies provided hereunder. All information and documentation to be utilized in connection with such Application Packages and Loans, including loan applications, requests for deposit verifications, Truth-in-Lending disclosures, promissory notes, security documents, deeds of trust, mortgages, shall be on forms approved by Lender.

3.  **Approval Letters** If Lender, in its sole discretion, accepts an Application Package for funding, Lender shall issue an approval letter setting forth the conditions upon which Lender will fund the Loan along with the expiration date of the approval (the "Approval Letter"). Lender shall have no obligation to fund a Loan prior to fulfillment of all funding conditions or after expiration of the Approval Letter.

4.  **No Obligation to Fund** Lender shall not be obligated to fund any Loan which does not, in Lender's sole discretion, comply with this Agreement or any exhibits thereto, the Approval Letter, Guidelines, or Lender's lending programs.

5.  **Mortgage Broker's Representations and Warranties** Mortgage Broker represents, warrants and covenants to Lender, on behalf of itself, and its agents and employees that as of (a) the time any Application Package is submitted to Lender, (b) the time a Loan is funded and closed through the life of such Loan, and (c) any other time as indicated or as the context may require:

    5.1.   **Due Organization, Existence and Good Standing** Mortgage Broker is and shall remain duly organized and a validly existing entity in good standing in the jurisdiction under whose laws Mortgage Broker is formed and has, and shall maintain, all licenses necessary to carry on its business as now being conducted. Mortgage Broker is, unless otherwise exempt, licensed, registered, qualified and in good standing in each state in which (a) any real property securing repayment of a Loan is located and (b) Mortgage Broker is engaged in the business of brokering mortgage loans if the laws of such state require licensing, registration or qualification to engage in the business of brokering mortgage loans. Mortgage Broker covenants to maintain all licenses, registrations and qualifications current and to keep itself in good standing with all applicable regulatory and supervisory agencies. Mortgage Broker further covenants to notify Lender immediately upon the suspension, revocation, expiration or other termination of any licenses, registrations or qualifications, or of the taking of any action by any such regulatory or supervisory agency against Mortgage Broker which could adversely affect the Mortgage Broker's licenses, registrations and qualifications.

    5.2.   **Authority and Capacity; Consent; Enforceability of Agreement** Mortgage Broker has the full power authority and capacity to enter into this Agreement and this Agreement has been duly authorized, executed and delivered by Mortgage Broker and constitutes a valid and binding obligation of Mortgage Broker, enforceable in accordance with its terms. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Mortgage Broker of, or compliance by Mortgage Broker with, this Agreement or the consummation of the transactions contemplated by this Agreement or, if required, such consent, approval or authorization has been obtained. Mortgage Broker's compliance with the terms and conditions of this Agreement will not violate any provisions of its charter documents, any instrument relating to the conduct of its business, or any other agreement, law or regulation to which it may be a party or under which it may be governed.

    5.3.   **Absence of Claims** Except as previously disclosed by Mortgage Broker to Lender in a writing to be attached hereto as Exhibit B, there is not pending or, to Mortgage Broker's knowledge, threatened any suit, action, arbitration, or legal, administrative, or other proceeding or investigation (including an allegation of fraud by another lender) against Mortgage Broker or its current or former owners, agents or employees which would prevent the execution, delivery and performance

CONFIDENTIAL

Page ___ Exhibit 3

3

Create Date:2005-07-17 22:35:35.0 pg 3 of 8



by Mortgage Broker of is obligations under this Agreement or which could have a material adverse affect upon the Mortgage Broker's business, assets, financial condition or reputation, or upon any Loan submitted for funding by Lender.

5.4.     **Financial Statements** Mortgage Broker has delivered complete and accurate financial statements as to the most recent fiscal year to Lender, certified by Mortgage Broker's Chief financial Officer or Principal Officer as true and accurate and that there has been no change in the business, operations, financial condition, properties or assets of Mortgage Broker since the date of Mortgage Broker's financial statement that would have an adverse effect on its ability to perform its obligations under this Agreement.

5.5.     **Errors and Omissions Policy** Mortgage Broker has delivered to Lender a true and correct copy of Mortgage Broker's Errors and Omissions policy, as currently in effect.

5.6.     **Disclosure and Validity of Information** Mortgage Broker shall make prompt, timely, full, accurate and truthful disclosure to Lender of all facts, information and documentation which Mortgage Broker knows, suspects, or has notice of, that could affect or has affected the validity, collectibility, collateral value, security, or enforceability of any Application Package submitted by Mortgage Broker for funding consideration by Lender. All information on applications prepared by Mortgage Broker for submission to Lender with regard to the Application Packages, including all written attachments thereto, is and shall be true, correct, currently valid and genuine. No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to an Application Package or a Loan has taken place on the part of any person, including, without limitation, the Mortgage Broker, its agents and employees, the Borrower, any builder or developer, or any person involved in the preparation and/or submission of the Application Package to the Lender or the origination of the Loan.

5.7.     **Control of Documents** No Borrower shall have had in his or her direct or indirect possession or control any credit, income or deposit verification document submitted to Lender with respect to any Application Package or Loan.

5.8.     **Ownership** Mortgage Broker has no direct or indirect interest including, but not limited to any ownership interest in a loan secured by said property, in any property pledged as security for the Loan, or affiliation or relationship with any person having a financial interest in the Loan or the Loan transaction. Other than the Fees described in section 5.10 of this Agreement, Mortgage Broker has not received any other form of financial remuneration or benefit from any person or the Loan.

5.9.     **Compliance with Laws** In connection with its solicitation and processing of Application Packages pursuant to this Agreement, Mortgage Broker and each other person involved in the Loan transaction has and will comply fully and in a timely manner with the Truth-in-Lending Act, as amended, and Regulation Z promulgated thereunder, the Equal Credit Opportunity Act, as amended, and Regulation B promulgated thereunder, the Real Estate Settlement Procedures Act of 1974, as amended, and Regulation X promulgated thereunder, and all other federal and state laws, rules and regulations as they relate to fair lending, consumer credit disclosures and notices, privacy rights, the Application Packages and/or the Loans. At all times Mortgage Broker and each other person involved in the Loan transaction shall be in compliance with Lender's Fair Lending Policy and any amendments thereto. No Application Package submitted by Mortgage Broker for approval by Lender shall constitute an application for a loan as defined in §226.32 of Regulation Z as promulgated under the Truth-in-Lending Act. Mortgage Broker covenants and warrants to provide compliance training pertaining to all aforesaid laws, regulations and rules, and any amendments thereto, on a continuing basis throughout the term of this Agreement. Mortgage Broker represents and warrants that it is in full compliance with all real estate, mortgage lending or other regulatory or supervisory agencies having jurisdiction over Mortgage Broker's activities to the extent necessary to ensure the enforceability of the Loans.

5.10.    **Fees** The nature, character and amount of any fees charged or received by Mortgage Broker and payable by Borrower in connection with an Application Package have been or will be determined by direct negotiations between Mortgage Broker and Borrower. The total fees to be received by Mortgage Broker to Borrower have been separately itemized, fully disclosed, explained and agreed to in writing by Borrower, and are reasonably related to the market value of the services rendered by Mortgage Broker in connection with the Application Package and the Loan. Lender shall have no obligation to pay Mortgage Broker any sum owed to Mortgage Broker by Borrower arising out of a Loan, nor shall Lender have any obligation to pay Mortgage Broker any sum on account of any Application Package which Lender does not fund and close for any reason whatsoever. There is no agreement between Mortgage Broker and any other person for the payment of any referral fee, rebate, bonus, kickback or other payment and no payment of such referral fee, rebate, bonus, kickback or other payment has been or will be made to any person including, but not limited to, the Borrower and/or the Mortgage Broker.

5.11.    **Services to Borrower** With respect to each Borrower whose Application Package has been submitted by Mortgage Broker to Lender for funding consideration pursuant to this Agreement, Mortgage Broker has performed and shall observe and fully discharge the fiduciary duties owed by Mortgage Broker to Borrower under applicable law. In particular, and without limitation to the foregoing, whenever required by such fiduciary duty, law, or Lender, Mortgage Broker, its employees and/or agents has provided to Borrower any and all requisite disclosures, including, but not limited to, those pertaining to Broker's compensation and obtained any and all requisite agreements and authorizations. All services performed by Mortgage Broker were performed to the full satisfaction of Borrower by Mortgage Broker and/or trained employees of Mortgage Broker, and in accordance with the legal, prudent, accepted and customary standards in the mortgage lending industry generally. Mortgage Broker is not aware of any dispute or claim by any Borrower that all such services were not fully and satisfactorily performed. No Borrower has any claim or defense against the Mortgage Broker, its officers, agents and/or employees by reason of any act or omission of Broker, its officers, agents and/or employees.

5.12.    **Corrections** Mortgage Broker shall, upon request by Lender, take all actions necessary, in a timely and accurate manner to obtain corrections to Loan documents as may be appropriate and to otherwise assist Lender in remedying any matter not in compliance with applicable law, regulations or Lender's programs and Guidelines, inclusive of assisting Lender in obtaining recorded documentation and title policies from closing agents.

5.13.    **Use of Approved Vendors** Mortgage Broker has not and shall not utilize any real estate appraiser, credit reporting agency or other vendor in connection with an Application Package that is not previously approved by the Lender, the Guidelines and/or the lending programs.

6.     **Representations and Warranties-Repurchase Obligation** It is understood and agreed that the covenants, representations and warranties set forth in this Agreement shall survive delivery of an Application Package, funding of any related Loan and the

CONFIDENTIAL

Page __19__ Exhibit 3

2

Create Date:2005-07-17 22:35:39.0 pg 4 of 8



termination of this Agreement. Mortgage Broker agrees that within thirty (30) days of Lender's demand it will either cure to the Lender's satisfaction in Lender's sole discretion or repurchase any Loan that was not originated or submitted by Mortgage Broker in compliance with this Agreement, any exhibit hereto, any Approval Letter, the Guidelines or the lending programs. The Repurchase Price shall be an amount equal to: a) the Principal Balance of such Loan as of the repurchase date, plus b) accrued but unpaid interest up to and including the date of repurchase; plus c) all P & I advances, servicing advances, servicing fees and accrued ancillary income; plus d) any out-of-pocket expenses, including attorney fees, of the Lender relating to such Loan or enforcement of the repurchase obligations hereunder.

7. **Mortgage Broker's Indemnification** Mortgage Broker shall indemnify and hold Lender and its affiliates, shareholders, directors, officers, agents, employees, successors and assigns harmless from and against, and shall reimburse the same with respect to, any and all losses, damages, demands, claims, liabilities, costs and expenses, including reasonable attorneys' fees (collectively "Losses"), from any cause whatsoever, incurred by reason of or arising out of or in connection with, (a) any investigation undertaken by Lender with respect to any document included as part of an Application Package; (b) any breach of any representation, warranty or covenant contained in this Agreement; (c) Mortgage Broker's failure to perform any of its obligations under this Agreement or (d) any claim by a Borrower resulting from Lender's failure or refusal to fund a Loan. Mortgage Broker's obligation to fully indemnify Lender under this Agreement shall not be affected by Lender taking any of the following actions with or without notice to Mortgage Broker: (i) liquidation, repayment, retirement, or sale or resale of any Loan; (ii) foreclosure of any Loan; or (iii) sale or resale of the property securing any Loan. For the purposes of this Agreement it is understood and Mortgage Broker specifically represents and warrants that the knowledge and actions of Mortgage Broker's agents and employees shall be imputed to Mortgage Broker.

8. **Corporate Documents** Prior to execution of this Agreement, Mortgage Broker shall have delivered to Lender:

   8.1. a current certificate of its jurisdiction of incorporation to the effect that Mortgage Broker is a corporation or other entity validly existing and in good standing (if applicable) under the laws of such jurisdiction;

   8.2. a certificate of the Secretary or Assistant Secretary of Mortgage Broker attaching (a) evidence of such corporate action or authorization as is necessary to approve this Agreement and the authorization of the officers of Mortgage Broker to sign this Agreement, and (b) specimen signatures of the officers of Mortgage Broker authorized to sign this Agreement;

   8.3. a copy, certified as true by the Secretary or Assistant Secretary of Mortgage Broker, of the charter and the by-laws of Mortgage Broker; and

   8.4. all other documents, instruments, and writing required to be delivered by Mortgage Broker pursuant to this Agreement, including but not limited to copies of all licenses issued by any relevant governmental authority and those documents set forth in sections 5.4 and 5.5.

   Annually hereafter, within 120 days of Mortgage Broker's fiscal year end, Mortgage Broker shall deliver to Lender all corporate documents referenced in this Section 8 reflecting all transactions and changes occurring in the prior fiscal year.

9. **Non-Solicitation** For a period of two (2) years from the date of funding of any Application Package Mortgage Broker hereby agrees that it will not take any action or permit or cause any action to be taken by any of its agents or affiliates, or by any independent contractors on Mortgage Broker's behalf, to personally, by telephone or mail, solicit the Borrower or any mortgagor under any Loan for any purpose whatsoever, including to refinance such Loan, in whole or in part, without the prior written consent of Lender.

10. **Disclosure of Information Confidentiality** All documents, forms, publications, memoranda, correspondence, files, contracts, client lists, financial tables, records, procedures, sales aids, techniques, processes, lending programs, Guidelines and all other material and information directly or indirectly given to or received by Mortgage Broker during the term of this Agreement that relate in any manner to any business or operation that Lender is engaged in, or intends at any time to become engaged in, are and shall remain the proprietary and confidential property of Lender. Upon the termination of this Agreement for any reason, Mortgage Broker shall promptly deliver to Lender all such material and information. During and after the term of this Agreement, Mortgage Broker shall not disclose to any person any proprietary and/or confidential information relating to the business of Lender.

11. **Costs and Expenses** Mortgage Broker shall, during and after the term of this Agreement, be responsible for and shall promptly pay in full all costs and expenses directly or indirectly incurred in performing its duties hereunder. Mortgage Broker shall have no right to reimbursement of any such costs or expenses from Lender.

12. **Termination of Agreement** This Agreement may be terminated by either party, with or without cause, upon 10 days' prior written notice to the other. Termination of this Agreement shall not affect the parties' obligations with respect to Application Packages submitted by Mortgage Broker to Lender and to Loans funded by Lender prior to the effective date of the termination of this Agreement. Termination of this Agreement shall not extinguish Mortgage Broker's obligations to Lender as provided hereinabove.

13. **Status of Mortgage Broker** Lender and Mortgage Broker acknowledge and agree that Mortgage Broker is an independent contractor. Nothing in this Agreement is intended, nor shall anything in this Agreement be construed, to make Mortgage Broker a joint venturer, partner, representative, employee or agent of Lender, and Mortgage Broker is expressly prohibited from holding itself out as such, nor shall Mortgage Broker hold itself out, at anytime, as the sole representative of Lender in any area, state or jurisdiction in which Lender does business. Mortgage Broker is expressly prohibited from using Lender's name in any advertising.

14. **Miscellaneous**

   14.1. **Right to Offset** Amounts owed by Mortgage Broker to Lender under this Agreement may, at Lender's option and in its sole discretion, be offset by Lender against any payments then or thereafter owed by Lender to Mortgage Broker.

   14.2. **Books and Records** Mortgage Broker shall maintain accurate books and records with respect to all Application Packages. Lender and its agents or representatives shall have the right to inspect Mortgage Broker's books and records during regular business hours and upon reasonable notice in order to confirm the accuracy of information supplied by

Page ____ 2 ____ Exhibit ____ 3

1

Create Date:2005-07-17 22:35:39.0 pg 5 of 6

Mortgage Broker to lender with respect to the Application Packages and this Agreement and to confirm Mortgage Broker's compliance with this Agreement.

14.3.    **Notices**  All notices required hereunder shall be in writing, delivered to the address appearing on the signature page of this Agreement (as amended from time to time by written notice), and shall be deemed to have been given, made, and received only: (a) upon personal delivery to a party; (b) one (1) business day after the date of deposit if delivered by a nationally recognized courier service offering guaranteed overnight delivery; or (c) five (5) business days after deposit in the United States first class mail, certified mail, postage prepaid, return receipt requested,

14.4.    **Attorney's Fees**  If any legal action or other proceeding is brought for the enforcement of this Agreement, the repurchase of a loan or loans, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party or parties shall be entitled to attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

14.5.    **Assignment**  Mortgage Broker may not assign this Agreement or its duties herein.

14.6.    **Entire Agreement; Amendment**  This Agreement together with its Exhibits, and the related Approval Letters, lending programs and Guidelines constitute the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and any other agreements, express or implied, entered into prior to this Agreement are null and void.  No supplement, modification, or amendment to this Agreement shall be binding unless executed in writing by both parties.

14.7.    **Waivers or Remedies**  Lender's failure or delay to audit any Loan prior to funding and closing, or to exercise any right or remedy available under this Agreement or at law or equity, shall not act as a waiver of any other right or remedy, nor shall any single or partial exercise of any right preclude any other or further exercise thereof.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the party making the waiver.  All remedies shall be cumulative and nonexclusive.

14.8.    **Partial Invalidity**  If any provision of this Agreement is held invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force and effect.

14.9.    **Further Assurances**  Each party shall perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement.  In the event Lender receives notice that any Borrower has exercised his or her right of rescission after Lender has disbursed any loan proceeds, Mortgage Broker shall promptly return to Lender all amounts collected by Mortgage Broker from Borrower in connection with the Loan, regardless of whether such amounts were disbursed by Mortgage Broker to other parties.

14.10.   **Governing Law**  This Agreement shall be governed by and construed in accordance with the law of the State of California, without consideration of choice of law principals.

14.11.   **Choice of Forum**  Any judicial proceeding brought against any of the parties hereto with respect to this Agreement shall be brought in any court of competent jurisdiction in Orange County, California or in the Federal District Court for the Central District of the State of California irrespective of where such party may be located at the time of such proceeding, and by execution and delivery of this Agreement, each of the parties to this Agreement hereby consents to the exclusive jurisdiction of any such court and waives any defense or opposition to such jurisdiction.

14.12.   **Waiver Of Jury Trial**  EACH PARTY HERETO WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

   **IN WITNESS WHEREOF**, the parties have caused their duly authorized representatives to execute this Mortgage Broker Agreement as of the date first set forth above.

"LENDER"                                    "MORTGAGE BROKER"

Ameriquest Mortgage Company                 Name:  _SHOAIB MAHMUD_
Attn: Wholesale Division
1100 Town & Country Road – Suite 500        Address:  _4376 JESSICA CIRCLE_
Orange, California 92868                               _FREMONT CA 94555_
Phone: (888) 311-4721
Fax: (866) 551-2614
                                            Telephone:  _510·468·6692_

                                            Facsimile:  _____

By: _____                   By: _____
         (Signature)                                 (Signature)

(Name) Eric J. Spiak                        (Name)  _ND FINANCIAL, INC._

Its:  Client Coordinating Manager           Its:  _PRESIDENT_
         (Title)                                     (Title)

   Note for California DRE-licensed corporate Mortgage Brokers the above signatory must be the Designated Broker/Officer.

CONFIDENTIAL

4

Create Date:2006-08-31 12:48:32.0 pg 1 of 9

JUN 08 2006 1:44PM    HP LASERJET 3200

*C# P.5 10280*
*Agreement*

Page 1 of 9

## MORTGAGE BROKER AGREEMENT

This Mortgage Broker Agreement (this "Agreement") is entered into as of the 6th day of June 2006, by and between Argent Mortgage Company, a Delaware limited liability company (the "Lender"), and _____ (for "Mortgage Broker", "Mortgage Lender", "Mortgage Broker" as applicable) (collectively, the "Broker"), and is entered into with reference to the following facts:

A.    Mortgage Broker is engaged in the business of soliciting mortgage loan application packages (each an "Application Package") from the general public for submission to mortgage banking entities for funding consideration. Among other things, as part of this business Mortgage Broker negotiates the terms and conditions of mortgage loans (each a "Loan") on behalf of mortgage loan applicants (each a "Borrower").

B.    Lender accepts Application Packages submitted by independent mortgage brokerage companies for funding consideration.

C.    The Parties desire to establish a nonexclusive relationship whereby, in accordance with the terms of this Agreement, Mortgage Broker will from time to time, and in its sole discretion and in its agency capacity for its Borrowers, submit Application Packages to Lender for funding consideration that comply with Lender's program requirements and loan origination policies and procedures.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.    Definitions.

"Agreement" means this mortgage broker agreement by and between Argent Mortgage Company, as Lender, and Mortgage Broker, as mortgage broker. This Agreement may be amended or modified from time to time, and the most current version of this Agreement (the "Current Agreement") will be available at Lender's website, which is currently located at www.argentmortgage.com.

"Application Package" shall mean the documentation necessary for Lender to determine Borrower's eligibility for a Loan, including but not limited to verifications of income, liabilities, and net worth, as well as all compliance with the Underwriting Guidelines set forth in the Lender Requirements.

"Lender Requirements" means the most current version of those documents on Lender's website, which is currently located at www.argentmortgage.com, relating to (i) qualification requirements for Mortgage Broker to become an Argent Qualified Broker, including relevant and periodic evaluation factors; (ii) Guidelines for Loan Origination services to be provided by Mortgage Broker; (iii) Mortgage Broker compensation; (iv) Code of Conduct; (v) Argent Mortgage Company Best Practices, and (vi) underwriting guidelines.

2.    Loan Submission.

2.1  Lender hereby authorizes Mortgage Broker to submit Loan Application Packages to Lender based on Lender's underwriting guidelines, as more particularly set forth in the Lender Requirements, and pricing information as set forth on the Lender's website. Mortgage Broker agrees to submit Loan Application Packages to Lender that are taken by Mortgage Broker in compliance with applicable state and federal laws and in accordance with the underwriting guidelines contained in the Lender Requirements.

2.2  Lender shall make available to Mortgage Broker the Lender Requirements, which may be withdrawn or modified at any time by Lender in its sole discretion. Mortgage Broker agrees that the most current version of the Lender Requirements as of the date an Application Package is submitted shall be applicable. Mortgage Broker acknowledges and agrees that the Lender Requirements is intended solely to facilitate the receipt and processing of Application Packages for underwriting and loan processing by Lender, and that compliance by Mortgage Broker with the Lender Requirements does not obligate Lender to accept or to underwrite any Application Package submitted by Mortgage Broker.

2.3  Mortgage Broker agrees and covenants that as to each Borrower for whom an Application Package is submitted to Lender, Mortgage Broker, if so required by applicable law: (i) has contractually agreed with the Borrower to act as the Borrower's authorized agent to negotiate a Loan, including the payment of appropriate compensation, if any; and (ii) Lender may deem Mortgage Broker to be acting in such agency capacity for the Borrower for all purposes of the transactions contemplated by this Agreement.

2.4  Upon receipt of a completed Application Package from Mortgage Broker, Lender, in its sole discretion, may underwrite and approve/deny such Application Package on the basis of Lender's then current underwriting criteria and secondary market standards. Nothing in this Agreement constitutes any representation or commitment by Lender that Lender will extend credit to any Borrower, and Lender's determination as to the creditworthiness of any Borrower, including the terms and conditions of a Loan, shall be final and conclusive. Without limiting the foregoing, Lender shall have the right, in its sole discretion, to approve the terms proposed in an Application Package for a Loan, the creditworthiness of the Borrower and the adequacy of the security for a Loan. Mortgage Broker shall not represent in any person, including Borrower, that Lender has approved or will approve, or that Lender has issued or will issue a funding commitment to fund any Application Package. All information contained in an Application Package shall be subject to Lender's independent verification. Lender's independent verification or lack thereof of any Application Package shall not reduce, waive or otherwise modify any of Lender's rights or remedies provided hereunder. All information and documentation to be utilized in connection with such Application Packages and Loan, including loan applications, requests for deposit verification, state and federal consumer disclosures, promissory notes,

Initial _____ Date _____

Updated: April 2006

---

Δ π EXHIBIT 5
Deponent _____
Date 4/8/08   Rptr. SO
WWW.DEPOBOOK.COM

CONFIDENTIAL

Page 22   Exhibit 3

6

Create Date:2006-08-31 12:48:32.0 pg 2 of 9

JUN 08 2006 1:45PM   HP LASERJET 3200                                    P.6

Page 2 of 7

security documents, deeds of trust and mortgages, shall be on forms approved by Lender, in conformance with all applicable state and federal laws and regulations, the Lender Requirements, Lender's underwriting guidelines and this Agreement.

2.5   If Lender, in its sole discretion, approves an Application Package, Lender shall issue an approval letter setting forth the conditions upon which Lender will fund the subject Loan, along with the expiration date of the approval (the "Approval Letter"). Lender shall have no obligation to fund a Loan prior to fulfillment of all funding conditions contained in, or after expiration of, the Approval Letter.

2.6   Lender shall not be obligated to fund any Loan that does not, in Lender's sole discretion, comply with the Current Agreement or any exhibits thereto, the related Approval Letter, or the Lender Requirements.

2.7   All Loans shall close in Lender's name with funds provided by Lender. Mortgage Broker's sole and exclusive rights to compensation pursuant to this Agreement are set forth in Section 3 of this Agreement. At the time of the closing of a Loan, Mortgage Broker agrees to assign to Lender all of Mortgage Broker's right, title and interest in and to the subject Loan, Application Package and all materials relating to the Loan of whatever nature or kind.

3.     Loan Origination Services and Compensation.

3.1   Mortgage Broker will, at Mortgage Broker's own cost and expense, prepare, process and submit Application Packages to Lender for funding consideration, and facilitate the closing of Application Packages approved for funding by Lender. Mortgage Broker's services and facilities shall include, but are not limited to those services and facilities required by the Lender Requirements, as amended from time to time by Lender, in its sole discretion. The specified loan origination services and facilities performed by Mortgage Broker pursuant to this Section 3.1 shall be referred to in this Agreement as the "Loan Services."

3.2   Lender agrees to pay Mortgage Broker compensation for the Loan Services performed by Mortgage Broker at the rate set by Lender from time to time as set forth in the Lender Requirements, and programs and pricing options. Without limiting the foregoing, the Parties agree that the compensation paid for the Loan Services by Lender is intended to reflect the reasonable value of the Loan Services in the market in which Mortgage Broker performs the same. The Parties agree to use by the amount of the compensation paid for the Loan Services should an applicable law, regulation or a court of competent jurisdiction determine that the Parties estimate of the reasonable value of the compensation for the Loan Services, or the method used to determine the amount of the compensation, exceeds in any instance the reasonable value of said compensation. Mortgage Broker shall fully disclose to each Borrower the receipt and amount of the compensation received from the Lender for the performance of the Loan Services, and agrees that the compensation set forth herein shall be the sole and exclusive compensation paid by Lender to Mortgage Broker pursuant to the terms of this Agreement. Without limiting the foregoing, the Parties agree that if the Mortgage Broker accepts compensation from Lender for the Loan Services pursuant to Section 3.2 of this Agreement, any compensation received by Mortgage Broker from Borrower(s) pursuant to Section 3.3 of this Agreement shall not include duplicate compensation for the same loan services.

3.3   Mortgage Broker shall also be entitled to negotiate with and receive from a Borrower(s), payable at the time of closing of a Loan, a reasonable broker fee for its services, that is typical in Mortgage Broker's market area for the type and amount of the mortgage loan applied for. Mortgage Broker shall disclose the fee, if any, which it charges to any Borrower(s) on the Good Faith Estimate of Closing Costs pursuant to RESPA, and in accordance with all other applicable consumer disclosure and other legal requirements. Lender will cause such broker's fee to be disclosed on the HUD-1 Settlement Statement, and to be collected at closing and remitted to Mortgage Broker. THE PARTIES AGREE THAT ANY FEE OTHER THAN THE COMPENSATION DESCRIBED IN SECTIONS 3.1 AND 3.2 OF THIS AGREEMENT IS SUBJECT SOLELY TO THE CONTRACTUAL TERMS AND CONDITIONS AGREED TO BETWEEN A BORROWER AND MORTGAGE BROKER, AND SUCH BROKER'S FEE IS NOT A CONDITION OR A REQUIREMENT BY LENDER IN ORDER TO ACCEPT OR TO UNDERWRITE AN APPLICATION PACKAGE.

4.     Mortgage Broker's Representations, Warranties and Covenants. Mortgage Broker represents, warrants and covenants to Lender, on behalf of itself and its officers, directors, employees, representatives and agents, that as of: (a) the date and time any Application Package is submitted to Lender; (b) the date and time a Loan is funded and closed; (c) throughout the time such Loan remains outstanding; and (d) any other date and time as indicated or as the context of this Agreement may require:

4.1   Due Organization, Existence and Good Standing. If a corporation, partnership or other entity other than a natural person, Mortgage Broker: (i) is and shall remain duly organized and a validly existing entity in good standing in the jurisdiction under whose laws Mortgage Broker is formed; and (ii) is and shall be duly qualified to conduct its business in each jurisdiction in which such qualification is required.

4.2   All Licenses and Authorizations. Mortgage Broker has, and shall maintain, all licenses necessary to carry on its business as now being conducted, including all licenses necessary to conduct the mortgage brokerage business contemplated by this Agreement. Mortgage Broker is, unless otherwise exempt, licensed, registered, qualified and in good standing in the each state in which: (i) any real property securing repayment of a Loan is located; and (ii) Mortgage Broker is engaged in the business of brokering mortgage loans if the laws of such state require licensing, registration or qualification to engage in the business of brokering mortgage loans. Mortgage Broker covenants to maintain all licenses, registrations and qualifications necessary and to keep itself in good standing with all applicable regulatory and supervisory agencies. Mortgage Broker covenants to adhere to and comply with any state or federal record retention requirements. Mortgage Broker further covenants to notify Lender immediately upon the suspension, revocation, expiration or other termination of any licenses, registrations or qualifications, or of the taking of any formal or informal administrative or judicial action by any such regulatory or supervisory agency against Mortgage Broker that could adversely affect Mortgage Broker's licenses, registrations and qualifications.

Initial _____   Date 6/6/06

Page ___23___   Exhibit ___3___

CONFIDENTIAL

7

Create Date:2006-08-31 12:48:32.0 pg 3 of 9

JUN 08 2006 1:45PM   HP LASERJET 3200                                    P. 7

Page 3 of 7

4.3   Authority and Capacity; Consent; Enforceability of Agreement. Mortgage Broker has the full power authority and capacity to enter into this Agreement, and this Agreement has been duly authorized, executed and delivered by Mortgage Broker and constitutes a valid and binding obligation of Mortgage Broker, including its officers, directors, employees, representatives and agents, enforceable in accordance with its terms. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Mortgage Broker of, or compliance by Mortgage Broker with, this Agreement or the consummation of the transactions contemplated by this Agreement or, if required, such consent, approval or authorization has been obtained. Mortgage Broker's compliance with the terms and conditions of this Agreement will not violate any provisions of its charter documents, if any, any instrument relating to the conduct of its business, or any other agreement, law or regulation to which it may be a party or under which it may be governed.

4.4   Absence of Claims. Except as previously disclosed by Mortgage Broker to Lender in a writing to be attached to this Agreement as Exhibit E, there is not pending or, to Mortgage Broker's knowledge, threatened any suit, action, arbitration, or legal, administrative, or other proceeding or investigation including an allegation of fraud by another lender, against Mortgage Broker or its current or former officers, directors, shareholders, employees, representatives and agents that would prevent the execution, delivery and performance by Mortgage Broker of its obligations under this Agreement or which could have a material adverse affect upon the Mortgage Broker's business, assets, financial condition or operations, or upon any Application Package submitted for funding by Lender.

4.5   Disclosure and Validity of Information. Mortgage Broker shall make prompt, timely, full, accurate and truthful disclosure to Lender of all facts, information and documentation that Mortgage Broker knows, suspects or has notice of that could affect, or has affected, the eligibility, validity, collectability, collateral value, security, or enforceability of any Application Package submitted by Mortgage Broker for funding consideration by Lender. All information set forth in mortgage application(s) prepared by Mortgage Broker for submission to Lender included in an Application Package, including all written attachments thereto, is and shall be true, correct, currently valid and genuine. No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to an Application Package or a Loan has taken place on the part of any person or entity, including, without limitation, the Mortgage Broker, and its officers, directors, employees, representatives and agents, the Borrower, any appraiser, any builder or developer, or any person involved in the preparation and/or submission of an Application Package to the Lender or the origination of a Loan.

4.6   Control of Documents. Mortgage Broker shall maintain direct and indirect possession and control of all credit, income or deposit verification documents submitted to Lender with respect to any Application Package or Loan.

4.7   Ownership. Mortgage Broker has no direct or indirect interest including, but not limited to, any ownership interest in a loan secured by property related to any transaction with a Loan, in any property pledged as security for a Loan, or an affiliation or relationship with any person or entity having a financial interest in a Loan, an Application Package or a Loan transaction. Other than the compensation described in Section 3 of this Agreement, Mortgage Broker has not received any other form of financial remuneration or benefit, direct or indirect, from any person or entity relating to a Loan transaction.

4.8   Compliance with Laws. In connection with its solicitation, processing, and submission of an Application Package pursuant to this Agreement, Mortgage Broker and every other person or entity involved in the Loan transaction covenant and agree that they have and will comply fully and in a timely manner with all applicable state and federal consumer protection and disclosure laws, including, among others: (i) the Truth-in-Lending Act and the FRB's Regulation Z; (ii) the ECOA and the FRB's Regulation B; (iii) HMDA and the FRB's Regulation C; (iv) RESPA and HUD's Regulation X; (v) the Federal Fair Housing Act, and similar state and federal nondiscrimination lending laws and regulations; and (vi) all other federal and state laws, rules and regulations as they relate to this lending, consumer credit disclosures and notices, broker related notices and disclosures, privacy rights, record retention requirements, the Application Package and/or the Loans. At all times Mortgage Broker and every other person or entity involved in the Loan transaction shall be in compliance with Lender's fair lending policy and any amendments thereto. Mortgage Broker covenants and warrants to provide compliance training pertaining to all aforesaid laws, regulations and rules, and any amendments thereto, on a continuing basis throughout the term of this Agreement, including compliance with the Lender Requirements. Mortgage Broker is in full compliance with all real estate, mortgage lending or other regulatory or supervisory agencies having jurisdiction over Mortgage Broker's activities to the extent necessary to ensure the enforceability of the Loans.

4.9   Fees. Except as set forth in Section 3.1 and 3.2 of this Agreement with respect to the Loan Services, the nature, character and amount of any fees charged or received by Mortgage Broker and payable by Borrower in connection with an Application Package have been or will be determined solely by direct negotiations between Mortgage Broker and Borrower. If Mortgage Broker accepts compensation from Lender pursuant to Section 3.2 of this Agreement, any compensation received by Mortgage Broker from the Borrower pursuant to Section 3.3 of this Agreement does not include compensation for the performance of the Loan Services, including duplicate payment for the performance of the Loan Services. The total fees to be received by Mortgage Broker have been separately itemized, fully disclosed, explained and agreed to in writing by Borrower, and are reasonably related to the reasonable value of the services rendered by Mortgage Broker in connection with the Application Package and the Loan. Without limiting the foregoing, if Mortgage Broker accepts compensation from Lender pursuant to Section 3.2 of this Agreement, the Loan Services have been fully performed by Mortgage Broker and the compensation is the reasonable value of the performance of the Loan Services. If Lender does not fund and close for any reason whatsoever, a Loan submitted by Mortgage Broker, Lender shall have no obligation to pay Mortgage Broker for the performance of the Loan Services or any sums owed to Mortgage Broker by Borrower arising out of a Loan, nor shall Lender have any obligation to pay Mortgage Broker compensation for any form in connection with the Application Package. There is no payment between Mortgage Broker and any other person or entity for the payment of any referral fee, rebate, bonus, kickback or other payment, and no payment of such referral fee, rebate, bonus, kickback or other payment has been or will be made to any person, including, but not limited to, the Borrower and/or Mortgage Broker.

Initial _____ Date 6/8/06

Page ___24___   Exhibit ___3___

CONFIDENTIAL

8

Create Date:2006-08-31 12:48:32.0 pg 4 of 9

JUN 08 2006 1:46PM    HP LASERJET 3200                    p.8

Pap: 4 of 7

**4.10  Services to Borrower.** If applicable law so requires, Mortgage Broker is acting as the authorized agent of the Borrower with respect to the solicitation of an Application Package and the negotiation of a Loan, and has entered into a contract with the Borrower authorizing the Mortgage Broker to act in such agency capacity for the Borrower; unless they the transactions contemplated by this Agreement. Mortgage Broker has observed and shall observe and fully discharge any applicable duties owed by Mortgage Broker to Borrower under law with respect to each Borrower and related Application Package that has been submitted by Mortgage Broker to Lender for funding consideration pursuant to this Agreement. Without limiting the foregoing, whenever obligations are required by such duty, law, or Lender, Mortgage Broker, including its officers, directors, employees, representatives and agents, has provided to Borrower any and all requisite disclosures, including, but not limited to, those pertaining to Broker's aggregate compensation and observed any and all requisite agreements and authorizations. All services performed by Mortgage Broker were performed in the full satisfaction of Borrower by Mortgage Broker, and in accordance with the legal, prudent, accepted and customary standards in the mortgage lending industry generally. Mortgage Broker is not aware of any dispute or claim by any Borrower that all such services were not fully and satisfactorily performed. No Borrower has any claim or defense against the Mortgage Broker, and its officers, directors, employees, representatives and agents, by reason of any act or omission of Broker, and its officers, directors, employees, representatives and agents, acting out or related in any manner or way to an Application Package, a Loan or a Loan transaction.

**4.11  Corrections.** Mortgage Broker shall, upon request by Lender, take all actions necessary, in a timely and an accurate manner, to obtain corrections to any and all Loan documents as may be appropriate and to otherwise assist Lender in remedying any matter not in compliance with applicable law, regulations or the Lender Requirements, including assisting Lender in obtaining recorded documentation relating to a Loan and other policies from closing agents.

**4.12  Use of Approved Vendors.** Mortgage Broker has not and shall not utilize any real estate appraiser, credit reporting agency or other settlement service providers or vendors in connection with an Application Package that do not comply in all respects with all applicable state and federal laws and such standards as may be set forth in the Lender Requirements.

**4.13  Current Version of the Broker Agreement and Lender Requirements.** Mortgage Broker has access to the most recent version of the Broker Agreement and the Lender Requirements as provided on Lender's website, and has strictly complied with all requirements set forth therein. Without limiting the foregoing, Mortgage Broker agrees that and consents to all terms and conditions set forth in the Current Agreement, and by submitting an Application Package to Lender agrees to comply in all respects with all amendments and modifications of whatever nature as set forth in the Current Agreement and the Lender Requirements.

**5.  Representations and Warranties-Repurchase Obligation.** The Parties agree that the covenants, representations and warranties set forth in this Agreement shall survive delivery of an Application Package, funding of any related Loan and the termination of this Agreement. Mortgage Broker agrees that within thirty (30) days of Lender's demand it will, in Lender's sole discretion, either cure to the Lender's satisfaction any defect and repurchase any Loan that is not in compliance with this Agreement, including the representations, warranties and covenants set forth in this Agreement, any exhibit to this Agreement, any Approval Letter or the Lender Requirements. If Lender determines that Mortgage Broker shall repurchase a Loan, the repurchase price shall be an amount equal to: (a) the principal balance of such Loan as of the repurchase date, as shown on the records of Lender, plus (b) accrued but unpaid interest up to and including the date of repurchase; plus (c) all principal and interest advances, servicing advances, servicing fees and accrued auxiliary income; plus (d) any out-of-pocket expenses, including attorneys' fees, whether or not a law suit is filed, of the Lender relating to such Loan or enforcement of the repurchase obligations hereunder, plus (e) any compensation paid by lender for such loan pursuant to Section 2.3 hereof.

**6.  Mortgage Broker's Indemnification.** Mortgage Broker hereby indemnifies and holds Lender, and its officers, directors, employees, shareholders, representatives, successors, assigns, agents and affiliates (collectively, the "Indemnitees", hereinafter the "Indemnitees"), harmless from and against, and shall reimburse the Indemnitees with respect to, any and all taxes, damages, demands, claims, liabilities, costs and expenses, including reasonable attorneys' fees, whether or not a lawsuit is filed (collectively, "Losses"), of any nature or cause whatsoever, incurred by reason of or arising out of or in connection with: (a) any investigation undertaken by Lender with respect to any document included as part of an Application Package; (b) any breach of any representation, warranty or covenant contained in this Agreement; (c) Mortgage Broker's failure to perform any of its obligations under this Agreement; or (d) any claim by a Borrower resulting from Lender's failure or refusal to fund a Loan. Mortgage Broker's obligation to fully indemnify the Indemnitees under this Agreement shall not be effected by Lender taking any of the following actions with or without notice to Mortgage Broker: (i) liquidation, repayment, reinvestment, or sale or resale of any Loan; (ii) foreclosure of any Loan; or (iii) sale or resale of any real or personal property securing any Loan. For the purposes of this Agreement, including this Section 6, Mortgage Broker specifically covenants, represents and warrants that the knowledge and actions of Mortgage Broker's officers, directors, employees, representatives and agents shall be imputed to, and be deemed the actions of, Mortgage Broker.

**7.  Privacy.** Each of the Parties shall comply in all respects with their respective state and federal obligations concerning the privacy of Borrower data in their possession. Without limiting the foregoing, each of the Parties shall comply in all respects with the requirements of Title V of the Gramm-Leach-Bliley Act and the Federal Trade Commission's implementing regulations.

**8.  Non-Solicitation.** Without the prior written consent of Lender, for a period of two (2) years from the date of funding of any Application Package, Broker hereby agrees that it will not take any action or permit or cause any action to be taken by any of and its officers, directors, employees, representatives and agents, or by any independent contractors or settlement service providers of any nature or kind, to personally, by telephone, email or any other medium, solicit the Borrower or any mortgagor under any Loan for any purpose whatsoever, including, among others, to refinance such Loan, in whole or in part.

Initial _Bill_    Date _6/8/06_

CONFIDENTIAL

Page __25__  Exhibit _3_

Create Date:2006-08-31 12:46:32.0 pg 5 of 9

JUN 08 2006 1:47PM   HP LASERJET 3200                              P.9

Page 5 of 7

**9.**    **Disclosure of Information; Confidentiality.** All documents, forms, publications, memoranda, correspondence, files, contracts, client lists, financial tables, records, procedures, sales aids, techniques, processes, lending programs, the Lender Requirements and all other material and information directly or indirectly given to or received by Mortgage Broker during the term of this Agreement that relate in any manner to any business or operation that Lender is engaged in, or intends at any time to become engaged in, are and shall remain the proprietary and confidential property of Lender. Upon the termination of this Agreement for any reason, Mortgage Broker shall promptly deliver to Lender all such material and information. During and after the term of this Agreement, Mortgage Broker shall not disclose to any person any proprietary and/or confidential information relating to the business of Lender.

**10.**    **Costs and Expenses.** Mortgage Broker shall, during and after the term of this Agreement, be responsible for and shall promptly pay in full all costs and expenses directly or indirectly incurred in performing its duties hereunder. Except as specifically set forth in this Agreement, Mortgage Broker shall have no right to reimbursement of any such costs or expenses from Lender.

**11.**    **Termination of Agreement.** This Agreement may be terminated by either Party, with or without cause, upon ten (10) days' prior written notice to the other. Termination of this Agreement shall not affect the Parties' respective obligations with respect to Application Packages submitted by Mortgage Broker to Lender and to Loans funded by Lender prior to the effective date of the termination of this Agreement. Termination of this Agreement shall not extinguish Mortgage Broker's obligations to Lender as provided in this Agreement.

**12.**    **Status of Mortgage Broker as Independent Contractor.** Lender and Mortgage Broker acknowledge and agree, and Mortgage Broker covenants, warrants and represents to Lender, that Mortgage Broker is an independent contractor. Nothing in this Agreement is intended, nor shall anything in this Agreement be construed to make or deem Mortgage Broker a joint venturer, partner, co-venturer, employee or agent of Lender, and Mortgage Broker is expressly prohibited from holding itself out as such, nor shall Mortgage Broker hold itself out at anytime as the representative of Lender in any such state or jurisdiction in which Lender conducts its business. Mortgage Broker is expressly prohibited from using Lender's name in any advertising.

**13.**    **Corporate Documents; Licenses; Authorities.** In connection with the Mortgage Broker's representations and warranties as set forth in 4.1, 4.2, and 4.3, prior to execution of this Agreement, Mortgage Broker shall have delivered to Lender, as applicable:

   **13.1**    a current certificate of its jurisdiction of incorporation to the effect that Mortgage Broker is a corporation or other entity validly existing and in good standing under the laws of such jurisdiction;

   **13.2**    a certificate of the duly authorized secretary or assistant secretary of Mortgage Broker attaching: (i) evidence of such corporate action or authorization as is necessary to approve of this Agreement and the authorization of the officers of Mortgage Broker to sign this Agreement; and (ii) specimen signatures of the officers of Mortgage Broker authorized to sign this Agreement;

   **13.3**    a copy, certified as true by the secretary or assistant secretary of Mortgage Broker, of the charter and the by-laws of Mortgage Broker; and

   **13.4**    all other documents, instruments, and writing required to be delivered by Mortgage Broker pursuant to this Agreement, including, but not limited to, copies of all licenses issued by any relevant governmental authority and those documents set forth in Sections 4.1 and 4.2 of this Agreement.

   Annually hereafter, within 120 days of Mortgage Broker's fiscal year end, Mortgage Broker shall deliver to Lender all corporate documents referenced in this Section evidencing all transactions and changes occurring in the prior fiscal year.

**14.**    **Miscellaneous.**

   **14.1**    **Right to Offset.** Amounts owed by Mortgage Broker to Lender under this Agreement may, at Lender's option and in its sole discretion, be offset by Lender against any payments then or thereafter owed by Lender to Mortgage Broker.

   **14.2**    **Books and Records.** Mortgage Broker shall maintain accurate books and records with respect to all Application Packages. Lender and its agents or representatives shall have the right to inspect Mortgage Broker's books and records during regular business hours and upon reasonable notice in order to confirm the accuracy of information supplied by Mortgage Broker to Lender with respect to any Application Packages and this Agreement and to confirm Mortgage Broker's compliance with this Agreement.

   **14.3**    **Notices.** All notices required hereunder shall be in writing, delivered to the address appearing on the signature page of this Agreement, as may amended from time to time by written notice, and shall be deemed to have been given, made, and received only: (a) upon personal delivery to a Party; (b) one (1) business day after the date of deposit if delivered by a nationally recognized courier service offering guaranteed overnight delivery; or (c) five (5) business days after deposit in the United States first class mail, certified mail, postage prepaid, return receipt requested.

Initial _____ Date 6/ /06

CONFIDENTIAL

Page __  Exhibit  3

Create Date:2006-08-31 12:48:32.0 pg 6 of 9

JUN 08 2006 1:47PM    HP LASERJET 3200                          P.10

14.4    **Electronic Delivery and Amendment** to Agreement and the Lender Requirements. Notwithstanding the requirements of Section 14.3 of this Agreement, the Parties agree that the Lender may deliver the Lender Requirements and/or the Current Agreement, and all amendments thereto, by posting a copy of the Current Agreement and Lender Requirements and such amendments at a website identified by Lender or by transmitting an electronic version of the Lender Requirements and/or Current Agreement and such amendments in an e-mail address provided by Mortgage Broker.

14.5    **Electronic Consent by Lender.** Unless an electronic communication specifically requires a statement that the communication is intended as an electronic signature or consent by Lender, such communications shall not constitute an electronic signature or consent by Lender pursuant to the Electronic Signatures in Global and National Commerce Act or comparable state or federal laws or regulations.

14.6    **Attorney's Fees.** If any legal action or other proceeding is brought for the enforcement of this Agreement, the repurchase of a Loan or Loans, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the prevailing Party shall be entitled to attorneys' fees and other costs incurred in that action or proceeding, whether or not a law suit is filed, in addition to any other relief to which it or they may be entitled.

14.7    **Assignment.** Mortgage Broker may not assign this Agreement or its duties herein, and any attempted assignment shall be void.

14.8    **Entire Agreement; Amendment.** This Agreement, together with all exhibits, the Approval Letters and the most current version of the Lender Requirements, constitute the entire understanding and agreement of the Parties hereto with respect to the subject matter hereof, and any other agreements, express or implied, entered into prior to this Agreement are null and void and of no force or effect. Lender may amend the terms of this Agreement by delivering Mortgage Broker an amended Agreement in accordance with Section 14.3 or Section 14.4 of this Agreement. Such amendment(s) shall be the Current Agreement and deemed accepted and incorporated into this Agreement if Mortgage Broker submits an Application Package to Lender subsequent to the date that the amended Agreement is delivered to Mortgage Broker. Mortgage Broker may not supplement, modify or amend this Agreement unless such supplement, modification or amendment is agreed to in writing by an authorized representative of Lender.

14.9    **Waivers or Remedies.** Lender's failure or delay to audit any Loan prior to funding and closing, or to exercise any right or remedy available under this Agreement or at law or equity, shall not act as a waiver of any other right or remedy, nor shall any single or partial exercise of any right preclude any other or further exercise thereof. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver. All remedies shall be cumulative and nonexclusive.

14.10   **Partial Invalidity.** If any provision of this Agreement is held invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force and effect.

14.11   **Further Assurances.** Each Party shall perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Agreement. In the event Lender receives notice that any Borrower has exercised his/ her right of rescission after Lender has disbursed any loan proceeds, Mortgage Broker shall promptly return to Lender all amounts advanced by Mortgage Broker from Borrower in connection with the Loan, regardless of whether such amounts were disbursed by Lender to other parties.

14.12   **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of California, without consideration of choice of law principals.

14.13   **Choice of Forum.** Any judicial proceeding brought against any of the Parties hereto with respect to this Agreement shall be brought in any court of competent jurisdiction in Orange County, California or in the Federal District Court for the Central District of California, irrespective of where each Party may be located at the time of such proceeding, and by execution and delivery of this Agreement, each of the Parties hereby consents to the exclusive jurisdiction of any such court and waives any defense or opposition to such jurisdiction.

14.14   **Waiver of Jury Trial.** EACH PARTY HERETO WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

14.15   **No Third Party Beneficiary.** This Agreement is intended to facilitate the submission of Application Packages by Mortgage Broker to Lender, and no third party beneficiary rights are intended or may be implied in any manner or form, including any rights or benefits with respect to a Borrower.

14.16   **Lender Affiliates.** This Agreement shall govern circumstances in which an Application Package may be transferred by Lender to an affiliate of Lender for processing and possible funding. In these circumstances, the term "Lender" herein shall mean the applicable affiliate.

14.17   **Communication Authorization.** Mortgage Broker expressly authorizes, consents, permits and invites Lender to send documents, including unsolicited advertisements and any and all other materials or communications, to the facsimile number(s) and e-mail address(es) provided by Mortgage Broker to Lender in the Mortgage Broker Application and Transmission Authorization.

Initial ____ Date _____

CONFIDENTIAL

Create Date:2006-08-31 12:48:32.0 pg 7 of 9

JUN 08 2006 1:48PM    HP LASERJET 3200                                    P.11

Page 7 of 7

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to execute this Agreement as of the date first set forth above.

"LENDER"                                    "MORTGAGE BROKER"

Argent Mortgage Company, LLC                Company Name: N D FINANCIAL, INC (dba) PRIMESTAR FINANCIAL SERVICES

1701 West Golf Road – Tower 3              Address: 200 BROWN RD. # 103

Rolling Meadows, IL 60008                           FREMONT, CO 94539

Telephone (866) 274-3682                   Telephone: 510·659·8600

Facsimile (866) 432-8812                   Facsimile: 510·659·8611

By: _____                By (signature): _____

Name: _____                Name: SHOAIB MAHMUD

Title: _____               Title: OWNER / BROKER

Note: for California DRE licensed corporate Mortgage Brokers the above signatory must be the Designated Broker/Officer.

CONFIDENTIAL

Page 28   Exhibit 3

12

Create Date:2005-07-17 22:35:39.0 pg 6 of 8

## EXHIBIT "A"

### Services to be performed by Mortgage Broker

The following listed services are subject to modification from time to time (and on a case-by-case basis if necessary) in Lender's sole and absolute discretion:

1. Obtain, compile and process information from Borrower and prepare 1003 loan application, together with such financial information (e.g., tax returns, bank statements, etc.) and other documents as needed to permit Lender to underwrite the Application Package

2. Prepare, obtain and review verifications of deposit, income and employment as required or directed by Lender

3. Initiate/order requests for mortgage and other loan verifications

4. Order and submit original appraisal performed by licensed appraiser on Lender's approved-appraiser list

5. Initiate/order inspections and engineering reports as necessary

6. Diligently prepare, process, package and submit a completed Application Package to Lender for funding consideration, which Application Package shall contain such information on such forms and in such order as required by Lender

7. Counsel Borrower on Lender's different loan programs and pricing options, and educate Borrower in home buying or refinance financing process

8. Select title company, escrow and/or closing agent; order preliminary title report, abstract of title or other comparable document and other legal documents requested by Lender

9. Assist Borrower in understanding the effect of Borrower's credit problems on loan program and pricing options available from Lender; assist Borrower, to the extent possible, in clearing credit problems

10. Provide all required federal and state consumer credit disclosures and notices

11. Maintain regular contact with Borrower, Lender and all other persons or entities involved in the loan process from application through closing, and after closing if necessary; timely apprise Borrower, Lender and all other persons or entities involved in the loan process of the status of the Application Package; and obtain such additional information as Lender or any other persons or entities involved in the loan process may require

12. Ensure that all requirements imposed by Lender as a condition to its funding of the Loan have been fully performed prior to funding and to correct any deviation, deficiency or defect after funding as directed by Lender

13. Participate in the loan closing

14. Perform such additional services as Lender requires to close the Loan

Page_____29_____ Exhibit _____3_____

CONFIDENTIAL

5

```
1                    REPORTER CERTIFICATE

2         I hereby certify that the witness to the

3    foregoing deposition was by me duly sworn to testify to

4    the truth, the whole truth, and nothing but the truth in

5    the within-entitled cause; that said deposition was

6    taken at the time and place herein named; that the

7    deposition is a true record of the witness's testimony

8    as reported to the best of my ability by me, a duly

9    certified shorthand reporter and a disinterested person,

10   and was thereafter transcribed under my direction into

11   typewriting by computer; that the witness was given an

12   opportunity to read and correct said deposition and to

13   subscribe the same.  Should the signature of the witness

14   not be affixed to the deposition, the witness shall not

15   have availed himself or herself of the opportunity to

16   sign or the signature has been waived.

17         I further certify that I am not interested in

18   the outcome of said action, nor connected with, nor

19   related to any of the parties in said action, nor to

20   their respective counsel.

21         IN WITNESS WHEREOF, I have hereunto set my

22   hand this April 21, 2008.

23   _____

24            SANDRA L. CARRANZA
              CSR No. 7062

25
```

```
1                    PREFERRED REPORTERS
               CERTIFIED SHORTHAND REPORTERS
2              19229 Sonoma Highway, Suite 112
                  Sonoma, California  95476
3                   Phone (707) 938-9227

4

5    April 21, 2008

6    TO:  SHOAIB MAHMUD
          C/O:  STEVEN ROOD, ATTORNEY AT LAW
7         LAW OFFICES OF STEVEN ROOD
          405 - 14th Street, Suite 212
8         Oakland, California 94612

9    RE:  RICARDO MARCELOS vs. EDWIN MAURICIO PARADA
          DOMINGUEZ, GLENDA PARADA, LORENZO PARADA, et al.
10        Deposition taken April 8, 2008
          Reported by SANDRA L. CARRANZA, CSR No. 7062
11
     Dear Mr. Mahmud:
12
     The original transcript of your deposition taken in the
13   above-entitled action has been prepared and is available
     at this office for your reading, correcting and signing.
14   In the alternative, you may wish to review your
     counsel's copy.  Please notify this office and all
15   counsel of any corrections you wish to make.

16   Your rights regarding signature of this deposition are
     contained in the California Code of Civil Procedure
17   Section 2025.520.  Unless otherwise directed, your
     original deposition transcript will be sealed after 35
18   days.

19   If you wish to make arrangements to review the original
     transcript of your deposition, please contact this
20   office during office hours, 9:00 to 5:00 Monday through
     Friday, to make an appointment.
21
                            Sincerely,
22

23

          Sandra L. Carranza
24        CSR No. 7062

25   cc:  All counsel

26
```

1   **PROOF OF SERVICE**

2

3        I am employed in the County of Orange, State of California.  I am over the age of 18 and

4   not a party to the within action.  My business address is at BUCHALTER NEMER, A

5   Professional Corporation, 18400 Von Karman Avenue, Suite 800, Irvine, California  92612-0514.

6        On the date set forth below, I served the foregoing document described as:

7   **DEFENDANT ARGENT MORTGAGE COMPANY, LLC'S AND
    DEFENDANT COUNTRYWIDE HOME LOAN, INC.'S REQUEST FOR**
8   **JUDICIAL NOTICE IN SUPPORT OF THEIR RESPECTIVE MOTIONS
    TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE**
9   **12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN
    SUPPORT**
10

11  on all other parties and/or their attorney(s) of record to this action by placing a true copy thereof

12  in a sealed envelope as follows:

13  Shirley Hochhausen, Esq.
14  2117-B University Avenue
    East Palo Alto, California 94303
15

16

17  ☒    **BY MAIL**    I am readily familiar with the business' practice for collection and processing
18  of correspondence for mailing with the United States Postal Service. The address(es) shown above
    is(are) the same as shown on the envelope.  The envelope was placed for deposit in the United
19  States Postal Service at Buchalter Nemer in Irvine, California on May 22, 2008.  The envelope
    was sealed and placed for collection and mailing with first-class prepaid postage on this date
20  following ordinary business practices.

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

BN 1796382v1                                                          32

**PROOF OF SERVICE**

1

☐    **BY FACSIMILE AND MAIL**    I caused the above-named document(s) to be sent via

2    facsimile transmission to the law office(s) and facsimile number(s) stated above.  The

3    transmission was reported as complete and without error.  A copy of the transmission report(s)
properly issued by one or more of Buchalter, Nemer's three Xerox 745 WorkCenter facsimile

4    machine(s) [telephone number(s): (213) 896-0400, (213) 896-0411, (213) 896-0408], and (213)
896-0409 is(are) made a part of this proof of service pursuant to CRC §2008.  I am readily

5    familiar with the business' practice for collection and processing of correspondence for mailing

6    with the United States Postal Service.  The correspondence will be deposited in an envelope with
the United States Postal Service this day in the ordinary course of business for mailing to the

7    address(es) shown above.  The envelope was sealed and placed for collection and mailing with the
United States Postal Service at Buchalter Nemer in Irvine, California on May 22, 2008 following

8    ordinary business practices.

9
☐    **BY OVERNIGHT DELIVERY**    On May 22, 2008, I placed the Federal
Express/Overnite Express package for overnight delivery in a box or location regularly

10    maintained by Federal Express/Overnite Express at my office, or I delivered the package to an
authorized courier or driver authorized by Federal Express/Overnite Express to receive

11    documents.  The package was placed in a sealed envelope or package designated by Federal
Express/Overnite Express with delivery fees paid or provided for, addressed to the person(s) on

12    whom it is to be served at the address(es) shown above, as last given by that person on any

13    document filed in the cause; otherwise at that party's place of residence.

14    ☐    **BY PERSONAL DELIVERY**    On May 22, 2008, I placed the above-referenced
envelope or package in a box or location regularly maintained at my office for our

15    messenger/courier service or I delivered the envelope or package to a courier or driver authorized

16    by our messenger/courier service to receive documents.  The package was placed in a sealed
envelope or package designated by our messenger/courier service with delivery fees paid or

17    provided for, addressed to the person(s) on whom it is to be personally served at the address(es)
shown above as last given by that person on any document filed in the cause.  The

18    messenger/courier service was provided with instructions that the envelope or package be
personally served on the addressee(s) by same day delivery (C.C.P. §1011).

19

20    ☐    I declare under penalty of perjury under the laws of the State of California that the

21    foregoing is true and correct to the best of my knowledge.  Executed on May 22, 2008, at Irvine,

22    California.

23    ☒    I declare that I am employed in the office of a member of the bar of this court at whose

24    direction the service was made.  Executed on May 22, 2008, at Irvine, California.

25

26    _____        _____
          Laura Urias                          (Signature)

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
IRVINE

**PROOF OF SERVICE**