1  Martin D. Murphy (164669)
   Michael E. Hale, Esq. (SBN 245378)
2  LIUZZI, MURPHY & SOLOMON, LLP.
   101 Montgomery Street, 27th Floor
3  San Francisco, CA 94104
   Tel: (415) 543-5050
4  Fax: (415) 543-3550

5
   COMMUNITY LEGAL SERVICES IN EAST PALO ALTO
6  Shirley Hochhausen (SBN 145619)
   2117(b) University Avenue
7  East Palo Alto, CA 94303
   Tel: (650) 326-6440
8  Attorneys for Plaintiff

9

10                    UNITED STATES DISTRICT COURT

11       NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

12

13  RICARDO MARCELOS,                    )  Case No. 08-00056 WHA
                          Plaintiff,      )
                                          )
14                                        )  **OPPOSITION TO DEFENDANT NEW**
         v.                               )  **CENTURY TITLE COMPANY'S**
15                                        )  **MOTION TO DISMISS**
    EDWIN MAURICIO PARADA DOMINGUEZ,      )
16  GLENDA PARADA, LORENZO PARADA,        )  Date of Hearing: July 17, 2008
    VIKI RAAB, COUNTRYWIDE HOME           )  Time: 8:00 a.m.
17  LOANS, ARGENT MORTGAGE COMPANY,       )  Dept.: Courtroom 9, 450 Golden Gate Ave.
    LLC, PRIMESTAR FINANCIAL SERVICES,    )  Judge: Honorable William H. Alsup
18  SHOAIB MAHMUD, FINANCIAL TITLE        )
    COMPANY, NEW CENTRUY TITLE            )
19  COMPANY, RECONTRUST COMPANY, N.A.     )
                                          )
20                                        )
    AND DOES 1 through 100,               )
21                        Defendants.     )
                                          )
22

23                        **INTRODUCTION**

24      In its Motion to Dismiss, New Century Title Company seeks to mute its responsibility for the

25  conduct which resulted in the theft of $200,000 from the Plaintiff and threatens the loss of his home. In

26  doing so, New Century misconstrues the law and ignores the detailed factual allegations contained in

27  the Complaint.

28                    **FACTUAL BACKGROUND**

1  The Plaintiff in this case is a manual laborer who works in the roofing industry. He is of Mexican
2  descent, speaks limited English and is illiterate in the English language. He is a married father of two,
3  with twins on the way. In an attempt to provide for his family and secure a larger family home, Mr.
4  Marcelos got caught up in a predatory lending scheme. It began when Mr. Marcelos was contacted by a
5  local Real Estate Agent and Loan Broker by the name of Edwin Parada, (Parada) who is presently the
6  subject of an investigation by the Office of District Attorney Kamala Harris. Parada persuaded the
7  Plaintiff to take several  home loans. The loans were negotiated exclusively in Spanish and were
8  designed to enrich Parada and others through Bait and Switch schemes and by keeping the limited
9  English speaking borrower, ignorant of the true terms of the transactions.

10      The loan which is the subject of this action was brokered by Parada through, Primestar
11 Funding ("Primestar") and Shoaib Mahmud ("Mahmoud"). These brokers "lent" Parada their license so
12 he could sell fraudulent loans. Parada had further assistance in selling fraudulent loans from the
13 financiers who made the loan, Countrywide Home Loans ("Countrywide") failed to fulfill their
14 responsibility under the Truth in Lending Act to provide the very disclosure and consumer protection
15 envisioned in a transaction such as the one at bar where there is a naive borrowers and a sophisticated
16 lenders and other real estate professionals. Finally, the entire enterprise 'benefited" from the conduct of
17 the escrow agent, Vicki Raab, an employee of the defendant's New Century Title Company ("New
18 Century") who in derogation of their legal, fiduciary and contractual duty, handed the Plaintiff
19 documents to sign that he could not read and gave $200,000 of Mr. Marcelos' money to Mr. Parada.

20      The escrow agent was or should have been aware that Mr. Marcelos could not speak English,
21 could not read English and could not understand the documents he was signing without translation,
22 nonetheless, she conducted the closing by merely saying  "sign here" and pointing to a line on a page.
23 The manner in which this closing was conducted and the conduct of the escrow agent in failing to
24 explain the nature of the documents and in disbursing $200,000 to Mr. Parada violates the most basic
25 duty which New Century owed to Mr. Marcelos, to put his best interests before their own. They could
26 have averted this all of this and fulfilled their fiduciary and statutory duties if they had just declined to
27 close the loan without a translator. An action that any prudent escrow agent would have taken in the
28 circumstances.

1    New Century admits that it failed to deliver to Mr. Marcelos any closing documents or TILA

2    disclosures (*Exhibit 1*), a grievous failure on the part of New Century which deprived Mr. Marcelos of

3    a last chance to help himself. If the escrow agent had carried out even this simple portion of the

4    instructions and delivered to Mr. Marcelos the closing documents and TILA disclosures he could have

5    taken the loan package to an English speaker and learned that he had been cheated. He would have

6    availed himself of the right to rescind the bait and switch loan and gone after Parada to recover the

7    stolen money.

8          But, for the failures of New Century, the escrow agents, the brokers who "lent" their licenses

9    and Countrywide, the lender who dispensed with the consumer protections provided by federal law,

10   Mr. Marcelos would not have lost $200,000 and would not presently be at risk of losing his home.

11

12                                          **ARGUMENT**

13   **I.    The Court Should Continue to Exercise Supplemental Jurisdiction for Reasons of**

14          **Judicial Economy and to Insure a Fair and Consistent Result.**

15          For reasons of judicial economy, Plaintiff opposes New Century's request that this case be

16   bifurcated and tried before two separate juries in two separate Courts. This action arises out of a

17   transaction in which each of the parties played a significant role. Each of the defendants played a role

18   in the loan transaction which is the subject of this litigation and the element that brings them all

19   together is the closing of the loan. An occasion upon which New Century caused many of the wrongs

20   alleged to came to fruition.

21          New Century was and is at the heart of the loan transaction which is the subject of this suit.

22   Their escrow agent, Viki Raab was responsible for making the transaction happen. In carrying out her

23   duties she made the transaction happen in a way that failed to fulfill promises made to both the

24   Plaintiff and Countrywide. Removal of New Century, a lynch-pin defendant to another court can only

25   serve to obscure the truth in this matter, waste the Court's time, require testimony to be heard at least

26   twice in two separate courts and creates the possibility of inconsistent results. Plaintiff respectfully

27   requests that the Court deny New Century's motion.

28   //

**OPPOSITION TO DEFENDANT NEW CENTURY'S MOTION TO DISMISS**

1  **II.    Plaintiff's Complaint Satisfies the Liberal Federal Pleading Requirements and the**

2  **Second, Third, Fourth and Seventh Causes of Action Should not be Dismissed for Failure to**

3  **State a Claim Against New Century.**

4  **A.    Legal Standards**

5  Pleadings in federal court serve a limited role.  The complaint is intended solely to notify the

6  defendants of the existence and nature of the plaintiff's grievances.  In this regard, "[u]nder the liberal

7  federal pleading policies, a plaintiff need only give defendant fair notice of the claims against it."

8  *Colaprico v. Sun Microsystems, Inc.* (N.D. Cal. 1991), 758 F. Supp. 1335, 1337.

9  Because federal pleading rules are so liberal, motions under Rule 12(b)(6) of the Federal Rules

10  of Civil Procedure are strongly disfavored and rarely granted. *Gillian v. Jamaica Dev. Corp.*, 108 F.3d

11  246, 249 (9th Cir. 1997).  Indeed, "[a] complaint should not be dismissed for failure to state a claim

12  unless it appears <u>beyond doubt</u> that the plaintiff can prove <u>no set of facts</u> in support of his claim which

13  would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, (1957) (emphasis added).

14  Moreover, dismissal is an "extraordinary" remedy [*United States v. Redwood City* (9th Cir. 1981), 630

15  F.2d 963, 966], only proper "in the unusual case in which a plaintiff includes allegations that show on

16  the face of the complaint that there is some insuperable bar to relief." *Bramlet v. Wilson*, 495 F.2d 714,

17  716 (8th Cir. 1974).

18  In considering a motion to dismiss, the Court: (1) must accept as true all of the factual

19  allegations in the complaint, (2) construe the complaint in the light most favorable to the plaintiff and

20  (3) determine whether any set of facts would entitle the plaintiff to relief. *Leatherman v. Tarrant*

21  *County Narcotics Intelligence and Coordination Unit* (1993) 507 U.S. 163, 164; *see also Cahill v.*

22  *Liberty Mut. Ins. Co.* (9th Cir. 1996) 80 F.3d 336, 337-338.

23

24  **B.    Plaintiff has adequately Plead the Second Cause of Action for Breach of Cal. Civ Code**

25  **Section 1632 and This Court has Already Declined to Dismiss This Cause of Action.**

26  This Court correctly ruled in defendant's first motion to dismiss that Plaintiff had stated a cause

27  of action pursuant to California Civil Code Sec 1632.  Defendants now seek a second bite and

28  inappropriately raise the issue once again.  The Court should adhere to its earlier decision and deny

1  New Century's motion to dismiss the Plaintiff's second cause of action.

2

3  **C.    Plaintiff Has Properly and Adequately Alleged Fraud and Deceit as well as Reliance**

4       Federal Rules of Civil Procedure 9(b) states, in pertinent part: In alleging fraud or mistake, a

5  party must state with particularity the circumstances constituting fraud or mistake.

6       Defendant argues that Plaintiff has failed to allege this cause of action with particularity and

7  failed to allege "reliance."

8       Plaintiff adequately alleges a misrepresentation by New Century in paragraph 66 and 67 of his

9  First Amended Complaint (hereinafter "FAC") when he alleges that New Century, failed to deliver the

10  loan documents, thereby concealing the terms of the loan from him and misrepresenting not only the

11  terms of the loan but, his right to rescind. This concealment was in derogation of New Century's

12  representation and obligation that as Plaintiff's fiduciary, they would put his best interests before their

13  own.

14       Further allegations of misrepresentations are set out in paragraph 67 which alleges that New

15  Century misrepresented the services it would provide when it promised to carry out the escrow

16  instructions.

17       Turning to New Century's argument that Plaintiff did not plead reliance on his own escrow

18  agent and fiduciary. Plaintiff respectfully refers the Court to FAC, Para 82 which states that the

19  Plaintiff relied on New Century. In the face of this plain statement of reliance, New Century seems to

20  say "we undertook to act as your fiduciary but you shouldn't have and didn't rely on us".

21       Plaintiff plead reliance in his complaint and clearly relied on his agents and fiduciaries to act in

22  his best interests. When you retain a professional, reliance is understood. Where there is a written

23  contract to perform services, such as that created by the escrow instruction in this case, reliance on the

24  professional to carry out the terms of the contract is plain.

25       There can be no question that New Century, in agreeing to act as fiduciary, understood that Mr.

26  Marcelos would rely on them. The FAC is replete with references to support the fact that New Century

27  undertook to act on behalf of Plaintiff; New Century agreed to carry out the closing instructions, FAC,

28  39,   New Century assumed certain obligations pursuant to contract, FAC, Para 82, New Century

**OPPOSITION TO DEFENDANT NEW CENTURY'S MOTION TO DISMISS**

1   agreed to act on behalf of the plaintiff and numerous other similar statements which state that New

2   Century undertook responsibilities and charged fees for discharging those responsibilities which

3   invited and resulted in the Plaintiff's reliance.

4        Based on the above clarification of the pleadings in opposition to defendant New Century's

5   arguments, plaintiff adequately pleaded fraud with sufficient specificity, alleged reliance and

6   defendant's motion to dismiss should be denied or in the alternative Plaintiff respectfully requests leave

7   to amend to allege that he relied on New Century when they undertook to carry out the escrow

8   instructions and their fiduciary duty.

9

10  **C.      Plaintiff Has Properly Alleged Aiding and Abetting Fraud.**

11       The "actual knowledge" prong of the "aiding and abetting fraud" cause of action presents a

12  difficult burden to be met by a plaintiff that forces him to use discovery to find the "smoking gun"

13  which evidences actual knowledge.

14       Discovery has yielded just such evidence in the testimony of Vicki Raab, the escrow agent,

15  employee of New Century who conducted the closing. Viki Raab testified she had heard rumors of

16  fraud being conducted by a business where Edwin Parada was working. *See Exhibit 2*. This

17  knowledge is imputed to her employer and is sufficient actual knowledge on the part of New Century

18  to have at the very least acted in accord with its responsibility to make an inquiry before disbursing

19  $200,000 by cashiers check. In addition Raab testified that she did not give any documents to Mr.

20  Marcelos as she was bound to by the escrow instructions and her own legal obligations as an escrow

21  agent. *Exhibit 1*. This admission clearly makes out a violation of TILA, which violation aided and

22  abetted in the fraud perpetrated against the Plaintiff.

23       Based on the newly discovered facts regarding New Century's imputed knowledge of fraud

24  by the Paradas and the fact that New Century's employee Vicki Raab admittedly failed to deliver

25  TILA documents and further failed to explain to the Plaintiff the nature of the documents she put

26  before him and dispersed a large sum of money without explanation to the Plaintiff, Plaintiff

27  respectfully requests New Century's Motion to Dismiss Aiding and Abetting Fraud be denied. In the

28  alternative, based on the matters uncovered in discovery in this matter as well as the recently

1 discovered facts, plaintiff respectfully requests leave to amend.

2

3 **IV.     Plaintiff Has Properly Alleged a Cause of Action Under The Unfair Business and**
4 **Practices Act.**

5         The Unfair Business and Practices Act, or §17200 of the California Business and Professions

6 Code (hereinafter "UBPA") defines unfair competition as "any unlawful, unfair or fraudulent business

7 act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by...

8 §17500." Bus. & Prof. Code §17200. "The (UBPA's) scope is broad.  By defining unfair competition

9 to include any 'unlawful...business or practice' [citation], the UBPA permits violations of other laws

10 to be treated as unfair competition that is independently actionable. [Citation.]" *Kasky v. Nike, Inc.*

11 (2002) 27 Cal. 4th 939 at 949.  "An 'unlawful' business activity includes "'anything that can be

12 properly called a business practice and that at the same time is forbidden by law." [Citation.]'

13 Virtually any law – federal, state or local – can serve as a predicate for an action under...§17200.

14 [Citation.]" *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal. App. 4th 700, 717-718.

15 Thus, violations of federal law will form the predicate unlawful business practice necessary to bring a

16 claim under the UBPA. *Washington Mutual Bank v. Superior Court* (1999) 75 Cal. App. 4th 733, 787

17 [violation of disclosure requirements in RESPA is unlawful practice under UBPA].

18         As set out more fully above, plaintiff adequately pleaded fraud and aiding abetting fraud.

19 Should the Court agree plaintiff properly alleged either fraud or aiding and abetting fraud, the further

20 protections of §17200 would apply.

21         With regard to fraud, case law is abundantly clear that the term "fraudulent" in section 17200

22 "only requires a showing that members of the public are likely to be deceived." *Saunders* v. *Superior*

23 *Court* (1994) 27 Cal. App. 4th 832, 839 (*citing Bank of the West v. Superior Court* (1994) 2 Cal. 4th

24 1254, 1267).  This level of specificity surely has been met where defendant is an escrow company

25 which deals with thousands of potential borrowers and/or their agents on a daily basis.  Clearly, where

26 plaintiff has alleged fraud in paragraphs 66 and  67 , 72 which incorporate by reference paragraphs 22-

27 43, defendant's conduct demonstrates the likelihood that other members of the public, especially

28 predominately Spanish-speaking borrowers and users of escrow services, are likely to be deceived by

1  defendants, their agents and employees.

2  Remedies pursuant to Section 17,200 of the UBPA are broad and envision injunctive relief to
3  protect the public from harmful practices *See, Consumer Union v. Alta-Dena Certified Dairy (1992) 4 Cal.4th*
4  *963.* The type of conduct alleged in the case at bar; failing to deliver consumer notices, failing to fulfill
5  fiduciary obligations, failure to fulfill the statutory obligations of a notary, call out for injunctive relief
6  that will protect the consumer public. This Court should deny New Century's motion to dismiss and
7  permit the Plaintiff to seek protection for consumers pursuant to Section 17200 of the UBPA, or in the
8  alternative, Plaintiff should be granted leave to amend.

9

10  **CONCLUSION**

11  For the foregoing reasons, plaintiff respectfully requests that the Court deny the motion to
12  dismiss his complaint. In the event that the Court finds the motion to dismiss to any cause of action is
13  proper, plaintiff respectfully requests that the Court specify the grounds upon which the ruling is based
14  and grant plaintiff leave to amend his complaint to cure any defects. In the event the Court finds that
15  such defects cannot be cured, plaintiff respectfully requests that the Court grant leave to amend to
16  allege that the defendant bringing this motion to dismiss is properly joined as a necessary party since in
17  this defendant's absence the Court cannot afford complete relief between the parties.

18

19  Dated: June 26, 2008                    LIUZZI, MURPHY & SOLOMON, LLP.

20

21                                          By: /s/ Shirley Hochhausen
                                                Shirley Hochhausen
22                                              Attorney for Plaintiff

23

24

25

26

27

28

# EXHIBIT 1

Raab Depo ROUGH

00001
 1                    ROUGH DRAFT DISCLAIMER
 2
 3          The following is an unedited rough draft
 4     transcript.  Various corrections and/or changes may be
 5     made before the final version is complete.  The use of
 6     this rough draft transcript is limited by C.C.P. §
 7     2025.540(b).  This reporter, as well as any affiliated
 8     court reporting agency, will not be responsible for
 9     any variance of this draft from the final transcript.
10
11          This real-time uncertified and unedited transcript
12     contains no appearance page, index, or certificate.
13
14                       VICKI LINN RAAB,
15              having first been duly sworn by the
16          Certified Shorthand Reporter, was examined
17                  and testified as follows:
18
19                        EXAMINATION
20     BY MR. MURPHY:
21     Q.          Hi.  Can you state your full name for the
22     record, please.
23     A.          Vicki Linn Raab.
24     Q.          Can you spell your last name, please.
25     A.          R-a-a-b.

00002
 1     Q.          Ms. Raab, we introduced ourselves prior.  My
 2     name is Martin Murphy.  I'm representing
 3     Ricardo Marcelos in the lawsuit we're here for today.
 4                 Have you ever had your deposition taken
 5     before?
 6     A.          Yes.
 7     Q.          Okay.  Approximately how many occasions?
 8     A.          Twice.
 9     Q.          When was the last time your deposition was
10     taken?
11     A.          Approximately ten years ago.
12     Q.          All right.  And, if you recall, what was the
13     issue for your deposition?
14     A.          A mortgage broker dispute; elderly gentleman
15     was the borrower.
16     Q.          So that had to do with your business?
17     A.          Yes.
18     Q.          Okay.  Were you a defendant in that action?
19     A.          No.
20     Q.          Were you a party at all in that action?
21     A.          No, sir.
22     Q.          Was your deposition taken as a witness?
23     A.          I believe, yes.
24     Q.          Since it's been a long time, I'll give you
25     some ground rules for the deposition here today.  I'm

00003
 1     sure you had a chance to talk to counsel and go over
 2     the deposition process, but I will give a few ground
 3     rules here today to make it go more smoothly.  Okay?
 4     A.          Okay.
 5     Q.          First and foremost, you are here testifying
 6     under penalty of perjury; so you're under a duty to
 7     tell the truth to the best of your ability.  Do you
 8     understand that?

Page 1

Raab Depo ROUGH

```
 9   A.         It is.
10   Q.         And you filled this out when you looked at
11   Mr. Marcelos's driver's license?
12   A.         Yes.  I believe I took a copy and filled it
13   out based on the copy right after -- this is his
14   driver's license.
15   Q.         Is this part of your duties as a notary?
16   A.         No, closing agent.
17        MS. KATZ:  And just so the record is clear,
18   you were referring to the next document, 150.
19        THE WITNESS:  Yes, 150.
20   BY MR. MURPHY:
21   Q.         Right.  So all the handwritten words on 149
22   are your writing?
23   A.         Yes.
24   Q.         Okay.  If you go to NC 157, "Data integrity
25   audit," do you see that?
```

00151
```
 1   A.         Yes.
 2   Q.         Who fills out this document?
 3   A.         I assume Argent did.
 4   Q.         This is a document that the escrow officer
 5   would receive from the lender?
 6   A.         I've never seen one like this before.  It
 7   could be just one of the mishmash documents that kind
 8   of gets stuck in their package.  It looks almost like
 9   it's the loan commitment as to what the monthly
10   payments are, the terms of the loan, the margin.
11   Q.         But this is a document that's filled out, as
12   far as you know, by Argent?
13   A.         Yes.
14   Q.         All right.  If you go to NC 159, what is
15   this document?
16   A.         Well, the top part -- again, I'm just
17   telling you how I'm interpreting it because it's not
18   my document.
19   Q.         Right.
20   A.         Just reiterating that any oral agreements,
21   no matter who you made them with, are not binding; it
22   has to be in writing.  And then down below, they're
23   just trying to verify that they have a complete
24   understanding of the loan terms, the loan documents,
25   and that you received a full set.
```

00152
```
 1   Q.         Right.  Okay.  So we know No. 2 you're not
 2   sure if that happened -- correct? -- we've already
 3   talked about that?
 4        MS. KATZ:  Just objection.  I don't know if
 5   that was her testimony.  I think you might be
 6   mischaracterizing her testimony.
 7   BY MR. MURPHY:
 8   Q.         Number 2 underneath it says:  "You have
 9   received a full and complete set of all loan documents
10   you have signed with this transaction including a copy
11   of this notice."
12        I think we've previously talked about that
13   you, as the escrow officer, don't know, as you sit
14   here today, whether Mr. Marcelos received that.
15   Correct?
16   A.         I did not hand him the copies; I made his
17   copies for him.
```

Page 65

Raab Depo ROUGH

```
18   Q.         Right. Okay. But you don't know if he
19 walked out the door with those copies?
20   A.         I don't know that he didn't either.
21   Q.         Right. You don't know one way or the other?
22   A.         Correct.
23   Q.         Number 1 says: "You've been given an
24 opportunity to read your loan documents, have read
25 them and fully understand the terms of this loan
```
⬚
00153
```
 1 transaction."  Do you see that?
 2   A.         Yes.
 3   Q.         Do you have any responsibility as the escrow
 4 officer to make sure that the borrower has read these
 5 documents before signing this document?
 6   A.         No. This came from Argent.
 7   Q.         Do you have any responsibility as a notary
 8 to make sure Mr. Marcelos has read these documents
 9 before he signed the document?
10   A.         No.
11   Q.         NC 163, do you see this document?
12   A.         Yes.
13   Q.         What is this document?
14   A.         This is a name affidavit -- signature
15 affidavit.
16   Q.         And what is that?
17   A.         This gives the borrower an opportunity to
18 let the lender know if he has any other aliases.  And
19 a lot of times this document comes already completed
20 when the lender gets the credit report.  My credit
21 could be under "Viki Linn," "Viki L."  And so it would
22 come on there saying that "Viki Linn" is also known as
23 "Viki L."
24            In this case it was blank.  And so that the
25 way this was executed, when I was checking signatures,
```
⬚
00154
```
 1 I would have had Mr. Marcelos write his name here that
 2 he was known as "Ricardo H. Marcelos" next to his
 3 signature, and then I notarized it.
 4   Q.         So that was the purpose was to figure out if
 5 he had other names that he went by?
 6   A.         Yeah.  And, again, in my opinion, this form
 7 is not even completed because it's "H."  He should
 8 have had the "Ricardo Hernandez" on here.  But it's an
 9 Argent form so -- and they funded with it; so they
10 were satisfied with the contents.
11   Q.         All right.  So even though Mr. Marcelos did
12 not sign or initial at least a majority of these
13 documents in front of you, would it be your practice
14 to look at the signatures and initials and verify that
15 it appears to be his writings?
16   A.         The notary documents.  You know, in his
17 case, as he's standing in front of me and I'm flipping
18 through the papers, there would have been nothing to
19 make me even think he hadn't executed these documents.
20 He's watching me, you know, see his signature or his
21 name with a signature.  It never would have even
22 occurred to me that there was a problem with it.
23            MR. MURPHY:  Okay.  We can take a break now.
24            (Whereupon, a recess was taken from
25               3:05 p.m. to 3:17 p.m.)
```
⬚
Page 66

# EXHIBIT 2

```
                              Raab Depo ROUGH
 9   Q.          And, if you know, approximately how many
10   loans did New Century have that involved Primestar?
11   A.          I can't answer that.
12   Q.          How about with Edwin Parada?
13   A.          Again, I guessed, I think, 20, 25
14   transactions with ERA.  But I couldn't designate how
15   many of those were Edwin's.
16   Q.          Have you ever of had Glenda Parada?
17   A.          I've seen her name in the documents relative
18   to this.
19   Q.          Aside from the documents, have you ever
20   heard of Glenda Parada or have you ever spoken with
21   Glenda Parada?
22   A.          No.
23   Q.          How about Humberto Covurrusias?
24   A.          No.
25   Q.          And I believe you said that your contact at

00165
 1   Primestar was Christian Covurrusias?
 2   A.          Chris.
 3   Q.          Chris.  I'm sorry.
 4               When was your last conversation with Chris,
 5   telephonic, personal, any conversations?
 6   A.          I have no idea.  It would have been the last
 7   transaction I closed that he was involved with because
 8   we didn't talk aside from transactions.
 9   Q.          So would you say that would be a couple
10   years ago?
11   A.          At least.  Three to four years ago, maybe.
12   Q.          And you've been in the -- I'll say the
13   escrow industry for approximately how long?
14   A.          Over 30 years.
15   Q.          And all that time was in the Bay Area; is
16   that correct?
17   A.          Correct.
18   Q.          Did you -- this may be vague.  Did you ever
19   hear of Parada's name in the industry and hear
20   anything negative about him?
21               MS. KATZ:  I am just going to object that's
22   a bit of a confusing question.  Maybe a time frame
23   or --
24               MR. LIU:  Okay.  Let's say --
25               MS. KATZ:  I'm saying it's a very broad,

00166
 1   very open-ended question.
 2   BY MR. LIU:
 3   Q.          Let's say 2005 until the time you stopped
 4   doing escrow services, have you at any time during
 5   that time period heard anything negative about
 6   Edwin Parada?
 7   A.          Can we come back to that question?
 8               MS. KATZ:  You have to answer the question.
 9               THE WITNESS:  Right now, I do?
10               MS. KATZ:  Are you unclear on the question?
11               THE WITNESS:  No, I'm unclear as to pulling
12   Edwin out of the whole ERA scenario.  There was a lot
13   of confusion, a lot of not nice things happening
14   within the office Edwin was in.  And so I'm not
15   certain if the things I heard about included Edwin or
16   not.  I couldn't just --
17   BY MR. LIU:
```

                              Raab Depo ROUGH
18    Q.        Right. So the negative things you may have
19  heard about Edwin, you're saying are related to his
20  employment at ERA?
21    A.        There were a lot of soap opera type antics
22  that were going on within that office.
23    Q.        What about any gossip or rumors about fraud
24  committed by anyone in the ERA office?
25    A.        The broker. I had heard a rumor about the

00167
 1  broker of the office.
 2    Q.        What was his or her name?
 3    A.        Tony Navarro.
 4    Q.        But nothing -- but you heard no, like,
 5  rumors or gossip about Parada individually about any
 6  fraud he may have committed or allegedly committed?
 7    A.        No.
 8    Q.        And for the Marcelos loan, it looks like the
 9  only documents that you notarized was the deed of
10  trust and the signature affidavit?
11    A.        Okay.
12    Q.        Were there any other documents?
13    A.        I don't believe so. I think those are the
14  only ones that I see here.
15    Q.        Typically would those be the only documents
16  you would notarize?
17    A.        There could be some other type of
18  affidavits. It just depends on the lender and what
19  their package looks like.
20    Q.        And I believe you said that you're currently
21  unemployed?
22    A.        That's correct.
23    Q.        And you're in school?
24    A.        That's correct.
25    Q.        And what program -- what school are you at?

00168
 1    A.        It's called Spectrum Community Services.
 2    Q.        And what type of degree or --
 3    A.        Business applications.
 4    Q.        And when do you expect to graduate from
 5  that?
 6    A.        I believe the course completes in January;
 7  it's just a 12-month.
 8    Q.        And you have not turned in your notary stamp
 9  back to the California Secretary of State?
10    A.        No. I don't have to; it's mine.
11    Q.        Okay. Let's take a look at the first
12  amended complaint. And I don't want to use this as an
13  exhibit, I guess in spirit of not putting paper here.
14  But I'll represent that this is the first amended
15  complaint filed by Ricardo Marcelos. Just to be
16  clear, Argent and Countrywide did not prepare this
17  document. This was prepared by the plaintiff who is
18  suing New Century and Argent and Countrywide. Okay?
19    A.        Uh-huh.
20            MS. KATZ:  (Gesturing.)
21            THE WITNESS:  Yes.
22  BY MR. LIU:
23    Q.        Now, if we can go to page 7 to paragraph 34,
24  and in the left-hand column are numbers. Do you see
25  those, it goes, like, from 1 to 28?

                              Page 72